1   Rob Bonta
    Attorney General of California
2   Michael L. Newman
    Senior Assistant Attorney General
3   Laura L. Faer
    Vilma Palma-Solana
4   Supervising Deputy Attorneys General
    Sophia Carrillo
5   Heidi Joya
    Kanwalroop Kaur Singh
6   Julia Harumi Mass
    State Bar No. 189649
7     1515 Clay Street, 20th Floor
      P.O. Box 70550
8     Oakland, CA  94612-0550
      Telephone:  (510) 879-3300
9     Fax:  (510) 622-2270
      E-mail:  Julia.Mass@doj.ca.gov
10  *Attorneys for California Secretary of State*

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14

15

| | |
|---|---|
| 16  **ALLIANCE FOR FAIR BOARD RECRUITMENT,** | 2:21-cv-05644-RGK (RAOx) |
| 17                                        Plaintiff, | **DEFENDANT SECRETARY OF STATE'S MOTION TO DISMISS COMPLAINT** |
| 18  v. | |
| 19  **SHIRLEY N. WEBER, in her official capacity as Secretary of State of the State of California,** | Date:           November 1, 2021<br>Time:           9:00 a.m.<br>Courtroom:   Courtroom 850, 8th Floor |
| 20                                        Defendant. | Judge:         Hon. R. Gary Klausner<br>Trial Date:    none set<br>Action Filed: July 12, 2021 |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................ 1

Background ......................................................................................................... 1

    I.    SB 826 and AB 979 Addressed Discrimination in Board
          Selection on California's Largest Public Corporations ...................... 2

    II.   SB 826 and AB 979 Provide Flexibility Such That Corporations
          Can Increase Diversity Without Excluding or Displacing
          Existing or Potential Directors ............................................................ 3

    III.  Plaintiff's Allegations ........................................................................ 5

Legal Standard ................................................................................................... 7

Argument ........................................................................................................... 8

    I.    Plaintiff Cannot Prevail on Its Facial Equal Protection and
          42 U.S.C. § 1981 Challenges .............................................................. 8

          A.    AB 979 Does Not Require Corporations to Employ *Any*
               Racial Classifications ............................................................... 9

          B.    Both SB 826 and AB 979 Can Be Applied Through a
               Race- and Gender-Neutral Board Selection Process ................. 9

    II.   Plaintiff's Purported Internal Affairs Doctrine Claim Must Be
          Dismissed .......................................................................................... 11

          A.    The Court Does Not Have Subject Matter Jurisdiction
               over Plaintiff's Internal Affairs Doctrine Claim ..................... 11

               1.    The Internal Affairs Doctrine Is a Conflict of Law
                    Principle and Does Not Create a Legal Right
                    Enforceable in the Abstract ........................................... 12

               2.    The Court Does Not Have Subject Matter
                      Jurisdiction over Plaintiff's Internal Affairs
                    Doctrine Claim ............................................................... 14

          B.    Plaintiff Has Failed to Allege any Conflict of Laws to
               Which the Internal Affairs Doctrine Could Apply ................. 15

          C.    Plaintiff Does Not Have Standing to Assert Unnamed
               Corporations' Interests Under the Internal Affairs
               Doctrine .................................................................................. 16

               1.    The Allegations of the Complaint Do Not Support
                      Plaintiff's Shareholder Members' Standing to Bring
                      a Derivative or Direct Action ........................................ 17

               2.    Aspiring Directors Cannot Assert a Claim that
                      Belongs to the Corporation ........................................... 20

Conclusion ...................................................................................................... 20

1

## TABLE OF AUTHORITIES

2

**Page**

3   CASES

4
5   *Arbaugh v. Y&H Corp.*
 546 U.S. 500 (2006) ...................................................................................7

6   *Atherton v. FDIC*
7    519 U.S. 213 (1997) .................................................................................20

8   *Batchelder v. Kawamoto*
9    147 F.3d 915 (9th Cir. 1998) ..................................................................13

10   *Caltex Plastics, Inc. v. Lockheed Martin Corp.*
 824 F.3d 1156 (9th Cir. 2016) ............................................................7, 16
11

12   *Coto Settlement v. Eisenberg*
 593 F.3d 1031 (9th Cir. 2010) ..................................................................7

13
14   *CTS Corp. v. Dynamics Corp. of America*
 481 U.S. 69 (1987) ..............................................................................14, 15

15
16   *Edgar v. MITE Corp.*
 457 U.S. 624 (1982) .................................................................................12

17
18   *EMI Ltd. v. Bennett*
 738 F.2d 994 (9th Cir. 1984) ..................................................................17

19
20   *Empire Healthchoice Assurance, Inc. v. McVeigh*
 547 U.S. 677 (2006) ..........................................................................14, 15

21
22   *Freedman v. magicJack Vocaltec Ltd.*
 963 F.3d 1125 (11th Cir. 2020) ...............................................................13

23   *Gaynor v. Buckley*
 318 F.2d 432 (9th Cir. 1963) ..................................................................13
24

25   *Glenbrook Cap. Ltd. P'ship v. Kuo*
 525 F. Supp. 2d 1130 (N.D. Cal. 2007) ................................................18

26
27   *Gratz v. Bollinger*
 539 U.S. 244 (2003) ..................................................................................9

28

# TABLE OF AUTHORITIES
## (continued)

Page

*Gully v. First Nat'l Bank in Meridian*
299 U.S. 109 (1936) .............................................................15

*Hunt v. Wash. State Apple Advert. Comm'n*
432 U.S. 333 (1977) .............................................................16

*Klaxon Co. v. Stentor Elec. Mfg. Co.*
313 U.S. 487 (1941) .........................................................15, 16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
572 U.S. 118 (2014) .............................................................20

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992) ..............................................................7

*Mansfield Hardwood Lumber Co. v. Johnson*
268 F.2d 317 (5th Cir. 1959) ..................................................14

*Meland v. Weber*
2 F.4th 838 (9th Cir. 2021) ...............................................17, 18

*Puente Ariz. v. Arpaio*
821 F.3d 1098 (9th Cir. 2016) ..................................................8

*S.D. Myers, Inc. v. City & County of San Francisco*
253 F.3d 461 (9th Cir. 2001) ...................................................8

*Scott v. Breeland*
792 F.2d 925 (9th Cir. 1986) ...................................................7

*St. Clair v. City of Chico*
880 F.2d 199 (9th Cir. 1989) ...................................................7

*TransUnion LLC v. Ramirez*
141 S. Ct. 2190 (2021) .........................................................19

*United States v. Salerno*
481 U.S. 739 (1987) ..........................................................8, 11

*Wash. State Grange v. Wash. State Republican Party*
552 U.S. 442 (2008) ..............................................................8

*Wheeler v. City of Santa Clara*
894 F.3d 1046 (9th Cir. 2018) .................................................11

# TABLE OF AUTHORITIES
## (continued)

**Page**

STATUTES

United States Code, Title 42
    § 1331 ..............................................................................*passim*
    § 1981 ..............................................................................*passim*

California Code, Corporations Code
    § 2115.5 ...........................................................................4, 16
    § 2115.6 ...........................................................................4, 16
    § 301.3 ..............................................................................*passim*
    § 301.4 ..............................................................................*passim*

COURT RULES

Federal Rules of Civil Procedure
    Rule 12 ...........................................................................7, 19
    Rule 23.1 ........................................................................17, 18

OTHER AUTHORITIES

Assembly Bill No. 979 (2020)
    § 1 ...................................................................................3

Restatement (Second) of Conflict of Laws
    § 2 ...................................................................................13
    § 302 ..............................................................................13, 16, 18

Senate Bill No. 826 (2018)
    § 1 ...................................................................................2, 3

**INTRODUCTION**

California's corporate board diversity statutes, enacted as Senate Bill No. 826 (2018) and Assembly Bill No. 979 (2020), further compelling and important state interests in remedying discrimination and promoting diversity in corporate leadership, with attendant benefits to California and its residents.[1] The California Legislature crafted these laws with significant flexibility to add directors to the corporate boards so that no corporation needs to exclude or deny board positions based on gender, race, or any other classification.

The Secretary of State (Secretary) moves to dismiss all counts in Plaintiff's Complaint. Plaintiff's anti-discrimination claims (Counts One, Two, and Three) present facial challenges to California's corporate board diversity laws that must fail because the laws are amenable to constitutional application. Plaintiff's claim under the internal affairs doctrine (Count 4) must be dismissed because Plaintiff fails to state a cognizable claim or to allege facts sufficient to state such a claim if it were cognizable and because Plaintiff's members lack standing to assert it.

**BACKGROUND**

Corporate board directors exert considerable influence over U.S. corporations, broader society, and public policy. The California Legislature adopted SB 826 and AB 979 based on its findings that the boards of large corporations headquartered in California have largely excluded qualified women and racial and ethnic minorities despite evidence that greater board diversity benefits corporate performance and governance. These bills set minimum diversity requirements for California's largest and most influential companies—those that are headquartered in California and have outstanding shares listed on major U.S. stock exchanges.[2] In creating a

---

[1] The text of Senate Bill No. 826, 2017-18 Leg., Reg. Sess. (Cal. 2018) (SB 826) is attached as Exhibit A to the Secretary of State's Request for Judicial Notice (RJN) filed herewith. The text of Assembly Bill No. 979, 2019-20 Leg. Reg. Sess. (Cal. 2020) (AB 979) is attached as RJN Exhibit B.

[2] The Secretary has issued guidance that corporations with shares listed on the New York Stock Exchange (NYSE), National Association of Securities Dealers

1   flexible floor for board diversity, the Legislature explicitly avoided setting a hard

2   quota or percentage requirement. Instead, under both SB 826 and AB 979,

3   corporations can either add directors to create space for women and members of

4   underrepresented groups or pay a potential fine if they do not meet the

5   requirements. Cal. Corp. Code §§ 301.3(a), (e); 301.4(a), (d) (West 2021).

6   **I.    SB 826 AND AB 979 ADDRESSED DISCRIMINATION IN BOARD
        SELECTION ON CALIFORNIA'S LARGEST PUBLIC CORPORATIONS**
7

8       SB 826 was passed to address compelling state interests: to remedy long-

9   standing discrimination against women in the corporate director selection process,

10  and to realize economic and other benefits of gender diversity on boards for

11  corporations, California residents, taxpayers and retirees, and the State.[3] *E.g.*,

12  SB 826, § 1(a), (c)(1)-(5), (e)(1)-(4), (f). For example, the Legislature considered

13  that, in 2017, a quarter of California's public companies in the Russell 3000

14  index—companies that represent $5 trillion in market capitalization—had no

15  women on their boards, and for the remaining companies, women held just 15.5

16  percent of corporate board seats. SB 826 § 1(e), (e)(1); *see also id.* § 1(f)(3) (nearly

17  half of the 75 largest initial public offerings from 2014 to 2016 and many

18  technology companies in California went public with *no* women on their boards).

19      The Legislature also found that gender diversity on boards benefits corporate

20  performance. *Id.* § 1(c)(4). In companies with market capitalization of at least

21  $10 billion, those with women directors outperformed comparable businesses with

22  all-male boards by 26 percent, and companies with three or more women directors

23  reported earnings per share 45 percent higher than companies with all-male boards.

24  *Id.* § 1(c)(4), (1). The Legislature found that exclusion of women from boards has

25  ───────────────

26  Automated Quotations (NASDAQ), or the NYSE American are "publicly held"
    corporations covered by SB 826 and AB 979. *See* RJN Ex. C.

27      [3] If Plaintiff's equal protection claims are subject to further litigation, the
    Secretary intends to present evidence in support of the Legislature's purpose,
    interest, and findings, including but not limited to the legislative record, for the
28  Court's consideration under applicable standards of review.

1   real economic consequences for corporations and California residents, taxpayers,

2   and retirees, including retired state employees and teachers with pension plans, and

3   that without proactive measures to increase gender diversity on corporate boards, it

4   would take decades to overcome existing disparities. *Id.* § 1(a), (c), (f), (g).

5         Similarly, the Legislature adopted AB 979 upon findings that discrimination,

6   both structural and systemic, have resulted in stark disparities in the racial and

7   ethnic composition of corporate boards. *See, e.g.*, AB 979 § 1(d), (e) (as of 2020,

8   233 of 662 of publicly traded companies headquartered in California had all-white

9   boards of directors, and 100% had at least one white board member; whereas only

10   13% had a Latino board member, 16% had an African American board member,

11   42% had an Asian American board member); § 1(k), (*l*) (citing reports

12   demonstrating exclusion of otherwise qualified racial minorities from managerial

13   and executive positions that are the pipeline to the corporate boardroom). As with

14   SB 826, the Legislature cited evidence that more diverse boards are associated with

15   better corporate performance, including one study that found an increase in

16   earnings for every 10% increase in racial and ethnic diversity on senior-executive

17   teams and another that found the high-tech industry could generate an additional

18   $300-370 billion each year if the racial or ethnic diversity of tech companies'

19   workforces reflected that of the talent pool. AB 979 § 1(m), (n).

## II.  SB 826 AND AB 979 PROVIDE FLEXIBILITY SUCH THAT CORPORATIONS CAN INCREASE DIVERSITY WITHOUT EXCLUDING OR DISPLACING EXISTING OR POTENTIAL DIRECTORS

22         The requirements of SB 826 and AB 979 apply only to publicly held

23   corporations with shares on a major U.S. stock exchange that have their principal

24   executive office in California. Cal. Corp. Code §§ 301.3(a), (f)(2); 301.4(a), (f)(2);

25   2115.5; 2115.6. As of 2019, covered corporations are required to have at least one

26   female director on their board. Cal. Corp. Code § 301.3(a). By the end of 2021, they

27   are required to have at least two female directors on five-member boards and three

28   female directors on boards of six members or more. *Id.* § 301.3(b).

1    AB 979 is structurally similar to SB 826. *See* Cal. Corp. Code §§ 301.3, 301.4,

2    2115.5, 2115.6. It requires covered corporations to have a minimum of one director

3    from an underrepresented community by the end of 2021. Cal. Corp. Code

4    §§ 301.4(a), 2115.6. The Legislature defined "director from an underrepresented

5    community" as "an individual who self-identifies as Black, African American,

6    Hispanic, Latino, Asian, Pacific Islander, Native American, Native Hawaiian, or

7    Alaska Native, or who self-identifies as gay, lesbian, bisexual, or transgender." Cal.

8    Corp. Code § 301.4(e)(1). This means that corporations can comply with AB 979

9    by adding new directors who identify as gay, lesbian, bisexual, or transgender

10   (LGBT) without adding directors from any racial minority group. By the end of

11   2022, AB 979 requires that covered corporations with a board size of at least four

12   but fewer than nine directors have at least two directors from underrepresented

13   communities and those with nine or more directors have at least three directors

14   from underrepresented communities. Cal. Corp. Code § 301.4(b).

15   The Legislature explicitly provided corporations subject to SB 826 and

16   AB 979 flexibility to comply with their terms without excluding any sitting or

17   potential director based on gender or lack of membership in an underrepresented

18   group: "A corporation may increase the number of directors on its board to comply

19   with this section." Cal. Corp. Code §§ 301.3(a) and 301.4(a).

20   SB 826 required the Secretary to publish a report by July 1, 2019,

21   documenting the number of covered corporations with at least one female director

22   on their boards, and by March 1, 2020, and annually thereafter, to publish reports

23   documenting the number of covered corporations that are in compliance with

24   SB 826, that move their headquarters in or out of California, and/or that cease to be

25   publicly traded. Cal. Corp. Code § 301.3(c), (d). AB 979 requires the Secretary to

26   include similar information regarding compliance for directors from

27   underrepresented communities in the annual report starting in March 2022. Cal.

28   Corp. Code § 301.4(c). While the Secretary may adopt regulations and impose fines

4

to implement SB 826 and AB 979, the laws do not require the Secretary to enforce the requirements through regulations, fines, or any other action. Cal. Corp. Code §§ 301.3(e)(1) and 301.4(d)(1).

## III.  PLAINTIFF'S ALLEGATIONS

According to the Complaint, Plaintiff Alliance for Fair Board Recruitment is a "Texas non-profit membership organization" whose members include "persons seeking employment as corporate directors as well as shareholders of publicly traded companies . . . subject to SB 826 and AB 979." Compl. ¶ 16, ECF No. 1. Plaintiff's members "include biological males who do not self-identify as women or underrepresented minorities as defined in AB 979 and are actively seeking corporate director positions." Compl. ¶ 19. Plaintiffs allege that "[b]ecause of California's laws, they are unable to compete on equal footing for positions on the boards of directors of corporations headquartered in California, in violation of the Fourteenth Amendment and 42 U.S.C. § 1981." *Id.* Although the Complaint alleges that one of Plaintiff's members was "ousted" from his position as a corporate board director "because he is not a woman and does not self-identify as an underrepresented minority," Compl. ¶ 10, it does not allege other facts about any corporation's actual implementation of either SB 826 or AB 979, *see generally* Compl.

As to shareholders, the Complaint alleges that "Plaintiff's members also include shareholders of publicly traded corporations headquartered in California," who "intend to vote on board member nominees at upcoming annual meetings." Compl. ¶¶ 21, 23. The Complaint alleges that Plaintiff's shareholder members "select who sits on . . . the boards of directors" of the corporations for whom they hold shares because "the only way in which a person can be elected . . . is if a plurality of shareholders vote in favor of a candidate at an annual shareholder meeting." Compl. ¶ 22. Plaintiff claims the diversity requirements of SB 826 and AB 979 harm its shareholder members by requiring them to "participate in and

5

perpetuate sex-based discrimination" and "discriminate against potential board candidates based on their race, ethnicity, sexual orientation, or gender identity," and by impairing their right to vote for the director candidates of their choice, "free from the threat of fines imposed on the corporation." Compl. ¶¶ 24, 25.

The Complaint does not allege that the Secretary has or imminently will issue regulations to implement the statutes or that the Secretary has issued or threatened to issue fines to corporations that fail to comply with California's board diversity statues. Nor does Plaintiff allege any particular facts about the composition of boards or characteristics of board nominees for any publicly held corporations headquartered in California in which Plaintiff's members hold shares.

Count One of the Complaint alleges that SB 826, on its face, violates Plaintiff's members' rights to be free from "unjustified discrimination based on sex" under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Compl. ¶¶ 45-50. Count Two alleges that AB 979, on its face, discriminates based on race and ethnicity and fails to meet the strict scrutiny required for the use of racial classifications. Compl. ¶¶ 51-55. Although the Complaint acknowledges that AB 979 includes persons who identify as LGBT as members of "underrepresented groups," Count Two does not challenge the use of these classifications and focuses only on AB 979's use of "racial classifications."[4] *Id.* In Count Three of the Complaint, Plaintiff asserts that AB 979 violates the prohibition against race discrimination in 42 U.S.C. § 1981. Compl. ¶¶ 56-58. Count Four of the Complaint claims that both SB 826 and AB 979 violate the "internal affairs doctrine," which it claims is a doctrine "mandated by constitutional principles" that applies "except in the rarest situations." Compl. ¶¶ 59-62. The Complaint does not identify a clause of the U.S. Constitution that creates a cause of

---

[4] Plaintiff's Complaint also includes allegations criticizing the California Legislature's justifications for SB 826 and AB 979, which are not included here due to their irrelevance to the instant motion. *See* Compl. ¶¶ 29-37 (SB 826), ¶¶ 38-43 (AB 979).

action for enforcement of the internal affairs doctrine or identify the states of incorporation for any of the corporations Plaintiff contends the internal affairs doctrine protects from application of SB 826 and AB 979.

## LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where a plaintiff fails to state a cognizable legal theory or fails to allege sufficient facts to state a plausible claim for relief. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). A complaint "must provide sufficient allegations of underlying facts to give fair notice to enable the opposing party to defend itself effectively" and "the underlying factual allegations must plausibly suggest an entitlement to relief." *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (internal quotation marks and alterations omitted)). Although the Court must accept the allegations of the complaint as true for purposes of a Rule 12(b)(6) motion, the Court can augment the facts and inferences from the complaint with matters of public record and facts susceptible to judicial notice. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

To establish the court's subject matter jurisdiction under 42 U.S.C. § 1331, a plaintiff must plead a "colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). "The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Moreover, under Rule 12(b)(1), unlike Rule 12(b)(6), the moving party may introduce—and the Court may consider—affidavits and other evidence to attack the substance of a complaint's jurisdictional allegations. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In order to survive a motion to dismiss for lack of standing under Rule 12(b)(1), a plaintiff must establish that it has suffered or will imminently suffer an "injury in fact" that is caused by the Defendant's conduct and will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560-61 (1992).

## ARGUMENT

### I.   PLAINTIFF CANNOT PREVAIL ON ITS FACIAL EQUAL PROTECTION AND 42 U.S.C. § 1981 CHALLENGES

Plaintiff's Complaint raises facial challenges to SB 826 and AB 979, alleging that both laws are unconstitutional based on the statutes' text alone without reference to any particular applications or circumstances.[5] Compl. ¶¶ 49-50, 55. Plaintiff's prayer for relief is correspondingly expansive, seeking to enjoin the enforcement of both laws in their entirety. *Id.* at 17.

A facial challenge to a law is "the most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Even if the challenged law "might operate unconstitutionally under some conceivable set of circumstances," *id.*, a facial challenge must fail unless the plaintiff establishes "that the law is unconstitutional in all of its applications," *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008); *see also S.D. Myers, Inc. v. City & County of San Francisco*, 253 F.3d 461, 467-68 (9th Cir. 2001) (affirming the continued validity of the *Salerno* standard outside of First Amendment and abortion cases); *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) ("[W]e have chosen to continue applying *Salerno*.").[6] Because Plaintiff cannot establish that all applications of SB 826 and AB 979 are unconstitutional, its first, second, and third claims for relief must be dismissed**.**

---

[5] This motion to dismiss, as it pertains to Plaintiff's facial challenges on equal protection grounds, is based on the statutes as written, and therefore does not address evidence underlying the Legislature's purpose or interest. *See supra* note 3.

[6] Facial challenges are disfavored because they are often speculative and premature, contravene the principle of judicial restraint, and threaten "the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. State Grange*, 552 U.S. at 450-51.

### A. AB 979 Does Not Require Corporations to Employ *Any* Racial Classifications

Plaintiff cannot succeed on a facial challenge to AB 979 because the statute plainly admits of constitutional application.[7] Plaintiff alleges that AB 979 "requires corporations to give substantial preferences to board candidates who self-identify as members" of the "favored racial and ethnic groups" listed therein. Compl. ¶¶ 54, 58. AB 979, however, does not define "underrepresented community" in exclusively racial and ethnic terms: individuals who self-identify "as gay, lesbian, bisexual, or transgender" are also included. Cal. Corp. Code § 301.4(e)(1); *see also* Compl. ¶ 53. Therefore, any corporation can comply with AB 979 by appointing only LGBT individuals to fill the required director positions. It follows that AB 979 *never* requires shareholders to take race or ethnicity into account when appointing directors. For the same reason, AB 979 does not necessarily disadvantage candidates seeking director positions who do not self-identify with one of the listed racial or ethnic groups. Plaintiff's second and third causes of action do not challenge the LGBT provisions of AB 979; they rely only on AB 979's inclusion of racial and ethnic groups in their facial challenge to the statute. *See* Compl. ¶¶ 54-55, 58. Because the statute permits a broad range of permissible application under Plaintiff's theory of liability, Plaintiff's facial challenge must fail.

### B. Both SB 826 and AB 979 Can Be Applied Through a Race- and Gender-Neutral Board Selection Process

In addition to the flexibility provided by AB 979 for corporations to add diverse directors without considering racial classifications, both SB 826 and AB 979 expressly provide that "[a] corporation may increase the number of directors on its board" to come into compliance. Cal. Corp. Code §§ 301.3(a),

---

[7] Plaintiff also alleges that AB 979 facially violates 42 U.S.C. § 1981. *See* Compl. ¶ 58. This claim is coextensive with Plaintiff's race-based challenge under the Equal Protection Clause. *See Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (noting that "purposeful discrimination that violates the Equal Protection Clause of the Fourteenth Amendment will also violate § 1981").

301.4(a). Unlike a rigid numerical or proportional quota, these statutes establish a flexible floor for the inclusion of women and individuals from underrepresented communities. Candidates who do not self-identify as female or as members of an underrepresented community are not restricted to limited membership on corporate boards. To the contrary, for every woman and underrepresented director added to a corporation's board, non-underrepresented male board members may also be added. As a result, SB 826 and AB 979 do not necessarily disadvantage any candidate seeking a board position.

Corporations can also achieve compliance without adding directors who are women and/or members of an underrepresented community. Consider, for example, a corporation with nine directors, two of whom self-identify with an underrepresented community and seven of whom do not. If one of the seven directors were to retire, the corporation could reduce the size of the board to retain the eight remaining directors and automatically come into compliance with AB 979. *See* Cal. Corp. Code § 301.4(b)(1)-(2). Similarly, a corporation with three male directors and one female director could comply with SB 826 by retaining its existing board members after the retirement of a male director. *See* Cal. Corp. Code § 301.3(b)(1)-(3). Because SB 826 and AB 979 do not require corporations to appoint new board members at all, it follows that the laws do not require shareholders to consider race or gender in the selection of new board members.

Moreover, the flexibility afforded under SB 826 and AB 979 guarantees that a corporation can appoint new directors through a race- and gender-neutral board selection process. For example, a corporation can conduct a first round of appointments through an anonymous screening process that does not reveal the race or gender of the persons under consideration. If the composition of the board did not comport with either law after this initial selection process, the corporation could add positions through a further race- and gender-blind process until it achieved compliance with SB 826 and/or AB 979.

10

Because Plaintiff cannot show, as required under *Salerno*, that every application of SB 826 or AB 979 would be invalid, its facial challenges under the Equal Protection Clause and 42 U.S.C. § 1981 must be dismissed. Plaintiff is also unable to cure these deficiencies with an amended complaint, as Plaintiff cannot plead around the plain text of the laws. Plaintiff's facial challenges under the Fourteenth Amendment and § 1981 should thus be dismissed with prejudice; any leave to amend the first, second, and third causes of action should be restricted to the opportunity to properly plead an as-applied challenge. *See, e.g.*, *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.").

## II. PLAINTIFF'S PURPORTED INTERNAL AFFAIRS DOCTRINE CLAIM MUST BE DISMISSED

Plaintiff's fourth Count, asserting a claim for relief under the internal affairs doctrine, must be dismissed for several reasons. First, the internal affairs doctrine does not create a cognizable federal cause of action. Rather, it is a choice of law doctrine that guides courts adjudicating *other* constitutional, statutory, or common law causes of action. Second, Plaintiff has failed to allege any conflict between California's board diversity statutes and any other state's law, or facts required to plausibly allege that covered corporations should be excused from complying with California law. Third, neither shareholders nor aspiring or former board members of a corporation, Plaintiffs' only alleged members, have standing to raise the injuries purportedly arising under the internal affairs doctrine. For these reasons, Count Four of the Complaint should be dismissed for lack of subject matter jurisdiction and for failure to state a claim.

### A. The Court Does Not Have Subject Matter Jurisdiction over Plaintiff's Internal Affairs Doctrine Claim

The Complaint alleges that this Court has federal question jurisdiction over Count Four under 28 U.S.C. § 1331 because it arises under "the federal internal

affairs doctrine." Compl. ¶ 12. The entirety of Plaintiff's support for this assertion of jurisdiction is contained in paragraph 61 of the Complaint:

> The Supreme Court has held that the internal affairs doctrine is mandated by constitutional principles, except in the rarest circumstances, such as when the law of the state of incorporation conflicts with national policy on foreign or interstate commerce.

Compl. ¶ 61. The Complaint does not identify the constitutional principles that purportedly mandate the internal affairs doctrine, much less a clause of the Constitution from which the claim arises. Moreover, because the internal affairs doctrine is merely a principle that guides courts when presented with conflicting state laws regarding a particular matter or transaction, any constitutional underpinning of the doctrine is insufficient to create a standalone cause of action. Plaintiff's allegations are insufficient to establish this Court's jurisdiction under § 1331 because they do not—and cannot—establish the existence of a claim for relief that arises under federal law.

### 1. The Internal Affairs Doctrine Is a Conflict of Law Principle and Does Not Create a Legal Right Enforceable in the Abstract

In *Edgar v. MITE Corp.*, the U.S. Supreme Court described the internal affairs doctrine in the context of an alleged Commerce Clause violation as a conflict of laws principle:

> The internal affairs doctrine is a *conflict of laws* principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.

457 U.S. 624, 645 (1982) (citing Restatement (Second) of Conflict of L. § 302, cmt. b (Am. L. Inst. 1971) (emphasis added)). Conflict of laws rules, like the internal affairs doctrine, "*do not themselves determine the rights and liabilities of the parties*, but rather guide decision as to which local law rule will be applied to

12

determine these rights and duties." Restatement (Second) of Conflict of L. § 2, cmt. a (1971) [hereinafter Restatement] (emphasis added).

The Restatement's treatment of the internal affairs doctrine makes clear that the doctrine's application depends on the "particular issue" under consideration:

> (1) Issues involving the rights and liabilities of a corporation . . . are determined by the local law of the state which, *with respect to the particular issue*, has the most significant relationship to the occurrence and the parties . . . .
>
> (2) The local law of the state of incorporation will be applied to determine such issues, *except in the unusual case where, with respect to a particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.*

Restatement § 302 (emphasis added). The Restatement supplies three factors guiding whether a state has an "overriding interest" in application of its law to corporations incorporated elsewhere: (1) the nature and extent of the corporation's relationship to the state of incorporation, (2) the nature and extent of the corporation's relationship to the state whose local law is sought to be applied, and (3) whether the act is of the sort that cannot practicably be governed by the local law of more than one state. *Id.* at cmt. g. This inquiry is necessarily confined to determining choice of law regarding a particular transaction or dispute, rather than creating a right against application of a particular state's laws to foreign corporations in general.

For example, the Ninth Circuit has applied the internal affairs doctrine to determine the law or regulation that applies to shareholder derivative actions. *See Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998) (under internal affairs doctrine, Japanese law rather than federal or California law governed plaintiff's standing to bring shareholder derivative suit against company incorporated in Japan); *Gaynor v. Buckley*, 318 F.2d 432, 434 (9th Cir. 1963) (Georgia state law, rather than a conflicting New York Stock Exchange rule, applied to stockholder derivative action to cancel certain stock options); *see also Freedman v. magicJack*

13

*Vocaltec Ltd*., 963 F.3d 1125, 1133 (11th Cir. 2020) (Israeli rather than Florida law applied to determine whether putative class action was direct or derivative); *Mansfield Hardwood Lumber Co. v. Johnson*, 268 F.2d 317, 321 (5th Cir. 1959) (declining to apply laws of state of incorporation to action by former minority stockholders against corporation for rescission of sale of minority stock to corporation where contact with state of incorporation was minimal). Nothing about the internal affairs doctrine suggests that this conflict of laws principle can be invoked as a stand-alone claim to strike down California's corporate board diversity statutes as proposed by Plaintiff.

### 2. The Court Does Not Have Subject Matter Jurisdiction over Plaintiff's Internal Affairs Doctrine Claim

Section 1331 vests federal district courts with "original jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law within the meaning of § 1331 "if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983) (alterations omitted)). Here, Plaintiff's allegation that "[t]he Supreme Court has held that the internal affairs doctrine is mandated by constitutional principles," Compl. ¶ 61, is insufficient to establish federal question jurisdiction.

In *CTS Corp. v. Dynamics Corp. of America*, the Supreme Court upheld an Indiana statute against a Commerce Clause challenge. 481 U.S. 69, 94 (1987). In holding that Indiana's law did not hinder interstate commerce, the Court noted: "[e]very State in this country has enacted laws regulating corporate governance. By prohibiting certain transactions and regulating others, such laws necessarily affect

certain aspects of interstate commerce." *Id.* at 89-90. It also explained that "national and international participation in ownership of corporations" is "traditionally [governed by] the corporate law of the State of its incorporation." *Id.* at 90. However, the Supreme Court has not held in *CTS Corp.* or elsewhere that the internal affairs doctrine is constitutionally mandated or that it gives rise to a cause of action through which individuals, corporations, or states may seek to invalidate state laws on their face.

While the Supreme Court's cases can be cited for the proposition that interstate commerce may be affected by different states' regulation of corporate affairs and actions, this truism does not create a federal cause of action. "The most one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 117 (1936) (federal statutory basis for tax did not provide district court with jurisdiction under § 1331 to review claim for damages that included tax liabilities); *see also Empire Healthchoice Assurance*, 547 U.S. at 701 ("[I]t takes more than a federal element 'to open the "arising under" door.'" (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005))). "Nothing in the Constitution ensures unlimited extraterritorial recognition of all statutes or of any statute under all circumstances." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941).

Because there is no federal cause of action for Plaintiff's internal affairs doctrine claim, it should be dismissed for lack of subject matter jurisdiction.

### B.  Plaintiff Has Failed to Allege any Conflict of Laws to Which the Internal Affairs Doctrine Could Apply

As explained in Section II.A.1, above, applying the internal affairs doctrine is a fact-intensive endeavor. Even assuming the doctrine constituted a "federal law" from which Plaintiff's fourth Count arises—it does not—Plaintiff has not identified

15

1   the corporations in which Plaintiff's members own shares or their states of

2   incorporation. *See generally* Compl. Plaintiff's failure to specify any state law that

3   would apply in the absence of California's laws makes it impossible to determine

4   whether a conflict exists, much less the impact of such a conflict on the vitality of

5   California's statute. "Application of the local law rule of a state to determine a

6   particular issue can hardly be contrary to the interests of other states having an

7   identical rule." Restatement § 302, cmt. g.

8       The Complaint also fails to allege necessary facts regarding the companies in

9   which Plaintiff's members hold shares—such as their relationships to California

10  and their states of incorporation—for application of the internal affairs doctrine. *See*

11  *id.* ("Application of the local law of a state other than the state of incorporation can

12  most easily be justified in situations where the corporation does all, or nearly all, of

13  its business in that state and most of the corporation's shareholders are domiciled

14  there.").[8] Like its equal protection claims, Plaintiff's facial challenge under the

15  internal affairs doctrine must fail. *See supra* Argument, Section I. Plaintiff's failure

16  to allege facts sufficient to state a plausible claim for relief warrants dismissal of

17  Count Four. *Caltex Plastics, Inc.*, 824 F.3d at 1159.

18  **C.  Plaintiff Does Not Have Standing to Assert Unnamed**
19      **Corporations' Interests Under the Internal Affairs Doctrine**

20      In addition to having alleged a claim without a cognizable theory or sufficient

21  facts to support a plausible application of the theory, Plaintiff lacks standing to

22  invoke the internal affairs doctrine against SB 826 and AB 979. Plaintiff's standing

23  depends on that of its members. *See Hunt v. Wash. State Apple Advert. Comm'n*,

24  432 U.S. 333 (1977) (association has standing to bring suit on behalf of its

25  _____

26  [8] The internal affairs doctrine also does not apply to California's corporate board diversity statutes because the statutes are "explicitly applicable local statute[s] to the contrary" of the doctrine. Restatement § 302, cmt. e; *see* Cal.

27  Corps. Code §§ 2115.5 and 2115.6 (explicitly applying requirements to foreign corporations "to the exclusion of the law of the jurisdiction in which the foreign

28  corporation is incorporated").

members where, *inter alia*, members would have standing to sue in their own right). But the internal affairs doctrine is intended to protect *corporations*—not shareholders or aspiring corporate directors—from inconsistent regulation of their internal affairs. Because Plaintiff's members do not have standing to invoke the internal affairs doctrine on behalf of unnamed corporations that are not parties to this case, Count Four of the Complaint should be dismissed.

### 1. The Allegations of the Complaint Do Not Support Plaintiff's Shareholder Members' Standing to Bring a Derivative or Direct Action

Under certain circumstances, shareholders can bring derivative suits on behalf of corporations. *See* Fed. R. Civ. P. 23.1 (setting forth pleading requirements for shareholder derivative actions). Under other limited circumstances, shareholders can bring individual suits to prosecute their own rights. *See Meland v. Weber*, 2 F.4th 838, 848 (9th Cir. 2021) (under Delaware law, plaintiff who claimed injury not dependent on an injury to the corporation had standing to pursue direct action). As a threshold matter, Plaintiff's Complaint does not provide sufficient facts regarding the corporations in which its members hold shares to determine whether their claims should be considered direct or derivative, as such questions must be determined by reference to state law. *Id.* (courts apply state law to determine whether a shareholder claim can be brought as a direct, rather than derivative, action (citing *Lapidus v. Hecht*, 232 F. 3d 679, 682 (9th Cir. 2000))). Regardless, Plaintiff has failed to allege facts to support either kind of shareholder action: it has not alleged any basis for a derivative suit or sufficient facts to state an injury to its shareholder members' voting rights.

"Generally, a shareholder does not have standing to redress an injury to the corporation in which it owns stock." *EMI Ltd. v. Bennett*, 738 F.2d 994, 997 (9th Cir. 1984). Federal Rule of Civil Procedure 23.1 constrains shareholder derivative actions in federal court to actions "to enforce a right that the corporation or association may properly but has failed to enforce," where it appears that the

17

plaintiff "fairly and accurately represent[s] the interests of the shareholders." Fed. R. Civ. P. 23.1(a). A shareholder complaint must be verified and allege, *inter alia*, "any effort made by plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders and members" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b); *see also Glenbrook Cap. Ltd. P'ship v. Kuo*, 525 F. Supp. 2d 1130, 1146 (N.D. Cal. 2007) (dismissing shareholder claim against CEO of company for alleged breach of duty owed to corporation based on failure to verify complaint). Plaintiff has neither verified its complaint nor included any of the required allegations here, where its shareholder members seek to enforce a doctrine intended to protect *corporations* from inconsistent regulation of their internal affairs. *See* Restatement § 302(1) (internal affairs doctrine addresses choice of law for "[i]ssues involving the rights and liabilities of a corporation").

Nor does Plaintiff—through its shareholder members—have standing to bring a direct action under the internal affairs doctrine. Plaintiff's alleged harm—that SB 826 and AB 979 require shareholders to consider race and gender classifications in voting for directors—has been recognized by the Ninth Circuit as providing a basis for a direct (rather than derivative) shareholder action in the context of an equal protection claim. *See* Compl. ¶¶ 24, 25; *Meland*, 2 F.4th at 848 ("[B]ecause Meland rests his right to relief on an injury to himself rather than [the corporation], his claim is direct rather than derivative, and there are no prudential standing concerns under federal or state law."). Unlike Plaintiff's equal protection claims, Plaintiff's challenge under the internal affairs doctrine rests on a claimed injury to corporations that allegedly also impacts Plaintiff's members' voting rights.[9] However, even if a direct shareholder action were permissible under applicable

---

[9] Notably, the Complaint does not allege any harm to shareholders specific to Plaintiff's internal affairs doctrine claim.

1 | state law, which it is not, Plaintiff's allegations of harm to its members' voting
2 | rights are insufficient to confer standing.[10]

3 | The U.S. Supreme Court recently held that only members of a plaintiff class
4 | with individual concrete injuries had standing to challenge unlawful practices.
5 | *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). In *TransUnion*, the defendant
6 | credit reporting agency maintained misleading alerts in the files of all members of
7 | the plaintiff class in violation of applicable law, but the Court held that only those
8 | class members whose misleading alerts were shared with third parties had concrete
9 | injuries required for standing to sue. *Id.* at 2209-13. Based on the holding of
10 | *TransUnion*, Plaintiff's allegation that its shareholder members "must participate in
11 | and perpetuate sex-based discrimination," under "the threat of fines imposed upon
12 | the corporation," is not sufficient to establish standing. Compl. ¶ 24. Plaintiff has
13 | no concrete injury in fact because, as explained below, Plaintiff's shareholder
14 | members can vote their consciences without impacting the outcomes of elections.

15 | Individual shareholder votes have very little chance of affecting the
16 | composition of a corporation's board because corporate board elections are rarely
17 | contested and slates of directors nominated by existing board members are routinely
18 | approved by a plurality or majority of shareholders. *See* Declaration of Andrew
19 | Jennings (Jennings Decl.) ¶¶ 31, 35. In corporations that use the traditional plurality
20 | method of voting, in an uncontested election, a single vote—easily supplied by the
21 | existing board members' votes—is sufficient to elect a director. *Id.* ¶ 23, 30. In
22 | addition, the nation's largest institutional investors, which support diversity on
23 | boards, hold a substantial percentage of the shares at most public companies. *Id.*
24 | ¶ 29. As a result, every shareholder member of Plaintiff's organization may vote his
25 | or her conscience—whether to vote in favor of the proposed slate, to withhold a

26 | [10] The Secretary of State reserves argument to challenge Plaintiff's standing
27 | to bring its equal protection challenges and to seek particular remedies, including but not limited to following appropriate discovery and in the event Plaintiff is able
28 | to amend the Complaint to allege as-applied equal protection claims. Fed. Rule Civ. P. 12(b)(1), (h)(3).

Defendant Secretary of State's Motion to Dismiss Complaint
Case No. 2:21-cv-05644-RGK (RAOx)

1   vote, or to decline to provide director election voting instructions on his or her

2   proxy card. *Id.* ¶ 35. Given the reality of corporate board elections in which it is

3   typically a mathematical impossibility for individual shareholders to have

4   influence, Plaintiff's allegations are insufficient to establish an injury to its

5   individual shareholder members' voting rights.

6         **2.    Aspiring Directors Cannot Assert a Claim that Belongs to
                   the Corporation**

7

8         Plaintiff's aspiring or terminated corporate board directors can claim no injury

9   related to the internal affairs doctrine, which protects only "relationships among or

10  between the corporation and its *current* officers, directors, and shareholders." *See*

11  *Atherton v. FDIC*, 519 U.S. 213, 224 (1997) (quoting *Edgar*, 457 U.S. at 645

12  (1982)). Non-directors simply have no stake in which state's laws govern the

13  internal affairs of particular corporations. Even if the internal affairs doctrine

14  created a cause of action (it does not), that cause of action would not belong to non-

15  directors, who are outside the "zone of interest" of the doctrine. *See Lexmark Int'l,*

16  *Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (noting that a

17  "cause of action extends only to plaintiffs whose interests fall within the zone of

18  interests protected by the law invoked") (internal quotation marks and citation

19  omitted). Thus, Plaintiff's potential or former director members, like its shareholder

20  members, have neither standing nor a cause of action to invoke the internal affairs

21  doctrine to attack SB 826 or AB 979.

22                          **CONCLUSION**

23        For the foregoing reasons, the California Secretary of State respectfully

24  requests that the Court dismiss Plaintiff's Complaint in its entirety.

25

26

27

28

Defendant Secretary of State's Motion to Dismiss Complaint
Case No. 2:21-cv-05644-RGK (RAOx)

1    Dated:  October 4, 2021                        Respectfully submitted,

2                                                   ROB BONTA
                                                    Attorney General of California
3                                                   MICHAEL L. NEWMAN
                                                    Senior Assistant Attorney General
4                                                   LAURA L. FAER
                                                    VILMA PALMA-SOLANA
5                                                   Supervising Deputy Attorneys General
                                                    SOPHIA CARRILLO
6                                                   HEIDI JOYA
                                                    KANWALROOP KAUR SINGH
7                                                   Deputy Attorneys General

8

9                                                       /s/ Julia Harumi Mass
                                                    JULIA HARUMI MASS
10                                                  Deputy Attorney General
                                                    *Attorneys for California Secretary of*
11                                                  *State*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21