BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 2530
Sacramento, CA 95814
Telephone: (916) 447-4900
Facsimile: (916) 447-4904
brad@benbrooklawgroup.com

BROWN WEGNER LLP
WILLIAM J. BROWN, JR. (SBN 192950)
bill@brownwegner.com
2010 Main Street, Suite 1260
Irvine, California 92614
Telephone: 949.705.0080

BOYDEN GRAY & ASSOCIATES PLLC
C. BOYDEN GRAY, Admitted Pro Hac Vice
JONATHAN BERRY, Admitted Pro Hac Vice
MICHAEL BUSCHBACHER, Admitted Pro Hac Vice
JORDAN E. SMITH (SBN 317294)
801 17th Street NW, Suite 350
Washington, DC 20006
Telephone: (202) 955-0620
berry@boydengrayassociates.com
Attorneys for Plaintiff,
ALLIANCE FOR FAIR BOARD RECRUITMENT

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALLIANCE FOR FAIR BOARD RECRUITMENT, <br><br> Plaintiff, <br> v. <br><br> SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California, <br><br> Defendant. | Case No. 2:21-cv-05644-RGK-RAO <br><br> **PLAINTIFF ALLIANCE FOR FAIR BOARD RECRUITMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> Hearing Date:  November 1, 2021 <br> Time:  9:00 a.m. <br> Courtroom:  Courtroom 850, 8th Floor <br> Judge:  R. Gary Klausner <br> Trial Date:  None set <br> Complaint Filed:  July 12, 2021 |

1

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

  I.  Legislative Background ...................................................................2

      A. SB826: The Woman Quota ......................................................3

      B. AB979: The Minority Quota ...................................................4

      C. California's Recognition of Constitutional Infirmities ........................5

  II. Procedural Background ...................................................................5

LEGAL STANDARD .............................................................................5

ARGUMENT .......................................................................................6

  I.  SB826 and AB979 Encourage Discrimination on the Basis of Sex and Race
     in Violation of the Fourteenth Amendment and 42 U.S.C. § 1981 ...........6

      A. California Misstates the Pleading Standard...........................6

      B. The Fourteenth Amendment Requires Equal Treatment....................7

  II. Plaintiff's Internal Affairs Doctrine Claim is Properly Before the Court .....11

      A. Plaintiff Has a Federal Cause of Action Under 42 U.S.C. § 1983......11

      B. Plaintiff Has Plausibly Pleaded a Violation of the Internal Affairs
         Doctrine ..............................................................................17

      C. Plaintiff Has Associational Standing to Challenge SB826 and AB979
         Under the Internal Affairs Doctrine .................................................17

CONCLUSION ....................................................................................20

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

1

## <u>TABLE OF AUTHORITIES</u>

2

CASES

3    *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200 (1995) ...........................1, 8, 9

4    *Agostini v. Felton*, 521 U.S. 203, 237 (1997).....................................................13

5    *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................5

6    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................5

7    *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869 (9th Cir. 1995).......1, 8, 9

8    *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954) ......................................................10

9    *Citizens United v. FEC*, 558 U.S. 310 (2010) ......................................................6

10    *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69 (1987)................2, 12, 16, 17

11    *Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ......................................................12

12    *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ...............................13

13    *Fisher v. Huck*, 50 Or. App. 635 (1981) .............................................................15

14    *Flores v. City of Westminster*, 873 F.3d 739 (9th Cir. 2017) .............................19

15    *Heine v. Streamline Foods Inc.*, 805 F. Supp. 2d 383 (N.D. Ohio 2011) ...........13

16    *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977).............6

17    *In re Chalk Line Mfg., Inc.*, 1994 WL 394978 (Bankr. N.D. Ala. July 26, 1994)..................................................................................................................13

18    *In re PETCO Animal Supplies, Inc. S'holder Litig.*, 2008 WL 11508672 (S.D. Cal. Feb. 15, 2008) ................................................................................13, 17

19    *In re Skyport Glob. Commc'ns, Inc.*, No. 08-36737, 2011 WL 111427 (Bankr. S.D. Tex. Jan. 13, 2011) ................................................................................13

20    *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).......................6

21    *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..............................................6, 20

22    *McDermott Inc. v. Lewis*, 531 A.2d 206 (Del. 1987) ...................2, 12, 13, 15, 16

23    *Meland v. Weber*, 2 F.4th 838 (9th Cir. 2021)...........................................6, 9, 10

24    *Monterey Mech. Co. v. Wilson*, 199 F.3d 206 (9th Cir. 1997) ..........1, 8, 9, 10, 11

25    *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jackson-ville, Fla.*, 508 U.S. 656 (1993) ....................................................................1, 7

26    *Openwave Sys. Inc. v. Harbinger Cap. Partners Master Fund I, Ltd.*, 924 A.2d 228 (Del. Ch. 2007) ...........................................................................18

27

28

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

*Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586 (1947) ................................................................................. 13

*Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978) ....................... 8

*Rocket Acquisition Corp. v. Ventana Med. Sys., Inc.*, 2007 WL 2422082 (D. Ariz. Aug. 22, 2007) ...................................................... 12

*Salzberg v. Sciabacucchi*, 227 A.3d 102 (Del. 2020) ........................... 13

*Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411 (9th Cir. 2020) ..................................................... 18

*St. Clair v. City of Chico*, 880 F.2d 199 (9th Cir. 1989) ..................... 18

*TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022 (W.D. Okla. 1987) ................................................................ 12, 14, 17

*VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108 (Del. 2005) ........................................................ 2, 12, 13, 16

*Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163 (9th Cir. 2013) ......................... 6

**STATUTES AND CONSTITUTIONAL PROVISIONS**

28 U.S.C. § 1331 ................................................................. 17

28 U.S.C. § 1343 ................................................................. 17

42 U.S.C. § 1981 ......................................................... 6, 11, 17, 19

42 U.S.C. § 1983 ......................................................... 11, 14, 17

Cal. Corp. Code §§ 2115.5 ......................................................... 2, 3

Cal. Corp. Code §§ 2115.6 ......................................................... 2, 4

Cal. Corp. Code §§ 301.3 ............................................................. 3

Cal. Corp. Code §§ 301.4 ............................................................. 4

Del. Code Ann. tit. 19, § 711 ..................................................... 18

Del. Const. Art. I, sec. 21 ....................................................... 18

Fed. R. Civ. P. 12 ............................................................. 5, 6, 18

**LEGISLATIVE MATERIALS**

AB979 Senate Floor Analysis (2020) ................................................ 5

SB826 Assembly Floor Analysis (2018) .......................................... 5, 16

Senate Committee on Banking and Financial Institutions Report on AB979 (2020) ...................................................................... 5

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

1

## OTHER AUTHORITIES

Stephen Bainbridge, *Can California Require Delaware Corporations to Comply with California's New Board of Director Gender Diversity Mandate? No.*, ProfessorBainbridge.com (Sept. 1, 2018)...............................................17

Joseph A. Grundfest, *Mandating Gender Diversity in the Corporate Boardroom: The Inevitable Failure of California's SB 826* (Stanford Law Sch. & The Rock Ctr. for Corp. Governance, Working Paper No. 232, 2018) ......................................................................................13, 14, 17

Friedrich K. Juenger, *A Third Conflicts Restatement?*, 75 Ind. L.J. 403 (2000).....................................................................................................15

Stanley A. Kaplan, Foreign Corporations and Local Corporate Policy, 21 Vand. L. Rev. 464 ...........................................................................................15

P. John Kozyris, *Corporate Wars and Choice of Law*, 1985 Duke L.J. 1 (1985).....................................................................................................15

Restatement of the Conflicts of Laws §§ 152–161, 163, 182–185, 187 (1934)......................................................................................................15

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

1

## **INTRODUCTION**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

The Fourteenth Amendment prohibits any state from denying those "within its jurisdiction the equal protection of the laws." The "protection" afforded by "the laws" covers both outcomes and processes. Consistent with this, an unbroken line of Supreme Court and Ninth Circuit cases have held that a state violates the Constitution whenever it sets up processes that "prevent[] the plaintiff from competing on an equal footing" because of the plaintiff's race or sex, regardless of the ultimate outcome. *See Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 211 (1995); *Monterey Mech. Co. v. Wilson*, 199 F.3d 206, 215 (9th Cir. 1997). This is because the "'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993). Accordingly, "the relevant question is not whether a statute *requires* the use of [race- or sex-based] measures, but whether it *authorizes or encourages* them." *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 875 (9th Cir. 1995) (emphases added). If so, it is unconstitutional unless the state can satisfy the relevant standard of heightened scrutiny.

17
18
19
20
21
22
23
24
25
26

Defendant California Secretary of State Shirley Weber's ("California") motion says nothing about these cases. Instead, it posits various hypotheticals in which it claims a corporation could comply with SB826 and AB979 without taking sex or race into account, arguing that the existence of these allegedly "neutral" ploys means that this Court can entertain only an "as-applied" challenge. California completely misses the point. The explicit and undisputed design of these laws is to "authorize[]" and "encourage" race and sex discrimination in board hiring. And, because everyone within the grasp of SB826 and AB979 is thus forced to compete on an uneven playing field, the laws are unconstitutional in all applications. The Court should reject California's makeweight arguments for dismissing Plaintiff's Equal Protection challenges to these laws.

27
28

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

California's arguments about the internal affairs doctrine fare no better. Companies incorporated outside of California but headquartered in California are now subject to conflicting laws about the legal requirements for board composition. California argues that it can override the laws of those other states, even though "[n]o principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations" formed under its laws. *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987). Contrary to California's brief, "[t]he internal affairs doctrine is not . . . *only* a conflicts of law principle." *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 (Del. 2005) (emphasis added). Rather, as the Supreme Court and many state and federal courts have recognized, it also flows from enforceable constitutional principles. *See, e.g.*, *id.*; *CTS Corp.*, 481 U.S. at 89; *McDermott Inc. v. Lewis*, 531 A.2d 206, 216 (Del. 1987). One of those principles is the Fourteenth Amendment's Due Process clause, which "requires that directors, officers and shareholders be given adequate notice of the jurisdiction whose laws will ultimately govern the corporation's internal affairs." *McDermott*, 531 A.2d at 218.

Plaintiff's members include persons who own stock in companies headquartered in California but incorporated in other states. Because both SB826 and AB979 expressly purport to apply "to the exclusion" of the laws of the state where a California-headquartered public company is incorporated, Cal. Corp. Code §§ 2115.5(a), 2115.6(a), they deprive these members of their Due Process right to know in advance which laws will apply to these corporations' internal affairs. Plaintiff has every right to seek to vindicate these violations of its members' individual constitutional rights.

Plaintiff respectfully requests that this Court deny California's motion to dismiss.

## **BACKGROUND**

### I.          **Legislative Background**

In 2018 and 2020, California enacted two laws—SB826 and AB979—directing all publicly traded corporations headquartered in California, as well as the shareholders

2

of those corporations, to discriminate based on sex and race in selecting their board members. By design, these laws openly establish an unequal playing field that favors women over men and certain racial and ethnic groups over others.

## A.      SB826: The Woman Quota

Then-Governor Jerry Brown signed SB826 into law on September 30, 2018. SB826 added California Corporations Code §§ 301.3 and 2115.5, which require that, by December 31, 2021, public corporations headquartered in California must have a minimum number of female directors, depending on how many seats the board has. A corporation with six or more directors must have at least three female directors, a corporation with five directors must have at least two female directors, and a corporation with four or fewer directors must have at least one female director. Cal. Corp. Code § 301.3(b). The Woman Quota has no temporal limitation, expiration date, or sunset provision. Its aim is to achieve a rough demographic balancing. Complaint ¶ 31 [ECF No. 1].

The Woman Quota applies to publicly held corporations with principal offices located in California, regardless of where the company is incorporated and regardless of the laws of the state of incorporation. Cal. Corp. Code §§ 301.3(b), 2115.5.

A corporation that fails to comply with the Woman Quota is subject to significant penalties: a single violation carries a $100,000 fine, and a second violation carries a $300,000 fine. Each director seat required to be held by a woman, but which is not held by a woman for at least a portion of the calendar year, is considered a separate violation. Cal. Corp. Code § 301.3(e).

To justify its Woman Quota, the California legislature did not claim that California companies are illegally discriminating against female director candidates. Nor did it suggest that the quota is necessary to remedy specific, past instances of discrimination by any company, let alone by California itself. Instead, the legislative record includes vague discussions of discrimination and disparities as well a handful of reports from investment firms, consultancies, and advocacy groups that claim that female directors may improve

3

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

a corporation's financial performance or governance. Compl. ¶ 34. The sources on which the California legislature relied are not credible. Compl. ¶¶ 35-37.

### B.     AB979: The Minority Quota

Governor Gavin Newsom signed AB979 into law on September 30, 2020. AB979 adds California Corporations Code §§ 301.4 and 2115.6, which require that, by December 31, 2022, in addition to the specified number of female directors, public corporations headquartered in California must also have a minimum number of directors from "underrepresented communities." Cal. Corp. Code § 301.4(b). A director qualifies as being from an "underrepresented community" if the director "self-identifies as Black, African American, Hispanic, Latino, Asian, Pacific Islander, Native American, Native Hawaiian, [] Alaska Native, . . . gay, lesbian, bisexual, or transgender." *Id*. § 301.4 (e)(1).

Like SB826, the number of directors from an "underrepresented community" required by AB979 depends on the size of the corporation's board: a corporation with nine or more directors must have at least three directors from underrepresented communities, a corporation with five to eight directors must have at least two directors from underrepresented communities, and a corporation with four or fewer directors must have at least one director from an underrepresented community. Cal. Corp. Code § 301.4(b). The Minority Quota has no temporal limitation, expiration date, or sunset provision. The Minority Quota is designed to achieve a rough racial balancing. Compl. ¶ 40.

Also like SB826, AB979 applies to publicly held corporations with principal offices located in California, regardless of where the company is incorporated and regardless of the laws of the state of incorporation. Cal. Corp. Code §§ 301.4(b), 2115.6. AB979 also carries similarly stiff fines for failures to comply: $100,000 for a single violation and $300,000 for a subsequent violation. Cal. Corp. Code § 301.4(d).

The legislature did not provide any evidence that racial diversity on corporate boards improves firm performance or governance, likely because academic studies have failed to establish that link. Compl. ¶¶ 42-43.

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

### C.   California's Recognition of Constitutional Infirmities

The California Assembly Floor Analysis of SB826 observed that the Woman Quota "creates an express gender classification, which subjects the proposed law to heightened scrutiny under the equal protection clause of the 14th Amendment," and the "use of a quota-like system . . . may be difficult to defend." SB826 Assembly Floor Analysis 4 (2018). The Assembly Floor Analysis further notes that, in attempting to influence the governance of out-of-state corporations, the "bill may [also] conflict with the internal affairs doctrine . . . 'which recognizes that only one State should have the authority to regulate a corporation's internal affairs[.]'" *Id*. The California Senate Floor Analysis of AB979 expresses similar concerns for the "underrepresented community" director quota. AB979 Senate Floor Analysis 6–7 (2020); *see also* Senate Committee on Banking and Financial Institutions Report on AB 979, 5–7 (2020).

## II.   Procedural Background

On July 12, 2021, Plaintiff Alliance for Fair Board Recruitment filed the operative complaint. Compl. [ECF No. 1]. Plaintiff is a non-profit membership association that seeks to defend the civil rights of director candidates and shareholders. *Id.* ¶ 16. Plaintiff's members include persons who are seeking employment as corporate directors as well as shareholders of various publicly traded companies headquartered in California and therefore subject to SB826 and AB979. *Id.*

On October 4, 2021, California moved to dismiss the complaint in its entirety. *See* Motion to Dismiss [ECF No. 4].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "accept[s] as true all well pleaded facts

1
2
in the complaint and construe[s] them in the light most favorable to the nonmoving party." *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013).

3
4
5
6
7
8
9
10
11
12
13
California's contentions that this Court lacks subject matter jurisdiction (Def. Mot. at 11-20) fall under Rule 12(b)(1). The burden of demonstrating subject matter jurisdiction rests on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To demonstrate standing in response to a Rule 12(b)(1) motion to dismiss, the plaintiff must establish that it has suffered or will imminently suffer an "injury in fact" that is fairly traceable to the Defendant's conduct and can be redressed at least in some part by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). When the plaintiff is an association, it can satisfy this requirement by demonstrating that one or more of its members has fulfilled the standing requirements such that the member would have standing to sue in his own right. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977).

## ARGUMENT

14

15
16
**I.   SB826 and AB979 Encourage Discrimination on the Basis of Sex and Race in Violation of the Fourteenth Amendment and 42 U.S.C. § 1981.**

17
**A. California Misstates the Pleading Standard.**

18
19
20
21
22
23
24
25
California argues that Plaintiff has not plausibly alleged facial challenges to SB826 or AB979, and therefore the Court must dismiss the Equal Protection challenges. But the Supreme Court has rejected California's premise that Plaintiff has some special pleading burden to support a facial challenge. "[T]he distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). At this point, Plaintiff need only plausibly allege that SB826 and AB979 are unconstitutional, which it has certainly done. *See Meland v. Weber*, 2 F.4th 838, 842-45 (9th Cir. 2021).

26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B.  The Fourteenth Amendment Requires Equal Treatment.

In any event, SB826 and AB979 *are* facially unconstitutional. Everyone competing for a board position with a public company headquartered in California faces an uneven playing field under these laws, and that unfair process alone violates the Fourteenth Amendment.

California says nothing about this injury, instead positing hypotheticals in which a company could "comply" with these laws by changing its board size, or by running dozens of rounds of hiring until an "optimally" race- and sex-balanced board is created, or (in the case of AB979) by discriminating on the basis of sexual orientation instead of race. Def. MTD Memo. at 8–10. California does not cite a single case where a court has accepted such hypotheticals as a basis for dismissing an Equal Protection challenge to a policy encouraging race or sex discrimination.

Nor could it, as California's line of argumentation has been conclusively rejected by half a dozen Supreme Court and Ninth Circuit decisions holding that laws are unconstitutional when they *authorize or encourage* unjustified race- and sex-conscious decisions, *regardless* of whether any person was actually discriminated against in the final outcome.

The seminal Supreme Court case is *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida*, 508 U.S. 656 (1993), where the city of Jacksonville had enacted an ordinance earmarking 10% of the city's contract dollars for minority-owned businesses, but the city was not required to meet that 10% requirement. *Id.* at 658–59. The city argued that there was no Fourteenth Amendment violation because the ordinance did not necessarily cause the plaintiff to lose out on any contract. *Id.* at 664. The Supreme Court rejected that theory: "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for

the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* at 666; *see also Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 211 (1995) (holding that a barrier that favors one race over another "prevents the plaintiff from competing on an equal footing" and that unfair process alone is a Fourteenth Amendment violation); *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 281 n.14 (1978) (identifying "an injury, apart from failure to be admitted, in the University's decision not to permit Bakke to compete for all 100 places in the class, simply because of his race").

The Ninth Circuit has repeatedly held likewise. In *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869 (9th Cir. 1995), the Court considered a California law providing for "goals" and "methods for encouraging" minority and women contractors but expressly abjuring the term "quotas." *Id.* at 874–75. The Court held that "plaintiffs alleging equal protection violations need not demonstrate that rigid quotas make it impossible for them to compete for any given benefit. Rather, they need only show that they are forced to compete on an unequal basis." *Id.* at 873. Thus, "the relevant question is not whether a statute *requires* the use of such measures, but whether it *authorizes or encourages* them." *Id.* at 875 (emphases added). Anyone facing this process has therefore been injured in violation of the Fourteenth Amendment. *Id.*

California tried the same argument again—and lost again—in *Monterey Mechanical Co. v. Wilson*, 125 F.3d 702, 707–08 (9th Cir. 1997), which involved a California statute requiring contractors to subcontract at least 23% of their work to women- or minority-owned subcontractors *or* demonstrate a good faith effort to do so. *Id.* at 710–11. The State argued that the law "do[es] not impose rigid quotas" because "a bidder may satisfy the goals without being in one of the designated classes, and without subcontracting 23% of the work to businesses in the designated classes, so long as it shows good faith." *Id.* at 710. The Ninth Circuit categorically rejected that argument. The "question

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

whether a non-rigid system of goals and good faith efforts, as opposed to rigid quotas, is treated as a classification under the Equal Protection Clause, is settled by existing precedent," citing *Bras*. *Id.* It was thus irrelevant that the "statute does not require set-asides," because it still "encourages them," *id.* at 711, which was enough to violate the Fourteenth Amendment, which prohibits any law where "the government requires or encourages" discrimination "against others based on their race or sex." *Id.* at 707.[1]

There can be no doubt that SB826 and AB979, at the very least, "authorize[] or encourage[]" choices to be made "against others based on their race or sex," 59 F.3d at 875; 125 F.3d at 707, and thereby prevent *all* covered persons "from competing on an equal footing" for positions because of their race and sex, *Adarand*, 515 U.S. at 211. Indeed, that is the publicly stated and universally acknowledged purpose of the laws, as confirmed by their clear text: to favor the hiring of certain people based on protected categories. Defendant readily admits that the laws aim to "increase" the number of women on boards, "increase" the number of racial minorities on boards, and encourage companies to "create space for women and members of underrepresented groups." Def. MTD Memo. at 2, 3, 4.

Accordingly, under the precedent above, it is irrelevant whether SB826 or AB979 "require" discrimination in any (or every) given instance, or whether they act as a "rigid numerical or proportional quota." Def. MTD Memo. at 10; *Bras*, 59 F.3d at 875.[2] It is also irrelevant "whether the persons required to discriminate would have acted the same way regardless of the law," or whether the victim would have received the benefit regardless of the law. *Id.* at 708. The illegality remains even if some companies could devise workarounds to avoid aspects of these quotas, as California suggests. This also

---

[1] California fails to acknowledge these cases—but it is aware of at least *Monterey*, as it has repeatedly acknowledged it in the *Meland* litigation. Def. Memo. in Opposition at 14 n.5, 22, *Meland v. Weber*, No. 2:19-cv-2288 (E.D. Cal. Sept. 28, 2021), ECF No. 32.

[2] Of course, both laws *do* impose "rigid numerical or proportional quota[s]," as they set various minimum numbers of women and minorities based on board size.

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

confirms why it is no defense that AB979 combines two distinct groups—racial minorities and LGBT: *Monterey* itself invalidated a California law that combined two such groups (race and sex), because the law still encouraged discrimination on the basis of a protected category, even if it did not mandate it. 125 F.3d at 710–11.

The Ninth Circuit held as much in *Meland v. Weber*, 2 F.4th 838 (9th Cir. 2021), where the Court yet again confirmed—in the context of SB826—that "a person required *or encouraged* to discriminate on the basis of a protected class . . . has suffered a direct personal injury" under the Fourteenth Amendment, and the plaintiff in that case had plausibly alleged a constitutional injury on the basis that SB826 "requires or encourages [shareholders] to discriminate on the basis of sex." *Id.* at 842, 844–45 (emphasis added). In other words: every person subject to these laws can allege a Fourteenth Amendment violation because of the existence of California's illegal "encouragement."

If adopted, California's theory of Equal Protection would give the green light to pernicious absurdities simply because the state could conjure hypotheticals where race or sex would not be dispositive. Under California's view, this Court would be obligated to dismiss facial challenges to the following laws:

- A law mandating racial segregation in schools, because not every school would necessarily have to discriminate under the law, given that there *may* be some schools where the students would all be the same race even absent the segregation law. Def. MTD Memo. at 9. *But see Brown v. Bd. of Educ.*, 347 U.S. 483, 492 (1954).

- A law requiring every corporate board to have at least 475 white men on it, because (says California) the companies could simply expand their board size above this number. Def. MTD Memo. at 9–10.

- A law mandating that companies conduct seriatim rounds of "race- and gender-blind" hiring until the result yields a board comprised of the desired

"goal" of 95% white men, because (says California) this process is entirely race- and sex-neutral. *Id.* at 10.

- A law requiring every company's board to consist exclusively of "white men *or* people born in El Segundo," because (says California) the companies could avoid race and just "appoint[] only" Segundoans instead. *Id.* at 9.

Taken to its logical conclusion, California's view would prohibit virtually every Fourteenth Amendment facial challenge, because it is always possible to imagine a situation where someone could comply with the law by pure chance rather than by outcome-determinative discrimination.

Thankfully, such artifices were rejected decades ago, and for good reason. "Americans view ethnic or sex discrimination as odious . . . even if the beneficiaries are members of groups whose fortunes we would like to advance." *Monterey*, 125 F.3d at 707. AB979 and SB826 are unconstitutional because of the process they create: the authorization and encouragement of making choices based on protected categories. That process, and the resultant injury, applies to every person within the laws' grasp. The Court should deny California's motion to dismiss Counts 1, 2, and 3.[3]

## II.   Plaintiff's Internal Affairs Doctrine Claim is Properly Before the Court.

### A. Plaintiff Has a Federal Cause of Action Under 42 U.S.C. § 1983.

Corporations are creatures of state law, and a corporation's existence, internal structure, and the rules relating to governance and shareholder rights thus exist only by virtue of the laws of the state that granted it a charter of incorporation. And while states can require foreign corporations to comply with their local laws with respect to local contracts, torts, property, and the like, they "ha[ve] no interest in regulating the internal

---

[3] California makes no separate argument regarding Count 3 (the section 1981 claim), and accordingly the motion to dismiss Count 3 fails for the same reasons as does the motion to dismiss Count 2 (AB979). Def. MTD Memo. at 9 n.7.

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

affairs of foreign corporations." *Edgar v. MITE Corp.*, 457 U.S. 624, 645–46 (1982); *see also McDermott,* 531 A.2d at 215.

This rule—often called the internal affairs doctrine—is fundamental. As the Supreme Court has recognized, "[n]o principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations" to the exclusion of other states. *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987). Otherwise, the vast array of potentially applicable and conflicting legal regimes would pose "intolerable consequences to the corporate enterprise and its managers," undermining predictability, certainty, fair notice, and stability. *McDermott*, 531 A.2d at 216.

"Given the significance of these considerations, application of the internal affairs doctrine is not merely a principle of conflicts law," *id.*, as California argues. Def. MTD Memo. at 11–14. Rather, it is also one of "serious constitutional proportions." *McDermott*, 531 A.2d at 216; *accord VantagePoint,*, 871 A.2d at 1113.

For example, the Supreme Court has strongly suggested that a law that regulated the internal affairs of a foreign corporation (*i.e.* an entity incorporated under the laws of a different state) would violate the Commerce Clause by "creat[ing] an impermissible risk of inconsistent regulation by different States." *CTS*, 481 U.S. at 89.[4] Some courts have also concluded that the Full Faith and Credit Clause likewise mandates that the *lex incorporationis* be applied to disputes about a corporation's internal affairs, citing to a line of Supreme Court cases holding that that clause required that disputes "involving the

---

[4] *See also TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022, 1031 (W.D. Okla. 1987) ("Because the Oklahoma Control Shares Act, both facially and as applied to the control share acquisition pursued by Plaintiffs, creates this risk of inconsistent regulation, inasmuch as it applies to corporations other than those Oklahoma has created, the statute violates the Commerce Clause."); *Rocket Acquisition Corp. v. Ventana Med. Sys., Inc.*, 2007 WL 2422082, at *6 (D. Ariz. Aug. 22, 2007) (holding that Arizona's anti-takeover act violated the Commerce Clause because it created "an inherent risk of inconsistent regulation" to the extent it applied to corporations not incorporated under Arizona law); *McDermott*, 531 A.2d at 217; *VantagePoint*, 871 A.2d at 1113.

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

internal affairs of a fraternal benefit society be governed by the laws of the state where the society was formed." *McDermott*, 531 A.2d at 218 (citing *Order of United Commercial Travelers of Am. v. Wolfe,* 331 U.S. 586 (1947)); *Salzberg v. Sciabacucchi*, 227 A.3d 102, 136 (Del. 2020).[5]

And, of particular relevance here, both the Delaware Supreme Court (renowned for its expertise in corporate law) and several federal courts have held that the Fourteenth Amendment's guarantee of "[d]ue process requires that directors, officers and shareholders be given adequate notice of the jurisdiction whose laws will ultimately govern the corporation's internal affairs." *McDermott*, 1 A.2d at 218. And shareholders specifically "have a right to know by what standards of accountability they may hold those managing the corporation's business and affairs." *Id.*[6] Plaintiff is unaware of any cases rejecting this conclusion—unsurprising, given that it is well established that the Due Process clause protects people from being subject to the laws of another state without fair notice. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

AB979 and SB826 violate this constitutionally protected notice requirement because they subject every company incorporated outside of California to an irreconcilable conflict between California law and the law of the state of incorporation. The other 49 states have no such quotas and instead allow boards to have as many women or minorities as the company, in its business judgment, believes is appropriate. *See* Grundfest,

---

[5] As *McDermont* noted, more recent cases about the Full Faith and Credit clause have created some "lingering uncertainties concerning the vitality of *Wolfe*."531 A.2d 206, 218 & n.14. But it has never been overruled. *Cf. Agostini v. Felton*, 521 U.S. 203, 237 (1997).

[6] *Accord VantagePoint*, 871 A.2d at 1113; *Heine v. Streamline Foods Inc.*, 805 F. Supp. 2d 383, 390 (N.D. Ohio 2011); *In re PETCO Animal Supplies, Inc. S'holder Litig.*, 2008 WL 11508672, at *3 (S.D. Cal. Feb. 15, 2008); *In re Chalk Line Mfg., Inc.*, 1994 WL 394978, at *7 (Bankr. N.D. Ala. July 26, 1994) ("This Court cannot improve on the *McDermott* court's analysis" of the constitutional issues surrounding the internal affairs doctrine.); *In re Skyport Glob. Commc'ns, Inc.*, No. 08-36737, 2011 WL 111427, at *17 (Bankr. S.D. Tex. Jan. 13, 2011).

*Mandating Gender Diversity in the Corporate Boardroom: The Inevitable Failure of California's SB 826*, at 2 (Stanford Law Sch. & The Rock Ctr. for Corp. Governance, Working Paper No. 232, 2018) ("The conflict between California law and Delaware law is apparent. Indeed, because SB 826 would be the first and only mandatory board diversity requirement in the United States, the bill creates a conflict between California and the chartering laws of every other state in the nation.").

The laws' assertions that they apply regardless of where the company is incorporated and regardless of the laws of the state of incorporation, heightens the uncertainty rather than ameliorating it since this makes conflict unavoidable with respect to the 49 states that have not adopted a Woman Quota or Minority Quota. As Professor Grundfest has explained in discussing SB826, California purports to "require that corporations headquartered in California but chartered in Delaware have a minimum number of women directors while Delaware simultaneously permits its chartered corporations to have any number of women directors that is consistent with the board's business judgment, subject to shareholder approval and constraints imposed by the corporation's charter and bylaws." *Id.* at 3.

California is therefore incorrect to claim that a shareholder has no interest or right to declaratory relief about whether AB979 and SB826 are constitutional. Plaintiff is authorized under 42 U.S.C. § 1983 to bring suit to enjoin the deprivation of its members' constitutional rights, including their Fourteenth Amendment due process right to know what law will apply to the covered corporations in which they own stock.

Nor is California correct that this issue can be litigated only in the context of a discrete choice-of-law dispute "regarding a particular transaction or dispute." Def. MTD Memo. at 13. As demonstrated, the uncertainty about which law applies is a constitutional violation in itself, which is part and parcel of Plaintiff's internal affairs claim. Nor is this a novel case. In *TLX Acquisition Corp.*, for example, a federal district court held that an Oklahoma statute that purported to regulate shareholder voting rights intruded on

---

14

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

the internal affairs of foreign corporations in violation of the Commerce Clause "both *facially* and as applied to the control share acquisition pursued by Plaintiffs, [because the law] creates [a] risk of inconsistent regulation, inasmuch as it applies to corporations other than those Oklahoma has created." 679 F. Supp. at 1030 (emphasis added).

To the extent that the Restatement (Second) of Conflict of Laws suggests otherwise, this Court should simply not follow it. That treatise has been widely criticized for its loose and open-ended approach. As one court memorably put it, trying to follow its vague pronouncements "is like skeet shooting with a bow and arrow." *Fisher v. Huck*, 50 Or. App. 635, 639 (1981). It is, in the words of one scholar, "a non-Restatement: by mixing together all manner of doctrinal currents, it simply furnished courts with any number of plausible reasons to support whatever results they wished to reach." Friedrich K. Juenger, *A Third Conflicts Restatement?*, 75 Ind. L.J. 403, 406 (2000).

The provisions of the Restatement (Second) dealing with the internal affairs doctrine—§§ 302–06, 309—are no exception. They advocate for a stark departure from the traditional principle holding that the *lex incorporationis* controls internal affairs. *See* Restatement of the Conflicts of Laws §§ 152–161, 163, 182–185, 187 (1934). The Restatement (Second) replaces this with an open-ended, totality-of-the-circumstances approach that does not yield any clear answers.

What California conveniently omits is that the Restatement (Second)'s flexible approach to the internal affairs doctrine has never caught on. Indeed, it has been almost completely ignored. *See McDermott*, 531 A.2d 21; P. John Kozyris, *Corporate Wars and Choice of Law*, 1985 Duke L.J. 1, 18 (1985). What Professor Kozyris observed in 1985 remains true today: "The umbilical tie of the foreign corporation to the state of its charter is usually still religiously regarded as conclusive." Kozyris, *supra*, at 18 (quoting Kaplan, *Foreign Corporations and Local Corporate Policy*, 21 Vand. L. Rev. 464 (1968)). For example, in 2005, the Delaware Supreme Court observed that the "practice of both state and federal courts has consistently been to apply the law of the state of

incorporation to the entire gamut of internal corporate affairs." *VantagePoint*, 871 A.2d at 1113 (internal quotation marks omitted). Similarly, California's own Assembly Floor Analysis noted that SB826 "may conflict with the internal affairs doctrine . . . 'which recognizes that only one State should have the authority to regulate a corporation's internal affairs[.]'" SB826 Assembly Floor Analysis 4 (2018).

There are good reasons for this bright-line approach: "applying local internal affairs law to a foreign corporation . . . is apt to produce inequalities, intolerable confusion, and uncertainty, and intrude into the domain of other states that have a superior claim to regulate the same subject matter." *McDermott*, 531 A.2d at 216 (quoting Kozyris, *supra*, at 98). And it is "the significance of these considerations" as well as the importance of the constitutional principles discussed in cases like *CTS*, that led the Delaware Supreme Court—and the many courts that have followed it—to the conclusion that "the internal affairs doctrine is not merely a principle of conflicts law. It is also one of serious constitutional proportions." *McDermott*, 531 A.2d at 216.

California's wait-and-see, totality of the circumstances approach simply cannot be squared with those "constitutional proportions." Directors and officers have a due process right to know *in advance* what law will apply to their conduct; and shareholders have a corresponding right to know what standards apply to their voting rights as well as "what standards of accountability they may hold those managing the corporation's business and affairs." *VantagePoint*, 871 A.2d at 1113 (quotation marks omitted). Similarly, California's approach would run afoul of the Commerce Clause's prohibition on state laws that create an "impermissible risk of inconsistent regulation by different States." *CTS Corp.*, 481 U.S. at 89. As one court has noted, if *lex incorporationis* could be overridden in the way that California suggests here, then "the Supreme Court in the *CTS* case would have found it necessary to determine whether some state other than . . . the state of incorporation . . .  had a greater interest in application of its law concerning voting

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

1    rights following a control share acquisition." *TLX*, 679 F. Supp. at 1030. But the Supreme

2    Court did no such thing.

3         As this all indicates, California is wrong in asserting that Plaintiff lacks a cogniza-

4    ble cause of action. 42 U.S.C. § 1983 authorizes Plaintiff to bring suit to enjoin the dep-

5    rivation of its members' constitutional rights, including their Fourteenth Amendment due

6    process rights to know what law will apply to the covered corporations they own stock

7    in. Subject matter jurisdiction is thus proper because this case "arises under" a federal

8    cause of action (§ 1983), satisfying 28 U.S.C. § 1331, and because it seeks to "redress

9    the deprivation, under color of [a] State law . . . [of a] right . . . secured by the Constitution

10   of the United States," satisfying 28 U.S.C. § 1343(a). *See* Compl. ¶ 12.

11   **B. Plaintiff Has Plausibly Pleaded a Violation of the Internal Affairs Doctrine.**

12        Plaintiffs' members' right to know whether California law will apply to the com-

13   panies they hold stock in does not depend on whether Plaintiff specifically alleges a con-

14   flict. *See TLX*, 679 F. Supp. at 1031 (citing *CTS Corp.*, 481 U.S. at 89); *cf. In re PETCO*,

15   2008 WL 11508672, at *3 (S.D. Cal. Feb. 15, 2008) (applying internal affairs doctrine

16   despite the fact that there was "no conflict between the pertinent California and Delaware

17   law"). In any event, the conflict is plain. No other state mandates a Woman Quota or

18   "Underrepresented Community" Quota. *See, e.g.*, Grundfest, *supra*, at 3; Stephen Bain-

19   bridge, *Can California Require Delaware Corporations to Comply with California's*

20   *New Board of Director Gender Diversity Mandate? No.*, ProfessorBainbridge.com (Sept.

21   1, 2018). The unique nature of California's laws thus avoids the need for a fact-intensive

22   inquiry—the conflict is a matter of undisputed public record.

23   **C. Plaintiff Has Associational Standing to Challenge SB826 and AB979 Under**
24   **the Internal Affairs Doctrine.**[7]

25        Plaintiff has three independent bases of standing to challenge SB826 and AB979.

26   _____

27   [7] California does not challenge Plaintiff's standing to bring its Equal Protection and
     Section 1981 claims (Counts 1–3).

28

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

***First***, as discussed above, both laws violate Fourteenth Amendment due process rights of members who own stock in companies headquartered in California but incorporated under the laws of other states. Compl. ¶¶ 21-25. In support of this, Plaintiff submits the affidavit of Alliance member and president Mr. Edward Blum, who owns stock in a corporation incorporated in Delaware, but headquartered in California.[8] Delaware (like every other jurisdiction in the United States) does not have any mandatory quotas regarding the number of women or minority board members a corporation must have, and instead allows companies to select numbers based on their best business judgment. *See, e.g.*, *Openwave Sys. Inc. v. Harbinger Cap. Partners Master Fund I, Ltd.*, 924 A.2d 228, 243–44 (Del. Ch. 2007) (applying business-judgment rule to decision to change size of board). Any attempt to mirror California's quotas would violate Delaware's constitution, which guarantees that "[e]quality of rights under the law shall not be denied or abridged on account of race, color, national origin, or sex." Del. Const. art. I, sec. 21.[9]

As a direct result of SB826 and AB979, members such as Mr. Blum are deprived of important information that they are entitled to know as shareholders. This deprivation thus constitutes an actionable injury-in-fact. *See Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 420 (9th Cir. 2020) (An injury in fact exists when a plaintiff "alleges an informational injury that is inextricably tied to its interest in exercising its *governance and participation* rights."). This injury is directly traceable to SB826 and AB979. Declaratory judgment about whether California may lawfully legislate on matters touching the internal affairs of foreign corporations will provide complete

---

[8] Mr. Blum's Affidavit is attached as Exhibit 1. The relevant discussion of this injury can be found in paragraphs 23–26. The affidavit is submitted solely in support of Plaintiff's response to California's request for dismissal under Rule 12(b)(1). *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

[9] Discriminatory board hiring may also violate Delaware's employment law, which prohibits employers from discriminating on the basis of race and sex. *See* Del. Code Ann. tit. 19, § 711(a)(1) & (2).

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

redress to this due process injury because it will determine what law applies to foreign corporations headquartered in California.

*Second*, Plaintiff has standing under *Meland*, because California's laws violate certain members' Constitutional right—including the rights of Mr. Blum—to vote for director candidates of their choosing free from any authorization or encouragement from the government to choose on the basis of race and sex. As demonstrated at length above in Part I, this right exists regardless of whether the particular shareholder would vote the same way in the absence of SB826 or AB979, and regardless of whether any particular board member is chosen or rejected as a result of those laws. The complete violation exists merely by creating this process. The Court should reject California's unusual attempt to overrule blackletter Supreme Court and Ninth Circuit caselaw via an expert affidavit that says, in so many words, discrimination is inevitable and thus no one person can challenge it. Relatedly, by denying Plaintiff's members the right to know which law applies, AB979 exposes them to civil liability for racial discrimination under 42 U.S.C. § 1981, which prohibits racial discrimination in contracting. *See Flores v. City of Westminster*, 873 F.3d 739, 753 n.6 (9th Cir. 2017) ("Numerous cases, including our own, have allowed individual liability under section 1981."). These injuries are directly traceable to SB826 and AB979 because these statutes are the only reason why Plaintiff's members are pressured to discriminate on the basis of sex and race in their votes as shareholders. Declaratory judgment that this requirement cannot be imposed on foreign corporations headquartered in California would give partial redress to Plaintiffs' members, including Mr. Blum.

*Third*, for certain members who are seeking board positions at California companies, SB826 and AB979 injures them by depriving them of the ability to compete for director positions on an equal playing field at the many corporations that are headquartered in California but incorporated under the laws of other states. Compl. ¶¶ 19–20. Relatedly, one of Plaintiffs' members is "a former corporate board director who was

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

ousted from his position not because of a lack of skills, judgment, connections, integrity, or talent, but because he is not a woman and does not self-identify as an underrepresented minority." *Id.* ¶ 10. These injuries are directly traceable to SB826 and AB979 because they deprive these members of an equal playing field. Declaratory judgment that this requirement cannot be imposed on foreign corporations headquartered in California would give partial redress to their injuries.

California does not disagree that these injuries suffice under *Lujan*. Rather, it asserts that "aspiring or terminated corporate board directors can claim no injury related to the internal affairs doctrine" because it "protects only relationships among or between the corporation and its *current . . .* directors" and Plaintiff's members do not fall in that "zone of interests." Def. MTD Memo at 20. Not so. Both laws concern who gets to *be* a "current . . . director[]," precisely the kind of decision that the internal affairs doctrine protects.

## **CONCLUSION**

Plaintiff respectfully requests that this Court deny California's Motion to Dismiss.

Dated: October 12, 2021

BOYDEN GRAY & ASSOCIATES PLLC
C. Boyden Gray, Admitted Pro Hac Vice
Jonathan Berry, Admitted Pro Hac Vice
Michael Buschbacher, Admitted Pro Hac Vice
Jordan E. Smith, (SBN 317294)

By:    /s/ *Jonathan Berry*
       Jonathan Berry
       *Attorney for Plaintiff*

Dated: October 12, 2021

BROWN WEGNER LLP

By:    /s/ *William Brown*
       William Brown
       *Attorney for Plaintiff*

**SIGNATURE ATTESTATION:** I hereby attest that I have authorization for any signatures indicated by a conformed signature within this e-filed document, and that all other signatories herein listed, and on whose behalf this filing is submitted, concur in its content and have authorized the filing of same.

/s/ Jordan E. Smith

Jordan E. Smith

21

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

## **CERTIFICATE OF SERVICE**

***Alliance for Fair Board Recruitment v. Shirley Weber***
No. 2:21-cv-05644-RGK-RAO, C.D. Cal.

The undersigned hereby certifies that on this date, the foregoing document filed electronically using the Court's CM/ECF System is served on counsel of record pursuant to the Federal Rules of Civil Procedure through the Court's Notice of Electronic Filing generated by the CM/ECF System, per L.R. 5-3.2.1.

Dated: October 12, 2021          /s/ Jordan E. Smith
                                         Jordan E. Smith
                                         BOYDEN GRAY & ASSOCIATES PLLC
                                         801 17th St. NW. #350
                                         Washington, D.C. 20006
                                         (202) 955-0620
                                         smith@boydengrayassociates.com

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss