# Exhibit A

# AFFIDAVIT OF EDWARD BLUM

1. My name is Edward Blum. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge and are submitted solely in my own capacity.

2. I am a dues-paying member of the Alliance for Fair Board Recruitment.

3. I am morally committed to the principle that the law should be color-blind, believing that all persons are created equal and should therefore be subject to equal treatment under law. I vigorously oppose classification and discrimination on the basis of race, ethnicity, and national origin, as well as classification and discrimination on the basis of sex stereotypes.

4. As a shareholder of publicly traded corporations, I also believe that trying to engineer a board's racial, ethnic, sex, or sexual orientation composition is an empty and wasteful distraction that puts virtue signaling over hiring the best available talent. I believe that discriminatory policies in board hiring will harm my share value in the long run.

5. I am a shareholder of record of Beyond Meat, a public corporation headquartered, and with its principal place of business, in California. I own voting-eligible common stock, and intend to participate in voting on, and potentially nominating, board candidates.

6. Beyond Meat's board of directors consists of nine directors. 2021 Beyond Meat Proxy Statement 8.[1]

7. Beyond Meat's certificate of incorporation and bylaws authorize shareholders to vote at annual shareholder meetings. Beyond Meat's Certificate of Incorporation § 4;[2] Beyond Meat's Bylaws §§ 1.5, 1.7.[3]

8. The only way a person can be elected to Beyond Meat's board is if a plurality of shareholders votes in favor of the nominee at an annual shareholder meeting. Beyond Meat's Bylaws § 1.7.

9. Beyond Meat's bylaws allow shareholders to nominate director candidates. Beyond Meat's Bylaws § 1.11; 2021 Beyond Meat Proxy Statement 8–9.

---

[1] https://investors.beyondmeat.com/static-files/5f5c3b6e-8397-43e7-b6f0-b112b638ec0e.
[2] https://www.sec.gov/Archives/edgar/data/1655210/000165521019000053/byndarcert_incorpex-31.htm.
[3] https://www.sec.gov/Archives/edgar/data/1655210/000165521019000053/byndarbylawsex-32.htm.

10. Beyond Meat must include shareholder nominations in its proxy statement if they comply with the Exchange Act's regulations governing shareholder proposals. 17 CFR § 240.14a-8.

11. Beyond Meat's directors serve staggered three-year terms and are therefore regularly subject to elections. 2021 Beyond Meat Proxy Statement 8.

12. For example, on May 19, 2021, Beyond Meat held an annual shareholder meeting and considered the election of three directors to serve until the 2024 annual meeting. One was an incumbent director, and two were new directors. 2021 Beyond Meat Proxy Statement 10.

13. In selecting board members, Beyond Meat's shareholders have discriminated on the basis of gender, race, and ethnicity. *Id.* Beyond Meat boasts that, after the latest election, a third of its board members currently qualify as "female" and that a third now also self-identifies as non-white, including one self-described "African American" director and two self-described "Asian/Pacific islander" directors. *Id.* at 11.

14. Beyond Meat's "diverse" composition is dictated by California laws.

15. In 2018, California signed into law SB 826. SB 826 requires that by December 31, 2019, public corporations headquartered in California must have at least one female on the board. Cal. Corp. Code § 301.3(a). Further, the law requires that by December 31, 2021, if a public corporation has six or more directors on its board, then a minimum of three directors must be female; if a public corporation has five directors on its board, then a minimum of two directors must be female; and if a public corporation has four or fewer directors on its board, then a minimum of one director must be female. Cal. Corp. Code § 301.3(b). Companies that fail to comply are subject to up to $300,000 in penalties per violation. *See* Cal. Corp. Code § 301.3(e).

16. With three females on Beyond Meat's board, the voting shareholders of Beyond Meat appear to have discriminated on the basis of sex in selecting board members in order to satisfy California's woman quota requirement.

17. In 2020, California signed into law AB 979. AB requires that by December 31, 2022, in addition to the specified number of female directors, public corporations headquartered in California must also have a minimum number of directors from "underrepresented communities." Cal. Corp. Code § 301.4(b). A director qualifies as being from an "underrepresented community" if the director "self-identifies as Black, African American, Hispanic, Latino, Asian, Pacific Islander, Native American, Native Hawaiian, [] Alaska Native, . . .

gay, lesbian, bisexual, or transgender." *Id.* § 301.4 (e)(1). Like SB 826, the number of directors from an "underrepresented community" required by AB 979 depends on the size of the corporation's board: a public corporation with nine or more directors must have at least three directors from underrepresented communities, a public corporation with five to eight directors must have at least two directors from underrepresented communities, and a public corporation with four or fewer directors must have at least one director from an "underrepresented community." Cal. Corp. Code § 301.4(b). AB 979 also carries similarly stiff fines for failures to comply: $100,000 for a single violation and $300,000 for a subsequent violation. *Id.* § 301.4(d).

18. With one self-described African American and two self-described "Asian/Pacific Islander" directors, the voting shareholders of Beyond Meat appear to have discriminated on the basis of race and ethnicity in selecting board members in order to satisfy California's "underrepresented community" board quota.

19. The California board diversity laws injure me by forcing me to discriminate when voting for director candidates for positions at Beyond Meat in annual meetings.

20. SB 826 necessarily requires or encourages me (and all other voting shareholders) to discriminate on the basis of sex. A reasonable shareholder deciding how to vote could not assume that other shareholders would vote to elect the requisite number of female board members. Therefore, each shareholder would understand that a failure to vote for a female over a male would contribute to the risk of putting the corporation in violation of state law and exposing it to sanctions and negative press. At a minimum, therefore, SB 826 would encourage me to propose candidates or vote in a way that would support corporate compliance with legal requirements. Indeed, the California Legislature must have concluded that SB 826 would have such an effect on individual shareholders; otherwise, if each individual shareholder felt free to vote for a male board member, SB 826 could not achieve its goal of reaching gender parity. And the legislative conclusion that most shareholders would comply with SB 826's mandate was reasonable, as early results have shown.

21. AB 979 necessarily requires me to discriminate on the basis of race. It encourages me to vote for board members in "underrepresented communities" and prohibits or discourages me from proposing or voting for directors who are straight (or who do not publicly announce their sexual orientation or

gender identity) and/or white directors (as well as those who do not publicly announce their membership in a favored racial or ethnic group). A reasonable shareholder deciding how to vote could not assume that other shareholders would vote to elect the requisite number of underrepresented minority board members. Therefore, each shareholder would understand that a failure to vote for a qualifying director would contribute to the risk of putting the corporation in violation of state law and exposing it to sanctions. At a minimum, therefore, SB 826 would encourage me to vote in a way that would support corporate compliance with legal requirements. Indeed, the California Legislature must have concluded that AB 979 would have such an effect on individual shareholders; otherwise, if each individual shareholder felt free to vote for straight and white board members, AB 979 could not achieve its goal of increasing underrepresented minority directors.

22. Both SB 826 and AB 979 therefore injure me by requiring or at least strongly encouraging me to discriminate on the basis of race and ethnicity, sexual orientation, and sex when making voting decisions.

23. In addition, as a shareholder I have a legal and financial interest in knowing to what standards of accountability I can hold the directors and officers of the corporations in which I hold stock. One reason why I am supporting this lawsuit as a member of the Alliance for Fair Board Recruitment is so that I can know in advance what law will apply to the companies I have invested in, including Beyond Meat, so that I can not only protect my investment, but also so that I can use my shareholder rights to oppose any unlawful attempts by Beyond Meat to impose race- or sex-based preferences in board hiring.

24. Both SB 826 and AB 979 state that they apply to all public corporations headquartered in California, regardless of whether they are incorporated in California, regardless of where the company is incorporated, and regardless of the laws of the state of incorporation.

25. Unlike California, Delaware does not require, encourage, or even authorize companies incorporated under its laws to discriminate on the basis of race or sex in selecting board members. Indeed, Delaware's constitution appears to expressly prohibit it from imposing California-style quotas. *See* Del. Const. Art. I, sec. 21 ("Equality of rights under the law shall not be denied or abridged on account of race, color, national origin, or sex.").

26. Having reviewed the matter carefully, it is unclear to me which state's law applies to Beyond Meat, which is incorporated under Delaware law but headquartered in California. Both SB 826 and AB 979 therefore injure me by

depriving me of my Fourteenth Amendment due process right to know which state's laws govern the internal corporate affairs of Beyond Meat.

27. I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 12, 2021

_____

Edward Blum