ROB BONTA
Attorney General of California
MICHAEL L. NEWMAN
Senior Assistant Attorney General
LAURA L. FAER
VILMA PALMA-SOLANA
Supervising Deputy Attorneys General
SOPHIA CARRILLO
HEIDI JOYA
EDWARD NUGENT
KANWALROOP KAUR SINGH
JULIA HARUMI MASS
State Bar No. 189649
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA  94612-0550
 Telephone:  (510) 879-3300
 Fax:  (510) 622-2270
 E-mail:  Julia.Mass@doj.ca.gov
*Attorneys for California Secretary of State*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALLIANCE FOR FAIR BOARD RECRUITMENT,**<br><br>Plaintiff,<br><br>v.<br><br>**SHIRLEY N. WEBER, in her official capacity as Secretary of State of the State of California,**<br><br>Defendant. | 2:21-cv-05644-RGK (RAOx)<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT SECRETARY OF STATE'S MOTION TO DISMISS COMPLAINT**<br><br>Date:          November 1, 2021<br>Time:         9:00 a.m.<br>Courtroom:  Ctrm. 850, 8th Floor<br>Judge:        Hon. R. Gary Klausner<br>Trial Date:  none set<br>Action Filed: July 12, 2021 |

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................1

Argument ....................................................................................................1

    I.      Plaintiff Cannot Adequately Plead a Facial Challenge Under the Equal Protection Clause or 42 U.S.C. § 1981 ........................................1

    II.     Plaintiff's Internal Affairs Doctrine Claim Must Fail ........................4

          A.     The U.S. Constitution Does Not Provide a Basis for Jurisdiction ................................................................................4

          B.     Plaintiff's Complaint Fails to Identify a Conflict or Facts Required for Application of the Internal Affairs Doctrine ........7

          C.     Plaintiff Does Not Have Standing to Assert Unnamed Corporations' Interests under the Internal Affairs Doctrine .......9

Conclusion .............................................................................................10

**INTRODUCTION**

In its Opposition to the California Secretary of State's (Secretary) Motion to Dismiss (Motion), Plaintiff does not provide a basis for the Court to depart from the requirement of *United States v. Salerno,* 481 U.S. 739 (1987), that a facial challenge cannot prevail unless the challenged law is unconstitutional in all applications. Because SB 826 and AB 979 can be implemented through race- and gender-neutral processes, Plaintiff's facial challenges under the Equal Protection Clause and 42 U.S.C. § 1981 (Counts One, Two, and Three) must be dismissed. Plaintiff is similarly unable to provide a federal basis for its internal affairs doctrine claim to support federal question jurisdiction under 28 U.S.C. § 1331. For this reason, and because Plaintiff's Complaint fails to allege facts necessary to invoke the internal affairs doctrine and Plaintiff's members do not have standing to assert a claim under the internal affairs doctrine, Count Four must also be dismissed.[1]

**ARGUMENT**

**I.   PLAINTIFF CANNOT ADEQUATELY PLEAD A FACIAL CHALLENGE UNDER THE EQUAL PROTECTION CLAUSE OR 42 U.S.C. § 1981**

Plaintiff does not cite any case that excuses equal protection claims from the familiar requirement for facial challenges: Plaintiff must plausibly allege that "no set of circumstances exists under which [SB 826 and AB 979] would be valid." *See S.D. Myers, Inc. v. City & Cnty. of S.F.*, 253 F.3d 461, 467 (9th Cir. 2001) (quoting *Salerno*, 481 U.S. at 745). Plaintiff attempts to avoid this standard through an oblique reference to *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). But *Citizens United* involved a First Amendment claim—not governed by the *Salerno* standard for facial challenges—and addressed whether a facial challenge had been preserved on appeal, not the sufficiency of the allegations. 558 U.S. at 329-31; *see also Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir.

---

[1] Plaintiff's description of legislative analyses of SB 826 and AB 979, Opp'n at 5, is incomplete and irrelevant to the instant motion.

2016) (noting relaxed standard for First Amendment overbreadth challenges). Plaintiff's equal protection cases do not discuss *Salerno* or whether the laws at issue were susceptible to facial challenges at all. As Plaintiff has failed to identify any case articulating a different pleading standard, the Court should apply *Salerno*.

As explained in the Secretary's Motion, compliance with SB 826 and AB 979 can be achieved through race- and gender-neutral board selection processes, or through a director's voluntary retirement. Mot. at 9-10. In addition, the flexibility of SB 826 and AB 979 allows corporations to increase board diversity without excluding anyone. *See id.* The same cannot be said of any of the cases cited in the Opposition, which either involve 1) strict quotas in which individuals must compete for a fixed number of positions, or 2) participation goals with exceptions that are themselves race- and gender-conscious. And in each of these cases, specific facts demonstrated the effect of race and gender criteria in the selection process at issue.

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993), addressed whether a plaintiff had standing to challenge a set-aside program, not whether a facial challenge was appropriate. 508 U.S. at 658. The programs challenged in *Jacksonville* required the city to set aside 10% of its contract spending for "Minority Business Enterprises," or reserve certain contracts "'for the exclusive competition' of certified black- and female-owned businesses." *Id.* at 658, 661. Both programs excluded access to limited resources based on race or gender. Similarly, in *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 272 (1978), 16 of 100 positions in a medical school class were reserved for minority students. In contrast, SB 826 and AB 979 do not "den[y] certain [individuals] the *opportunity to compete* for a fixed percentage" of board seats based on race or gender. *Jacksonville*, 508 U.S. at 666 (quoting *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989)). Unlike a fixed city budget or class size, a corporation may increase the size of its board to accommodate as many qualified directors as desired under SB 826 and AB 979. Cal. Corp. Code

2

1  §§ 301.3(a), 301.4(a). Therefore, adding opportunities for women and

2  underrepresented groups does not automatically exclude others.

3      Plaintiff cites *Bras v. Cal. Pub. Utilities Comm'n*, 59 F.3d 869 (9th Cir. 1995),

4  and *Monterey Mechanical Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997), for the

5  proposition that parties are "forced to compete on an unequal basis" when a statute

6  "*authorizes or encourages*" preferential set-asides or participation goals. *See* Opp'n

7  at 8, ECF No. 43 (quoting and adding emphasis to *Bras*, 59 F.3d at 873, 875). The

8  plaintiff in *Bras* presented not mere facial allegations, but detailed facts about a

9  selection process under which he would have won a contract but for his race. *See* 59

10  F.3d at 871 (plaintiff was rated sixth of thirteen firms, but would have been in top

11  three firms had race and gender not been considered). In *Monterey Mechanical*, the

12  plaintiff challenged a statute that required contractors to meet certain diversity goals

13  in subcontracting or show "good faith efforts" to do so. 125 F.3d at 704. The court

14  held that the "good faith effort" alternative to the quota was insufficient because it

15  required outreach directed specifically at minority and women subcontractors, i.e.,

16  actions that were not race- or gender-neutral. *Id.* at 710-11.

17      By contrast, SB 826's and AB 979's flexible requirements for the composition

18  of corporate boards do not prescribe how such composition may be attained. The

19  statutes thus do not require, authorize, or encourage corporations to discriminate on

20  the basis of race or gender when appointing directors.[2] Unlike the set-aside

21  programs and participation goals criticized in *Bras* and *Monterey Mechanical*,

22  SB 826 and AB 979 do not necessarily disadvantage any director candidate or

23  create an unequal field of competition for board positions. Moreover, AB 979 does

24  not require corporations to employ *any* racial classifications in appointing board

25  _____

26  [2] The holding in *Bras*—that the plaintiff had standing to challenge state laws that "authorize or encourage" race- or gender-based quotas—has limited application with respect to SB 826 and AB 979, whose diversity requirements for corporations are already authorized under federal law. *See, e.g., United Steelworkers of Am. AFL-CIO v. Weber*, 443 U.S. 193, 209 (1979) (Title VII allows private entities to employ race-conscious affirmative action plans).

27

28

1    members because any corporation can comply with AB 979 by appointing only

2    LGBT directors to the required seats.[3]

3        Courts routinely dismiss facial challenges when the government or the court

4    "can envision at least one scenario whereby [the statute] would be constitutional."

5    *See Gen. Elec. Co. v. Johnson*, 362 F. Supp. 2d 327, 344 (D.D.C. 2005); *see also,*

6    *e.g.*, *GeorgiaCarry.Org, Inc. v. Ga.*, 687 F.3d 1244, 1261, 1266 (11th Cir. 2012)

7    (affirming dismissal under *Salerno* where court could foresee a permissible

8    application of statute); *Cmty. Hous. Improvement Program v. City of N.Y.*, 492 F.

9    Supp. 3d 33, 45 (E.D.N.Y. 2020) (dismissal of facial challenge appropriate if

10   defendant can identify possible valid application of statute).[4] Because Plaintiff

11   cannot plausibly allege that SB 826 and AB 979 are unconstitutional in "all of

12   [their] applications," its facial equal protection and 42 U.S.C. § 1981 challenges

13   must be dismissed. *See Wash. State Grange v. Wash. State Republican Party*, 552

14   U.S. 442, 449 (2008) (citing *Salerno*, 481 U.S. at 745).

15   **II.    PLAINTIFF'S INTERNAL AFFAIRS DOCTRINE CLAIM MUST FAIL**

16       **A.    The U.S. Constitution Does Not Provide a Basis for Jurisdiction**

17       Plaintiff's Opposition does not cite a single case that recognizes the internal

18   affairs doctrine as a standalone cause of action, much less one arising out of federal

19   law. Even Plaintiff's cited Delaware Supreme Court cases apply the internal affairs

20   doctrine to questions arising in the consideration of *other* claims; they do not

21   purport to create a basis to strike down a state statute in the abstract and are not

22   binding on this Court. *See McDermott Inc. v. Lewis*, 531 A.2d 206, 216 (Del. 1987)

23   (treating internal affairs doctrine as a constitutionally significant "principle of

24   conflicts law," not as a cause of action). Plaintiff's attempt to ground its internal

---

25   [3] Plaintiff's reliance on *Monterey Mechanical*, which "invalidated a . . . law that

26   combined two [different] groups (race and sex)," Opp'n at 9, is misplaced because
     Plaintiff does not challenge AB 979's LGBT provisions. *See* Compl. ¶¶ 54-55, 58.

27   [4] Nor does Plaintiff's parade of horribles, *see* Opp. at 10-11, relieve it from the
     *Salerno* standard; throughout this digression, Plaintiff offers no explanation as to

28   why as-applied challenges would be inadequate to test its hypothetical laws.

1    affairs doctrine claim in the Commerce Clause, Full Faith and Credit Clause, and/or

2    Due Process Clause fails for two reasons: 1) those clauses do not turn the internal

3    affairs doctrine into a cause of action, and 2) the Complaint does not state a claim

4    under any of these provisions.[5]

5        *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69 (1987), and *Edgar v.*

6    *MITE Corp.*, 457 U.S. 624 (1982)—cited by the Delaware Supreme Court as

7    imbuing the internal affairs doctrine with constitutional underpinnings, 531 A.2d at

8    217—both addressed challenges to state laws under the Commerce Clause. In

9    *Edgar*, the U.S. Supreme Court held that an Illinois law that conflicted with the

10    federal Williams Act could not—consistent with the Commerce Clause—be applied

11    to a Delaware corporation headquartered in Connecticut, because the Illinois law

12    directly regulated and excessively burdened interstate commerce. 457 U.S. at

13    626-30, 636-42. In *CTS*, the Court held that an Indiana statute's effect on interstate

14    commerce was justified by Indiana's interest in protecting resident shareholders and

15    its role as the state of incorporation for the affected corporations. 481 U.S. at 73-75,

16    95. In both cases the Court noted the importance of the internal affairs doctrine, but

17    the Court's Commerce Clause analysis turned—as it must—on the state laws'

18    burdens on interstate commerce. *See, e.g., id.* at 88.[6]

19        Although the Commerce Clause limits the power of states, a state statute that

20    impacts interstate commerce "must be upheld if it 'regulates evenhandedly to

21    effectuate a legitimate local public interest, and its effects on interstate commerce

22    are only incidental . . . unless the burden imposed on commerce is clearly excessive

23    in relation to the putative local benefits.'" *Edgar*, 457 U.S. at 640 (quoting *Pike v.*

24    _____

25    [5] Moreover, by failing to identify any of these purported constitutional bases for Count Four, the Complaint fails to "give fair notice" of Plaintiff's claim. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

26    [6] Similarly, in *TLX Acquisition Corp. v. Telex Corp.*, the district court held that a law that regulated "purely out-of-state sales and purchases of stock" in a foreign corporation burdened interstate commerce to a degree that was "clearly excessive in relation" to any local benefits. 679 F.Supp. 1022, 1031-32 (W.D. Okla. 1987).

27

28

Defendant Secretary of State's Motion to Dismiss Complaint
Case No. 2:21-cv-05644-RGK (RAOx)

1    *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).[7] Here, Plaintiff has not alleged that

2    SB 826 or AB 979 have *any* impact on interstate commerce, much less a substantial

3    impact or one that is excessive in relation to their goals. The fact that the internal

4    affairs doctrine is discussed in relation to the Commerce Clause does not convert it

5    into a cause of action that supports jurisdiction under 28 U.S.C. § 1331.

6        Plaintiff's invocation of the Full Faith and Credit Clause to provide federal

7    question jurisdiction also falls short. Like the internal affairs doctrine itself, the Full

8    Faith and Credit Clause is only a rule that "guide[s]" courts "as to the faith and

9    credit to be given by the court to the public acts, records, and judicial proceedings

10   of a state other than that in which the court is sitting." *Minn. v. N. Sec. Co.*, 194

11   U.S. 48, 72 (1904). "[T]he Full Faith and Credit Clause . . . does not give rise to an

12   implied federal cause of action," and therefore cannot transform the internal affairs

13   doctrine into a claim arising under federal law for § 1331 purposes. *Thompson v.*

14   *Thompson*, 484 U.S. 174, 182 (1988).

15       Ultimately—presumably to support its argument for shareholder standing—

16   Plaintiff grounds its internal affairs doctrine claim in the Fourteenth Amendment's

17   Due Process Clause. Opp'n at 13. This theory appears to be derived solely from the

18   Delaware Supreme Court and federal district courts that have referenced that

19   court's reasoning. *See id.* at 13 & n.6. However, in *McDermott*, the Delaware

20   Supreme Court cited no authority whatsoever for its assertion that the internal

21   affairs doctrine is mandated by the Due Process Clause. 531 A.2d at 218. Neither

22   *McDermott* nor the district court cases that adopt its reasoning are binding on this

23   Court.[8] And the only federal due process case cited by Plaintiff that does not rely on

24   Delaware case law, *Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*, 567

25   ───────────

26   [7] *See also Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir.
     2015) (substantial burden on interstate commerce required to prove violation of the
     dormant Commerce Clause) (citations omitted).

27   [8] Nor do any of the cited cases treat the internal affairs doctrine as a standalone
     cause of action to strike down an objectionable state laws in the abstract. *See*
     *VantagePoint Venture Partners 1996 v. Examen, Inc.* 871 A.2d 1108, 1009 (Del.

28

1  U.S. 239 (2012), is inapposite. In *Fox*, the Supreme Court applied the void-for-
2  vagueness doctrine to set aside three orders that the Federal Communications
3  Commission issued under an indecency policy that failed to give broadcasters "fair
4  notice" of prohibited content. *Id.* at 253, 258.

5      By contrast, SB 826 and AB 979 are perfectly clear in what they require. They
6  "give fair notice of conduct that is forbidden or required." *See Fox*, 567 U.S. at 253.
7  Nor does Plaintiff allege otherwise. Instead, it seeks declaratory judgment as to
8  whether the laws—clear on their face—can be applied to unknown corporations
9  based on unspecified facts. Although Plaintiff's Opposition asserts—for the first
10 time—that it is entitled to declaratory relief in order to have "notice" of whether
11 SB 826 and AB 979 can be applied under the Due Process Clause, Plaintiff has not
12 provided any binding federal precedent for this theory. As explained in the
13 Secretary's opening brief, the internal affairs doctrine may be relevant to courts'
14 consideration of Commerce Clause and other claims, but as a choice of law
15 doctrine, it does not determine substantive rights, does not create a federal cause of
16 action, and does not give rise to jurisdiction under 28 U.S.C. § 1331. Mot. at 15.

17   **B.   Plaintiff's Complaint Fails to Identify a Conflict or Facts
18        Required for Application of the Internal Affairs Doctrine**

19      Even if the internal affairs doctrine provided a federal cause of action—it does
20  not—Plaintiff does not plausibly allege a violation of it.  *See Ashcroft v. Iqbal*, 556

21  2005) (considering whether Delaware or California law applied to an impending
22  merger); *Heine v. Streamline Foods Inc.*, 805 F.Supp. 2d 383, 391 (N.D. Ohio
    2011) (holding that Delaware law would govern a shareholder challenge for breach
23  of fiduciary duties and other claims); *In re PETCO Animal Supplies, Inc. S'holder
    Litig.*, No. 07-CV-0602-BEN (WMc), 2008 WL 11508672 (S.D. Cal. Feb. 15,
24  2008) (shareholder action for breach of fiduciary duty and aiding and abetting);
    *Rocket Acquisition Corp. v. Ventana Med. Sys. Inc.*, No. CIV 07-1278-PHX-MHM,
25  2007 WL 2422082 (D. Ariz. Aug. 22 2007) (commerce clause challenge in relation
    to pending tender offer); *In re Chalk Line Mfg., Inc. v. Frontenac Venture V. Ltd.*,
26  No. 93–42773 (11), 1994 WL 394978 (Bankr. N.D. Ala. July 26, 1994
    (determining law of state of incorporation would apply to shareholder claims
27  against corporation); *In re Skyport Glob. Commc'ns, Inc.*, No. 08-36737, 2011 WL
    111427 (Bankr. S.D. Tex. Jan 13, 2011) (in shareholder action, Delaware law
28  applies to claims that arose prior to merger between Delaware and Texas
    corporations).

U.S. 662, 678 (2009). First, the Complaint fails to identify any conflict between California's laws and those of any other state. Plaintiff's argument that no other state shares California's board diversity requirements, Opp'n at 17, is not sufficient to allege a violation of the doctrine. For example, Delaware law permits corporations to impose particular qualifications for directors through their bylaws, with no exception for qualifications related to diversity. *See* Del. Code. Ann. tit. 8, § 141(b) (2021); *see also* Jill Fisch & Steven Solomon, *Centros, California's 'Women on Boards' Statute and the Scope of Regulatory Competition* 14 & n.90 (2019), http://ssrn.com/abstract_id=3384768 (noting no conflict between SB 826 and Delaware law, and questioning whether SB 826 regulates corporate internal affairs at all).[9]

Second, Plaintiff has not pleaded factual allegations—e.g., relative corporate contacts with California versus the state of incorporation—necessary to allege a violation of the internal affairs doctrine. *See* Mot. at 12-13, 15-16 (describing fact-intensive inquiry under Restatement (Second) of Conflict of Laws [hereinafter Restatement] § 302). Instead, Plaintiff asserts that such specific allegations are unnecessary to state a claim and, "[t]o the extent that the Restatement . . . suggests otherwise, this Court should simply not follow it." Opp'n at 15. Not so. Although academics may debate the merits of the Restatement's view, the Supreme Court relied on § 302 to describe the internal affairs doctrine in *Edgar*, 457 U.S. at 645, and it is well established that when jurisdiction is based on a federal question, "[f]ederal common law follows the approach of the Restatement (Second) of Conflict of Laws (1969)." *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991). Even the Delaware Supreme Court recognizes that

---

[9] The Delaware Constitution's equal protection clause does not create a conflict of laws, as both the California and U.S. Constitutions also provide protections against race and sex discrimination. *See* Opp'n at 18 (citing Del. Const. art. I, § 21); *see also* Cal. Const. art. I, § 13; U.S. Const. amend. XIV. Moreover, due to their right to control and manage, corporate directors are not employees subject to employment law protections. *See*, *e.g.*, *Mariotti v. Mariotti Bldg. Prods. Inc.*, 714 F.3d 761, 768 (3d Cir. 2013); *cf.* Opp'n at 18 n.9.

the "nexus" with a state other than the state of incorporation is relevant to which state's laws apply under the internal affairs doctrine. *McDermott*, 531 A.2d at 209, 214; *see also Mansfield Hardwood Lumber Co. v. Johnson*, 268 F.2d 317, 321 (5th Cir. 1959) (declining to apply law of state of incorporation due to corporation's minimal contacts). Plaintiff's failure to specify sufficient facts to plausibly allege a violation of the internal affairs doctrine is fatal to Count Four.

## C. Plaintiff Does Not Have Standing to Assert Unnamed Corporations' Interests under the Internal Affairs Doctrine

The Affidavit of Edward Blum, ECF No. 43-1, ("Blum Affidavit") does not establish an injury on which to base Plaintiff's standing. Indeed, it confirms that the corporation in which Mr. Blum owns shares elects its directors by a plurality, Blum Aff. ¶ 8, and does not aver any anticipation of a contested election. Therefore, the corporation's slate of board nominees can be elected by a single vote, and Mr. Blum is free to vote his conscience. *See* Mot. at 19-20; Jennings Decl. ¶¶ 23-24, 26-31, ECF No. 41-6. While Mr. Blum speculates that he may "potentially" nominate board candidates, Blum Aff. ¶ 5, he is incorrect that the corporation would be required to include his nomination in its proxy statement, Blum Aff. ¶ 10. In fact, the regulation cited in the Blum Affidavit states the opposite. *See* 17 C.F.R. § 240.14a-8(i)(8) (shareholder proposals need not be included on proxy card if they "[s]eek[] to include a specific individual in the company's proxy materials for election to the board of directors."). Moreover, the *potential* impact of SB 826 and AB 979 on Mr. Blum's *potential* nomination of board candidates is precisely the kind of hypothetical or conjectural harm that does not confer Article III standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) ("[R]espondents' speculative chain of possibilities does not establish that injury . . . .").[10]

---

[10] The Ninth Circuit held that a shareholder plaintiff had alleged an equal protection injury to challenge SB 826 in *Meland v. Weber*, 2 F. 4th 838, 846 (9th Cir. 2021), without the benefit of evidence concerning the limited influence of individual shareholder votes. Moreover, the injury recognized in *Meland* does not extend to a direct shareholder action under the internal affairs doctrine. *See* Mot. at 18-19.

1  Nor does Mr. Blum have a generalized right to seek declaratory relief as to

2  whether the internal affairs doctrine precludes application of SB 826 or AB 979.

3  *Southcentral Found. v. Alaska Native Tribal Health Consortium,* 983 F.3d 411 (9th

4  Cir. 2020), *see* Opp'n at 18, does not support Plaintiff's position. The plaintiff in

5  *Southcentral* had a statutory right to be represented on the board of directors of an

6  intertribal consortium and challenged the consortium's action in denying its

7  representative's voting rights and access to information critical to the plaintiff's

8  participation in the consortium. *Id.* at 414. Plaintiff has not alleged or established

9  that its shareholder members have influence similar to the plaintiff in *Southwest* and

10  cites no case suggesting that shareholders can eschew Article III's prohibition on

11  advisory opinions simply because they wonder whether a particular state law could,

12  under unspecified conditions, impact the corporations in which they hold shares.

13  *See, e.g.*, *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (Article III requires that

14  courts decide "concrete legal issues, presented in actual cases, not abstractions").[11]

15  The only injury asserted as to Plaintiff's "ousted" director member goes to its

16  equal protection and § 1981 claims, and Plaintiff does not respond to the

17  Secretary's argument that persons unconnected to a corporation cannot assert the

18  interests of corporations under the internal affairs doctrine, except to disagree.

19  Opp'n at 20. Because Plaintiff has failed to establish standing through its members

20  to assert a claim under the internal affairs doctrine, and because the internal affairs

21  doctrine is not a cause of action, Count Four must be dismissed with prejudice.

22  ## CONCLUSION

23  For the foregoing reasons, the California Secretary of State respectfully

24  requests that the Court grant the Secretary's Motion to Dismiss the Complaint.

25

26

27  [11] Plaintiff's suggestion that its shareholder members risk liability under 42 U.S.C. § 1981 lacks factual support. Opp'n at 19; *see, e.g.*, *Hableton Bros. Lumber Co. v.*

28  *Balkin Enters., Inc.*, 397 F.3d 1217, 1228 (9th Cir. 2005) (Oregon law requires shareholder control and misconduct to impose liability for corporation's actions).

1     Dated:  October 18, 2021                            Respectfully submitted,

2                                                ROB BONTA
                                               Attorney General of California

3                                                MICHAEL L. NEWMAN
                                               Senior Assistant Attorney General

4                                                LAURA L. FAER
                                               VILMA PALMA-SOLANA

5                                                Supervising Deputy Attorneys General
                                               SOPHIA CARRILLO

6                                                HEIDI JOYA
                                               EDWARD NUGENT

7                                                KANWALROOP KAUR SINGH
                                               Deputy Attorneys General

8

9

10                                              */s/ Julia Harumi Mass*
                                               JULIA HARUMI MASS

11                                                Deputy Attorney General
                                               *Attorneys for California Secretary of State*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Secretary of State's Motion to Dismiss Complaint
Case No. 2:21-cv-05644-RGK (RAOx)