1                   IN THE UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF CALIFORNIA
2

3      ALLIANCE FOR FAIR BOARD
       RECRUITMENT,
4              Plaintiff,
                                       Sacramento, California
5      vs.                             No. 2:21-cv-01951-JAM-AC
                                       Tuesday, January 11, 2022
6      SHIRLEY N. WEBER,               1:31 p.m.
               Defendant.
7      _____/

8                        TRANSCRIPT OF PROCEEDINGS
                            MOTION TO DISMISS
9          BEFORE THE HONORABLE JOHN A. MENDEZ, DISTRICT JUDGE
                   (Proceedings held via videoconference.)
10                          ---oOo---

11
       APPEARANCES:
12
         For the Plaintiff:          BENBROOK LAW GROUP, PC
13                                    701 University Avenue,
                                      Suite 106
14                                    Sacramento, CA  95825
                                      By:  BRADLEY A. BENBROOK
15                                    Attorney at Law

16
                                      BOYDEN GRAY & ASSOCIATES
17                                    801 17th Street NW, Suite 350
                                      Washington, DC  20006
18                                    By:  JONATHAN A. BERRY
                                           MICHAEL BUSCHBACHER
19                                    Attorneys at Law

20
       (Appearances continued on following page)
21

22       Official Court Reporter:    Thresha Spencer,
                                      CSR, RPR
23                                    501 I Street
                                      Sacramento, CA 95814
24
       *Proceedings recorded by mechanical stenography, transcript
25     produced by computer-aided transcription*

1                         APPEARANCES CONTINUED

2    For the Defendant:              CALIFORNIA DEPARTMENT OF
                                     JUSTICE
3                                    1515 Clay Street, Suite 2000
                                     Oakland, CA  94612
4                                    By:  JULIA HARUMI MASS
                                     Attorney at Law
5

6                                    OFFICE OF THE ATTORNEY GENERAL
                                     300 South Spring Street,
7                                    Suite 1702
                                     Los Angeles, CA  90013
8                                    By:  HEIDI JOYA
                                     Attorney at Law
9

10                            ---o0o---

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    SACRAMENTO, CALIFORNIA, Tuesday, January 11, 2022, 1:31 p.m.

2                              --o0o--

3    (Proceedings were held via the Zoom application.)

4            THE CLERK:  Please come to order, court is now in

5    session.  The Honorable John A. Mendez, United States District

6    Court Judge, presiding.  Calling civil case 21-1951; Alliance

7    for Fair Board Recruitment versus Weber.

8            THE COURT:  All right.  Good afternoon.  If counsel

9    could state your appearances, beginning with the plaintiffs.

10           MR. BENBROOK:  Good afternoon, your Honor.  Brad

11   Benbrook for plaintiff.  I'm joined by and happy to introduce

12   you to my colleagues, Jonathan Berry and Michael Buschbacher.

13   They're on the line here, as I believe they coordinated with

14   your deputy.  Your Honor, Mr. Berry will talk about the equal

15   protection issues and Mr. Buschbacher will speak about the

16   internal affairs issues.

17           THE COURT:  Okay.  Thank you.

18           MS. MASS:  Good afternoon, your Honor.  I'm Julia

19   Harumi Mass.  I'm here on behalf of the California Secretary of

20   State, and with me on the line is Heidi Joya.

21           THE COURT:  Where is -- oh, there she is.  Okay.

22       All right.  Good afternoon to all of you.  Let's jump right

23   into it, this is a motion to dismiss.  This is a lawsuit --

24   this is the one that was filed in the Central District and was

25   sent up to me; is that right?  Yes, everybody is nodding, okay.

1      Four claims:  Count one involves SB 826, which this Court

2   is intimately familiar with.

3      Count two alleges AB 979, violates Fourteenth Amendment's

4   Equal Protection Clause.

5      Count three is that AB 979 violates Section 1981 by

6   requiring discrimination based on race and ethnicity.

7      And count four focuses on both SB 826 and AB 979 and the

8   internal affairs doctrine.

9      A quick question for the plaintiffs, it wasn't clear.  In

10   terms of your challenge, and these are all facial -- well,

11   that's the question.  Your challenge to AB 979's racial

12   classification, is that the only challenge that's being made to

13   AB 979 and not the LGBT portion of 979, Mr. Berry?

14          MR. BERRY:  Yes, your Honor, that's correct.  We are

15   not challenging the sexual orientation part.

16          THE COURT:  Okay.  I just want to make sure of that.

17   And then -- let me -- I want to go in reverse.

18      So, Mr. Buschbacher, I want to focus on the motion to

19   dismiss the internal affairs cause of action.  Let me say, just

20   generally, this is a motion to dismiss brought at a very early

21   stage of the lawsuit.  I don't know why I saw request for

22   judicial notice and evidentiary objections, and that's usually

23   what happens when I have good lawyers that just can't help

24   filing lots of paper.  But it is a motion to dismiss, folks, so

25   I look at the complaint, I look at the law.  Can the complaint

1     survive as a matter of law?  It's really that basic and that

2     simple.

3          Declaration requests for judicial notice, evidentiary

4     objections add nothing at a motion to dismiss stage, so I am

5     strongly discouraging you when you deal with other federal

6     district court judges to stop filing more paper.  Less is

7     better.  So let's focus on the complaint, let's focus on the

8     law.

9          And very simply put, Mr. Buschbacher, I didn't find a case

10    which allowed your clients to bring a claim under the internal

11    affairs doctrine as a standalone cause of action.  So that's my

12    main question to you is, are you aware of any binding case law

13    that recognizes this is a standalone claim?  You cited to

14    something out of Delaware, from what I recall, which is a

15    Delaware Supreme Court case, completely nonbinding,

16    non-persuasive, and did nothing for me.  So tell me why I

17    shouldn't just get rid of this claim and let's focus on the

18    real claims in this lawsuit.

19               MR. BUSCHBACHER:  Well, your Honor, first I'd say

20    this is a real claim, and it's an important one.

21               THE COURT:  Well, you and I will disagree, but go

22    ahead.

23               MR. BUSCHBACHER:  So the -- there is no binding case

24    law one way or the other on this.  There are cases that have

25    proceeded under the internal affairs doctrine.  For instance,

1  the *TLX* case, which we cite in our brief, which is a District

2  of Oklahoma case explicitly --

3          THE COURT:  Another persuasive District Court, but go

4  ahead.

5          MR. BUSCHBACHER:  Yes, your Honor.  So, like I said,

6  there is no binding case here that ties their hands one way or

7  the other.  I do think on the sort of very strong suggestions

8  of both the *Edgar* case, the Supreme Court case, that one of the

9  two Supreme Court cases that have gotten into this, and then

10  the *CTS* case.

11      Both of those cases are very strong suggestions that there

12  is, as *CTS* puts it, "Nothing more fundamental as a matter of

13  basic corporate law than this point that one state can't

14  intrude on the authority of other states to set the rules for

15  corporations that are incorporated under their law."

16      And it's really only following on those cases that

17  *McDermott* and *VantagePoint* are built.  They're not adding some

18  new or speculative thing, they just explicate what's already

19  being, like I said, very strongly suggested in *CTS* and *Edgar*.

20      And that point is that this fundamental notion of state

21  sovereignty which lets states be, in Justice Brandeis' terms,

22  "laboratories of democracy" requires a parody between states

23  when it comes to regulating matters that are their own, and

24  that's why the Dormant Commerce Clause, for instance, prohibits

25  interference from one state against another with respect to

1    interstate commerce.

2        And the internal affairs doctrine is one application of

3    that point.  And it also connects to this due process right

4    which is recognized in *McDermott* and in *VantagePoint* and has

5    been followed by every single Federal District Court that has

6    ever considered the issue, to my knowledge.  Certainly I

7    haven't seen anything in the briefing on the other side that

8    takes a different tack.

9        And those cases all say that there's a due process issue,

10   and it is pretty straightforward why.  You have a right to know

11   what law applies to you.  You have a fair notice right to know

12   what the law is.  And when one state muddies the water, as

13   California has done here by saying, "Well, you may have your

14   own rules, Delaware, or any other state, but we're going to

15   regulate that."

16       Then it is unclear to every shareholder of every company

17   covered by that law that's not incorporated under California

18   law and every director of those corporations what restrictions

19   actually apply to them.

20       And it's very straightforward to go into court with -- to

21   vindicate a due process violation, and we've done it.  In

22   paragraph 12 of our complaint we invoke 42 U.S.C. Section 1983,

23   and we connect that explicitly to our internal affairs claim.

24       Also, there is, just like with all --

25                 THE COURT:  That's fine.  I don't have any problem

1    with you connecting the internal affairs doctrine with another

2    claim.  It's just that no court has ever gone down this path.

3    I give you major bonus points for creativity in trying to bring

4    what is, in effect, a law review argument into a case, but

5    you've got the wrong Court for convincing a judge to do that, I

6    have to tell you.  Very practical, very by the book.

7    Suggestions mean nothing to me, law means everything to me.

8    And while someone may have strongly suggested you can go down

9    this path, I'm not going to be the Court that's going to let

10   you go down this path.  It's just not my nature.

11        It's creative, I give you credit for that, but either the

12   Ninth Circuit has got to tell me this is okay or there's some

13   other District Court closer to me, including my own District

14   Court, tells me it's okay.  And I didn't see that case.

15        And it tends -- lawyers tend to get creative, and I

16   understand that, but it also creates issues for courts when

17   there are other causes of action that really are at the gist of

18   a lawsuit.  I don't like kitchen sink approaches, and I'm not

19   accusing you of that, but it tends to sort of seem like, "Let's

20   throw this one in too, and it's creative and let's see if we've

21   got a judge who might go along with it."

22        One, it's not necessary, two, no other court has ever seen

23   it.  And I understand your argument, I'm just not convinced

24   that there is any reason to keep it in as a matter of law.  So

25   those are my feelings.

1    And you answered my question, I appreciate it.  I'm just

2    going to let you know that I disagree.  And if I'm wrong, then

3    the Ninth Circuit can tell me I'm wrong and then you'll have a

4    Ninth Circuit opinion where you can bring this the next time

5    around.

6        All right.  So let me focus on SB 826, the cause of action

7    under SB 826.  I think all of you are or should be aware of the

8    order that I issued at the end of December denying a motion for

9    injunctive relief in *Meland* regarding SB 826.  My views

10   regarding SB 826 are really set forth in that order.

11       And so I also don't believe that this lawsuit can go

12   forward on a facial challenge to SB 826.  Whether you want to

13   challenge SB 826 on an as applied basis or not, I leave it up

14   to you.

15       The other interesting thing to me in general that I saw in

16   the briefs is little or no discussion about the scrutiny

17   standards.  And I saw sort of a throwaway line in the

18   plaintiff's brief that you think that SB 826 is subject to

19   strict scrutiny or heightened scrutiny, and I obviously

20   disagree with that.  But I don't think a facial challenge

21   can -- to SB 826, at least based on my prior ruling and my

22   reading of the case law involving this gender law, can go

23   forward.

24       I don't want to -- and I'll go into more detail, but just

25   so you know my initial reaction to that count.  My ruling would

1    be that I would grant the motion to dismiss without prejudice

2    to see if you really wanted to challenge SB 826 on different

3    grounds -- not on facial grounds -- but on an as applied basis.

4        So, Mr. Berry, I think you were going to argue SB 826.  Try

5    not to repeat anything that's in your brief that's already in

6    the record, I just want to get your reaction to my views on

7    that cause of action.

8            MR. BERRY:  Of course, your Honor.  I'm happy to do

9    it.  I think the -- I think the major difference I would want

10   to sketch out between the Court's decision on the *Meland*

11   preliminary injunction and where we are now is a matter of

12   posture.  So in the PI posture, of course, Mr. Meland had to

13   address kind of all of the elements of what he put forward as

14   the unconstitutionality of 826.  We are at a -- we're at a

15   different place.  We're on the Rule 12 posture, and what we're

16   dealing with right now is an issue that was not presented in

17   the litigation over the PI in the *Meland* case, which is this

18   facial as applied distinction.

19       I think the core theme I'd like to present to the Court on

20   this is that, okay, the governing standard from the Ninth

21   Circuit require, authorize, encourage discrimination on one of

22   these protective bases.  That's *Bras*, that's *Monterey*

23   *Mechanical*.  That goes to state action, not private compliance

24   strategies.  It is absolutely -- I agree completely that there

25   are going to be scenarios where an individual company may not

1   be needing to commit discrimination on the basis of race or sex

2   in order to comply with one of these laws, but the text of

3   Equal Protection Clause directs us to state action.

4        And in every case California is putting its thumb on the

5   scale in, you know, to use the facial standard language, it's

6   in all sets of circumstances, California is setting that up.

7             THE COURT:  Let me run this by the lawyers, and I

8   think it's at, again, the center of the case, the Ninth Circuit

9   is going to have to deal with it based on my *Meland* opinion if

10  they take up the order on the preliminary injunction.

11       You can see it in the order, and what I'm struggling with

12  is gender seems to be treated much differently than race, to

13  put it as simply as possible.

14       Look, we're at a motion to dismiss; I'm not ruling on the

15  merits or the lack thereof regarding 979.  But I think 979,

16  that there will be difficulties with 979 going down the road.

17  I'll say that without in any way being held to that statement,

18  further briefing, and the merits of this case.  This isn't a

19  merits decision.

20       But in preparing the *Meland* order, there was a difference

21  that I saw between the way courts have treated gender and the

22  way courts have treated race.  And I had that discussion with

23  the *Meland* lawyers telling them you tend to use the phrase race

24  or sex.  You use it in the same sentence, and the courts

25  haven't treated it this way.  And that was one of the

1     underlying bases as well for my *Meland* decision.

2          And that's what I think is the same issue with your facial

3     challenge to 826 is that:  That difference that the courts have

4     raised between gender and race.

5          And so I -- again, I think it's up to you as to whether you

6     want to change your strategy or bring a claim on an as applied

7     basis rather than a facial challenge.  Or whether you want to

8     stick to your facial challenge, I just don't think you've --

9     you've stated -- I don't think there is a basis in the law for

10    stating a facial challenge to 826.

11         I do think there is -- we'll get to it -- but I do think

12    there is clearly a basis for your counts two and three, your

13    challenge as to 979.  That wasn't a difficult issue for me.  I

14    don't think the motion to dismiss succeeds at all on those two

15    counts, and I'm not going to spend a lot of time on counts two

16    and three.

17         Count one, honestly, I'm struggling with a little.

18              MR. BERRY:  Yes.

19              THE COURT:  But I tend to believe that it's not going

20    to survive a facial challenge, but you may decide to challenge

21    826 on different grounds.

22         So go ahead and respond to that, Mr. Berry.

23              MR. BERRY:  I appreciate that, your Honor.  So there

24    is -- there's an issue that our claims against 826 and 979 have

25    in common, and then they start to diverge a little bit down the

1  line analytically.

2      The threshold question, which is what we're dealing with

3  now, is simply is there discrimination?  Like, is there some

4  kind of state required/authorized/encouraged discrimination on

5  the basis of one of these protected bases?

6      And that goes -- that analytically applies whether we're

7  talking about race or we're talking about sex or some other

8  protected basis.

9      Downstream, later in the case for the claims, you know,

10  say, claims two and three, and I hope to say claim one, but

11  it's obviously up to the Court.  Downstream is when we start to

12  talk about, okay, say that there is discrimination, what's the

13  justification?  And that's where absolutely 100 percent the

14  doctrine has race and sex discrimination diverge.  And so you

15  have race discrimination goes under strict scrutiny, got to be

16  compelling state interest, narrow tailoring.  Sex

17  discrimination is heightened or exacting or intermediate

18  scrutiny with -- I don't have the verbiage just right -- but

19  important or substantial state interest, as your Honor laid out

20  in the *Meland* case.

21      At this threshold, though, we are dealing with them -- it's

22  the same threshold question, which is simply, is there

23  discrimination?  We would get to justification questions later

24  on in the litigation.

25          THE COURT:  You challenge the application of *Salerno*

1   in your briefs.  *Salerno* is the Supreme Court case that says,

2   "A facial challenge to a legislative act is, of course, the

3   most difficult challenge to mount successfully, since the

4   challenger must establish that no set of circumstances exists

5   under which the Act would be valid."

6        Also citing *Washington State Grange v. Washington State*

7   *Republican Party*, 2008 Supreme Court case, in which the Supreme

8   Court said that, under *Salerno*, "A plaintiff can only succeed

9   in a facial challenge by establishing that no set of

10  circumstances exists under which the Act would be valid, i.e.,

11  that the law is unconstitutional in all of its applications."

12       Given my *Meland* decision, I don't think you can show that

13  or you haven't alleged that -- well, you have alleged it, but

14  that you can meet the *Salerno* standard.

15       Now, you dispute the application of *Salerno*, you cite

16  *Citizens United v. FEC*.  I didn't find that to be very

17  persuasive at all.  And I do think in applying *Salerno* to

18  this -- to this law, to SB 826, I think that's why I think your

19  facial challenge, even as alleged, would fail.

20            MR. BERRY:  Your Honor, the way I would put it is

21  this turns on the question of application.  So let me say at

22  the outset, while we disagree as to the ultimate kind of

23  importance of the facial standard, I don't want to say that we

24  directly challenge whether *Salerno* governs.  I do think *Salerno*

25  governs as the standard that would apply to the extent this is

1   a facial challenge.

2        The issue here is application.  So *Salerno* says no set of

3   circumstances or it's unconstitutional in every application.

4             THE COURT:  Right.

5             MR. BERRY:  Right.  So the point of application, we

6   would point out, is California pronouncing, setting this

7   uniform standard.  That's the -- it tips the playing field in

8   every circumstance, and that's something that the Supreme Court

9   in the *Jacksonville* case has said itself, you know, plausible

10  injury and fact under the Fourteenth Amendment, the creation of

11  that unlevel playing field, which really it's the entire field.

12       It doesn't necessarily mean that in any particular case a

13  competitor, you know, going uphill against that tilted playing

14  field is going to lose out.  The point is Fourteenth Amendment

15  protects processes, not merely outcomes, and that's how you get

16  the Ninth Circuit saying "encourages" as well as "requires or

17  authorizes."

18             THE COURT:  But for your complaint to go forward on

19  the SB 826 challenge, you've got to allege that in all its

20  applications SB 826 is unconstitutional.  And I've already

21  found that it's not -- well, that the likelihood of success is

22  that it's not unconstitutional.  So why would I allow your

23  claim to go forward when I don't think it's plausible, at least

24  at this point, that 826 is unconstitutional in all its

25  applications?  That's where you're losing me.  I don't know how

1  I can be consistent between my *Meland* opinion and allowing this

2  to go forward on a facial challenge.  And I don't know how you

3  could amend -- I also don't know how you could amend it to try

4  to allege a facial challenge given what's required in terms of

5  unconstitutional in all its applications.

6         MR. BERRY:  And I think if the application -- your

7  Honor, what I would say to that is the Equal Protection Clause

8  is a restriction on state action.  It's not a restriction on

9  private corporation actions, and I've already indicated there

10  can absolutely be scenarios where private corporations, you

11  know, satisfy these numbers without thereby discriminating,

12  100 percent true.

13     But, you know, take hypothetically a law where in

14  California -- parallel universe California passes a law saying,

15  "There must be three white men on every board," or just to make

16  it more precise with 826, "There must be three men on every

17  corporate board, every public company board in the state."

18     Again, lots and lots of companies, I think as California's

19  findings indicate, would satisfy that without having to commit

20  any additional discrimination, and yet California would

21  absolutely be encouraging in that case discrimination on the

22  basis of sex.

23     We would need to get in, you know, further that litigation

24  would need to talk at a later stage this question of

25  justification, you know, is intermediate or heightened scrutiny

1    satisfied?  But the State of California has not put that

2    forward as a ground for their motion to dismiss.  They're

3    instead trying to direct attention to, "Okay, there are private

4    compliant strategies that can get there without discriminating,

5    but private compliant strategies is not where the Fourteenth

6    Amendment analysis goes, it's state action.  And in every case

7    California has tilted that playing field that -- which does

8    satisfy *Salerno's* facial standard, in our view.

9              THE COURT:  You still have to justify it.

10             MR. BERRY:  Yeah.

11             THE COURT:  This is an unfair question, and again,

12   you may not be prepared for it, but I ask it more out of

13   curiosity to both sides.  Well, I'll ask you first.

14        Apparently, someone in a trial in Los Angeles testified for

15   the State of California that this law now is merely

16   voluntarily -- requiring voluntary compliance.  It's a law

17   that's on the books, but corporations only have to voluntarily

18   comply with it.  They're not going to impose any punitive or

19   monetary penalties on corporations.  Interesting testimony.

20        Does that in any way impact your claim with respect to this

21   law or, again, I ask it more out of curiosity if you've

22   considered whether you really need to file a lawsuit against a

23   law that apparently is only -- corporations only subjected to

24   voluntarily comply with it.

25             MR. BERRY:  So I would say, your Honor, there's some

1    version of this issue that can come up anytime simply because

2    of prosecutorial discretion, you know, where the state can pass

3    a law and then the executive may never get around to enforcing

4    it.  It also creates some weird -- potentially some weird

5    mootness issues, but if -- look, if the State of California

6    wants to talk about a consent to create, happy to have that

7    conversation offline --

8             THE COURT:  Okay.

9             MR. BUSCHBACHER:  -- and then come back to you.

10            THE COURT:  Ms. Moss, I know you probably do not

11   disagree with my initial thoughts about counts one and four.

12   On the other hand, I did not find a lot of merit with respect

13   to the arguments that counts two and three need to be dismissed

14   based on the case law that I've reviewed or that -- I think

15   there was a standing argument also tossed in.  I think *Meland*

16   put to rest any standing arguments the state might raise and

17   told me that these plaintiffs clearly have standing.  So I'm

18   not going to spend any time on standing, but I'll give you an

19   opportunity to make any record you want with respect to counts

20   two and three.  I just think those clearly can go forward on a

21   facial challenge basis.

22            MS. MASS:  Thank you, your Honor.  I would like to

23   address counts two and three.

24            THE COURT:  You can address my other question too

25   about this isn't really a loss, just a "we hope you comply with

1    it law" that the state has testified to in that LA trial.

2              MS. MASS:  I can confess I was not there for that

3    testimony, but I do know that the Secretary of State has not

4    taken any steps to enforce those -- you know, to fine any

5    corporations or issue regulations that are a precursor to

6    issuing fines, and so there hasn't been enforcement yet.  And

7    that's really, you know, what -- in terms of the Fourteenth

8    Amendment and state action, that's the state action that should

9    be directed at is when is the state -- when is the state

10   enforcing these laws, and this goes for both AB 979 and SB 826.

11       But in terms of the challenge --

12             THE COURT:  I'm not sure I understand.  So these

13   lawsuits are premature or they're moot?  Is that what I'm

14   supposed to take from that argument?  I should dismiss them for

15   mootness purposes?

16             MS. MASS:  Perhaps ripeness.  We haven't brought that

17   as an argument in this motion, but it is an argument that was

18   brought with respect to one of the state -- one of the state

19   court cases in challenging AB 979 is that it's really not ripe

20   for consideration because the Secretary of State has not taken

21   steps to enforce the laws.

22       So in terms of injunctive relief against the Secretary that

23   there is a ripeness problem, but it isn't something that we

24   raised in this motion, and so --

25             THE COURT:  Okay.

1          MS. MASS:  Yeah.  So that will be something that

2     perhaps we get to down the road.

3          THE COURT:  Okay.  Let's get back to counts two and

4     three then.

5          MS. MASS:  Thank you.  I mean, as the Court has

6     noted, *Salerno* is the governing standard.  And as counsel for

7     plaintiff has admitted, corporations can meet the requirements

8     of AB 979 without considering race.  And, actually, with

9     respect to the plaintiff's own claim, which is that -- which

10    only challenges AB 979 with respect to racial categories, the

11    fact that corporations can meet the requirements of AB 979

12    without any consideration of race and only consideration of

13    LGBT categories is itself a basis to dismiss plaintiff's counts

14    two and three.

15        In addition --

16          THE COURT:  Say that one more time.

17          MS. MASS:  Well, so the plaintiffs could challenge

18    AB 979 only with respect to the use of racial categories --

19          THE COURT:  Right.

20          MS. MASS:  -- but any corporation that's covered by

21    that law could comply with it by using only LGBT categories,

22    only adding Board of Directors that are gay or transgender --

23          THE COURT:  Right.

24          MS. MASS:  -- bisexual or lesbian, and then in that

25    way not use race at all.  If they're not using racial

1    categories and the plaintiffs are challenging it only based on

2    the use of racial categories, then there's a -- you know, all

3    of the law could be implemented without violating the Equal

4    Protection Clause in the manner that plaintiffs have set out in

5    their complaint.

6            THE COURT:  Why wouldn't -- why wouldn't I at least

7    strike down the race portions?  Maybe the law goes forward on

8    the LGBTQ portions, I don't know.  Those aren't being

9    challenged in this lawsuit, but you're saying I can't take up

10   the argument that at least a portion of the law that requires

11   public corporations to have certain minority members on their

12   board, that I can't consider that because it also has an LGBTQ

13   component as well?

14           MS. MASS:  What we're saying, your Honor, is that it

15   would be -- that it would be inappropriate to consider it in a

16   vacuum, just in the abstract without specific facts because --

17   and that's the reason that *Salerno* exists.

18           THE COURT:  Yeah, I'm not following that.  The

19   argument that I couldn't issue an order saying at least that

20   portion of the law, AB 979, that orders or requires

21   corporations to have a certain number of minority members, that

22   I can't strike that down?  I couldn't issue an order as to that

23   portion of the law?

24           MS. MASS:  I wouldn't say that, your Honor, just to

25   try to make the distinction clearer.

1             THE COURT:  But you're not going to dismiss their

2     claim, right?

3             MS. MASS:  Right.  Because it's a facial challenge,

4     and there are no facts -- they have not alleged facts

5     sufficient to really state an equal protection challenge here.

6     And the reason is that as you -- as I'm sure as you're well

7     aware, when looking at a state program, a public program like a

8     public contracting program or a university admissions program

9     where the state is using racial categories, courts get deeply

10    involved in how is that program implemented.

11            THE COURT:  Right.

12            MS. MASS:  In *Bakke*, for example, there were 16 seats

13    that were set aside only for students of color.  We don't have

14    that situation here.  We have a situation where diversity is

15    something that the state's requiring, but how the corporations

16    actually implement that is going to depend corporation to

17    corporation.  And without the specific facts where the

18    plaintiffs could allege that there was discrimination in the

19    particular implementation of this law, the Court's not in a

20    position to really evaluate whether there's a discrimination

21    problem in the implementation of the law.  And as counsel

22    said --

23            THE COURT:  Sorry to interrupt, but I thought I read,

24    Mr. Berry, at least one of your clients was a board member and

25    has alleged that he lost his seat because of this law, right?

1              MR. BERRY:  That's correct, your Honor, yes.  Because

2      of -- yes, because of 826.

3              THE COURT:  Yeah.  Isn't that a fact that I should

4      consider in determining whether the case should go forward or

5      not or -- or are you arguing maybe they can bring an as applied

6      challenge and not bring a facial challenge?  Is that what

7      you're arguing?

8              MS. MASS:  Exactly, your Honor.

9              THE COURT:  Okay.

10             MS. MASS:  They can bring an as applied challenge as

11     to that shareholder, but they can't bring across the board,

12     we're striking down the state law without -- particularly where

13     counsel has admitted that it can be implemented without

14     consideration of race.  And --

15             THE COURT:  What do I do with the *City of*

16     *Jacksonville* and the *Bras,* the Ninth Circuit case?  What do you

17     do with those, because those were both racial laws involving

18     race.  Not gender, but race.  So do I ignore those?

19             MS. MASS:  No, no, your Honor.  There are important

20     differences here.  In the *City of Jacksonville* case, it was a

21     set aside, so there were ten percent of the contract spending

22     that was -- and/or certain contracts because there was a change

23     in the program.

24         But either way there were certain limited resources that

25     were reserved only for the exclusive competition of certified

1   black and female owned businesses.

2       And so the plaintiffs in that case literally could not

3   compete for those seats, and that's just not true here.

4   There's no particular percentage requirement.  It -- you know,

5   corporations can add seats, so any corporation that wants to

6   hire, you know, include a white director can include that white

7   director and also can include a person from an underrepresented

8   community.

9       And so that's a distinction that's critically important

10  because of what the Court said in *Bakke*.  Your Honor, the Court

11  noted that racial diversity can be a pull and that race can be

12  considered, and I want to just point you to this language.  The

13  Court said, "The experience of other university admissions

14  programs which take place into account in achieving the

15  education diversity valued by the First Amendment demonstrates

16  that the assignment of a fixed number of places to a minority

17  group is not a necessity means towards that end."

18      We do not -- we have a number, but we also have an

19  expanding and -- the possibility of expanding the size of the

20  board so that it's not a limited resource the way public

21  contracting moneys in *City of Jacksonville* were and in *Bras*.

22          THE COURT:  I seem to recall the *Meland* lawyer

23  quoting a Supreme Court judge about, in effect, "You may want

24  to call it a quota, but this is the quota requiring a

25  corporation."  She was arguing to add seats.  It doesn't change

1    the fact that it's still a quota.  Again, in was the race

2    cases, not in the gender case.

3        Mr. Berry, you probably know what case I'm talking about,

4    who the Supreme Court judge is.  But it hit home with me that

5    you can try to convince me that it's not a quota, in the race

6    area, but this is a quota.  You may not want me to call it a

7    quota, but it's a quota.  And I know I'm paraphrasing, and I

8    can't remember the Supreme Court judge, but I just remember the

9    *Meland* lawyer reminding me over and over again that the Supreme

10   Court justice -- you can't split hairs the way you're trying to

11   split hairs.  It's a race-based law, and it is in every aspect,

12   at least in the Supreme Court's view, a quota.

13       Do you know what I'm talking about, Mr. Berry?  Justice

14   Powell, okay?  Does it ring a bell?

15                MR. BERRY:  Yeah, and --

16                THE COURT:  Sorry.  Go ahead, Mr. Berry.

17                MR. BERRY:  Okay.  So I would -- I think there's some

18   language from Justice Powell.  But there's, you know, the

19   *Grutter* case, and that was a case which upheld -- the Supreme

20   Court upheld a -- sort of a non-quota plus factor system for

21   the University of Michigan, I believe it is an undergraduate,

22   if I'm recalling that correctly.  They say that -- so quotas

23   are patently unconstitutional.  But, honestly, like *Bras* says,

24   it doesn't have to be a quota to be unconstitutional.  If --

25                THE COURT:  Yeah.  *Bras* says, "Plaintiffs alleging

 1  equal protection violations need not demonstrate that rigid

 2  quotas make it impossible for them to compete for any given

 3  benefit.  Rather, they need only show that they are forced to

 4  compete on an unequal basis."

 5      And the *Bras* Court instructed that "The relevant question

 6  is not whether a statute requires the use of such measures, but

 7  whether it authorizes or encourages them."

 8      The Ninth Circuit in the *Meland* case picked up on

 9  especially that phrase, encourages in overturning my ruling

10  that the plaintiffs didn't have standing.  I've learned my

11  lesson on that language.

12      I understand your argument, Ms. Mass, I just think you're

13  splitting hairs on these two claims.  I do believe they can go

14  forward.

15      I don't need any further argument.  I'm going to rule on

16  the motion to dismiss this afternoon.  I'm not going to issue a

17  written opinion.  You can thank Congress and, in particular,

18  the United States Senate for the fact you're not getting a

19  written opinion on a motion to dismiss.  If and when we ever

20  get a full complement of District Court judges, then maybe we

21  might be able to issue more written opinions.

22      And so now for 2022 I've put on the record my complaints.

23  But in all seriousness, on motions to dismiss in particular,

24  let me tell you that I am granting this motion in part and

25  denying this motion in part.  Not -- again, the request for

1    judicial notice and evidentiary objections, I'm not going to

2    specifically issue any type of ruling on because I don't think

3    it's necessary for a motion to dismiss.

4        In terms of count one, as I've indicated, it's the facial

5    challenge to 826 -- AB 826.  And I do believe the *Salerno*

6    standard is the standard to apply to for this claim, not to

7    *Citizens United* which is readily distinguishable.

8        The defendants contend that the plaintiff has not and

9    cannot plausibly allege that all applications of 826 -- I'm

10   sorry -- SB 826 are unconstitutional, and that count one should

11   be dismissed.  The Court does agree with respect to count one,

12   that plaintiff has not plausibly alleged that all applications

13   of SB 826 are unconstitutional and violative of the Equal

14   Protection Clause of the Fourteenth Amendment, nor does the

15   case law that was cited in support of plaintiff's position

16   support its argument that all applications are

17   unconstitutional.

18       Significantly, none of the cases that plaintiff cites

19   specifically addresses minimum gender diversity requirements

20   let alone applies a rule that such minimum gender diversity

21   requirements are per se unconstitutional.  And because the

22   plaintiff has not plausibly alleged that SB 826 is

23   unconstitutional in all its applications, the Court dismisses

24   count one without prejudice.  I leave it up to the plaintiffs

25   whether they believe they can allege -- further allege a facial

1     challenge or whether they want to change their theory and

2     allege an as-applied challenge to SB 826.  So that motion is

3     granted without prejudice.

4          In terms of the counts two and three, the challenge is to

5     AB 979, the racial classifications portions only.  Plaintiff

6     generally claims that AB 979 is facially unconstitutional

7     because everyone competing for a board position with a public

8     company headquartered in California faces an uneven playing

9     field, and that unfair process alone violates the Fourteenth

10    Amendment.

11         The defendant counters that there are constitutional

12    applications of AB 979, and the defendant has provided various

13    hypotheticals in support of its argument.  The defendant's

14    leading hypothetical is that any corporation can comply with

15    979 by appointing only LGBTQ individuals to fill the required

16    director positions.  The defendant also pauses hypotheticals of

17    race neutral board selection processes to achieve compliance.

18    Defendant contents that plaintiff's facial challenge to AB 979,

19    therefore, fails under *Salerno*.

20         Plaintiff, in response, argues that defendant's

21    hypotheticals miss the mark, because what makes AB 979

22    unconstitutional is its authorization or encouragement of

23    race-conscious decisions, not whether race-conscious decisions

24    may ultimately be avoided through alternative race-mutual

25    processes.  And again, in support, two very persuasive cases,

1   at least to this Court, is the *City of Jacksonville* case, the

2   1993 Supreme Court case, and the *Bras v. California Public*

3   *Utilities Commission Case*, 1995 Ninth Circuit case.

4        It is those two cases, as we've discussed, that I think

5   plaintiff's claims -- second and third claims -- are properly

6   pled and should be allowed to go forward.

7        Plaintiff, in particular, insisted it has stated a

8   plausible claim that AB 979 on its face authorizes or

9   encourages racial discrimination.  And because it encourages

10  such discrimination, it's unconstitutional regardless of

11  whether discrimination is actually required in every instance.

12       Plaintiff's point is that the illegality remains even if

13  some companies could devise workaround, as defendant's

14  hypothetical attempts to demonstrate, that AB 979 encourages

15  race-based discrimination, it is also why it is no defense that

16  AB 979 combines two distinct groups, racial minorities and

17  LGBTQ.

18       So counts two and three at this point will be allowed to go

19  forward; the motion to dismiss is denied.

20       As to count four, as I've indicated, I don't believe that

21  there is any legal basis for a separate standalone claim under

22  the internal affairs doctrine.  Defendants argue that the

23  doctrine claim is not cognizable, and as the reply brief

24  hammers home, the plaintiffs have not brought forward a single

25  case that recognizes the internal affairs doctrine as a

1     standalone cause of action.

2         They argue this is done surprising in light of the Supreme

3     Court's clear dictate that the internal affairs doctrine is a

4     conflict of laws principle, not a cause of action.  The

5     internal affairs doctrine is a conflict of laws principle which

6     recognizes that only one state should have the authority to

7     regulate the corporation's internal affairs.

8         "Matters peculiar to the relationships among or between

9     corporations and its current officers, directors, and

10    shareholders, because otherwise a corporation could be faced

11    with conflicting demands."  That's the *Edgar v. MITE Corp.*

12    case, a 1982 Supreme Court case.

13        Likewise, the Eastern District Courts have described the

14    doctrine as follows:  This is an Eastern District California

15    case from 2005.  "The internal affairs doctrine is a conflict

16    of laws principle that recognizes that only one state should

17    have the power to regulate matters peculiar to the relationship

18    among the corporation, its officers and directors, and its

19    shareholders."

20        While plaintiffs cite to a Delaware Supreme Court case,

21    *McDermott*, perhaps to try to persuade the Court otherwise, this

22    case is not binding on the Court, and the Court did not find

23    any point in which the Court treats the internal affairs

24    doctrine as a standalone cause of action.

25        Again, it's merely a suggestion or an application of the

1    internal affairs doctrine to other claims.  This does not

2    persuade this Court that a new standalone cause of action

3    should be recognized.

4        Plaintiff does try to ground its internal affairs document

5    claims in other clauses of the Constitution, particularly the

6    due process clause of the Fourteenth Amendment and the commerce

7    clause.  The plaintiff contents that its members have

8    Fourteenth Amendment due process rights to know what law will

9    apply to the covered corporations they own stock in, and that

10   AB 979 runs afoul of the Congress clause's prohibition, want

11   state laws that create an impermissible risk of inconsistent

12   regulation by different states.

13       But as the defendants argue, none of these purported

14   constitutional bases for count four are pled in the operative

15   complaint, and plaintiff cannot advance a theory not pled in

16   the operative complaint because that would deprive defendant

17   fair notice of plaintiff's claims.

18       Because a complaint does not identify a clause of the

19   constitution creating the cause of action for enforcement of

20   the internal affairs doctrine and because the plaintiff has not

21   brought forward any binding case law recognizing a standalone

22   cause of action, the Court dismisses count four.  I'm going to

23   dismiss that claim without -- I mean, I'm sorry, with

24   prejudice.  I don't believe that there's any amendment that

25   could be brought in an amended complaint that would not make

1  the claim at this point futile.  So that claim will be

2  dismissed with prejudice.

3      Again, the Court grants defendant's motion to dismiss count

4  one without prejudice, grants defendant's motion to dismiss

5  count four with prejudice, denies defendant's motion as to

6  counts two and three.

7      If you want to file an amended complaint, do so within

8  20 days, and the defendants will have 20 days thereafter to

9  file a responsive pleading.  Okay?  All right.  Thank you all.

10 The transcript will stand at the Court's order.  If you want to

11 order a copy of the transcript, just contact the court reporter

12 and she can get it to you.

13          MS. MASS:  Thank you, your Honor.

14          THE COURT:  Okay.  Thank you all.

15          MR. BERRY:  Your Honor, may I ask one quick question?

16          THE COURT:  Sure.

17          MR. BERRY:  With respect to a due process Fourteenth

18 Amendment claim or a claim arising under the commerce clause,

19 are those covered by your ruling saying that it's dismissed

20 with prejudice as the internal affairs doctrine claim?

21          THE COURT:  You mean, a separate claim under those?

22          MR. BERRY:  Yes.  So if we were to amend our

23 complaint to add a due process claim under the Fourteenth

24 Amendment and a claim under the commerce clause, would that be

25 covered?

1           THE COURT:  No.  It only covers what you pled.

2     There's always an issue, though, of should I allow an amendment

3     that now raises new claims that you didn't put in your initial

4     cause of action?  Normally I would say no, but we're at such an

5     early stage in this case, if you think you can allege those

6     types of claims or causes of action, I'd allow that.  It will

7     expand the complaint which will make me really happy, but I'll

8     leave it up to you as to whether you want to go down that path

9     as well.

10          MR. BERRY:  Thank you.  I'm not committing to

11     anything, I just wanted to understand.

12          THE COURT:  Yeah.  No, I understand.

13          MR. BERRY:  Thank you.

14          THE COURT:  All right.  Thank you all.

15          (Proceedings adjourned:  2:23 p.m.)

16                    ---o0o---

17     I certify that the foregoing is a correct transcript from the

18     record of proceedings in the above-entitled matter.

19

20                    /s/ Thresha Spencer
                      THRESHA SPENCER
21                    CSR No. 11788, RPR

22

23

24

25