BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 2530
Sacramento, CA 95814
Telephone: (916) 447-4900
Facsimile: (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

BOYDEN GRAY & ASSOCIATES PLLC
C. BOYDEN GRAY, Admitted Pro Hac Vice
JONATHAN BERRY, Admitted Pro Hac Vice
MICHAEL BUSCHBACHER, Admitted Pro Hac Vice
801 17th Street NW, Suite 350
Washington, DC 20006
Telephone: (202) 955-0620
berry@boydengrayassociates.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLIANCE FOR FAIR BOARD RECRUITMENT,<br><br>         Plaintiff,<br><br>    v.<br><br>SHIRLEY N. WEBER, in her official capacity as Secretary of State of the State of California,<br><br>         Defendant. | Case No.: 2:21-cv-01951-JAM-AC<br><br>**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 260(a), Plaintiff Alliance for Fair Board Recruitment submits the following Statement of Undisputed Facts in support of its Motion for Summary Judgment.

| | **Undisputed Facts** | **Supporting Evidence** |
|---|---|---|
| 1 | AB 979 states that, "According to a report by McKinsey & Company, for every 10 percent increase in racial and ethnic diversity on the senior-executive team, earnings before interest and taxes rise 0.8 percent." The study cited by this provision is Vivian Hunt et. al, *Diversity Matters,* McKinsey & Company (Feb. 2015). This report did not undergo peer review, and it states that, "The relationship between diversity and performance highlighted in the research is a correlation, not a causal link." | AB 979 § 1(m) <br><br> Ex. D, Vivian Hunt et. al, *Diversity Matters,* McKinsey & Company 1 (Feb. 2015), https://www.mckinsey.com/insights/organization/~/media/2497d4ae4b534ee89d929cc6e3aea485.ashx |
| 2 | The McKinsey &Company Study cited in AB 979 § 1(m) found that, with respect to North American firms, there was only a correlation of a 0.3 percent increase in EBIT (earnings before interest and taxes) margin for a 10 percent increase in ethnic board diversity with a p-value of 0.10. The 0.8 percent increase in EBIT mentioned in AB 979 § 1(m) was a global number. | AB 979 § 1(m) <br><br> Ex. D, Vivian Hunt et. al, *Diversity Matters,* McKinsey & Company 4, Ex. 3 (Feb. 2015), https://www.mckinsey.com/insights/organization/~/media/2497d4ae4b534ee89d929cc6e3aea485.ashx |
| 3 | AB 979 states that "A study by Dalberg Global Development Advisors found that the high tech industry could generate an additional $300 billion to $370 billion each year if the racial or ethnic diversity of tech companies' workforces reflected that of the talent pool." The study cited by this provision is Andria Thomas, et. al., *Decoding Diversity: the Financial and Economic Returns to Diversity in Tech*, Dalberg Advisors (June 23, 2016). This study did not undergo peer review. | AB 979 § 1(n) <br><br> Ex. E, Andria Thomas, et. al., *Decoding Diversity: the Financial and Economic Returns to Diversity in Tech*, Dalberg Advisors 17 (June 23, 2016), https://dalberg.com/wp-content/uploads/2016/06/Diversity-report.pdf |
| 4 | The Dahlberg study referenced in AB 979 § 1(n) reports that its "findings indicate clear correlations – though not necessarily causation – between more diverse tech company workforces and higher | Ex. E, Andria Thomas, et. al., *Decoding Diversity: the Financial and Economic Returns* |

| | | |
|---|---|---|
| | revenues, profits, and market value." "The links between African American representation and revenues were also positive, yet did not show statistical significance." | *to Diversity in Tech*, Dalberg Advisors 15 (June 23, 2016), https://dalberg.com/wp-content/uploads/2016/06/Diversity-report.pdf |
| 5 | In explaining AB 979's purpose, one of its authors stated that "since the beginning of recent social unrest, corporations have publicly messaged their support for diversity and Black lives. However, critics have pointed out this public support does not translate to diversity within a company and will not lead to long-term structural change." | Ex. F, Legislative Analysis for California Senate Rules Committee 5 (August 25, 2020) |
| 6 | A legislative analysis of AB 979 performed by counsel for the California Senate Committee on Banking and Financial Institutions while AB 979 was still a bill states that "This bill [AB 979] is sponsored by the author to help address the ethnic pay gap, facilitate employment and outreach opportunities for underrepresented communities, promote board diversification, establish pipeline creation and upward mobility of diverse technical talent, and facilitate retention of that talent through company culture and development." | Ex. G, Legislative Analysis for California Senate Committee on Banking and Financial Institutions 4 (July 28, 2020) |
| 7 | A legislative analysis of AB 979 performed by counsel for the California Senate Committee on Banking and Financial Institutions while AB 979 was still a bill states that "This bill implicates the application of two constitutional principles that would ordinarily fall within the purview of the Senate Judiciary Committee: equal protection of the law and the internal affairs doctrine." | Ex. G, Legislative Analysis for California Senate Committee on Banking and Financial Institutions 5 (July 28, 2020) |
| 8 | A legislative analysis of AB 979 performed by counsel for the California Senate Committee on Banking and Financial Institutions while AB 979 was still a bill states that "a statute that draws a distinction based upon race or ethnicity in this fashion–whether remedial or punitive in intent–is suspect and only passes constitutional muster if it can meet the strict scrutiny test," which it characterizes as a "notoriously high bar to meet." | Ex. G, Legislative Analysis for California Senate Committee on Banking and Financial Institutions 5-6 (July 28, 2020) |

| | | |
|---|---|---|
| 9 | A legislative analysis of AB 979 performed by counsel for the California Senate Committee on Banking and Financial Institutions while AB 979 was still a bill states that "Remedying past discrimination can be a sufficiently compelling government interest to withstand strict scrutiny," but that "the existence of general societal discrimination will not ordinarily satisfy the courts. Instead, courts conducting strict scrutiny review typically require some showing of specific discrimination that the statute remedies." | Ex. G, Legislative Analysis for California Senate Committee on Banking and Financial Institutions 6-7 (July 28, 2020) |
| 10 | A legislative analysis performed by counsel for the California Senate Committee on Banking and Financial Institutions while AB 979 was still a bill states that "To show that a statute is sufficiently narrowly-tailored to survive strict scrutiny review, the government must prove that the interest in question cannot be achieved through less-discriminatory means." | Ex. G, Legislative Analysis for California Senate Committee on Banking and Financial Institutions at 6 (July 28, 2020) |
| 11 | A legislative analysis performed for the California Senate Committee on Banking and Financial Institutions while AB 979 was still a bill states that to "fortify the bill against an equal protection challenge, the author may wish to provide greater detail regarding the specific discrimination that has allowed white people to occupy corporate board seats." | Ex. G, Legislative Analysis for California Senate Committee on Banking and Financial Institutions at 6 (July 28, 2020) |
| 12 | A legislative analysis performed by counsel for the California Senate Committee on Banking and Financial Institutions while AB 979 was still a bill states that "For similar reasons, the author may wish to include additional information in the findings and declarations about why other approaches to diversifying corporate boards have not been, or would not be, sufficiently effective." | Ex. G, Legislative Analysis for California Senate Committee on Banking and Financial Institutions at 6 (July 28, 2020) |

| | | |
|---|---|---|
| 13 | A legislative analysis performed by counsel for the California Senate Committee on Banking and Financial Institutions while AB 979 was still a bill states that, "Black and Brown communities have historically faced barriers to education, have been subject to bias in hiring practices, and been excluded from access to start-up capital and small business loans. . . . Without a diverse board it is increasingly difficult to attract diverse talent which then reinforces unconscious biases at the managerial and staff level. Even when staff from underrepresented communities are hired, the turnover rate is high due to feelings of isolation and prevalence of microaggressions. A culture shift in the boardroom cultivates an environment that values different perspectives and is more likely to hire and retain racial and gender minorities." | Ex. G, Legislative Analysis for California Senate Committee on Banking and Financial Institutions at 7 (July 28, 2020) |
| 15 | A legislative analysis performed for the California Senate Rules Committee while AB 979 was still a bill states that "The government usually must prove that the interest in question cannot be achieved through a different method that does not require drawing distinctions based on race and ethnicity to the same degree." | Ex. F, Legislative Analysis for California Senate Rules Committee (August 25, 2020) |
| 16 | A California Assembly Floor analysis of AB 979 prepared by counsel while AB 979 was still a bill comments that "The lack of diversity in corporate America is not a product of happenstance; rather, it is a product of systemic discrimination and bias that affects so many facets of our society – housing, education, criminal justice, and employment. This bill seeks to remedy one specific discriminatory outcome by ensuring that corporate boards meet a minimum standard of diversity." | Ex. H, California Assembly Floor Analysis 2 (Aug. 20, 2020) |
| 17 | A California Assembly Floor analysis prepared by counsel while AB 979 was still a bill notes that there was opposition to AB 979 by "Keith Bishop, a corporate law attorney who previously serviced as Commissioner of Corporations." It notes that Mr. Bishop was "opposed to the bill on grounds that it is unconstitutional and will adversely impact the participation of male and non-binary persons on the boards of directors of publicly held corporations. Observing that the provisions of AB 979 will layer | Ex. H, California Assembly Floor Analysis 3 (Aug 20, 2020) |

| | | | |
|---|---|---|---|
| | | on top of the provisions of SB 826, Mr. Bishop states, 'publicly held corporations will be required to comply with both sets of quotas. Therefore, individuals who self identify as both female and as African American, Hispanic, or Native American will undoubtedly be preferred as director candidates because they will satisfy both quotas. The easily predictable result of enactment of AB 979 would be a decrease in the over-all number of directors on publicly held company boards who self identify as male or non-binary and as being from an underrepresented community.'" | |
| | 18 | Elizabeth Warren long claimed Native American lineage. | Joshua Jamerson, *Elizabeth Warren Apologizes for DNA Test, Identifying as Native American*, Wall Street J. (Aug. 19, 2019) https://www.wsj.com/articles/elizabeth-warren-again-apologizes-after-release-of-native-american-ancestry-link-11566241904 |
| | 19 | Rachel Dolezal identifies as black and served as president of the Spokane Washington chapter of the NAACP. | *Race activist Rachel Dolezal: 'I identify as black'*, BBC (June 16, 2015) https://www.bbc.com/news/av/world-us-canada-33156905  Jenée Desmond-Harris. *How to Make Sense of Rachel Dolezal, the NAACP Official Accused of Passing for Black*, Vox (Jun 12, 2015), https://www.vox.com/2015/6/12/8770273/rachel-dolezal-white-black-naacp |

| | | |
|---|---|---|
| 20 | Hilaria Baldwin is a public figure married to actor Alec Baldwin. She is a Boston native of English, French-Canadian, German, Irish, and Slovak descent. For many years, she presented as being Spanish and a brief biography posted on the website of Creative Artists Agency, which represented Ms. Baldwin, incorrectly asserted that she was born in Mallorca, Spain. | Emily Kirkpatrick, *Hilaria Baldwin's Very Public Journey to Declaring "Yes I Am a White Girl"*, Vanity Fair (Dec. 28, 2020) https://www.vanityfair.com/style/2020/12/hilaria-baldwin-spanish-heritage-alec-baldwin-explanation-defense |
| 21 | Alliance for Fair Board Recruitment was founded on February 26, 2021, and has principal office at 3571 Far West Boulevard #17, Austin, Texas 78731. It has three board members and has held all meetings required by its bylaws. | Ex. A, Declaration of Edward Blum as President of the Alliance for Fair Board Recruitment ¶ 3 & attachment 1 thereto, *AFBR Bylaws and Board Resolutions* |
| 22 | The Alliance for Fair Board Recruitment is an IRS-approved 501(c)(3) non-profit membership organization. | Ex. A, Declaration of Edward Blum as President of the Alliance for Fair Board Recruitment ¶ 5 & attachment 2 thereto, *IRS Determination Letter* |
| 23 | The Alliance for Fair Board Recruitment exists for the "purpose of defending human and civil rights secured by law, including the right of individual to equal protection under the law and in particular with the goal of ending discrimination on the basis of race, sex, or sexual orientation in corporate board recruitment." | Ex. A, Declaration of Edward Blum as President of the Alliance for Fair Board Recruitment ¶ 4 |
| 24 | The Alliance for Fair Board Recruitment has 22 members. Several are well-qualified candidates for directorships whose ability to compete for director positions at publicly traded corporations has been hindered and who have been denied a level playing field by AB 979. | Ex. A, Declaration of Edward Blum as President of the Alliance for Fair Board Recruitment ¶ 6 |

| # | | |
|---|---|---|
| 25 | Several members of the Alliance for Fair Board recruitment are also shareholders who intend to vote for director candidates for corporations they have invested in that are covered by AB 979. These members object to the way that AB 979 encourages or requires them to take race and ethnicity into account in voting. | Ex. A, Declaration of Edward Blum as President of the Alliance for Fair Board Recruitment ¶ 6 |
| 26 | In addition to being its president, Mr. Blum is a member of the Alliance for Fair Board Recruitment and owns shares of a publicly traded company subject to AB 979. Mr. Blum intends to vote for director candidates for this company and objects to the way that AB 979 encourages or requires him to take race and ethnicity into account in voting. | Ex. B, Declaration of Edward Blum ¶¶ 5, 17 |
| 27 | One of the Alliance for Fair Board Recruitment's members, Robert Morris, lost his board position at a corporation company solely because he is a man, due to pressure on the company to have greater gender diversity on its board. | Ex. C, Declaration of Robert Morris ¶¶ 17-22 |
| 28 | Since then, Robert Morris was considered, and ultimately not selected, for a board position at a publicly held corporation headquartered in California. After he was rejected, the chairman of this corporation's board informed Mr. Morris that this was because of Mr. Morris's race and gender, asserting that Mr. Morris will not be able to work as a director of a public company, not because of any lack of talent or character, but because he is a white man who does not identify as LGBT. The chairman of this board explained in an email that, "given new CA board diversity requirements, future board members over the next several years will be women and/or minorities." | Ex. C Declaration of Robert Morris ¶¶ 17-22 & attachment 1 thereto *Email Exchange with the Chairman of the Board of Directors of CAI.* |
| 29 | Robert Morris has "an active interest in being recruited as an independent director by one or more corporate boards," especially in California and is well qualified for such positions in light of his "extensive professional experience as an independent director, having served as a director and the chairperson of the auditing committee of a large publicly traded company for 14 years." | Ex. C, Declaration of Robert Morris ¶¶ 3, 4 |