BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 2530
Sacramento, CA 95814
Telephone: (916) 447-4900
Facsimile: (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

BOYDEN GRAY & ASSOCIATES PLLC
C. BOYDEN GRAY, Admitted *Pro Hac Vice*
JONATHAN BERRY, Admitted *Pro Hac Vice*
MICHAEL BUSCHBACHER, Admitted *Pro Hac Vice*
801 17th Street NW, Suite 350
Washington, DC 20006
Telephone: (202) 955-0620
buschbacher@boydengrayassociates.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALLIANCE FOR FAIR BOARD RECRUITMENT,<br><br>                    Plaintiff,<br><br>          v.<br><br>SHIRLEY N. WEBER, in her official capacity as Secretary of State of the State of California,<br><br>                    Defendant. | Case No.: 2:21-cv-01951-JAM-AC<br><br>**RESPONSE STATEMENT OF FACTS IN SUPPORT OF DEFENDANT CALIFORNIA SECRETARTY OF STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's
Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 1 -

| # | Secretary's Facts | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | **AB 979** | | |
| 1) | The California Legislature ("Legislature") passed California Assembly Bill 979 (Reg. Sess. 2019-2020) (AB 979) on August 30, 2020. | Defendant California Secretary of State's Request for Judicial Notice in Support of Opposition to Plaintiff's Motion for Summary Judgment ("SOS RJN"), Ex. 3 (California Legislative Information, Bill History). | Undisputed. |
| 2) | The California Governor signed AB 979 into law on September 30, 2020. | SOS RJN, Ex. 1 (chaptered bill). | Undisputed. |
| 3) | As codified in relevant part at California Corporations Code section 301.4, AB 979 provides:

(a) No later than the close of the 2021 calendar year, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California shall have a minimum of one director from an underrepresented | Cal. Corp. Code § 301.4(a) and (b). | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 2 -

community on its board. A corporation may increase the number of directors on its board to comply with this section.

(b) No later than the close of the 2022 calendar year, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California shall comply with the following:

(1) If its number of directors is nine or more, the corporation shall have a minimum of three directors from underrepresented communities.

(2) If its number of directors is more than four but fewer than nine, the corporation shall have a minimum of two directors from underrepresented communities.

(3) If its number of directors is four or fewer, the corporation shall have a minimum of one director from an

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 3 -

| | | | |
|---|---|---|---|
| | | underrepresented community. | | |
| **4)** | Under Corporations Code section 1502.1, subdivision (b)(1), "publicly traded corporations" are corporations that have at least one class of securities listed or admitted for trading on a "national securities exchange," the OTC Bulletin Board, or the electronic service operated by OTC Markets Group Inc. The Secretary of State's office interprets "national securities exchange" to include the New York Stock Exchange (NYSE), the National Association of Securities Dealers Automated Quotations (NASDAQ), and the NYSE American (formerly known as the American Stock Exchange or AMEX). Thus, the Secretary of State's office treats corporations with securities listed or admitted for trading on the NYSE, NASDAQ, NYSE American, the OTC Bulletin Board, or on the electronic | Declaration of Betsy Bogart ("Bogart Decl."), ¶¶ 4, 5, & Ex. 1 (information about AB 979 published on Secretary's website); see Cal. Corp. Code § 301.4(a), (e)(2) (codifying AB 979 in relevant part). | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 4 -

| | |
|---|---|
| 1 | service operated by |
| 2 | OTC Markets Group Inc. as "publicly |
| 3 | traded," though that term may be used |
| 4 | more broadly outside of the |
| 5 | context of California law. |
| 6 | |
| 7 | AB 979 applies to all "publicly held" |
| 8 | domestic or foreign corporations with a |
| 9 | principal executive office in California. |
| 10 | California Corporations Code |
| 11 | section 301.4, subdivision (e)(2) |
| 12 | defines a "publicly |
| 13 | held corporation" as "a corporation with |
| 14 | outstanding shares listed on a major |
| 15 | United States stock exchange," which |
| 16 | the Secretary of State's office |
| 17 | interprets as any corporation with |
| 18 | shares listed on the NYSE, the |
| 19 | NASDAQ, or the NYSE American. |
| 20 | Corporations that are publicly traded |
| 21 | but are not publicly held are not subject |
| 22 | to AB 979. |
| 23 | (Hereinafter, the Secretary may refer |
| 24 | to corporations covered by AB 979 |
| 25 | as "California public corporations" or |
| 26 | |
| 27 | |
| 28 | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 5 -

| | | | |
|---|---|---|---|
| | "covered corporations.") | | |
| **5)** | As codified in relevant part at California Corporations Code section 301.4, AB 979 defines a "Director from an underrepresented community" as "an individual who self-identifies as Black, African American, Hispanic, Latino, Asian, Pacific Islander, Native American, Native Hawaiian, or Alaska Native, or who self-identifies as gay, lesbian, bisexual, or transgender." | Cal. Corp. Code § 301.4(e)(1). | Undisputed. |
| **6)** | AB 979, codified in relevant part at California Corporations Code section 301.4, provides that, "(c) No later than March 1, 2022, and annually thereafter, the Secretary of State shall include in its report required by subdivision (d) of Section 301.3 [of the California Corporations Code, which is the information reporting provision in SB 826 relating to | Cal. Corp. Code § 301.4(c). | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 6 -

| | | | |
|---|---|---|---|
| | inclusion of female board directors], at a minimum, all of the following:<br><br>(1) The number of corporations subject to this section that were in compliance with the requirements of this section during at least one point during the preceding calendar year.<br><br>(2) The number of publicly held corporations that moved their United States headquarters to California from another state or out of California into another state during the preceding calendar year.<br>(3) The number of publicly held corporations that were subject to this section during the preceding year, but are no longer publicly traded." | | |
| **7)** | After AB 979's enactment, on December 28, 2020, the Secretary revised the Secretary's Corporate Disclosure Statement form, which corporations are required to | Bogart Decl. ¶ 8 & Ex. 2. | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 7 -

| | | | |
|---|---|---|---|
| | complete and submit to the Secretary annually, to include information and an entry for disclosure of the number of directors from underrepresented communities on a corporation's Board of Directors. The Corporate Disclosure Statement does not request that the corporation identify the particular underrepresented communities with which directors are affiliated, but simply asks for the number of directors who self-identify with any of the underrepresented communities identified in Corporations Code section 301.4(e)(1). | | |
| 8) | In March 2022, the Secretary published the report required by subdivision (d) of Section 301.3 of the California Corporations Code for the calendar year ending December 31, 2021. | Bogart Decl. ¶ 17 & Ex. 4. | Undisputed. |
| 9) | For the Secretary's March 2022 report, the Secretary relied on information provided by covered | Bogart Decl. ¶ 16. | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 8 -

| | | | |
|---|---|---|---|
| | corporations in their Corporate Disclosure Statements to determine how many directors from underrepresented communities were included in a corporation's board of directors. | | |
| 10) | In the Secretary's March 2022 report, the Secretary reported 716 publicly held corporations listing a California principal executive office on their 2021 SEC 10-K filings. The Secretary reported that 358 covered corporations had filed a 2021 Publicly Traded Corporate Disclosure Statement, and that 301 of these corporations had reported that they had at least one director from an underrepresented community. | Bogart Decl. ¶ 17 & Ex. 4 at p. 3. | Undisputed. |
| 11) | The Secretary's March 2022 report included a list of "Publicly Held Corporations Listing a California Principal Executive Office on their 2021 | Bogart Decl. Ex. 4. at pp. 4-18. | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 9 -

| | | | |
|---|---|---|---|
| | SEC 10-K Filing." For each listed corporation, the report included an entry in a column titled, "Number of Directors from Underrepresented Communities Reported." For each listed corporation, the entry in this column was either "no data," "0," "1," "2," or "3 or more." | | |
| | **One of the Legislature's Purposes for AB 979 Was to Remedy Discrimination in the California Publicly Held Corporation Board Selection Process, and There is a Strong Basis in Evidence for the Conclusion That Race-Conscious Action is Necessary to Remedy Such Discrimination** | | |
| **12)** | AB 979 is modeled after California Senate Bill 826 (Reg. Sess. 2017-2018) (SB 826), | SOS RJN, Ex. 10, p. 2 (Concurrence in Sen. Amendments of Assem. Bill No. 979 (2019-2020 Reg. | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 10 -

| | | | |
|---|---|---|---|
| | which provides that publicly held corporations headquartered in California must have a minimum number of female board directors according to the existing size of the board. | Sess.), as amended Aug. 20, 2020); SOS RJN, Ex. 8, p. 1 (Sen. Com. on Appropriations, Analysis of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Jul. 28, 2020); SOS RJN, Ex. 32, p. 4 (Sen. Com. on Banking and Financial Institutions, Analysis of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Jul. 28, 2020); *see* SOS RJN, Ex. 2 (text of SB 826); Cal. Corp. Code § 301.3 (codifying SB 826 in relevant part); SOS RJN, Ex. 47, p. 1 (Alex Padilla, Secretary of State Letter to Gov. Gavin Newsom, Sept. 1, 2020). | |
| 13) | In enacting AB 979, the Legislature found that, "In 2018, the California Legislature addressed gender inequity on corporate boards in the state and passed Senate Bill 826. Since the enactment of Senate Bill 826, data shows that out of 511 director seats filled by women in California publicly traded companies, 77.9 percent are | SOS RJN, Ex. 1 (Assem. Bill No. 979 (2019-2020 Reg. Sess.), § 1(o)). | Undisputed that the Legislature made this finding. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection.<br><br>The law's text and surrounding context shows that the motivation was not to remedy past discrimination, but to promote diversity and to improve corporate financial performance. The paragraphs immediately before and immediately after the paragraph quoted say: "(n) A study by Dalberg Global Development Advisors found that the high tech industry could generate an additional $300 billion to $370 billion |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 11 -

| | | | |
|---|---|---|---|
| | White. In comparison, 3.3 percent of female directors hired are Latina, 5.3 percent are African American, and 11.5 percent are Asian." | | each year if the racial or ethnic diversity of tech companies' workforces reflected that of the talent pool." "(p) Studies have shown that chief executive officers stand to gain from nondiverse boards. Studies have shown that culturally homogenous boards pay chief executive officers more than a culturally diverse board." |
| **14)** | The purpose of enacting AB 979 was to remedy the effects of discrimination against underrepresented communities in director selection on boards of California's publicly held corporations, as well as in corporate leadership positions, which often serve as feeder positions for board director positions. | Declaration of Chris Holden ("Holden Decl."), ¶ 14, 28, 48; Declaration of Cristina Garcia ("Garcia Decl."), ¶¶ 4-6, 9, 24, 30. | Undisputed that the declarations claim this was the purpose of AB 979, but these claims are not supported by *any* contemporaneous evidence. It is therefore not entitled to any weight. "Arguments based on subsequent legislative history should not be taken seriously, not even in a footnote." *Bostock v. Clayton Cnty., Georgia,* 140 S. Ct. 1731, 1747 (2020) (cleaned up).

The cited declarations are made-for-litigation statements created after the statute was enacted with no supporting evidence that these sentiments were before the legislature at the time the bill was enacted. The declarations' claims are not reflected in the text of the enacted bill or any drafts or any committee reports. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.,* 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.,* 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 12 -

| | | | |
|---|---|---|---|
| | | | added); *United States v. Virginia*, 518 U.S. 515, 533 (1996) (the government's "justification must be genuine, not hypothesized or invented *post hoc* in response to litigation."). |
| **15)** | In enacting AB 979, the Legislature found that, "[Title VII of the federal Civil Rights Act of 1964] [d]irectly permits the imposition of affirmative action plans to address past discrimination and patterns of discrimination," and "[p]ermits state actors to create affirmative action plans designed to increase representation of women and minorities in job positions in which they are historically underrepresented." | SOS RJN, Ex. 1 (Assem. Bill No. 979 (2019-2020 Reg. Sess.), § 1(q)). | Undisputed that the legislature included this finding. Disputed as to the truth of the assertion. Under Title VII, racial discrimination is permitted in only one circumstance: to overcome "manifest racial imbalances in traditionally segregated job categories." *United Steelworkers of America, AFL-CIO-CLC v. Weber*, 443 U.S. 193, 197 (1979). In order to qualify for this exception, an employer must demonstrate (1) that a substantial imbalance exists between the racial composition of the relevant portion of company and the racial composition of the qualified labor market, (2) that this is related to a traditionally segregated job category, (3) that the remedial discrimination is temporary and "not intended to maintain racial balance, but simply to eliminate a manifest racial imbalance," and (4) that the remedial discrimination does "not unnecessarily trammel the interests of white employees." *Id.* at 201, 2018. Non-remedial affirmative action plans—including those designed to improve diversity or "representation"—are unlawful. *See, e.g.*, *Taxman v. Board of Education of the Township of Piscataway*, 91 F.3d 1547 (3d Cir. 1996). |
| **16)** | Both the Senate Committee on Banking and Financial Institutions and the Senate Rules Committee analyses | SOS RJN, Ex. 32, p. 6 (Sen. Com. on Banking and Financial Institutions, Analysis of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Jul. | Undisputed that the quote is found in the analyses. Disputed that the analyses found that the government would have a defense on the ground asserted and disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 13 -

| | | | |
|---|---|---|---|
| | of AB 979 stated that the government would have a defense to an Equal Protection challenge to AB 979 because, "[r]emedying past discrimination can be a sufficiently compelling government interest to withstand strict scrutiny." | 28, 2020); SOS RJN, Ex. 9, p. 6 (Sen. Rules Com., 3d reading analysis of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Aug. 20, 2020). | California public corporation board selection. The quote is misleadingly framed and lacks context. The Senate Banking and Financial Institutions Committee analyses go on to explain that "This bill also contains findings and declarations regarding the absence of racial and ethnic diversity in the corporate workforce and in corporate leadership. To further fortify the bill against an equal protection challenge, the author may wish to provide greater detail regarding the specific discrimination that has allowed white people to occupy corporate board seats in percentages that far exceed what would be expected if the opportunity to serve on corporate boards were genuinely available on an equal basis." No further legislative findings to that effect were added between the draft that committee reviewed and the final bill. *Compare* Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Jul. 28, 2020)*, with* Assem. Bill No. 979 (2019-2020 Reg. Sess.), chaptered Sep. 30, 2020). If these analyses indicates anything, it is that there were no findings in AB 979 that demonstrate it was intended to remedy "identified discrimination." |
| **17)** | The Chairman of the Senate Banking and Financial Institutions Committee stated at the committee's hearing on AB 979 that remedying "discriminat[ion]" was one of AB 979's purposes, and explained that, "I | Declaration of Sonya Ledanski Hyde ("Hyde Decl."), Ex. 2, pp. 34:15, 36:6-37:19 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020); *see* SOS RJN, Ex. 51, p. 1 (Sindy M. | Undisputed that the transcript says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. Context shows that the Chairman's was not claiming that "discriminat[ion]" was one of AB 979's purposes. He makes no mention of board hiring, but rather discusses |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 14 -

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14 | understand what we're doing [in AB 979] because far too often we see folks being excluded simply because of their color." | Benavides, Janet Murguia, Ramiro Cavazos, Ester Aguilera, Brenda Castillo, Damian Rivera, and Thomas A. Saenz, Latino Voices for Boardroom Equity Letter to Gov. Gavin Newsom, Sept. 11, 2020). | engineering programs. Chairman Bradford also explains that "diversity has been something that I've been championing since I've been on the legislature," that diversity is important in order to get a "diverse customer base to buy your product or support your product," and only mentions discrimination when discussing how he doesn't understand an objection opposition witness Ken Bishop made that "he was fearful that [AB 979] would discriminate against men." The full quote is: "And I was somewhat taken aback by Mr. Bishop's comments that he was fearful that this would discriminate against men. Well, men have been discriminating against women for 400 years in this country, so it's time to level the playing field and allow folks –" This motive is improper. |
| 15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | **18)** AB 979's sponsor and joint-author testified before the Legislature that, "AB 979 has been a part of a larger effort to ensure people of color have equitable access to upward mobility in American corporate society." | Hyde Decl. ¶¶ 6, 7 & Ex. 2, p. 2:1-17 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020). | Undisputed that the transcript says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection.<br><br>"[E]nsur[ing] people of color have equitable access to upward mobility in American corporate society" is not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505 ("that past societal discrimination alone can serve as the |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 15 -

| | | | basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.). |
|---|---|---|---|
| **19)** | One of AB 979's authors testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 about the underrepresentation of Asian Americans on corporate boards, management, and executive positions, and stated that, "Our legislative caucus [the API caucus], along with our counterparts, have prioritized diversity and executive management and leadership in recent years. In recent months, a bright light has illuminated the disparities in all aspects of our society, revealed the systematic barriers that have prevented us from achieving real equity." | Hyde Decl. ¶¶ 6, 7 & Ex. 2, pp. 13:23-15:12 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020). | Undisputed that the transcript says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection.<br><br>Assemblyman Chiu does not explain that this is because of some past racial discrimination, but rather states that "[t]his is a bill that recognizes that leadership on our corporate boards must be diverse to guide California companies to make the strategic decisions that are innovative and best for the organization to serve our state."<br><br>Further, "disparities in all aspects of our society, reveal[ing] the systemic barriers that have prevented us from achieving real equity," is a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505 ("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.). |
| **20)** | One of AB 979's authors testified before the Legislature that there was public | Hyde Decl. ¶¶ 6, 7 & Ex. 2, pp. 6:5-7, 7:15-8:1 (Sen. Banking and Financial Institutions Com., Transcript of | Undisputed that the transcript says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 16 -

| | | | |
|---|---|---|---|
| | pressure to "tear down racial biases . . . in all our systems," and that AB 979 was legislation "to prioritize equality and equity." | Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020). | selection.<br><br>The full context of this statement reveals that Assemblymember Garcia goes on to explain that this needs to "start[] with our police departments." Garcia also explains that the bill is important because a "more diverse and equitable board[s] improve company governance and have better decision making, which leads to a more successful company."<br><br>The evidence is not relevant to California's contentions because it is not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.). |
| **21)** | The Concurrence in the Senate amendments to AB 979 found and declared, "The lack of diversity in corporate America is not a product of happenstance; rather, it is a product of systemic discrimination and bias that affects so | SOS RJN, Ex. 10, p. 2 (Concurrence in Sen. Amendments of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Aug. 20, 2020). | Undisputed that the transcript says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection.<br><br>The text of this concurrence reflects an intent to remedy societal discrimination: "systemic discrimination and bias that affects so many facets of our society - housing, education, criminal justice, and |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 17 -

| | | | |
|---|---|---|---|
| | many facets of our society - housing, education, criminal justice, and employment. This bill seeks to remedy one specific discriminatory outcome by ensuring that corporate boards meet a minimum standard of diversity." | | employment."<br><br>This not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505 ("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.). |
| | **Board Statistics** | | |
| **22)** | In enacting AB 979, the Legislature found that, "[a]ccording to the Latino Corporate Directors Association ["LCDA"], there are 662 publicly traded companies headquartered in California. Two hundred thirty-three of these companies have all White boards of directors as of this year." | SOS RJN, Ex. 1 (Assem. Bill No. 979 (2019-2020 Reg. Sess.), § 1(d)); *see also* Holden Decl. ¶¶ 9, 10 ("As an African American man, there were many times when I walked into California's publicly held boardrooms and did not see any directors who looked like me."); Garcia Decl. ¶¶ 6, 7 ("In my experience, the majority of the individuals that lobbied my office or that held board director positions in corporations were white men."); Declaration of Oswaldo Meza ("Meza Decl.") ¶ 50 ("Our | Undisputed that the legislature found this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, but a generalized findings about diversity, without information or discussion regarding the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 18 -

| | | | |
|---|---|---|---|
| | | analysis was cited in the text of AB 979 and was the basis for future research by LCDA."); Holden Decl. ¶ 19. | |
| **23)** | As of July 2020, of the 662 California public corporations LCDA studied (which did not include special purpose acquisition companies), 233 (35%) had all-white boards of directors. All 662 (100%) corporations had at least one white director on their boards. | Meza Decl. ¶¶ 47-48 & n.2; *id.* Ex. 1. | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *id.* at 507 (it is "completely unrealistic" to assume that groups "will choose a particular trade in lockstep proportion to their representation in the local population.").<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **24)** | Eighty-seven (87%) percent of the 662 California public corporations did not have any Latino board members. | Meza Decl. ¶ 48 & Ex. 1. | Undisputed that the report cited by Meza makes this assertion. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A.* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 19 -

| | | | |
|---|---|---|---|
| | | | *Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **25)** | Eighty-four (84%) percent of the 662 California public corporations did not have Black/African American board members. | Meza Decl. ¶ 49 & Ex. 1. | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **26)** | Fifty-eight (58%) percent of the 662 California public corporations did not have any Asians (including Asian Pacific Islander, South Asian, and Native Hawaiian) board members. | Meza Decl. ¶ 49 & Ex. 1. | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 20 -

| | | | |
|---|---|---|---|
| | | | Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **27)** | Of the 511 new board director openings filled by women on California public corporation boards in the seventeen months following the passage of SB 826 on September 30, 2018, 77.9 percent of the seats were filled by white women, 11.5 percent were filled by Asians, 5.3 percent were filled by African Americans, and 3.3 percent were filled by Latinas. No Native American women were appointed to California public corporation boards in this timeframe (though one Native American woman was later appointed to a California public corporation board on December 1, 2021). | Meza Decl. ¶ 68 & Ex. 1; *see also* Singh Cassidy Decl. ¶¶ 47-48 ("After the passage of SB 826 in 2018, people of color remained dramatically underrepresented in the boardroom, in the executive suite, and in all leadership positions."); Holden Decl. ¶ 39; Grounds Decl. ¶ 64 ("Based on my research related to the representation of women and women of color on corporate boards in California, this pattern of exclusion reflects that women of color face even higher barriers to being selected for board seats compared to white women because, based on their race or ethnicity, they are perceived as riskier choices. Because of their race and ethnicity, they are seen as more unknown commodities, riskier to board culture, and likely to be more difficult to get along with."). | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.<br><br>Much of the evidence cited and quoted in support also opines on matters that are not contained in the statement of fact. Plaintiff's response is limited to the factual claim. To the extent that the post-enactment declaration of Meza, Singh Cassidy, Holden, and Grounds set forth new assertions or factual claims, they are improper. The cited declarations are made-for-litigation statements created after the statute was enacted.<br><br>The relevant facts are those that the legislature considered *before* it enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative- |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 21 -

| | | | |
|---|---|---|---|
| | | | action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added); *United States v. Virginia*, 518 U.S. 515, 533 (1996) (the government's "justification must be genuine, not hypothesized or invented *post hoc* in response to litigation.").<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **28)** | In August 2017, CalPERS investment director Anne Simpson testified at the Senate Select Committee on Women, Work, and Families hearing that, "what you'll see from this chart on . . . race and ethnicity, this is from Spencer Stuart and that for African representation on the board it's actually gone down over the last five or six years. We've got barely visible progress for Latina and Latino community, and similarly barely noticeable progress for the Asian community." | Declaration of Denise Herft ("Herft Decl.") ¶ 4 &Ex. 1, pp. 83:10-16 (identifying the speaker), 84:3 (start of speaker's statement), 88:8-15 (quoted statement), (Sen. Select Com. on Women, Work, and Families Presents: A Seat at the Table: Why More Women on Corporate Boards Protects Workers, Families, Retirees and Shareholders, Transcript of Hearing, Aug. 29, 2017). | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized statements about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 22 -

| 29) | As of October 1, 2020—the day after AB 979 was signed into law—there were 674 California public corporations (excluding special purpose acquisition companies), which collectively had a total of 5,447 board directors. Of the 674 corporations, 36.8% had only white directors on their boards, and 86.2% did not have any Latino directors on their boards. | Meza Decl. ¶ 51 & Ex. 2; *see id.* ¶ 48 n.2. | Undisputed that these findings are accurately described, but disputed as they are not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.'") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| 30) | The Senate Rules Committee analysis of AB 979 noted that, "The California Hispanic Chambers of Commerce write, '. . . . A recent study by the Latino Corporate Directors Association determined that 233 of the 662 public-company boards in California have no ethnic or racial representation. Latinos, who make | SOS RJN, Ex. 9, p. 9 (Sen. Rules Com., 3d reading analysis of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Aug. 20, 2020). | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 23 -

| | | | |
|---|---|---|---|
| | up 39.4% of the state of California, are severely underrepresented in the boardroom. Of the 662 public California companies, 571 corporations, or 87%, do not have a Latino on their board.'" | | Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **31)** | The AB 979 legislative record included a report by Deloitte and Alliance for Board Diversity published January 16, 2019, titled, "Missing Pieces Report: The 2018 Board Diversity Census of Women and Minorities on Fortune 500 Boards" ("Missing Pieces Report"). The Missing Pieces Report was referenced in the AB 979 legislative findings, the Concurrence in Senate Amendments of AB 979, and the Senate Committee on Banking and Financial Institutions analysis of AB 979. | SOS RJN, Ex. 1 (Assem. Bill No. 979 (2019-2020 Reg. Sess.), § 1(b) (legislative finding citing report)); SOS RJN, Ex. 10, p. 3 (Concurrence in Sen. Amendments of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Aug. 20, 2020 (citing report)); Declaration of Anthony Lew ("Lew Decl."), ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources identified in the Lew declaration); SOS RJN, Ex. 32, p. 4 (Sen. Com. on Banking and Financial Institutions, Analysis of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Jul. 28, 2020 (discussing | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 24 -

| | | | |
|---|---|---|---|
| 1 2 | | the report as one of those provided by the bill author's office)). | |
| 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 | **32)** | In addition to the Missing Pieces Report data cited in the AB 979 legislative findings, the Missing Pieces Report the Legislature considered also found that:<br><br>(1) "In the *Fortune* 500, [between 2016 and 2018] 1,033 board seats were filled by directors new to *Fortune* 500 boards (i.e., those not present on boards in the 2016 census).[] Of those 1,033 board seats, 80.7 percent were filled by Caucasian/White directors, with 59.6 percent filled by Caucasian/White men."<br><br>(2) "In 2018, just 19.5 percent of board seats in the *Fortune* 100 were held by African American/Blacks, Asian/Pacific Islanders, Hispanic/Latinos, and Others."<br><br>(3) Fortune 100 total board seats by | SOS RJN, Ex. 26, pp. 7, 11, 17-19 (Deloitte and Alliance for Board Diversity, Missing Pieces Report: The 2018 Board Diversity Census of Women and Minorities on Fortune 500 Boards (Jan. 16, 2019)); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources identified in the Lew declaration); *see also* Garcia Decl. ¶ 10; Holden Decl. ¶ 21. | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.<br><br>To the extent that the post-enactment declarations of Garcia and Holden are being used set forth new assertions or factual claims, they are improper. The cited declarations are made-for-litigation statements created after the statute was enacted. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added); *United States v. Virginia*, 518 U.S. 515, 533 (1996) (the government's "justification must be genuine, not hypothesized or |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 25 -

| | | | |
|---|---|---|---|
| | race/ethnicity, 2018: Asian/Pacific Islander-46/3.8%; Hispanic/Latino(a)-54/4.4%; African American/Black-136/11.1%; Caucasian/White-984/80.5%.<br><br>(4) Fortune 500, 2018: Minority women 261/4.6%; Minority men 651/11.5%. White women 1,017/17.9%; white men 3,741/66%.<br><br>(5) Fortune 500, 2018: Minorities 16.1% of total seats.<br><br>(6) Fortune 500, 2018: Asian/Pacific Islander-209/3.7%; Hispanic/Latino(a)-213/3.8%; Black-486/8.6%; White-4,758/83.9%. | | invented *post hoc* in response to litigation.").<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **33)** | Both a legislative Fact Sheet on AB 979 and a Senate Committee Banking and Financial Institutions information sheet on AB 979 reported that, "80% of the 1,033 available board seats on Fortune 500 companies were filled by White or Caucasian directors | SOS RJN, Ex. 27, p. 1 (Fact Sheet on Assem. Bill No. 979 (2019-2020 Reg. Sess.); SOS RJN, Ex. 29, p. 2 (Sen. Banking and Financial Institutions Com. Background Information Request form, Assem. Bill No. 979 (2019-2020 Reg. Sess.), Jun. 29, 2020). | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 26 -

| | | | |
|---|---|---|---|
| and 59.6% of those directors were white men. Similarly, out of the 1,222 new board members of Fortune 100 companies, 77% of new directors were white or Caucasian and 51% of those directors were white men." | | | Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **34)** | In enacting AB 979, the Legislature found that, "According to 2018 data from Deloitte and the Alliance for Board Diversity, the percentages of Fortune 500 company board seats held by people identified as African American/Black, Hispanic/Latino(a), and Asian/Pacific Islander were 8.6 percent, 3.8 percent, and 3.7 percent, respectively." | SOS RJN, Ex. 1 (Assem. Bill No. 979 (2019-2020 Reg. Sess.), § 1(b)). | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *id.* at 507 (it is "completely unrealistic" to assume that groups "will choose a particular trade in lockstep proportion to their representation in the local population."). Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **35)** | At the time the Legislature passed AB 979, 53 of the 500 corporations included in the Fortune 500 list were headquartered in California. | Meza Decl. ¶ 17. | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 27 -

| | | | |
|---|---|---|---|
| **36)** | The Concurrence in the Senate amendments to AB 979 explained that 2018 data from Deloitte and the Alliance for Board Diversity showed that "84% of board seats were held by people identified as white, which over-represents the group's share of the general population by 22 percentage points." | SOS RJN, Ex. 10, p. 2 (Concurrence in Sen. Amendments of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Aug. 20, 2020, footnote omitted). | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *id.* at 507 (it is "completely unrealistic" to assume that groups "will choose a particular trade in lockstep proportion to their representation in the local population."). <br><br> Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **37)** | The California State Controller sent a letter in support of AB 979 to Governor Gavin Newsom stating that, "[a] 2019 study of the Russell 3000 Index by Institutional Shareholders Services showed ethnic diversity on boards is proceeding at a glacial pace with ten percent of Black, Hispanic, and Asian American board directors, compared to eight percent in 2008." | SOS RJN, Ex. 50, p. 1 (Betty T. Yee, California State Controller, letter to Gov. Gavin Newsom, Sept. 10, 2020); *see also* Garcia Decl. ¶ 11 (discussing 2019 study); Holden Decl. ¶ 36. | Undisputed that this letter was sent and says what California claims. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *id.* at 507 (it is "completely unrealistic" to assume that groups "will choose a particular trade in lockstep proportion to their representation in the local population."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 28 -

| | | | |
|---|---|---|---|
| | The letter was copied to: The Honorable Chris Holden and The Honorable Cristina Garcia. | | To the extent that the post-enactment declarations of Garcia and Holden are being used set forth new assertions or factual claims, they are improper. The cited declarations are made-for-litigation statements created after the statute was enacted. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.,* 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.,* 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added); *United States v. Virginia,* 518 U.S. 515, 533 (1996) (the government's "justification must be genuine, not hypothesized or invented *post hoc* in response to litigation."). |
| **38)** | *Intentionally left blank.* | | |
| **39)** | The Asian American Bar Association of the Greater Bay Area and numerous other Asian American/API groups sent a letter in support of AB 979 to the Chair of the Senate Committee on Banking and Financial | SOS RJN, Ex. 33, p. 1 (Asian American Bar Association of the Greater Bay Area et al., letter to Sen. Steven Bradford, Aug. 3, 2020). | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A.* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 29 -

| | | | |
|---|---|---|---|
| | Institutions reporting that "APIs are well represented in most technical and professional fields and comprise 33% of California's white-collar workforce. However, as with other minorities, APIs are also underrepresented in the board room— only 3.7% of directors in the Fortune 500." | | *Croson Co.*, 488 U.S. 469, 501–02 (1989); *id.* at 507 (it is "completely unrealistic" to assume that groups "will choose a particular trade in lockstep proportion to their representation in the local population."). <br><br> Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| 40) | The California Insurance Commissioner sent letters in support of AB 979 to the Chair of the Senate Banking and Financial Institutions Committee and Governor Gavin Newsom reporting that, "[b]ased on a 2017 survey conducted by my Department, insurance companies reported that only 12% of seats on boards of directors in the insurance industry were held by individuals from historically underrepresented communities. Out of more than 2,400 board seats among | SOS RJN Ex. 36, p. 1 Ricardo Lara, California Insurance Commissioner, letter to Sen. Steven Bradford, Aug. 6, 2020); SOS RJN Ex. 44, p. 1 (Ricardo Lara, California Insurance Commissioner, letter to Gov. Gavin Newsom, Aug. 30, 2020; *see also* Garcia Decl. ¶ 9 & Ex. 9; Holden Decl. ¶ 35. | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *id.* at 507 (it is "completely unrealistic" to assume that groups "will choose a particular trade in lockstep proportion to their representation in the local population."). <br><br> To the extent that the post-enactment declarations of Garcia and Holden are being used set forth new assertions or factual claims, they are improper. The cited declarations are made-for-litigation statements created after the statute was enacted. The relevant facts are those that the legislature considered |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 30 -

| | | |
|---|---|---|
| 780 insurance companies that reported, Caucasians continue to predominately [sic] occupy 87% of board seats, whereas board members from historically underrepresented communities continue to remain disproportionately low. Namely, African Americans, Asians/Pacific Islanders, Hispanics/Latinos, and American Indians comprised only 5%, 3%, 3%, and 0.1 %, of board seats, respectively." | | *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added); *United States v. Virginia*, 518 U.S. 515, 533 (1996) (the government's "justification must be genuine, not hypothesized or invented *post hoc* in response to litigation."). |
| The letter was copied to: The Honorable Chris Holden; The Honorable Cristina Garcia; The Honorable Ling Ling Chang, Vice Chair, Senate Committee on Banking and Financial Institutions; Members, Senate Committee on Banking and Financial Institutions; Eileen Newhall, Staff Director, Senate Committee on Banking and Financial | | Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

| | | | |
|---|---|---|---|
| | Institutions; The Honorable David Chiu, Chair, California Asian and Pacific Islander Legislative Caucus; The Honorable Lorena Gonzalez, Chair, California Latino Legislative Caucus; The Honorable Shirley N. Weber, Ph.D., Chair, California Legislative Black Caucus; Kayla Williams, Consultant, Senate Republican Caucus; Ronda Paschal, Deputy Legislative Secretary, Office of the Governor; and Charlene Manning, Finance Budget Analyst, Department of Finance. | | |
| 41) | A 2020 report by the Majority Staff of the U.S. House of Representatives Committee on Financial Services in the AB 979 legislative record reported that, "[s]eats on the boards of directors of America's largest banks continue to be filled predominantly by white males. The Committee staff's review of banks' responses on their | SOS RJN, Ex. 28, pp. 19-20 (Diversity and Inclusion: Holding America's Large Banks Accountable, Maj. Staff of H.R. Comm. on Financial Services, 116th Cong., 2d Sess. (2020)); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources | Undisputed that the report says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507. Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 32 -

| | | | |
|---|---|---|---|
| | board diversity finds that the boards of large banks are an average of 80 percent white and 70 percent male." | identified in the Lew declaration). | separately demonstrate the correctness of the statistics. |
| **42)** | One of AB 979's authors testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 that, "In California, . . . 39 percent of the population are Latinos, but we only hold 2.3 percent [of] the directors in the Fortune 1000 companies in California." | Hyde Decl. ¶¶ 6, 7 & Ex. 2, p. 6:5, 6:14-17 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020). | Undisputed that the testimony says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **43)** | One of AB 979's authors testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 that, "Asian and Pacific Islanders make up a combined 16 percent of the population here in California, yet only make 3.7 percent of directors of Fortune 500 companies in California." | Hyde Decl. ¶¶ 6, 7 & Ex. 2, p. 6:5, 6:18-21 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020). | Undisputed that the testimony says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 33 -

| | | | Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
|---|---|---|---|
| **44)** | One of AB 979's authors testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 that, "Asian Americans are the fastest growing ethnic group in our country. Nationally, we are 6 percent of the population but hold a little over 3 percent of all Fortune 500 board seats." | Hyde Decl. ¶¶ 6, 7 & Ex. 2, pp. 13:23-14:11 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020). | Undisputed that the testimony says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **45)** | A speaker at the Senate Banking and Financial Institutions Committee hearing on AB 979 testified regarding "underrepresented communities" that, "These communities represent 67 percent of California's population but hold only 14 percent of Fortune 1000 board seats in California." | Hyde Decl. ¶¶ 6, 7 & Ex. 2, pp. 10:9-11:14 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020); Holden Decl. ¶ 23. | Undisputed that the testimony says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 34 -

| | | | separately demonstrate the correctness of the statistics. |
|---|---|---|---|
| **46)** | In June 2018, the California Insurance Commissioner sent a letter in support of SB 826 to the Legislature, reporting that, in 2016, "only 12 percent of insurance company board seats were held by persons of color. . . . and 273 insurance companies had no persons of color on their governing boards." | SOS RJN, Ex. 24 (Letter from Dave Jones, Insurance Commissioner, to Assemblymember Stone (June 25, 2018)). | Undisputed that the letter says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **47)** | A letter in the AB 979 legislative history from New America Alliance reported that, "[a]ccording to an analysis by the Harvard Law School Forum on Corporate Governance, only ten percent of [the directors of] Russell 3000 companies (an index of the 3,000 largest publicly traded corporations in the United States) were non-white as of 2019. Further, this figure represents a mere 2% increase since 2008, when | SOS RJN, Ex. 31 (Solange Fernández Brooks, New America Alliance, Letter to Assem. Member Chris Holden, Jul. 28, 2020, p. 2). | Undisputed that the letter says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 35 -

| 1 | | non-white directors represented 8%." | | |
| 2 | | | | |
| 3 | **48)** | In August 2017, California Insurance Commissioner Dave Jones testified at a Senate Select Committee on Women, Work, and Families hearing that a 2014 insurance company board composition survey conducted by the California Insurance Commissioner showed that African Americans held 6.3% of insurance company board seats, Latinos held 2.9%, Asian Pacific Islanders held 2.9%, Native Americans held zero seats, and four members of the 1,153 total board members publicly identified as LGBT. | Herft Decl. ¶ 4 & Ex. 1, pp. 55:8-16, 58:8-19, 61:10-62.5 (Sen. Select Com. on Women, Work, and Families Presents: A Seat at the Table: Why More Women on Corporate Boards Protects Workers, Families, Retirees and Shareholders, Transcript of Hearing, Aug. 29, 2017); Declaration of Dave Jones ("Jones Decl."), ¶¶ 23-26, 43-44, Exs. 3, 6. | Undisputed that the testimony says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507.  Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| 20 | **49)** | The December 2020 Securities and Exchange Commission Notice of Filing of Proposed Rule Change to Adopt Listing Rules Related to Board Diversity for the NASDAQ Stock Market LLC reported that: | SOS RJN, Ex. 13, p. 80480 (footnote omitted). | Undisputed as to the content, but disputed that this is relevant or material since the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 36 -

| | | |
|---|---|---|
| "While women of color represent 18% of the U.S. population, they held only 4.6% of Fortune 500 board seats in 2018.[] Male underrepresented minorities held 11.5% of board seats at Fortune 500 companies in 2018, compared to 66% of board seats held by Caucasian/White men. Overall in 2018, 83.9% of board seats among Fortune 500 companies were held by Caucasian/White individuals (who represent 60.1% of the U.S. population), 8.6% by African American/Black individuals (who represent 13% of the U.S. population), 3.8% by Hispanic/Latino(a) individuals (who represent 19% of the U.S. population) and 3.7% by Asian/Pacific Islander individuals (who represent 6% of the U.S. population)." | | *v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| 50) The CEO of the Latino Corporate Directors | Hyde Decl. ¶¶ 13, 14 & Ex. 5, pp. 17:23-20:1, 20:17-21:4, 23:23- | Undisputed as to the content saying what California claims, but disputed that this relevant or material to the |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 37 -

| | | |
|---|---|---|
| Association testified at the October 2021 hearing of the Assembly Select Committee on Corporate Board Diversity and California Workforce Diversity that,<br><br>1) As of approximately July 1, 2020, "Of the 662 public companies in California, 233 were all white. That is 35 percent of the California companies."<br><br>2) Of the first 511 board appointments of women made since SB 826's passage, "78 percent of the appointments were white women, 11 percent Asian women, 5 percent black women, and only 3 percent Latinas."<br><br>3) "Latinos are the largest segment of California's population with 39.4 percent. This is the latest 2020 data. . . . Whites represent nearly 35 percent, Asians are nearly 16 percent, and blacks are about 5.5 percent. . . . [¶] In terms of board | 24:24, 25:6-10 (Assem. Select Com. on Corporate Board Diversity and California Workforce Diversity, Transcript of Hearing, Oct. 1, 2021). | extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 38 -

appointments, Latinos are underrepresented by any measure. Of those serving on boards, as of Q2 of 2021, only 2.5 percent of all board seats of California public company boards are held by Latinos. Whites continue to hold the lion's share of board seats at 82 percent, Asians hold 12 percent of the seats, and blacks are 4.3 percent. . . . [¶] Latinas are the least represented, even though they are 20 percent of all people in California. They hold only 1.1 percent of all California company seats."

4) "There were a total of 1,443 appointments made . . . [to California company boards between July 1, 2020 and June 30th, 2021]. Of these new appointments . . . 69 percent, or 999 of those appointments, were seized by whites."

5) As of the second quarter of 2021, "82.7 percent of California

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's
Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 39 -

| | | | |
|---|---|---|---|
| | companies . . . do not have a single Latino or Latina on the board." 6) "We also measure all the U.S. demographics of Latinos on boards, and California is at the top of the list, with the least number and percentage of Latinos of any other state in the country." | | |
| **51)** | Of the 5,447 total board positions (which exclude the boards of special purpose acquisition companies) as of October 1, 2020, 84% were held by white people, 2.1% were held by Latinos, 9.7% were held by Asians/Pacific Islanders (including Native Hawaiians), and 2.9% were held by Blacks/African Americans. Native American directors held no board seats on California public corporations at the time AB 979 was enacted, though one Native American director was later appointed to a California public corporation board on | Meza Decl. ¶ 51 & n.7; *id.* Ex. 2; *id.* ¶ 48 n.2. | Undisputed as to the content saying what California claims but disputed that this relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 40 -

| | | | |
|---|---|---|---|
| | December 1, 2021. This single seat accounts for approximately 0.018% of the available seats, while Native Americans make up approximately 1.6% of California's population. | | |
| **52)** | Chief executives on corporations are also board members and often play a large, if not sometimes disproportionate, role in selecting board members. | Declaration of Betsy Berkhemer-Credaire ("Berkhemer-Credaire Decl."), ¶ 9. | Disputed because Ms. Berkhemer-Credaire's opinion lacks sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| **53)** | AB 979's sponsor and co-author testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 that, "The U.S. [Bureau] of Labor Statistics has reported that in 2018, 90 percent of chief executives in the United States were white." | Declaration of Sonia Ledanski Hyde ("Hyde Decl.") ¶¶ 6, 7 &  Ex. 2, p. 3:13-15 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.); Holden Decl. ¶ 20. | Undisputed that the testimony says this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 41 -

| | | | |
|---|---|---|---|
| | | | Additionally disputed as the evidence is not relevant to California's contentions because it is not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505 ("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.).

Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **54)** | As found by the Legislature in AB 979, according to U.S. Bureau of Labor Statistics data, as of 2019, the year before AB 979 was enacted, 90 percent of chief executives in the U.S. were white. | SOS RJN, Ex. 1 (Assem. Bill No. 979 (2019-2020 Reg. Sess.), § 1(c)). | Undisputed that the legislature stated this in its findings. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *see also id.* at 507. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment (2:21-cv-01951-JAM-AC)

- 42 -

| | | | Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
|---|---|---|---|
| | **Statistical Underrepresentation** | | |
| **55)** | There are no special qualifications necessary to serve as a California public corporation board director. | Grounds Decl. ¶¶ 32, 34, 41; Declaration of Virgil Roberts ("Roberts Decl.") ¶ 25; Declaration of Dennis J. Lanham ("Lanham Decl.") ¶ 14; Meza Decl. ¶¶ 25, 34-37 (noting there are no minimum requirements for board service, and that a wide array of experiences may be considered valuable); *see* Roberts Decl. ¶ 26 (describing varied backgrounds of fellow board members); *id.* ¶ 32 ("board members have been drawn from the ranks of people who have been very successful in a wide variety of business and non-business endeavors"). | Disputed that the declarations establish this fact. While there may be "no minimum requirements for board service," "board members have been drawn from the ranks of people who have been very successful in a wide variety of business and nonbusiness endeavors"; being "very successful" is absolutely a "special qualification."<br><br>Further disputed because the declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| **56)** | Directors have typically been drawn from the business sector, with specific formal education, but individuals can be prepared for board service based | Grounds Decl. ¶¶ 32, 33 (no required experience or background for corporate board directors); Lanham Decl. ¶ 14 ("there are no specific | Undisputed that the declarations say this. Disputed to the extent this establishes that "there are no specific qualifications or training necessary to fill a public corporation board of directors position"; being "very successful" is absolutely a "special qualification." |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 43 -

| | | |
|---|---|---|
| on their experience in a wide variety of occupations, including positions within business organizations and positions within other types of enterprises—for example, academia, government, foundations, investing, science, and military—and no specific educational degree is necessary. | qualifications or training necessary to fill a public corporation board of directors position, and people can be prepared for public corporation board director positions based on their success in a wide variety of occupations, both within business organizations and without"); Declaration of Lawrence B. Low ("Low Decl.") ¶¶ 32-34 (noting that "[t]here is no single definition for what makes a person qualified to serve on a board," and board candidates can develop "skills and expertise" in a variety of backgrounds); Meza Decl. ¶¶ 25, 34-37 (noting there are no minimum requirements for board service, and that a wide array of experiences may be considered valuable); *see* Grounds Decl. ¶ 34 (providing educational attainment and job title/occupational classification statistics for women added to formerly all-male California public corporation boards in 2019 after SB 826 was passed); Roberts Decl. ¶ 26 (describing varied experience of nine directors hired for publicly held bank | Further disputed because the declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 44 -

| | | | |
|---|---|---|---|
| | | corporation headquartered in California); *id.* ¶ 32 ("board members have been drawn from the ranks of people who have been very successful in a wide variety of business and non-business endeavors"); Declaration of Sukhinder Singh Cassidy ("Singh Cassidy Decl.") ¶¶ 15-16 (explaining that "the most valuable future board candidate for a given company might be someone with specific functional, industry, or technical expertise"). | |
| **57)** | The best candidate for a given board seat may have specific functional, industry, or technical expertise; experience as a CEO, CFO, or board director is not necessary to be qualified for board service. | Singh Cassidy Decl. ¶¶ 15 ("[T]he most valuable future board candidate for a given company might be someone with specific functional, industry, or technical expertise, who is not a sitting CEO or CFO, and may not have prior board experience."); Low Decl. ¶¶ 32-34 (Experience in the C-suite or prior board service should not be treated as a necessary prerequisite for board service . . . . A candidate with C-suite experience may well be less qualified, or lack relevant skills and | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 45 -

| | | | |
|---|---|---|---|
| | | experience, as compared to a candidate without C-suite experience."); Meza Decl., ¶¶ 25, 34-36 ("[T]here are directors on the boards of public corporations . . . who have no C-suite or significant corporate leadership experience."); Lanham Decl. ¶¶ 26, 29 (noting C-suite and prior board experience are not necessary qualifications for board service, and "the qualified labor pool [is] broader"); Roberts Decl. ¶ 32 ("board members have been drawn from the ranks of people who have been very successful in a wide variety of business and non-business endeavors"); *id.* ¶ 26 (describing varied backgrounds of declarant's fellow board members); Grounds Decl. ¶ 41 (noting broad variety of competencies considered valuable for board service). | |
| **58)** | The December 2020 Securities and Exchange Commission Notice of Filing of Proposed Rule Change to Adopt Listing Rules | SOS RJN, Ex. 13, p. 80475. | Undisputed that the filing says this. Disputed to the extent this establishes that "there are no specific qualifications or training necessary to fill a public corporation board of directors position." |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 46 -

| | | | |
|---|---|---|---|
| | Related to Board Diversity for the NASDAQ Stock Market LLC reported that:<br><br>"Leaders from across the spectrum of stakeholders with whom Nasdaq spoke reinforced the notion that if companies recruit by skill set and expertise rather than title, they will find there is more than enough diverse talent to satisfy demand." | | Further disputed because the opinions of unnamed "leaders" are generalized lack sufficient evidentiary support to support summary judgment. *Cf. Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| 59) | The December 2020 Securities and Exchange Commission Notice of Filing of Proposed Rule Change to Adopt Listing Rules Related to Board Diversity for the NASDAQ Stock Market LLC reports that:<br><br>"While in 1999, Forbes and Milliken characterized boards as 'large, elite, and episodic decision making groups that face complex tasks pertaining to strategic-issue processing,' over the past two decades, their role has | SOS RJN, Ex. 13, pp. 80479-80 (footnotes omitted); *see also* SOS RJN, Ex. 48, p. 1 (Letter from Carl Guardino, Executive Vice President of Bloom Energy, to Gov. Gavin Newsom, Sept. 2, 2020); SOS RJN, Ex. 49 (Letter from Enrique Lores, President and CEO of HP Inc., to Gov. Gavin Newsom, Sept. 8, 2020); Berkhemer-Credaire Decl. ¶¶ 35-36 ("Corporate boards are in need of Chief Human Resources Officers, cyber security experts, and digital marketing experts. These are also functional areas where women and men of | Undisputed that the filing says this. Disputed to the extent this establishes that "there are no specific qualifications or training necessary to fill a public corporation board of directors position."<br><br>Further disputed to the extent the declaration of Berkhemer-Credaire is intended to indicate that AB 979 was intended to remedy discrimination. These are made-for-litigation statements created after the statute was enacted with no supporting evidence that these were before the legislature at the time the bill was enacted. These claims are not reflected in the text of the enacted bill or any drafts or any committee reports. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 47 -

| | | | |
|---|---|---|---|
| | evolved; boards are now more active, frequent advisors on areas such as cybersecurity, social media, and environmental, social and governance ('ESG') issues such as climate change and racial and gender inequality. Nasdaq believes that boards comprised of directors from diverse backgrounds enhance investor confidence by ensuring that board deliberations include the perspectives of more than one demographic group, leading to more robust dialogue and better decision making." | color have excelled. . . . Nevertheless, highly qualified women and men of color are generally not selected."). | basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Further disputed because the statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *see also Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.") |
| **60)** | There is a broad range of ages for corporate board directors. Typically directors are people in their forties, fifties, and sixties, and particularly people in their fifties and sixties. But a number of directors are younger—there are 27 directors of U.S. public corporations age 30 or younger, two of | Grounds Decl. ¶ 35; Meza Decl. ¶ 36. | Undisputed that the declarations say this. Disputed to the extent this establishes that "there are no specific qualifications or training necessary to fill a public corporation board of directors position."<br><br>Further disputed because there is no supporting evidence that these were before the legislature at the time the bill was enacted. These claims are not reflected in the text of the enacted bill or any drafts or any committee reports. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 48 -

| | | | |
|---|---|---|---|
| | whom sit on California public corporation boards. | | U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.'") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **61)** | Directors often serve on multiple boards of corporations in different industries. | Meza Decl. ¶ 35; *see* Declaration of Guy Primus ("Primus Decl.") ¶ 64 (example of director sitting on boards of two companies in different industries). | Undisputed. |
| **62)** | Relevant labor pools for prospective California public corporation board directors include (1) California's general population (adjusted with eight different age brackets to account for average director age); (2) the population of employed California residents, as of 2018, classified as: (a) professionals; (b) | Lanham Decl. ¶¶ 13-14; Roberts Decl. ¶¶ 32-33; Meza Decl. ¶¶ 38-39; *see also* Roberts Decl. ¶¶ 25-26 (no special qualifications necessary for board service, and directors have a variety of educational and professional backgrounds). | Disputed. The assertions regarding "comparator pools" are unsupported *ipse dixit*. The declarations offered in support lack sufficient evidentiary support to support summary judgment. *Cf. Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 49 -

| | | | |
|---|---|---|---|
| 1 | first/mid-level officials and managers; (c) professionals or first/mid-level officials and managers; and (d) professionals, first/mid-level officials and managers, or executive/senior level officials and managers; and (3) the population of California residents whose highest level of education, as of 2019, and separately as of 2010, was: (a) a bachelor's degree; (b) a graduate/professional degree; or (c) either a bachelor's or a graduate/professional degree. | | expert must back up his opinion with specific facts."). |
| 2 | | | |
| 3 | | | They are also refuted by publicly available information about the composition of covered companies' boards. For example, an inspection of California public corporation board directors shows that many are not California board directors. *See, e.g.* *Board*, Alphabet, https://abc.xyz/investor/other/board/ (last accessed Feb. 14, 2023) (listing Roger W. Ferguson, Jr., who lives and works in New York, New York); *Apple Leadership*, Apple, https://www.apple.com/leadership/ (last accessed Feb. 14, 2023) (listing Sue Wagner, who lives and works in New York, New York); *About the Walt Disney* Company, Disney, https://thewaltdisneycompany.com/about/ (last accessed Feb. 14, 2023) (listing Calvin McDonald, who lives and works in Vancouver, British Columbia). These facts are suitable for judicial notice, as they are "not subject to reasonable dispute in that [they are] capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Federal Rules of Evidence 201(b). |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | Further, plaintiff disputes that all professionals or managers of any level or all people with degrees of any level are the relevant labor pools for California public board directors. |
| 22 | | | |
| 23 | | | |
| 24 | | | For example, the Board of Directors of Apple Inc. is composed of:  Arthur D. Levinson, Ph.D, Chairman of the Board, Apple Founder and CEO Calico; James A. Bell, Former CFO and Corporate President The Boeing Company; Tim Cook, CEO Apple; |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 50 -

Albert Gore Jr., Former Vice President of the United States; Alex Gorsky, Former Executive Chair, Johnson & Johnson; Andrea Jung, President and CEO Grameen America; Monica Lozano, Former President and CEO College Futures Foundation; Ronald D. Sugar, Ph.D., Former Chair and CEO Northrop Grumman Corporation, Susan L. Wagner, Co-Founder and Director BlackRock. *See* Apple Leadership, Apple, https://www.apple.com/leadership/ (last accessed Feb. 14, 2023).

This does not support California's assertions, but rather indicates that relative comparator pools might include former or current C-suite officers or founders of public corporations, directors of public corporations, and former high-ranking politicians or diplomats.

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 51 -

| | 63) | Each of these comparator pools provides a reasonable representation of the relevant labor pool for prospective California public corporation board directors. | Lanham Decl. ¶¶ 13-14 ("I believe appropriate comparator pools would include California residents with undergraduate degrees or with graduate or professional degrees, and California residents who have worked in professional, management, or executive occupations. I believe California general population comparisons, adjusted for age, might also be illuminating . . . because, in the absence of discrimination, I would expect the percentage of board members who are from underrepresented community members to be reasonably close to the percentage of underrepresented community members in California's age-adjusted general population."); Roberts Decl. ¶¶ 32-33 ("[I]t is reasonable to expect that, in the absence of discrimination, the percentage of California public corporation board members from particular racial and ethnic groups would be reasonably close to the percentages of people from these groups in the California | Disputed that any of these comparator pools provide a reasonable representation of the relevant labor pool. *See* Response to 62, *supra.* The declarations offered in support lack sufficient evidentiary support to support summary judgment. *Cf. Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). <br><br> Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 52 -

| | | | |
|---|---|---|---|
| 1 | | | population. . . . I also think it is relevant to look at these groups' levels of representation in the population of people in California who have post-secondary degrees and who have worked as professionals, managers, and executives."); Meza Decl. ¶¶ 38-39 ("[I]t is reasonable to expect that the racial and ethnic representation on California public corporation boards would not be significantly different from the demographics of the state's population in general, in the absence of discrimination . . . . Similarly, again in the absence of discrimination, I would not expect to see significant disparities between the racial and ethnic composition of California's public corporation boards and the racial and ethnic composition of the population of people holding undergraduate, graduate, or professional degrees, or working in professional or management occupations."); *see also* Low Decl. ¶¶ 32-34 ("There is no single definition for what makes a person | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 53 -

| | | | qualified to serve on a board."). | |
|---|---|---|---|---|
| **64)** | To compare these relevant labor pools against the racial and ethnic composition of California public corporation boards as of October 1, 2020, the Secretary uses the following data sets:<br><br>(1) Eight selected age brackets of the California general population, using data from the U.S. Census Bureau's 2020 American Community Survey (5-Year Estimates):<br>• 25 years old and up<br>• 25 to 84 years<br>• 30 to 84 years<br>• 35 to 84 years<br>• 45 to 84 years<br>• 30 to 74 years<br>• 35 to 74 years<br>• 45 to 74 years;<br><br>(2) Educational attainment statistics for California residents ages 25 and older, as of 2010 and 2019, using data | Declaration of Richard Drogin ("Drogin Decl.") ¶¶ 4, 6-10 & tbl.2, 12; *id.* Ex. 2. | Disputed that these are "relevant labor pools." *See* Response to 62, *supra*. Dr. Dr. Drogin did *not* make any findings about the "applicable comparator pools." On the contrary, he noted that the comparator pools were "identified by counsel," advising that he was "not offering any opinion on the appropriateness of the availability pools counsel has selected." Declaration of Dr. Drogin, ECF No. 114-9 at 4 (emphasis added). The labor pool conclusions here thus rest on the say so of California's counsel, not any cited witness.<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 54 -

| | | |
|---|---|---|
| from the 2010 and 2019 American Community Surveys (1-Year Estimates); and<br><br>(3) Occupational classification statistics of four separate pools of California residents, using 2018 U.S. Equal Employment Opportunity Commission data. | | |
| **65)** As detailed in the facts that follow, all of the comparisons of these data sets against the racial and ethnic composition of California public corporation boards as of October 1, 2020 show highly statistically significant underrepresentation of Latinos, Black people, Asians/Pacific Islanders, and American Indians or Alaska Natives, and highly statistically significant overrepresentation of white people.<br><br>(Native Americans were entirely excluded from California public corporation boards | Drogin Decl. ¶¶ 7-13; *id.* Ex. 2; *see also* Meza Decl. ¶ 51 & n.7; Drogin Decl. ¶ 5 & n.2. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 55 -

| | | | |
|---|---|---|---|
| as of October 1, 2020. However, to quantify Native American underrepresentation, Dr. Drogin treated the single Native American director later identified by LCDA—who was not appointed to a California public corporation board until December 2021—as one of the 5,447 directors at the time AB 979 was enacted.) | | | discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **66)** | When determining statistical significance, a significance probability, or p-value, is the probability that a disparity as large as or greater than the actual observed disparity would occur if selections for board positions were made at random from the comparator pool. | Drogin Decl. ¶¶ 10-11. | Undisputed. |
| **67)** | A p-value of 0.05 or lower is generally considered statistically significant, meaning that such a disparity would be unlikely to occur by chance (that is, from random selections | Drogin Decl. ¶ 11. | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 56 -

| | | | |
|---|---|---|---|
| | from the comparator pool), and supports an inference that the disparity is a result of a cause other than random fluctuation. | | |
| 68) | A Z-value is another measure of statistical significance, which measures the observed disparity in terms of the number of standard deviations. Z-values correspond to p-values (significance probabilities). | Drogin Decl. ¶¶ 10-11 & tbl.3. | Undisputed. |
| | **General Population Comparisons** | | |
| 69) | Compared to their representation among the California population ages 25 and older, white directors were overrepresented by 135.93%, while Black directors were underrepresented by 41.52%, Latino directors were underrepresented by 92.72%, Asian directors were underrepresented by 29.23%, and American Indian or Alaska Native directors were underrepresented by 97.23%. | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.5. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 57 -

| | | | |
|---|---|---|---|
| | Each of these disparities is highly statistically significant, with Z-values between 5.86 and 74.59 (in absolute value), resulting in p-values less than 0.000001, and less than 1 chance in $10^{88}$, respectively. | | makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **70)** | Compared to their representation among the California population ages 25-84, white directors were overrepresented by 139.59%, while Black directors were underrepresented by 41.82%, Latino directors were underrepresented by 92.80%, Asian directors were underrepresented by 29.06%, and American Indian or Alaska Native directors were underrepresented by 97.26%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 5.89 and 75.69 (in absolute value), resulting in p-values | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.6. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 58 -

| | | | |
|---|---|---|---|
| | less than 0.000001, and less than 1 chance in $10^{88}$, respectively. | | some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **71)** | Compared to their representation among the California population ages 30-84, white directors were overrepresented by 130.92%, while Black directors were underrepresented by 41.24%, Latino directors were underrepresented by 92.58%, Asian directors were underrepresented by 29.94%, and American Indian or Alaska Native directors were underrepresented by 97.27%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 5.91 and 73.05 (in absolute value), resulting in p-values less than 0.000001, and less than 1 chance in $10^{88}$, respectively. | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.7. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **72)** | Compared to their representation among the California | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.8. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 59 -

| | | | |
|---|---|---|---|
| population ages 35-84, white directors were overrepresented by 122.88%, while Black directors were underrepresented by 41.35%, Latino directors were underrepresented by 92.36%, Asian directors were underrepresented by 30.20%, and American Indian or Alaska Native directors were underrepresented by 97.28%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 5.92 and 70.53 (in absolute value), resulting in p-values less than 0.000001, and less than 1 chance in $10^{88}$, respectively. | | | selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **73)** | Compared to their representation among the California population ages 45-84, white directors were overrepresented by 102.25%, while Black directors were underrepresented by 43.01%, Latino directors were | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.9. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 60 -

| | | | |
|---|---|---|---|
| underrepresented by 91.59%, Asian directors were underrepresented by 30.16%, and American Indian or Alaska Native directors were underrepresented by 97.28%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 5.92 and 63.60 (in absolute value), resulting in p-values less than 0.000001, and less than 1 chance in $10^{88}$, respectively. | | | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **74)** | Compared to their representation among the California population ages 30-74, white directors were overrepresented by 138.54%, while Black directors were underrepresented by 41.25%, Latino directors were underrepresented by 92.77%, Asian directors were underrepresented by 29.62%, and American Indian or Alaska Native directors were | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.10. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 61 -

| | | | |
|---|---|---|---|
| | underrepresented by 97.29%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 5.93 and 75.38 (in absolute value), resulting in p-values less than 0.000001, and less than 1 chance in $10^{88}$, respectively. | | 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **75)** | Compared to their representation among the California population ages 35-74, white directors were overrepresented by 130.50%, while Black directors were underrepresented by 41.37%, Latino directors were underrepresented by 92.57%, Asian directors were underrepresented by 29.86%, and American Indian or Alaska Native directors were underrepresented by 97.31%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 5.95 and 72.93 (in | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2 at tbl.11. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on faulty comparisons to statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 62 -

| | | | |
|---|---|---|---|
| | absolute value), resulting in p-values less than 0.000001, and less than 1 chance in $10^{88}$, respectively. | | (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 76) | Compared to their representation among the California population ages 45-74, white directors were overrepresented by 108.91%, while Black directors were underrepresented by 43.22%, Latino directors were underrepresented by 91.86%, Asian directors were underrepresented by 29.66%, and American Indian or Alaska Native directors were underrepresented by 97.32%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 5.96 and 65.91 (in absolute value), resulting in p-values less than 0.000001, and less than 1 chance in $10^{88}$, respectively. | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.12. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| | **Employment Comparisons** | | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 63 -

| | | | |
|---|---|---|---|
| **77)** | Compared to their representation among employed Californians classified as "professionals" by the U.S. Equal Employment Opportunity Commission (EEOC) as of 2018, white directors were overrepresented by 80.45%, while Black directors were underrepresented by 32.24%, Latino directors were underrepresented by 82.48%, Asian directors were underrepresented by 70.55%, and American Indian or Alaska Native directors were underrepresented by 94.14%. Each of these disparities is highly statistically significant, with Z-values between 3.89 and 55.40 (in absolute value), resulting in p-values of approximately 0.0001, and less than 1 chance in $10^{88}$, respectively. | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.1. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **78)** | Compared to their representation among employed Californians | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.2. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment (2:21-cv-01951-JAM-AC)

- 64 -

| | | | |
|---|---|---|---|
| classified as "first/mid-level officials and managers" by the EEOC as of 2018, white directors were overrepresented by 54.76%, while Black directors were underrepresented by 33.42%, Latino directors were underrepresented by 88.50%, Asian directors were underrepresented by 49.73%, and American Indian or Alaska Native directors were underrepresented by 94.75%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 4.143 and 44.033 (in absolute value), resulting in p-values less than 0.0001, and less than 1 chance in $10^{88}$, respectively. | | | selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 79) | Compared to their representation among employed Californians classified as "professionals" or as "first/mid-level officials and managers" by the EEOC as of 2018, white directors were | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.3. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 65 -

| | | | |
|---|---|---|---|
| | overrepresented by 71.92%, while Black directors were underrepresented by 32.59%, Latino directors were underrepresented by 84.85%, Asian directors were underrepresented by 66.39%, and American Indian or Alaska Native directors were underrepresented by 94.33%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 3.9 and 51.88 (in absolute value), resulting in p-values of approximately 0.0001, and less than 1 chance in $10^{88}$, respectively. | | 469, 501–02  (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.,* 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.,* 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **80)** | Compared to their representation among employed Californians classified as "professionals," "first/mid-level officials and managers," or "executive/senior level officials and managers" by the EEOC as of 2018, white directors were overrepresented by 68.06%, while Black | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.4. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 66 -

| | | | |
|---|---|---|---|
| directors were underrepresented by 31.09%, Latino directors were underrepresented by 84.50%, Asian directors were underrepresented by 65.61%, and American Indian or Alaska Native directors were underrepresented by 94.26%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 3.94 and 50.21 (in absolute value), resulting in p-values of approximately 0.0001, and less than 1 chance in $10^{88}$, respectively. | | | legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.,* 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.,* 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| | **Educational Comparisons** | | |
| **81)** | Compared to their representation among Californians who had earned a bachelor's degree as of 2019, white directors were overrepresented by 74.47%, while Black directors were underrepresented by 33.10%, Latino directors were underrepresented by 86.18%, Asian directors | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.13. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 67 -

| | | | |
|---|---|---|---|
| | underrepresented by 58.89%, and American Indian or Alaska Native directors were underrepresented by 95.05%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 4.28 and 52.95 (in absolute value), resulting in p-values less than 0.0001, and less than 1 chance in $10^{88}$, respectively. | | legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.,* 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.'") (emphasis added); *see also Richmond v. J.A. Croson Co.,* 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 82) | Compared to their representation among Californians who had earned a graduate or professional degree as of 2019, white directors were overrepresented by 53.06%, while Black directors were underrepresented by 31.98%, Latino directors were underrepresented by 79.33%, Asian directors were underrepresented by 60.54%, and American Indian or Alaska Native directors were underrepresented by 95.00%. | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.14. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.,* 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 68 -

| | | | |
|---|---|---|---|
| Each of these disparities is highly statistically significant, with Z-values between 4.25 and 43.18 (in absolute value), resulting in p-values less than 0.0001, and less than 1 chance in $10^{88}$, respectively. | | | necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **83)** | Compared to their representation among Californians who had earned either a bachelor's degree or a graduate or professional degree as of 2019, white directors were overrepresented by 65.90%, while Black directors were underrepresented by 32.69%, Latino directors were underrepresented by 84.25%, Asian directors were underrepresented by 59.52%, and American Indian or Alaska Native directors were underrepresented by 95.03%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 4.27 and 49.25 (in absolute value), resulting in p-values | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.15. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 69 -

| | | | |
|---|---|---|---|
| 1<br>2 | | less than 0.0001, and less than 1 chance in $10^{88}$, respectively. | | added). |
| 3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24 | **84)** | Compared to their representation among Californians who had earned a bachelor's degree as of 2010, white directors were overrepresented by 52.07%, while Black directors were underrepresented by 30.71%, Latino directors were underrepresented by 81.89%, Asian directors were underrepresented by 56.91%, and American Indian or Alaska Native directors were underrepresented by 91.54%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 3.15 and 42.68 (in absolute value), resulting in p-values of approximately 0.00167 (1 chance in 600), and less than 1 chance in $10^{88}$, respectively. | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.16. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.'") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 25<br>26<br>27<br>28 | **85)** | Compared to their representation among Californians who had earned a graduate or | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.17. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment (2:21-cv-01951-JAM-AC)

- 70 -

| | | |
|---|---|---|
| professional degree as of 2010, white directors were overrepresented by 36.25%, while Black directors were underrepresented by 27.06%, Latino directors were underrepresented by 76.25%, Asian directors were underrepresented by 50.74%, and American Indian or Alaska Native directors were underrepresented by 94.24%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 3.93 and 33.91 (in absolute value), resulting in p-values of approximately 0.0001, and less than 1 chance in $10^{88}$, respectively. | | on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 86) Compared to their representation among Californians who had earned either a bachelor's degree or a graduate or professional degree as of 2010, white directors were overrepresented by 45.94%, while Black directors were underrepresented by | Drogin Decl. ¶¶ 9-12 & tbl.3; *id.* Ex. 2, tbl.18. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on faulty comparisons to statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 71 -

| | | | |
|---|---|---|---|
| 29.42%, Latino directors were underrepresented by 80.19%, Asian directors were underrepresented by 55.36%, and American Indian or Alaska Native directors were underrepresented by 92.77%.<br><br>Each of these disparities is highly statistically significant, with Z-values between 3.45 and 39.48 (in absolute value), resulting in p-values less than 0.001, and less than 1 chance in $10^{88}$, respectively. | | | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **87)** | The likelihood of the racial disparities for underrepresented communities reported in Fact Nos. 69-86 resulting from random chance is *at most* approximately 1 in 600 (0.167%). For the vast majority of the comparisons in Fact Nos. 69-86, the likelihood of the racial disparities for underrepresented communities resulting from random chance is at most approximately 1 in 10,000 (0.01%). | Drogin Decl. ¶¶ 9-13 & tbl.3; *see generally id.* Ex. 2. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on comparisons to faulty statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 72 -

| | | | |
|---|---|---|---|
| | | | *v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **88)** | With respect to the overrepresentation of white directors reported in Fact Nos. 69-86, the disparities are so large that the likelihood of such overrepresentation resulting from random chance is lower than 1 in $10^{88}$, effectively equal to zero. | Drogin Decl. ¶¶ 9-13 & tbl.3 ("The Z-values for whites are greater than 33.91 in every comparison. The probability of such large disparities (overrepresentation) occurring by random fluctuation is lower than one chance in 10 to the 88th power—effectively zero for all practical purposes."); *see generally id.* Ex. 2. | Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. These statements are based on faulty comparisons to statistical pools disputed above, and any findings must be based on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 73 -

| | | | |
|---|---|---|---|
| | | | discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| | **There is a Substantial Pool of Candidates from Underrepresented Communities who are Ready and Able to Serve on Corporate Boards** | | |
| **89)** | Business leaders and other witnesses who work to promote the visibility of diverse board-ready corporate leaders attest there are thousands of African American, Latino, Asian, Pacific Islander, and Native American candidates qualified and ready to serve on corporate boards. | Low Decl. ¶¶ 4-6, 35-40 (noting that one "database of diverse candidates for executive and board recruitment . . . included over 1,700 Asian candidates, over 1,500 Black candidates, and over 900 Hispanic candidates," though the actual numbers of diverse candidates in that database are likely even higher because some individuals have not "self-identified their ethnicity"; this number of candidates "vastly exceeds the number of board seats open at publicly held corporations headquartered in California"); Meza Decl. ¶¶ 25, 44 (noting LCDA database contains "over 2,500 U.S. Hispanic/Latino executives and board members . . . all of whom are | Disputed that these declarations are sufficient to establish that candidates are qualified and ready to serve on public corporate boards. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). <br><br> Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 74 -

| | | | exceptionally well qualified to serve as directors on the boards of California public corporations," and that there are "many thousands more board-qualified U.S. Hispanics/Latinos" that have not been added to LCDA's database); Primus Decl. ¶¶ 5, 28-34 (noting "broad and substantial pool" of "thousands of board-ready Black candidates in California," which "vastly exceeds the number of board seats available at publicly held corporations headquartered in California"); Roberts Decl. ¶¶ 16-24 (noting "substantial pool of African Americans who are qualified to serve on the boards of directors of publicly held corporations and who are interested in doing so," and describing African American board readiness program); Grounds Decl. ¶¶ 43-46 (concluding that there are "many thousands" of "qualified Black people/African Americans, Asian/Pacific Islanders, [and] Latinos"); *see also* Meza Decl. ¶¶ 40-43, 45-46; Singh Cassidy Decl. ¶¶ 2-3, | necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 75 -

19-23, 45-46, 53-54 ("[S]upply is not the problem. A lack of demand for diverse candidates from the principally white male directors who have served on these boards is the problem."); Berkhemer-Credaire Decl. ¶¶ 33-34 (noting "there are a significant number of women and men of color who hold C-suite positions and other high-level business positions in California" and "many men and women of color also have relevant business acumen and leadership"); Lanham Decl. ¶¶ 11, 17-23 (noting "very substantial number of Black professionals with the types of credentials, skills, and education that indicate[] that they are ready for corporate board service," and describing Black Corporate Board Readiness program at Santa Clara University's Leavey School of Business, including numbers of program graduates, significant waitlist for the program, and percentages of program graduates who have been placed on corporate boards).

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 76 -

| | 90) | Numerous private registries and databases identify qualified candidates from underrepresented communities. | Grounds Decl. ¶ 45 (estimating databases of diverse, board-ready candidates provide a "robust bank of talent" with "thousands of candidates who are in the underrepresented [racial and ethnic] groups outlined in AB 979"); Low Decl. ¶ 39 (over 1,700 Asian candidates, 1,500 Black candidates and 900 Hispanic candidates in Equilar Diversity Network); Meza Decl. ¶¶ 10, 21-22, 25-34 (over 2,500 qualified Latino candidates in LCDA database); Singh Cassidy Decl. ¶¶ 2-3, 18-22, 24, 43-44 (theBoardlist maintains a registry of thousands of racially diverse, board-ready candidates who have been vetted and endorsed by experienced CEOs and board directors, and regularly publishes curated lists of board-ready, diverse leaders); *see also* Roberts Decl. ¶ 47 (sitting board members "know of available lists and registries and referral services" of "highly qualified candidates who are people of color"); Lanham Decl. ¶ 17-23 (describing Black Corporate Board | Disputed that these declarations are sufficient to establish that candidates are qualified and ready to serve on public corporate boards. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 77 -

| | | | |
|---|---|---|---|
| | | Readiness program at Santa Clara University's Leavey School of Business); Hyde Decl. ¶¶ 11, 12 & Ex. 4, at 22:6-12 (Assem. Committee on Banking and Finance, Transcript of Hearing on California Senate Bill No. 826, June 25, 2018 (testimony that Stanford Graduate School of Business and Harvard Business School maintain their own registries)). | |
| **91)** | Individuals from underrepresented communities with backgrounds indicating potential readiness for corporate board service are as attracted or more attracted to positions on California public corporation boards, as compared to white individuals with similar backgrounds. | Roberts Decl. ¶ 32 ("[B]oard seats are generally prestigious and well-compensated positions, and can lead to other attractive opportunities. Thus, there is no reason to believe that African Americans or other racially or ethnically diverse individuals are less attracted to holding seats on public corporation boards than white individuals."); Berkhemer-Credaire Decl. ¶ 13 ("For women and men of color, corporate director positions are important for the same reasons as for white men—expanding business networks, skills, experience, and earning additional income."); Grounds | Disputed that these declarations are sufficient to establish are "as or more attracted to positions on California public boards." The declarants' opinions are generally unsupported and lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Further disputed that the statements make statements regarding "underrepresented communities" as defined in AB 979. The statements various refer to "African Americans or other racially or ethnically diverse individuals," "women and men of |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 78 -

| | | | |
|---|---|---|---|
| | | Decl. ¶ 46 ("[T]here is no reason to think that racially and ethnically diverse candidates are less interested in serving on California public corporation boards than their white counterparts."); Lanham Decl. ¶ 12 (explaining that "there is no basis to believe that Black individuals are less attracted to service on public corporation boards, and California public corporation boards in particular, than individuals from any other racial or ethnic groups," and that director seats, "in general, are very desirable positions to hold"); *see also* Low Decl. ¶ 19 (describing board service as "an invaluable professional opportunity and network building step for any high-level professional, executive, or business leader hoping to add value and elevate their ability to have an impact"). | color," "racially and ethnically diverse candidates," and "Black." But AB 979 defines "Director from an underrepresented community" as "an individual who self-identifies as Black, African American, Hispanic, Latino, Asian, Pacific Islander, Native American, Native Hawaiian, or Alaska Native, or who self-identifies as gay, lesbian, bisexual, or transgender." None of the above make any findings about "gay, lesbian, bisexual, or transgender" candidates, nor are any individualized findings made about Hispanic, Latino, Asian, Pacific Islander, Native American, Native Hawaiian, or Alaska Native candidates.<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.'") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 92) | A director position on a corporate board is highly desirable for many talented executives, and business and | Berkhemer-Credaire Decl. ¶¶ 11-13. ("Director positions can be very lucrative and provide excellent opportunities for | Undisputed. This further establishes that California is incorrect in contending that there are no special qualifications to serve on a corporate board of directors. *See supra* 55. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 79 -

| | | | |
|---|---|---|---|
| 1 | organizational leaders. | professional advancement. Directorships are an opportunity to showcase one's professional expertise and expand one's network with other senior business leaders. Corporate directors gain important knowledge and perspective, as boards address a wide range of business, legal, strategic, human resources, and financial management, as well as other issues affecting their corporation's business. A director influences the direction of a corporation, in conjunction with their fellow board directors and through their committee assignments. In addition, corporate directors are able to expand their business networks and contacts through these leadership roles in ways that both benefit the corporations and their own careers."); Primus Decl. ¶ 27 (discussing the "invaluable professional opportunity and network building step" of a board seat); Roberts Decl. ¶ 32 ("[B]oard seats are generally prestigious | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 80 -

| | | | |
|---|---|---|---|
| | | and well-compensated positions, and board service can lead to other attractive opportunities."); Low Decl., ¶¶ 18-19 (describing "invaluable professional opportunity" of serving as corporate board director). | |
| **93)** | Corporate directors receive compensation for their service. | Berkhemer-Credaire Decl. ¶ 11-13 ("Director positions can be very lucrative . . . . Corporate directors receive compensation for their service."); Roberts Decl. ¶ 32 (noting board seats are "generally prestigious and well-compensated positions"). | Disputed that these declarations are sufficient to establish that all corporate directors receive compensation for their service. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). <br><br> Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, *before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 81 -

| | | | |
|---|---|---|---|
| | | | *v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **94)** | 2018 data from the U.S. EEOC found 140,606 employees of color holding the title of Executive/Senior Official, and the U.S. Bureau of Labor Statistics reported that in 2020, there were 71,767 Black/African American chief executives, 90,126 Asian chief executives, and 123,506 Hispanic/Latino chief executives. | Grounds Decl. ¶ 44. | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Disputed to the extent this goes to establish these statistics as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
| **95)** | As of October 1, 2020 (the day after AB 979 was signed into law), at most, 1,221 additional board seats needed to be filled by directors from underrepresented communities to meet AB 979's requirements. | Grounds Decl. ¶¶ 38-40. | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 82 -

| | | | |
|---|---|---|---|
| | | | affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| | **Exclusion of Qualified Individuals from Underrepresented Communities Persists Because of Discrimination in the Director Selection Process** | | |
| **96)** | New director candidates for a corporation's board are typically recruited by the board's existing directors. | Declaration of Yo-Jud Cheng ("Cheng Decl.") ¶ 22; Grounds Decl. ¶¶ 48-49; Berkhemer-Credaire Decl. ¶¶ 18, 21, 23; Lanham Decl., ¶¶ 15, 25; Roberts Decl. ¶¶ 40-41, 45-47; Primus Decl. ¶¶ 38-39; Declaration of Catherine A. Halligan ("Halligan Decl.") ¶¶ 45-46 (explaining that "the insular director selection process which is run by existing board members . . . rel[ies] primarily upon the networks" of "existing directors or CEOs to identify director candidates"); *see* Declaration of Andrew Jennings ("Jennings Decl.") ¶ 24 (characterizing the election of the board's | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 83 -

chosen candidates as "a foregone conclusion"); Roberts Decl. ¶ 39 ("Traditionally, becoming a member of a corporate board is like becoming a member of an exclusive country club: You have to be invited."); Singh Cassidy Decl. ¶¶ 11, 13 (describing "the secret and insular selection process with regards to board recruitment" in which "[d]irectors turn to their own personal networks to recommend other directors"); Herft Decl. ¶ 4 & Ex. 1, at 123:6-126:14 (Sen. Select Comm. on Women, Work, and Families Presents: A Seat at the Table: Why More Women on Corporate Boards Protects Workers, Families, Retirees and Shareholders, Transcript of Hearing, Aug. 29, 2017 (expert testimony before the Senate Select Committee about the board search process)); SOS RJN, Ex. 38, p. 6 (J. Yo-Jud Cheng et al., *Why Do Boards Have So Few Black Directors?*, Harvard Business Review (Aug. 13, 2020)—article in legislative record, noting "heavy reliance

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 84 -

| | | | |
|---|---|---|---|
| | | on social networks in recruiting new directors," and that existing directors "tend to go to people that they're familiar with [and] have grown to know and trust" (alteration in original)); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources identified in the Lew declaration); SOS RJN, Ex. 13, p. 80496 (SEC notice of proposed rulemaking for Nasdaq stock market discussing "traditional director candidate selection process" in which existing directors look for candidates); Declaration of Allison Konrad ("Konrad Decl.") ¶ 37. | |
| 97) | Corporate director positions are generally not posted jobs for which people can apply, but rather a confidential invitation process in which existing, predominantly white directors and CEOs select new directors | Primus Decl. ¶¶ 35-40; Lanham Decl. ¶¶ 15, 25 (explaining that there is "no public application process or open competition for board seats," and that typically, sitting CEOs and board members, who are predominantly white, choose the candidates they wish to | Disputed. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 85 -

| | | | |
|---|---|---|---|
| 1 | | from their own personal networks, which are similarly dominated by white people. | consider from their networks, which are predominantly white); Berkhemer-Credaire Decl. ¶¶ 18-24 (no announcement of open board seats, application process, or position description); Halligan Decl. ¶¶ 44-46 (explaining that "[o]penings for corporate boards are not announced to the public" in "the insular director selection process," which relies "primarily upon the networks of . . . existing directors or CEOs to identify director candidates"); Singh Cassidy Decl. ¶¶ 11-13, 49, 70 (describing "secret and insular selection process" conducted by "existing directors, who are principally white men," thereby "preserv[ing] selection of more white men" from their personal networks and "disadvantag[ing] individuals from underrepresented groups"); Roberts Decl. ¶¶ 39-41; Cheng Decl. ¶¶ 22-24; Low Decl. ¶ 25 (predominantly white directors and CEOs fill board seats by choosing to consider only their own "insular social networks and personal connections," | (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 86 -

| | | | |
|---|---|---|---|
| | | which "lack diversity of people from underrepresented backgrounds," thereby excluding nonwhite candidates from consideration); Meza Decl. ¶¶ 59, 73-74; Grounds Decl. ¶¶ 48-50, 79 ("[B]oard directors are chosen by the insular networks that already exist among board members. This is a common practice and has institutionalized a process that has inhibited racial and ethnic diversity at the corporate board level."); Konrad Decl. ¶ 37. | |
| **98)** | The 2020 Harvard Business Review article in the AB 979 legislative record reported, "Black directors in our sample were also less likely to be board committee chairs than white directors. White directors are therefore more likely to control leadership roles that manage the board pipeline, such as the chair of the nomination/governance committee." | SOS RJN, Ex. 38, p. 7 (J. Yo-Jud Cheng et al., *Why Do Boards Have So Few Black Directors?*, Harvard Business Review (Aug. 13, 2020)); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources identified in the Lew declaration). | Disputed to the extent this goes to establish that directors are excluded because of discrimination. The study notes only that there is a statistical difference in the sample and does not attribute this to deliberate discrimination. As a result, the evidence is not relevant to California's contentions because it is not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505("that past societal discrimination alone can serve as the |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 87 -

| | | | basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.).<br><br>Disputed to the extent this goes to establish the articles assertions as fact. California does not endeavor to separately demonstrate the correctness of the statistics. |
|---|---|---|---|
| **99)** | This process has commonly relied on existing directors' personal networks. | Berkhemer-Credaire Decl. ¶¶ 2, 18, 23-24, 28, 32 ("Board candidates are often identified based on board directors' existing personal networks, including professional and social contacts."); Cheng Decl. ¶¶ 22-24, 27, 49 ("[C]urrent executives' and directors' professional and social networks heavily drive recruitment to corporate boards."); Grounds Decl. ¶¶ 50-59 ("Just recently, in October 2022, I was speaking with a person who serves on the boards of three corporations, including two public corporations . . . who told me that, hands down, directors still just look at their existing networks when they have a seat to fill."); Halligan Decl. ¶¶ 35, 46, 48 ("[M]ost corporate boards, | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 88 -

including California
public corporation
boards, continue to rely
primarily upon the
networks of their
existing directors or
CEOs to identify
director candidates.");
Konrad Decl. ¶¶ 37,
60, 81-82
("[P]redominantly
white male corporate
CEOs and board
directors do not fill
vacancies from the
available pool of
qualified candidates
but instead tap their
networks to identify
individuals who are
already serving on
other boards.");
Lanham Decl. ¶ 25;
Low Decl. ¶ 25
("Companies,
including California's
publicly held
corporations, often fill
open board positions
through the insular
social networks and
personal connections of
existing directors and
CEOs, who . . . are
nearly all white men.");
Meza Decl. ¶¶ 23, 59-
61; Primus Decl. ¶¶ 21,
39, 45 63; Roberts
Decl. ¶¶ 31, 41, 43, 47,
55; Singh Cassidy
Decl. ¶¶ 12-13; Herft
Decl. ¶ 4 & Ex. 1, at
123:6-126:14 (Sen.
Select Comm. on
Women, Work, and
Families Presents: A
Seat at the Table: Why

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's
Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 89 -

| | | | More Women on Corporate Boards Protects Workers, Families, Retirees and Shareholders, Transcript of Hearing, Aug. 29, 2017 (expert testimony before the Senate Select Committee about how the board search process works)); SOS RJN, Ex. 38, p. 6 (J. Yo-Jud Cheng et al., *Why Do Boards Have So Few Black Directors?*, Harvard Business Review (Aug. 13, 2020)—article in AB 979 legislative record discussing "the heavy reliance on social networks in recruiting new directors"); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources identified in the Lew declaration); SOS RJN, Ex. 13, pp. 80475, 80496 (SEC notice of proposed rulemaking for Nasdaq stock market, noting that "the traditional director nomination process is limited by directors looking within their own social networks for candidates with previous C-suite | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 90 -

| | | | |
|---|---|---|---|
| | | experience"); *see also* Berkhemer-Credaire Decl. ¶¶ 29-30 (giving example of how personal networks can exclude qualified candidates from consideration); Singh Cassidy Decl. ¶ 17 (explaining from personal experience the critical importance of existing directors' personal networks). | |
| **100)** | Directors of California public corporations have been predominantly white. | Meza Decl. ¶ 51; *id.* Ex. 2, at 4 (finding white directors held 84% of California public corporation board seats at time AB 979 was enacted); Singh Cassidy Decl., ¶¶ 12, 14, 16, 42 (noting existing directors, including in California, are "principally white men," as well as "the majority" of current CEOs and CFOs); Low Decl. ¶¶ 25-26 (explaining that "existing directors and CEOs," including of California public corporations, "are nearly all white men"); Halligan Decl. ¶ 44 (noting that white men hold "the vast majority of board seats in publicly held corporations," including in California); Berkhemer-Credaire | Disputed to the extent this goes to establish that directors are excluded because of discrimination. A statistical difference in result does not demonstrate discrimination. Further, to the extent the declarations provide evidence of discrimination, it is not relevant to California's contentions because these statements do not indicate a finding of discrimination, or even underrepresentation, but are generalized findings about diversity without information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *id.* at 507 (it is "completely unrealistic" to assume that groups "will choose a particular trade in lockstep proportion to their representation in the local population."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 91 -

Decl. ¶ 32; Cheng Decl. ¶¶ 17-19; Grounds Decl. ¶ 56; SOS RJN, Ex. 38, pp. 2, 6 (J. Yo-Jud Cheng et al., *Why Do Boards Have So Few Black Directors?*, Harvard Business Review (Aug. 13, 2020)—article in AB 979 legislative record stating that "corporate America is predominantly led by white men"); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources identified in the Lew declaration); Roberts Decl. ¶ 42 ("I know through my work with AABLI [a prospective board director talent program focused on African Americans] and as a board director [on a California public corporation board] that African Americans have been underrepresented on public corporation boards, especially before AB 979 was enacted. Most of the public corporation board members I have encountered have been white."); *see also* Singh Cassidy Decl.

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 92 -

| | | | |
|---|---|---|---|
| | | ¶ 41 (noting "public data" regarding tech companies "clearly supports a dearth of . . . leaders of color on boards"); Konrad Decl. ¶ 37. | |
| **101)** | The networks of the white individuals who hold the vast majority of director positions largely exclude racially and ethnically diverse individuals. | Grounds Decl. ¶¶ 50-56 (explaining that predominantly white board members look to their "predominantly white" networks to fill open board seats, "creat[ing] a pattern of board seats being filled more often by people who look like current board directors"); Lanham Decl. ¶ 25 ("The discrimination has taken the following form: Predominantly white sitting board members and CEOs . . . would limit their searches for new directors to their existing networks (or those of professional search firms) which likewise were predominantly white. They knew the practice was reproducing predominantly white boards and preventing people of color from getting serious looks, and that it would reproduce predominantly white boards as a result, but they continued the | Disputed because the statement's use of the phrase "largely exclude" is so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *see also Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation "have little probative value.")<br><br>Further disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 93 -

| | | | practice anyway."); Low Decl. ¶¶ 25, 53 (noting that the "insular social networks and personal connections of existing directors and CEOs . . . lack diversity of people from underrepresented backgrounds"); Meza Decl. ¶¶ 23, 59 (noting that boards tend to rely on predominantly white social networks, to the exclusion of racially and ethnically diverse candidates); Berkhemer-Credaire Decl. ¶ 24 ("These networks often form and strengthen as individuals play golf, attend sporting events, or engage in other social activities together. . . . Women and men of color, however, are often not included in these networks nor invited to such activities."); Primus Decl. ¶¶ 21-22, 39-40; Roberts Decl. ¶¶ 43-44 ("In my experience, qualified and board-ready African American individuals are much more likely than white people to be excluded from the business and social networks that are so integral to being invited to be on corporate boards because of their race."); Singh Cassidy | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.'") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 94 -

| | | | |
|---|---|---|---|
| | | Decl. ¶¶ 13, 16; *see also* Konrad Decl. ¶¶ 41, 60; Cheng Decl. ¶¶ 24-31, 34-36; Halligan Decl. ¶¶ 44-48; Herft Decl. ¶ 4 & Ex. 1, at 123:6-126:14 (Sen. Select Comm. on Women, Work, and Families Presents: A Seat at the Table: Why More Women on Corporate Boards Protects Workers, Families, Retirees and Shareholders, Transcript of Hearing, Aug. 29, 2017—testimony about this dynamic before the Senate Select Committee in the context of addressing women's underrepresentation on corporate boards due to male-dominated networks). | |
| **102)** | The primary reason why members of groups covered by AB 979 are underrepresented on corporate boards of directors is due to discrimination. | Konrad Decl. ¶¶ 23-26 ("The primary reason why members of racioethnic minority communities are underrepresented on corporate boards is due to discrimination."); *see also id.* ¶ 102 ("Publicly held corporations' failure to increase racioethnic diversity on corporate boards despite the substantial number of qualified racioethnic minorities available to serve in these roles, as | Disputed because the declaration's use of the word "discrimination" is so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *see also Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity,* 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation "have little probative value.") |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 95 -

| | | | well as consistent research documenting tangible market and other benefits of diversity supports an inference of widespread discrimination.") Lanham Decl. ¶¶ 24-35 (summarizing form of discrimination in board selection process, and recounting instances of stereotyping and bias against Black board members and professionals); Halligan Decl. ¶¶ 61-62 (noting that "common corporate board selection practices and unquestioned bias" among existing directors "has created significant, longstanding barriers for qualified LGBT people and racial minorities, who could otherwise serve as corporate directors," and identifying AB 979 as a "necessary" remedy); Roberts Decl. ¶¶ 42-57 (explaining discriminatory barriers in board selection process and experiences of discrimination among colleagues); Grounds Decl. ¶ 80 (concluding that "bias . . . continues to drive board director selection and that discrimination exists | Further disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).

Disputed because these statements do not support a finding of underrepresentation, but rest on generalized findings about diversity without information on the "relevant |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 96 -

| | | | |
|---|---|---|---|
| | | against [underrepresented] groups"). | statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *id.* at 507 (it is "completely unrealistic" to assume that groups "will choose a particular trade in lockstep proportion to their representation in the local population."). |
| **103)** | Researchers have documented discriminatory processes on corporate boards, including significant race discrimination in the board selection process. | Konrad Decl. ¶¶ 33-36, 42-61. | Disputed because the statement's use of the "discriminatory processes" is so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *see also Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation "have little probative value.")<br><br>Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 97 -

| | | | |
|---|---|---|---|
| | | | specific facts."). |
| | | | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| | | | Disputed because California has not established underrepresentation, but offered only generalized findings about diversity without plausible information on the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *id.* at 507. |
| **104)** | The 2020 Harvard Business Review article in the AB 979 legislative record explained that, "[b]oards that are made up entirely of white directors recruited almost no candidates who were racial or ethnic minorities for recent openings." | SOS RJN, Ex. 38, p. 3 (J. Yo-Jud Cheng et al., *Why Do Boards Have So Few Black Directors?*, Harvard Business Review (Aug. 13, 2020)); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained | Disputed that the article is sufficient to establish this. California does not endeavor to separately demonstrate the correctness of the statistics.<br><br>Further disputed as it is not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment (2:21-cv-01951-JAM-AC)

- 98 -

| | | from the legislative record sources identified in the Lew declaration). | been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505 ("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.). |
| | | | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.,* 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.,* 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **105)** | The 2020 Harvard Business Review article in the AB 979 legislative record concluded that, "These findings illustrate the heavy reliance on social networks in recruiting new directors, a point underscored by Carnival | SOS RJN, Ex. 38, p. 6 (J. Yo-Jud Cheng et al., *Why Do Boards Have So Few Black Directors?*, Harvard Business Review (Aug. 13, 2020)); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained | Disputed that the article is sufficient to establish this. California does not endeavor to separately demonstrate the correctness of the statistics. Further disputed as material and relevant because the article's assertions like "people tend to go to people that they're familiar with" are not a claims of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment (2:21-cv-01951-JAM-AC)

- 99 -

| | | | |
|---|---|---|---|
| Corporation CEO and Bank of America director Arnold Donald in an interview with Black Enterprise: 'In boards of directors, people tend to go to people that they're familiar with [and] have grown to know and trust. Often, people don't have very diverse circles of people that have that level of trust and confidence:' Because corporate America is predominantly led by white men, this type of network-based recruiting can perpetuate long-standing racial inequities." (alteration in original) | from the legislative record sources identified in the Lew declaration). | insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505 ("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). | |
| **106** | The December 2020 Securities and Exchange Commission Notice of Filing of Proposed Rule Change to Adopt Listing Rules Related to Board Diversity for the | SOS RJN, Ex. 13, p. 80473. | Disputed to the extent this goes to establish that directors are excluded because of discrimination.<br><br>Disputed that the notice is sufficient to establish the correctness of the studies. California does not endeavor to separately demonstrate the correctness of the studies. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 100 -

| | | | |
|---|---|---|---|
| | NASDAQ Stock Market LLC wrote that:<br><br>"studies suggest that current candidate selection processes may result in diverse candidates being overlooked." | | Further disputed that this is material and relevant because the claim that "diverse candidates [are] being overlooked" is not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy").<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 107) | The December 2020 Securities and Exchange Commission Notice of Filing of Proposed Rule Change to Adopt | SOS RJN, Ex. 13, p. 80480. | Disputed that the notice is sufficient to establish the correctness of the studies. California does not endeavor to separately demonstrate the correctness of the studies.<br><br>Disputed to the extent this goes to |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 101 -

| | | | |
|---|---|---|---|
| | Listing Rules Related to Board Diversity for the NASDAQ Stock Market LLC reported that:<br><br>"Nasdaq reviewed academic studies on the causes of underrepresentation on boards and the approaches taken by other jurisdictions to remedy underrepresentation. Those studies suggest that the traditional director candidate selection process may create barriers to considering qualified diverse candidates for board positions." | | establish that directors are excluded because of discrimination—indeed, the emphasis on process (as well as the significant use of the word "may") undercut any claim of deliberate discrimination. This is not "identified discrimination," in any event, but at most a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy").<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **108)** | Search firms use personal networks in which individuals from underrepresented communities are | Meza Decl. ¶¶ 60-62; Berkhemer-Credaire Decl. ¶ 26 ("When a board does retain an executive search firm, the generally do so . . . | Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 102 -

| | | | |
|---|---|---|---|
| excluded or underrepresented to identify candidates for board service. | to vet the predominantly white male prospective director candidates that the nominations committee has already identified and provided to the search firm."); Grounds Decl. ¶ 53. | Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy").<br><br>Disputed because California has not supported any finding of underrepresentation. The "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *id.* at 507 (it is "completely unrealistic" to assume that groups "will choose a particular trade in lockstep proportion to their representation in the local population.").<br><br>Further disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). This statement merely cites only a limited portion of the research on this issue and ignores other research—including research cited in other submissions by California—that has not made such findings. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 103 -

| | | | |
|---|---|---|---|
| | | | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **109)** | In August 2017, the California Insurance Commissioner testified at the hearing of the Senate Select Committee on Women, Work, and Families that, "[t]here's a large number of [insurance] companies that have no people of color on their boards," and that "people on . . . [insurance company] boards tend to reach out to people like themselves and you have sort of a self-fulfilling, self-perpetuation of the status quo." | Herft Decl. ¶ 4 & Ex. 1, at 55:8-16, 58:8-19, 63:4-7, 66:18-67:1 (Sen. Select Comm. on Women, Work, and Families Presents: A Seat at the Table: Why More Women on Corporate Boards Protects Workers, Families, Retirees and Shareholders, Transcript of Hearing, Aug. 29, 2017); *see also* Jones Decl. ¶¶ 56-57. | Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is not a claim of "identified discrimination," but rather, at most a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy")/ <br><br> Disputed because California has not established underrepresentation any group because it has not identified the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989); *id.* at 507 (it is "completely unrealistic" to assume that groups "will |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 104 -

| | | | |
|---|---|---|---|
| | | | choose a particular trade in lockstep proportion to their representation in the local population."). Further disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| **110)** | In a series of large, high-quality U.S. studies, one team of researchers documented a clear preference for sharing directorships only among a closed network of connected individuals rather than seeking diversity through the available pool of qualified directors. | Konrad Decl. ¶¶ 51-57, 81-82, 88. | Disputed to the extent this goes to establish that directors are excluded because of discrimination. A "preference for sharing director ships only among a closed network" is not a claim of "identified discrimination," but rather a "generalized assertion" of, at most, "societal discrimination," which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 105 -

Further disputed that this declaration is sufficient to establish this. The declarant offers no evidence that these are "large, high-quality studies." As a result, the declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). This statement merely cites only a limited portion of the research on this issue and ignores other research—including research cited in other submissions by California—that has not made such findings.

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's
Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 106 -

| 111) | Being a racial minority significantly reduces the likelihood of board appointment regardless of other factors, including top management experience, elite education, ingratiation toward the CEO, friendship with the CEO, and listing in the *Social Register.* | Konrad Decl. ¶ 52. | Disputed to the extent this goes to establish that directors are excluded because of discrimination. This not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505 ("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.). |
| --- | --- | --- | --- |

Further disputed that this declaration is sufficient to establish this. The declarant offers no evidence that this data meets evidentiary burdens. As a result, the declarant's opinion lacks sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 107 -

| | | | |
|---|---|---|---|
| | | | enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **112)** | Corporate executives' and existing directors' shared stereotypical beliefs against members of underrepresented communities drive discriminatory selection, which serves to exclude members of underrepresented communities from board service. | Konrad Decl. ¶ 44 ("Because stereotyping by corporate leaders drives the selection of board directors across most corporations, including publicly-listed firms in the U.S. and California, market forces are insufficient for correcting the inequities resulting from race and gender discrimination."); *id.* ¶ 45 ("Shared negative stereotypes of racioethnic minorities motivate discriminatory behavior as well as the development of corporate board selection criteria and processes that benefit members of the predominant white group."); *id.* ¶¶ 46-47, 101. | Disputed that this declaration is sufficient to establish this. The declarant's opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). This statement merely cites only a limited portion of the research on this issue, and ignores other research—including research cited in other submissions by California—that has not made such findings. It is also vague.

Disputed to the extent this goes to establish that directors are excluded because of discrimination. This not a claim of "identified discrimination," but rather a "generalized assertion" of |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 108 -

| | | | |
|---|---|---|---|
| | | | "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505 ("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.). Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **113)** | Corporate boards— which have been predominantly white, and were predominantly white in the time leading up to AB 979's passage—have tended to pick | Roberts Decl. ¶¶ 44-45; Lanham Decl. ¶¶ 15, 25, 27 (describing pattern of discrimination in which "[p]redominantly white sitting board members and CEOs" limit board searches to their | Disputed to the extent this goes to establish that directors are excluded because of discrimination. This not a claim of "identified discrimination," but at most a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 109 -

| | | | |
|---|---|---|---|

people like themselves and others in their network for board service. Predominantly white existing board members with networks comprised mostly of other white people have most often picked other white people for board service, despite the availability of qualified and ready-to-serve African Americans and other people of color.

"existing networks (or those of professional search firms) which likewise were predominantly white," and explaining tendency of "white director selectors" to "act[] on the basis of racial stereotypes and biases about how people from other groups would differ from them," resulting in "picking people who looked like themselves, meaning white people"); Low Decl. ¶¶ 25, 53 ("[W]hite directors are the dominant demographic on boards. This overrepresentation is self-perpetuating, because existing board members and CEOs unfairly select candidates from their own insular, homogeneous social networks . . . . As a result, the pools of candidates considered remain largely white, to the exclusion of well-qualified candidates of color."); Jones Decl. ¶¶ 5, 38-40, 58 ("[I]ndividuals from underrepresented communities . . . tend to be excluded from corporate board positions because existing board members, who are predominantly white

("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.).

Further disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). This statement merely cites only a limited portion of the research on this issue, and ignores other research—including research cited in other submissions by California—that has not made such findings.

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 110 -

| | | |
|---|---|---|
| | | |

men, select people who look like themselves and who come from the same social and economic circles in which they operate, which tend not to be diverse."); Konrad Decl. ¶ 41 ("[R]eliance on predominantly white male CEOs or existing board members' informal networks for corporate board selection results in predominantly white males being selected for board service despite the availability of similarly qualified racioethnic minorities."); Meza Decl. ¶ 59 ("The use of personal networks often excludes diverse candidates, who are not part of the social or professional networks of sitting board members, who are overwhelmingly straight, cisgender, white men."); Grounds Decl. ¶¶ 56, 91; Holden Decl. ¶ 27 ("The bottom line is that if you do not look white, you are far less likely to get a board position, regardless of your qualifications."); Singh Cassidy Decl. ¶¶ 45, 49 ("[S]upply [of diverse talent] is not the problem. A lack of demand for diverse candidates from the

had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 111 -

| | | | |
|---|---|---|---|
| | | principally white male directors who have served on these boards is the problem. Such candidates are excluded from consideration. . . . Because board[] seats are overwhelmingly filled with white males, and the vast majority of board seats are filled through their closed networks in an opaque process, it is not surprising that, when pulling from familiar talent, boards remain non-diverse."); *see also* Roberts Decl. ¶ 42 ("I know many highly qualified African Americans interested in board service who have never been invited to fill an opening on a board."); *id.* ¶ 43 ("In my experience, qualified and board-ready African American individuals are much more likely than white people to be excluded from the business and social networks that are so integral to being invited to be on corporate boards because of their race."). | |
| **114)** | The December 2020 Securities and Exchange Commission Notice of Filing of Proposed Rule | SOS RJN, Ex. 13, p. 80481 (alteration in original). | Disputed to the extent this goes to establish that directors are excluded because of discrimination. This not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" (in Norway) |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's
Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 112 -

| | | | |
|---|---|---|---|
| Change to Adopt Listing Rules Related to Board Diversity for the NASDAQ Stock Market LLC reported that:<br><br>"Dhir (2015), in a qualitative study of Norwegian directors, observed that '[b]oard seats tend to be filled by directors engaging their networks, and the resulting appointees tend to be of the same socio-demographic background.'" | | | which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.").<br><br>Disputed that the notice is sufficient to establish the correctness of the studies. California does not endeavor to separately demonstrate the correctness of the studies.<br><br>Further disputed as material or relevant because the study concerns Norwegian boards.<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 113 -

| 115) | The December 2020 Securities and Exchange Commission Notice of Filing of Proposed Rule Change to Adopt Listing Rules Related to Board Diversity for the NASDAQ Stock Market LLC reported that:<br><br>Dhir concluded that broadening the search for directors outside of traditional networks 'is unlikely to occur without some form of regulatory intervention, given the prevalence of homogenous social networks and in-group favoritism.'" | SOS RJN, Ex. 13, p. 80496, footnote omitted. | Disputed to the extent this goes to establish that directors are excluded because of discrimination. This not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505 ("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.).<br><br>Disputed that the notice is sufficient to establish the correctness of the studies. California does not endeavor to separately demonstrate the correctness of the studies.<br><br>Further disputed that this study is relevant to California public corporations because the study concerns Norwegian boards.<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 114 -

| | | | |
|---|---|---|---|
| | | | *v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **116)** | White men who dominate corporate executive and board positions select people with traits similar to themselves for promotion, excluding people from underrepresented communities from leadership opportunities. In this way, they have locked in their advantage in corporate leadership. | Declaration of Darren Rosenblum ("Rosenblum Decl.") ¶¶ 39-47; *see also* Konrad Decl. ¶¶ 47, 55 (explaining that "boardroom culture results in discrimination," and summarizing research showing that "nominating committee members were significantly less likely to recommend peers who were racioethnic minorities . . . whereas they were more likely to recommend white men as well as peers whom they liked, admired, and considered to be racioethnically similar to themselves"); Grounds Decl. ¶¶ 61, 63 (explaining "affinity bias" of white directors in "gatekeeper roles," resulting in exclusion of "racially and ethnically diverse individuals from covered corporation boards"). | Disputed to the extent this goes to establish that directors are excluded because of discrimination. This not a claim of "identified discrimination," but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has repeatedly held is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505 ("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing claims for 'remedial relief' for every disadvantaged group.). <br><br> Further disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 115 -

| | | | |
|---|---|---|---|
| | | | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **117)** | Senator Scott Wiener testified at the Assembly Floor Session hearing on AB 979 that "[t]he reality is that forever, as long as there have been corporations, we have seen a profound lack of representation on corporate boards by women, by people of color, and by LGBTQ people, not because there aren't an innermost number of qualified directors in these communities, but because our society has been structured that those communities are just | Declaration of Janice De Marte (De Marte Decl.) ¶¶ 4-5 & Ex. 1, pp. 9:17-10:8 (California State Senate Floor Session, Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 29, 2020) | Not disputed that this is an accurate quotation of the speech. Disputed to the extent the senator's opinion refers to or establishes discrimination in hiring for California public corporations. The senator's statement suggests that the lack or representation is "because our society has been structured that those communities are just not represented." This is not a claim of "identified discrimination" but rather a "generalized assertion" of "societal discrimination" which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 116 -

| | | | |
|---|---|---|---|
| | not represented. And it becomes sort of an old boys' network with all respect. And so, taking proactive steps to say we have a massive pool, absolutely massive pool, of eminently qualified people of color, eminently qualified LGBTQ people, and you need to be intentional and proactive to identify who these people are, because they're out there and there's no shortage." | | claims for 'remedial relief' for every disadvantaged group.). The statement is also unsupported *ipsi dixit*. California's evidence does not even show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). |
| 118) | Senator Steve Bradford testified at the Assembly Floor Session hearing on AB 979 that "[a]s an individual who spent 20 years in Corporate America, I know many of times they would always say, we can't find, we can't find, when there are plenty of qualified Latinos, African-Americans, Asians out there, but they chose not to look for them. And as stated, this is usually an old boys' network filled with nepotism and cronyism of many corporations, because as I learned | De Marte Decl. ¶¶ 4-5 & Ex. 1, p. 11:2-16 (California State Senate Floor Session, Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 29, 2020) | Not disputed that this is an accurate quotation of the speech. Disputed to the extent this is relied on to establish that directors are excluded because of discrimination. The statement here is generalized to "Corporate America" generally. It is not a claim of "identified discrimination" but rather a "generalized assertion" of "nepotism and cronyism" leading to disparate outcomes. This is, at most, an assertion of "societal discrimination," which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 117 -

| | | |
|---|---|---|
| in corporations, people hire and appoint those who remind them most of themselves. So if they're primarily white male dominated, that's who they're going to hire, that's who they're going to appoint, and that's who their board's made of." | | claims for 'remedial relief' for every disadvantaged group.).<br><br>California's evidence does not even show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). |
| **Numerous Board Members and Aspiring Board Members from Underrepresented Communities have Experienced Race-Based Bias and Discrimination** | | |
| **119)** Current predominantly white board directors often apply "culture fit" as a criteria for new board members, perceiving people from different racial and ethnic groups as unable to "make it" as a board director. | Grounds Decl. ¶¶ 62-63 ("They perceive people who are different from themselves (particularly in the context of racial, ethnic, sexual orientation, or gender identity) as someone who would not "make it" as a board director – and will not fit the cultural expectations of the majority of the board. This kind of bias (which is rooted in stereotyping) is another barrier that members of underrepresented groups must overcome in their pursuit of a corporate board | Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is, at most, an assertion of "societal discrimination," which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy").<br><br>Further disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 118 -

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | | appointment.”);<br>Konrad Decl. ¶¶ 46,<br>47. | satisfy the requirements of<br>Fed.R.Civ.P. 56(e). It is not enough to<br>simply opine; the factual basis must be<br>stated.”); *United States v. Various Slot<br>Machines on Guam*, 658 F.2d 697, 700<br>(9th Cir. 1981) (“[I]n the context of a<br>motion for summary judgment, an<br>expert must back up his opinion with<br>specific facts.”). |
| 7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19 | | | Further disputed as not relevant or<br>material to the extent that the<br>legislature did not consider it. The<br>relevant facts are those that the<br>legislature considered *before* in<br>enacted the bill. *See Shaw v. Hunt,* 517<br>U.S. 899, 910 (1996) (quoting *Wygant<br>v. Jackson Bd. of Ed.*, 476 U.S. 267,<br>277 (1986)) (“the institution that<br>makes the racial distinction must have<br>had a ‘strong basis in evidence’ to<br>conclude that remedial action was<br>necessary, ‘*before* it embarks on an<br>affirmative-action program.”)<br>(emphasis added); *see also Richmond<br>v. J.A. Croson Co.*, 488 U.S. 469, 504<br>(1989) (“they must identify that<br>discrimination, public or private, with<br>some specificity *before* they may use<br>race-conscious relief.”) (emphasis<br>added). |
| 20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | **120)** | Sitting board<br>members who<br>choose new<br>directors for open<br>seats have acted on<br>the basis of<br>stereotypes of who<br>will be a good<br>culture “fit” for the<br>board, and people of<br>color have generally<br>not met those<br>stereotypes. In<br>practice, “fit” has<br>meant being white. | Roberts Decl. ¶ 46; *see<br>also* Halligan Decl.<br>¶ 49 (describing how<br>existing directors,<br>“who are principally<br>white, cisgender,<br>heterosexual men,”<br>have subjective notions<br>of “fit,” which can<br>disadvantage<br>candidates who do not<br>share that background);<br>Grounds Decl. ¶¶ 62-<br>63 (“They perceive<br>people who are | Disputed that these declarations are<br>sufficient to establish this. The<br>declarants’ opinions lack sufficient<br>evidentiary support to support<br>summary judgment. *See Yocom v.<br>Cole*, 904 F.2d 711 (9th Cir. 1990)<br>(“Expert testimony is admissible on<br>summary judgment only if the opinion<br>is supported by facts sufficient to<br>satisfy the requirements of<br>Fed.R.Civ.P. 56(e). It is not enough to<br>simply opine; the factual basis must be<br>stated.”); *United States v. Various Slot<br>Machines on Guam*, 658 F.2d 697, 700<br>(9th Cir. 1981) (“[I]n the context of a |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's<br>Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 119 -

| | | | |
|---|---|---|---|
| 1 | | | |

Predominantly white boards have essentially acted on the basis of racial profiles of who is board material.

different from themselves (particularly in the context of racial, ethnic, sexual orientation, or gender identity) as someone who would not "make it" as a board director – and will not fit the cultural expectations of the majority of the board. This kind of bias (which is rooted in stereotyping) is another barrier that members of underrepresented groups must overcome in their pursuit of a corporate board appointment."); Konrad Decl. ¶¶ 46, 47.

motion for summary judgment, an expert must back up his opinion with specific facts.").

Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is, at most, an assertion of "societal discrimination," which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy").

Disputed to the extent this goes to establish that directors of California public corporations are excluded because of discrimination. This is, at most, an assertion of "societal discrimination" in the corporate world generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy").

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 120 -

| | | | |
|---|---|---|---|
| | | | affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **121)** | Predominantly white decision makers in the board director selection process—the CEO, board chair, nominating and governance committee members, and recruiting firms—often fall into the trap of "affinity bias:" automatically favoring people more like oneself. | Grounds Decl. ¶ 61 ("[T]his kind of bias toward choosing someone like yourself will impact an individual board director's decision making when considering someone with a significantly different background. Given that white people hold most of these gatekeeper roles, affinity bias plays out to exclude members of racial and ethnic underrepresented communities."); Konrad Decl. ¶¶ 47, 57-59; Rosenblum Decl. ¶¶ 48-50 (describing how "nominating committees select people with traits similar to their own"). | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). This is also vague—how "often" is "often"?<br><br>Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is, at most, an assertion of "societal discrimination," across corporate board hiring generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). Also, the statement is vague and includes unexplained generalizations. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 121 -

| | | | |
|---|---|---|---|
| | | | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).. |
| **122)** | Race-based stereotypes held by existing board members about trustworthiness or aptitude of certain racial groups results in denial of equal access to board seats for individuals from underrepresented communities. | Low Decl. ¶¶ 20-22, 56 (describing how "bias and stereotypes against Asians" create a "barrier to Asian diversity on corporate boards"); Roberts Decl. ¶¶ 46 (stereotypes about who will be a good culture fit); 49-51 (discussion of stereotyping and differential scrutiny of African Americans in business or management contexts); Lanham Decl. ¶¶ 27, 30-35; Konrad Decl. ¶¶ 44-56 ("When performance outcomes are ambiguous, corporate leaders' judgments are more strongly influenced by stereotypes and | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is, at most, an assertion of "societal discrimination," across corporate board hiring generally, which the Supreme |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 122 -

| | | | |
|---|---|---|---|
| | | biases."); Rosenblum Decl. ¶¶ 61-70; Garcia Decl. ¶¶ 29, 30. | Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). Also, the statement is vague and includes unexplained generalizations.<br><br>The statement is also vague—it refers only to "certain racial groups," without specifying what these groups might be. It also does not specify who among existing board members harbor these unspecified stereotypes about "certain racial groups."<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 123 -

| 123) | Masculinity norms are prevalent in corporate power structures and hierarchies, which value traits such as dominance, assertiveness, and over-confidence in white men. However, when these traits are displayed by individuals from underrepresented communities they are perceived as unlikeable or threatening. | Rosenblum Decl. ¶¶ 64-69. | Disputed. The statement is so general and vague that it could mean any number of things. The assertion that a "norm" of "masculinity" includes "over-confidence in white men" is jargon of no definite meaning. It certainly is not a statement of fact in the sense demanded at summary judgment. *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Further, the suggestion that that "masculinity" has some kind of built-in racist preference for, or "over-confidence in," "white men" is itself profoundly biased. *See United States v. Virginia*, 518 U.S. 515, 533 (1996) ("'Inherent differences' between men and women, we have come to appreciate, remain cause for celebration, but not for denigration of the members of either sex or for artificial constraints on an individual's opportunity.") (citations omitted).<br><br>Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy").<br><br>Further disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 124 -

| | | | |
|---|---|---|---|
| | | | summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| | | | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **124)** | Corporate leaders from underrepresented communities report experiencing the negative effects of bias against them and negative stereotypes from corporate and | Konrad Decl. ¶¶ 63-67 (studies describing discrimination and negative treatment experienced by members of underrepresented communities in leadership and senior leadership positions); | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 125 -

| | | | |
|---|---|---|---|
| 1 | business leaders in positions of power. | Roberts Decl. ¶ 49 (major grant-making foundation expressed concern that organizations directed by an African American and Latina did not have experience to manage a large amount of money; foundation did not express such concerns about any of the other grant recipients present at the meeting, who were not represented by people of color at the meeting); *id.* ¶ 50 (local bank branch head questioned what kind of business Black businessperson was in that he had large amount of cash for deposit; bank head showed so much discomfort and visible nervousness about accepting cash that business decided to change banks); *id.* ¶ 51 ("These examples highlight only some of the racial stereotypes I have faced from white business people in positions of power, some holding similar power to board members who make selection decisions. I ran into and have continued to run into negative stereotypes about African American people, who we could be and what | Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy").<br><br>The statement is also vague. It does not provide any detail about the specific groups it is meant to apply to or what kind of bias and negative stereotypes have been experienced.<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment (2:21-cv-01951-JAM-AC)

- 126 -

| | | we were capable of doing, all the time. Business people I dealt with held these stereotypes.") | discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
|---|---|---|---|
| **125)** | Survey results indicate that racial/ethnic minority directors possess higher levels of educational attainment than white directors on average, with 83% of racial/ethnic minority directors holding an advanced degree, as compared to 72% of white directors. | Cheng Decl. ¶¶ 20-21 ("African-American and female directors are more likely to hold advanced degrees than white male directors."), *id.* ¶ 49; *see also* Grounds Decl. ¶ 65 ("Sitting board directors, who have been mostly white, hold racially and ethnically diverse women to a higher standard. For example, if boards consider a white woman and a black woman who both went to Harvard, the black woman will be looked at more critically or held to the higher standard."). | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 127 -

| | | | |
|---|---|---|---|
| | | | *v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **126)** | Despite his experience and credentials that made him highly qualified for board service, one 20-year African American board director (and 10-year board chair) of a California public corporation was never invited to be on any other corporate board or contacted by a search firm about potentially serving on another corporation's board. | Roberts Decl. ¶¶ 15, 53-54. | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Disputed insofar is this example is meant to establish that this unspecified director experienced discrimination. There are many reasons why a person may not be offered a job, and this statement of fact does not provide any of the necessary background to establish that this director was "deliberate[ly] excluded" from any position. Further, a cherry-picked |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 128 -

| | | | |
|---|---|---|---|
| | | | example is of little value in the context of broad legislation like AB 979. |
| **127)** | One African American director on the same board during the above-referenced director's tenure had served on another board, but none of the other six or seven African American directors on the board during that period were selected to serve on any other boards, not even the corporation's CEO and president. One white member of the corporation's board, who had not served on any other corporate boards prior, and who had similar skills and experience to other African Americans on the board, was selected to serve on another corporate board after joining the Broadway Federal board. | Roberts Decl. ¶¶ 15, 55-57; *cf.* Lanham Decl. ¶ 12 ("I spoke with multiple for-profit corporation board directors who were Black who told me they knew many qualified Black professionals in their networks who should have been tapped for board service already in light of their credentials, but who had not even been approached by any corporations (or executive search firms) about potential board service."). | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Disputed insofar is this example is meant to establish that these unidentified directors experienced discrimination. There are many reasons why a person may not be offered a job, and this statement of fact does not provide any of the necessary background to establish that these directors were "deliberate[ly] excluded" from any position. Further, a cherry-picked example is of little value in the context of broad legislation like AB 979. |
| **128)** | A "high profile Black female executive of a $300 billion household public company . . . was clearly overlooked" prior to AB 979, as she "did not get her board | Singh Cassidy Decl. ¶ 55; *see also id.* ¶ 25 ("There are too many examples to count" of "leaders who have been nominated to theBoardlist," who are leaders of "incredible caliber and experience" from underrepresented | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 129 -

| | | | |
|---|---|---|---|
| | seat until summer 2021." | groups, and "who have yet to be selected for board service.") | conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Disputed insofar is this example is meant to establish that these unidentified executive experienced discrimination. There are many reasons why a person may not be offered a job, and this statement of fact does not provide any of the necessary background to establish that these directors were "deliberate[ly] excluded" from any position. Further, a cherry-picked example is of little value in the context of broad legislation like AB 979.<br><br>Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy").<br><br>Disputed further as to the quotation in support regarding "too many examples to count." The declarant's opinions are vague and unspecified and lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 130 -

| | | | |
|---|---|---|---|
| | | | 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| **129)** | A woman of color tech executive and entrepreneur—who has served as a president, CEO, and board director for publicly held corporations—reports that she has "had my ideas dismissed by coworkers and fellow board members—only to have my ideas | Singh Cassidy Decl. ¶ 33. | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 131 -

| | | | |
|---|---|---|---|
| | repeated by a white man, who was then taken more seriously for saying the same thing." | | (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy").<br><br>Disputed insofar is this example is meant to establish that these unidentified executive experienced discrimination. There are many reasons why a person's ideas might not be accepted and this does not provide any of the necessary background to establish any kind of deliberate exclusion or violation of anti-discrimination laws. Further, a cherry-picked example is of little value in the context of broad legislation like AB 979. |
| **130)** | A Black board member reported cases of people thinking that he was in the wrong room when he was in the boardroom, reflecting the stereotype and bias that Blacks do not belong in the | Lanham Decl. ¶ 32. | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 132 -

| | | |
|---|---|---|
| corporate boardroom. | | affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>The statement is also vague and lacks necessary specifics to determine why these unspecified number of misidentifications took place.<br><br>Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). |
| **Other Forms of Discrimination in the Board Recruitment and Selection Process** | | |
| **131)** Neither prior board nor CEO, CFO, or other C-Suite experience is a necessary qualification for board service. | Grounds Decl. ¶¶ 37, 66; Lanham Decl. ¶¶ 14, 29; Meza Decl. ¶¶ 25, 34-36; Low Decl. ¶¶ 32-34; Singh Cassidy Decl. ¶ 15; *see also* Konrad Decl. ¶¶ 38, 39. | Undisputed that these experiences are not necessary but disputed to the extent this suggests that these experiences are irrelevant.<br><br>Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 133 -

| | | | |
|---|---|---|---|
| | | | 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **132)** | Existing predominantly white directors often use prior board, CEO, CFO, or other C-suite experience as a criterion in selecting new directors. | Grounds Decl. ¶¶ 36, 66-68; Low Decl. ¶¶ 25, 30, 33; Singh Cassidy Decl. ¶ 14; *see also* Hyde Decl. ¶¶ 11, 12 & Ex. 4, pp. 18:16-19, 50:8-11 (CEO of Latino Corporate Directors Association testimony to Assembly Select Committee that, in the past, "boards really prioritize[d] adding CEOs, COOs, CFOs, and there isn't as much diversity within those fields"). | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). The quote from the legislative history does not discuss anything about "Existing predominately white directors." <br><br> Disputed also to the extent that this implies that there is any difference between the criteria used by white directors and others as this is not established by the cited evidence. <br><br> Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 134 -

| | | | |
|---|---|---|---|
| | | | evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| **133)** | The use of prior board, CEO, CFO, or other C-suite experience as a criterion in selecting new directors results in a pattern of exclusion of underrepresented community members who face discrimination in the selection process for corporate executive positions and board directorships in the first instance. | Grounds Decl. ¶¶ 37, 66, 79 "The cohort of individuals making decisions about who serves in the C-suite, is a similar cohort to those already serving at the board level; thus, bias and discrimination persist in both bodies of leadership. As such, discrimination at the C-suite level perpetuates discrimination in board selection"); Singh Cassidy Decl. ¶¶ 14-16; Konrad Decl. ¶ 25 ("[B]arriers to career advancement, including hiring and promotion discrimination, limit the opportunities for members of these communities to access the executive-level positions that have traditionally led to board memberships."), ¶¶ 72-79 (discussing studies showing | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). California's evidence does not even show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). Further disputed as not relevant or material to the extent that the legislature did not consider it. The |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 135 -

| | | | |
|---|---|---|---|
| | | discrimination that limits underrepresented community members' ability to attain positions that have often been feeders to corporate directorships); Low Decl. ¶¶ 30-34; *see also* Hyde Decl. ¶¶ 11, 12 & Ex. 4, pp. 18:16-19, 50:8-11 (CEO of Latino Corporate Directors Association testimony to Assembly Select Committee that, in the past, "boards really prioritize[d] adding CEOs, COOs, CFOs, and there isn't as much diversity within those fields"). | relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). <br><br> Disputed to the extent this goes to establish that directors are excluded because of discrimination. This is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). |
| 134) | There is discrimination against executives of color within the highest levels of corporate leadership, as well as discrimination against people of color in the ranks of those seeking to become corporate executives. | Konrad Decl. ¶¶ 20-26, 33-36, 63-81. | Disputed. This is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 136 -

constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.").

Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 137 -

| | | | |
|---|---|---|---|
| | | | conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **135)** | Individuals from underrepresented communities experience discrimination and bias in feeder positions that have traditionally led to director appointments. | Konrad Decl. ¶¶ 63-81; Grounds Decl. ¶ 71; Singh Cassidy Decl. ¶ 32 ("[B]ias could have derailed my entire career.") | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| | | | California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). |
| | | | Disputed because this is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 138 -

| | | | entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 136) | There is no shortage of members of underrepresented | Low Decl. ¶¶ 4-6, 35-40; Meza Decl. ¶¶ 25, 44-46; Primus Decl. ¶¶ | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 139 -

| | | | |
|---|---|---|---|
| communities who are interested in and qualified for high level executive positions. | 5-6, 28-34 (citing "belie[f] that there are thousands of board-ready Black candidates in California"); Roberts Decl. ¶¶ 16-24 ("substantial pool of African Americans who are qualified to serve on the boards of directors of publicly held corporations and who are interested in doing so"); Grounds Decl. ¶¶ 38-46; Berkhemer-Credaire Decl. ¶¶ 14-17, 33-34; *see also* Lanham Decl. ¶¶ 10-23; Singh Cassidy Decl. ¶¶ 3, 20-23; Holden Decl. ¶ 11. | evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Disputed because this is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal.* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 140 -

| | | | |
|---|---|---|---|
| | | | *for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). |
| | | | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 137) | Decision makers are aware of the discriminatory effect of relying on feeder pools in which individuals from underrepresented communities experience discrimination. | Grounds Decl. ¶ 66; *see also* Meza Decl. ¶ 63; Grounds Decl. ¶ 79 ("The barriers, bias, and discrimination against underrepresented groups that exists at the board-selection elvel exists in part because omay of the people making the C-suite hiring and promotion decisions—e.g, CEO's. CFO's, and COO's— are also existing board directors who select | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 141 -

| | | | new board directors."); Konrad Decl. ¶ 60 (boards are aware of the need to increase racioethnic minority representation, but because of discrimination continue to seek candidates from small network of existing directors). | expert must back up his opinion with specific facts.").<br><br>Disputed because this is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact—which decisionmakers? Which feeder pools? Which communities? This statement provides no clues. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.").<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 142 -

| | | | |
|---|---|---|---|
| | | | conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Further, the claim is overbroad and vague. |
| **138)** | Both before and after AB 979 was passed, sitting board members have continued to draw new directors from pools of people that they know have excluded people of color—e.g., their personal networks, and the ranks of people with prior corporate board experience. Sitting board members know that there are highly qualified candidates who are people of color— and indeed available lists and registries and referral services of such candidates— who are not in those pools, and who are not only well qualified to be on their boards, but who may also have more of the specific skills, competencies, knowledge, and | Roberts Decl. ¶ 47; *see also* Meza Decl. ¶ 63 ("[B]oard members are well aware that there are resources and registries for finding and selecting diverse candidates. However, the availability of these resources did not succeed in leading to racially and ethnically diverse boards prior to AB 979."); Low Decl. ¶ 41 ("It is simply not credible for a board . . . to claim ignorance of [the resources, organizations, and registries of diverse talent] or the great numbers of candidates available through such networks. Ignorance of resources for finding diverse talent would, in my view, be deliberate and intentional, and it would be prejudicial for a board to continue to ignore these resources."); Grounds Decl. ¶ 66 ("… having | Disputed as speculative. "[A] lay opinion witness 'may not testify based on speculation, rely on hearsay or interpret unambiguous, clear statements.'" *United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2015)(quoting *United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014)).<br><br>Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>Disputed because this is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 143 -

| | | | |
|---|---|---|---|
| experience the board is looking for in the person who will fill the open board position. | prior board experience is not a necessary qualification for board service, and existing board members are aware that when they favor people with such experience, they are perpetuating the pattern of exclusion of qualified racially and ethnically diverse individuals from corporate boards."). | *v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.").<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 144 -

| | | | The assertion is also vague and overbroad. |
|---|---|---|---|
| **139)** | Companies tend to relegate individuals from underrepresented communities to human resources and diversity officer positions—lines of the company not traditionally considered as the "right background" for board service. | Grounds Decl. ¶ 78; Rosenblum Decl. ¶ 52. | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| | | | Disputed because this is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so generalized and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 145 -

| | | | legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.").<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.")(emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **140)** | Race discrimination reduces the opportunities of individuals from underrepresented communities to attain senior-level executive positions that have traditionally served as the feeder pool for director positions. | Konrad Decl. ¶¶ 68-79, 85-86 ("Large-scale quantitative studies have indicated widespread race and gender discrimination that significantly reduces the advancement of racioethnic minorities and women to the senior executive positions that have traditionally led to board appointments. …"); *see also* Low Decl. ¶¶ 42-51, 54 ("This insular and discriminatory board selection process is | Disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 146 -

| | | | compounded by discrimination in the pipeline leading to senior and executive corporate leadership."). | California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).

Disputed because this is, at most, an assertion of "societal discrimination," across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.").

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 147 -

| | | | |
|---|---|---|---|
| | | | 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **141)** | A study by Korn Ferry, one of the largest executive search firms in the United States, found that Black executives were more often asked to take on risky projects that had a high likelihood of failure. | Grounds Decl. ¶ 71. | Disputed that the notice is sufficient to establish the correctness of the studies. California does not endeavor to separately demonstrate the correctness of the studies.<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **142)** | AB 979's sponsor and joint author testified at the Assembly Banking and Finance Committee hearing | Hyde Decl. ¶¶ 8-10 & Ex. 3, pp. 2:18-3:7 (Assem. Banking and Finance Com., Transcript of Hearing on Assem. Bill No. 979 | Disputed that the testimony is sufficient to establish the correctness of the statement. California does not endeavor to separately demonstrate the correctness of the statement. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 148 -

| | | | |
|---|---|---|---|
| | on AB 979 that, "minorities are underrepresented across white-collar industries, especially at the managerial and executive levels." | (2019-2020 Reg. Sess.), Aug. 30, 2020); Holden Decl. ¶ 15. | Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.").<br><br>California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). |
| **143)** | Most experienced executives from underrepresented groups believe they | Grounds Decl. ¶ 71; *see also* Halligan Decl. ¶ 57 ("By comparison . . . | Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 149 -

| | | | |
|---|---|---|---|
| are held to a higher standard in proving their capabilities and expertise than their straight, white male peers. | business leaders who are white, straight, cisgender men generally do not need such a specialized skill set during a time of uniquely high demand to gain an opportunity to serve on a corporate board."); Konrad Decl. ¶¶ 48-49 (judgments more strongly influenced by stereotypes and bias when metrics are subjective). | Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). <br><br> California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). |
| **144)** | One Black Corporate Board Readiness program participant related the story that when she was hired as the | Lanham Decl. ¶ 35. | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 150 -

| | | |
|---|---|---|
| CFO of a large corporation in the Silicon Valley, a white person who had expected to get the job said to her words to the effect of, "How did you get into this role?" and "You took my role." This person was questioning how a Black woman could be hired as CFO, and communicating that the CFO job was for himself. | | *v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>This is, at most, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 151 -

| 145) | Business leaders of color "routinely report" stories of pervasive discrimination and harassment "from their white male peers." | Singh Cassidy Decl. ¶¶ 34-36. | Disputed as unsupported by evidence.<br><br>Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.'") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Disputed because this statement is about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 152 -

| | | | "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). |
|---|---|---|---|
| **146** | For example, a white male board member profanely disparaged the language capabilities of an Indian engineer, even though the co-founder of the company and her five co-founders were also Indian; his remarks went unchecked by the other board members, who were all white men as well. | Singh Cassidy Decl. ¶ 33. | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **147** | A study of over 1,100 first-time directors joining U.S. public companies from 1999-2006 found that directors from underrepresented communities received substantially less mentoring from experienced directors (who are predominantly white males) regarding how to participate in the board process. | Konrad Decl. ¶ 54 ("This finding indicates racial discrimination in board directors' choices of the provision of critical advice and mentorship, which the study showed was a key factor explaining why first-time directors who were racial minorities were significantly less likely to receive additional board appointments."). | Disputed that the study is sufficient to establish the correctness of the fact. California does not endeavor to separately demonstrate the correctness of the study.<br><br>Disputed to the extent this is intended to show that underrepresentation is because of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 153 -

the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.").

Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).

California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A.*

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 154 -

| | | | |
|---|---|---|---|
| | | | *Croson Co.*, 488 U.S. 469, 501–02 (1989). |
| **148)** | The talent pool of director candidates from underrepresented communities would be even larger— creating an even greater disparity between the racial and ethnic makeup of the talent pool as compared to California public corporation boards—if individuals from underrepresented communities did not face discrimination in promotion and hiring for executive and C-suite positions. | *See* Low Decl. ¶¶ 42-51, 54-55 (describing how discrimination against Asians in promotions from professional roles to senior and executive roles "compound[s]" the "insular and discriminatory board selection process"); Konrad Decl. ¶¶ 64-79; Grounds Decl. ¶ 71; Hyde Decl. ¶¶ 6, 7 & Ex. 2, pp. 10:9-11:4 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020); SOS RJN, Ex. 38, p. 4 (J. Yo-Jud Cheng et al., *Why Do Boards Have So Few Black Directors?*, Harvard Business Review (Aug. 13, 2020)). | Disputed that these declarations present evidence that is sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). California's evidence does not show underrepresentation, since it does not provide credible evidence about the |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 155 -

| | | | |
|---|---|---|---|
| | | | "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). |
| **149)** | One speaker at the Senate Banking and Financial Institutions Committee hearing on AB 979 testified that, "white men and women are now only 46 percent of the professional workforce but still represent 71 percent of all executives in California in 2018." | Hyde Decl. ¶¶ 6, 7 & Ex. 2, pp. 10:9-11:4 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020). | Disputed that the statement is sufficient to establish the correctness of the statistics. California does not endeavor to separately demonstrate the correctness of the statistics.<br><br>Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). This, at most, is a statement concerning "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 156 -

| | | | |
|---|---|---|---|
| | | | "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). |
| **150)** | The 2020 Harvard Business Review article in the AB 979 legislative record reported that, "white directors were more likely to be a current or former executive of the company, suggesting that the internal pipeline to the board is dominated by white executives." | SOS RJN, Ex. 38, p. 4 (J. Yo-Jud Cheng et al., *Why Do Boards Have So Few Black Directors?*, Harvard Business Review (Aug. 13, 2020)); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources identified in the Lew declaration). | Disputed that this article is sufficient to establish this. California does not attempt to independently defend the findings of the article.<br><br>Further disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 157 -

| 151) | In enacting AB 979, the Legislature found that, "[t]he [EEOC] study . . . showed that in the tech sector nationwide, Whites are represented at a higher rate in the executives category, which typically encompasses the highest level jobs in the organization." | SOS RJN, Ex. 1 (Assem. Bill No. 979 (2019-2020 Reg. Sess.), § 1(j)). | Undisputed that the finding says this.

Disputed that the finding is sufficient to establish the correctness of the study. California does not endeavor to separately demonstrate the correctness of the study. California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02  (1989).

Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 158 -

| | | | |
|---|---|---|---|
| **152)** | In 2020, racially diverse executives held only 16% of C-suite roles at Fortune 100 companies and racially diverse executives held only 13% of high potential positions, for example, CEO, CFO, and profit and loss executive roles. | Grounds Decl. ¶ 69. | Disputed that the declaration is sufficient to establish the correctness of the study. California does not endeavor to separately demonstrate the correctness of the study. California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 159 -

| | | | |
|---|---|---|---|
| | | | the "subject of regulation" "have little probative value."). <br><br> Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **153)** | In 2021, among Fortune 500 and S&P 500 companies (representing 682 companies, 1,635 executives), 2% of executives were Black, 2.3% Latinx/Hispanic, and 6.1% are Asian/Indian. | Grounds Decl. ¶ 69. | Disputed that the declaration is sufficient to establish the correctness of the study. California does not endeavor to separately demonstrate the correctness of the study. California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989). <br><br> Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 160 -

*Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.").

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 161 -

| 154) | An Ascend study, entitled, *Race, Gender & The Double Glass Ceiling: An Analysis of EEOC National Workforce Data*, calculated racial representation through the Executive Parity Index, which divides the percentage of executives who belong to a racial group by the percentage of professional workforce who belong to that same racial group. Examining 2018 data, the study found that white executives were overrepresented compared to their professional workforce, and that Hispanic, Asian, and Black executives were all underrepresented as executives, relative to their representation in the professional workforce. | Grounds Decl. ¶¶ 72–76. | Disputed that the declaration is sufficient to establish the correctness of the study. California does not endeavor to separately demonstrate the correctness of the study. As explained above, California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 162 -

| | | | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **155)** | On August 3, 2020, the League of California Cities Asian Pacific Islander Caucus sent a letter to the Chair of the Senate Banking and Financial Institutions Committee in support of AB 979 "with amendments to include Asian Americans and Pacific Islanders," stating that, "AB 979 as currently written fails to include the need for Asian Americans and Pacific Islander representation on corporate boards," and that, "[d]espite | SOS RJN, Ex. 42 (David Ryu, League of California Cities Asian Pacific Islander Caucus, letter to Sen. Steven Bradford, Aug. 3, 2020, p. 1, footnotes omitted). | Disputed with respect to the truth of the assertion that "[d]espite achieving the most advanced degrees and experience, Asian Americans are often passed over for promotions when compared to their White colleagues" and disputed as to the implication that this letter could constitute a proper basis in evidence for racially discriminatory lawmaking. The letter does not include any support-- empirical or anecdotal, the meaning of "often" is vague, and the statement about promotions is not tied to corporate board selection generally or to corporate board hiring and publicly traded corporations headquartered in California. It thus lacks sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 163 -

| | | | |
|---|---|---|---|
| | achieving the most advanced degrees and experience, Asian Americans are often passed over for promotions when compared to their White colleagues." | | Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>Further disputed to the extent this claims deliberate discrimination. This letter does not claim that there is any deliberate discrimination against Asians or Pacific Islanders, and the discussion of representation gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **156)** | On August 4, 2020, the League of California Cities Asian Pacific Islander Caucus sent another letter in support of AB 979 to the Chair of the Senate Banking and Financial Institutions Committee reporting that, "[d]espite achieving the most advanced degrees and experience, Asian Americans are often passed over for promotions when compared to their White colleagues." | SOS RJN, Ex. 34 (David Ryu, League of California Cities Asian Pacific Islander Caucus, letter to Sen. Steven Bradford, Aug. 4, 2020, p. 1, footnotes omitted). | Disputed that this is sufficient to establish that "Asian Americans are often passed over for promotions when compared to their White colleagues." The letter's opinion lacks sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>Further disputed to the extent this is intended to show that |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 164 -

| | | | |
|---|---|---|---|
| | | | underrepresentation is as a result of intentional discrimination. As discussed above, California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Implications regarding discrimination are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). |
| **157)** | Chinese for Affirmative Action sent a letter in support of AB 979 | SOS RJN, Ex. 41 (Santosh Seeram-Santana, Chinese for Affirmative Action, | Undisputed that the letter said this. Disputed that this is sufficient to establish that "Asian Americans are often overlooked." The letter's opinion |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment (2:21-cv-01951-JAM-AC)

- 165 -

| | | | |
|---|---|---|---|
| 1–28 | to the Chair of the Senate Banking and Financial Institutions Committee to the Legislature reporting that, "The Missing Pieces Report [] and multiple other research, document how Asian Americans are often an overlooked group for management and executive level positions and in representation at the corporate board of director's level." | letter to Sen. Steven Bradford, Jul. 31, 2020, p. 1, footnote omitted). | lacks sufficient evidentiary support to support summary judgment. As discussed above, California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). The statement is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment (2:21-cv-01951-JAM-AC)

- 166 -

| | | | |
|---|---|---|---|
| **158)** | AB 979's sponsor and co-author testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 that, "Asians and Pacific Islanders make up a greater percentage of the white-collar workforce but are the least likely to be promoted and move up the ladder." | Hyde Decl. ¶¶ 6, 7 & Ex. 2, p. 4:7-10 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020). | Undisputed that the author said this. Disputed that this is sufficient to establish that "Asians and Pacific Islanders" are "least likely to be promoted." The testimony lacks sufficient evidentiary support to support summary judgment.<br><br>Further disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). |
| **159)** | One of AB 979's authors testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 that, "in Silicon Valley, while Asian Americans have been able to obtain positions within the rank and file of our workforce, if you look at the percentage of executives, those numbers are cut in half." | Hyde Decl. ¶¶ 6, 7 & Ex. 2, p. 14:15-22 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.). | Undisputed that the author said this. Disputed that this is sufficient to establish this as a fact. The testimony lacks sufficient evidentiary support to support summary judgment.<br><br>Further disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 167 -

| | | | |
|---|---|---|---|
| | | | body to determine the precise scope of the injury it seeks to remedy"). |
| **160)** | Senator Richard Pan testified at the October 2021 hearing of the Assembly Select Committee on Corporate Board Diversity and California Workforce Diversity that, "[The Senate Select Committee on Asian Pacific Islander Affairs] held a hearing back in September 2019 at the Silicon Valley Community Foundation, where we talked about the glass ceiling for Asian-Pacific Islanders, particular when you -- and we examined many different fields where basically, you saw API who -- certain subsegments -- again, I want to emphasize, we have a diverse community -- certain subsegments perhaps were well represented in certain fields, like technology or medicine or some other fields. But yet, never were – were tremendously | Hyde Decl. ¶¶ 11, 12 & Ex. 5, pp. 7:25, 8:7-23, 9:24-10:9 (Assem. Select Com. on Corporate Board Diversity and California Workforce Diversity, Transcript of Hearing, Oct. 1, 2021). | Undisputed that the senator said this. Disputed that this is sufficient to establish this as a fact. The testimony lacks sufficient evidentiary support to support summary judgment.<br><br>Further disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy").<br><br>Further, as discussed above, California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 168 -

| | | | |
|---|---|---|---|
| underrepresented in senior management positions, C-suites, and boards. . . . [I]f you take technology where supposed, again, only certain subsegments of the API community are well represented in the tech field, you don't see them in the C-suites and in the boards. And, in fact—and if you take out the ones who actually founded the companies themselves—so, the ones you find are often the ones who are actually the founders of the companies, then the numbers are even worse." | | makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **161)** | In enacting AB 979, the Legislature found that, "According to a report by the Ascend Foundation, Asian Americans were the least likely to be promoted to manager or executive positions in California." | SOS RJN, Ex. 1 (Assem. Bill No. 979 (2019-2020 Reg. Sess.), § 1*(l)*). | Undisputed that the legislature found this. Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 169 -

| | | | |
|---|---|---|---|
| **162)** | Following AB 979's enactment, one Senator testified, "it's not because of lack of talent . . . [or] lack of experience or skill [that Asian Pacific Islanders are underrepresented in the C-suites and corporate boards,] it's frankly racism. . . . AB 979 was a very important policy step to begin addressing this." | Hyde Decl. ¶¶ 11, 12 & Ex. 5, pp. 7:25, 9:24-10:21 (Assem. Select Com. on Corporate Board Diversity and California Workforce Diversity, Transcript of Hearing, Oct. 1, 2021). | Undisputed that the senator said this. Disputed that this is sufficient to establish this as a fact. The testimony lacks sufficient evidentiary support to support summary judgment. *See Yocom v. Cole,* 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam,* 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.,* 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.,* 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **163)** | A 2020 report by the Majority Staff of the U.S. House of Representatives | SOS RJN, Ex. 28 (Diversity and Inclusion: Holding America's Large Banks | Undisputed that the report says this. Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 170 -

| | | | |
|---|---|---|---|
| Committee on Financial Services in the AB 979 legislative record reported that:<br><br>• "Committee analysis of bank demographic and employment level data confirms that representation of . . . minorities often diminishes significantly at the higher management ranks."<br><br>• "Analysis of those bank responses that included more detailed race and ethnicity data, showed that Blacks and Latinos comprise four percent or less of banks' executive and senior level employees and six percent or less of their first/mid-level leadership employees." | Accountable, Maj. Staff of H.R. Comm. on Financial Services, 116th Cong., 2d Sess. (2020), p. 15, 16); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources identified in the Lew declaration). | Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). | |
| **164)** | AB 979's sponsor and co-author testified at the Senate Banking and Financial Institutions | Hyde Decl. ¶¶ 6, 7 & Ex. 2, p. 3:24-4:6 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 | Undisputed that the author said this.<br><br>Disputed that the testimony is sufficient to establish the correctness of the statistics. California does not endeavor to separately demonstrate the |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 171 -

| | | | |
|---|---|---|---|
| | Committee hearing on AB 979 that, "[w]e can . . . look to Silicon Valley for examples of underrepresentation. On average, black and Latino tech employees make up less than 10 percent of the workers at premiere companies such as Google, Apple, Microsoft, Facebook, and LinkedIn. This percentage is disproportionate to the roughly 20 percent of computer science graduates that are black or Latino." | (2019-2020 Reg. Sess.), Aug. 13, 2020); *see also* De Marte Decl. ¶¶ 6-7 & Ex. 2, pp. 3:22-4:2 (California Assembly Floor Session, Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 30, 2020); Holden Decl., ¶¶ 15-18, 24-25. | correctness of the statistics. As discussed above, California's evidence does not show underrepresentation, since it does not provide credible evidence about the "relevant statistical pool for purposes demonstrating discriminatory exclusion." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 501–02 (1989).<br><br>Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). |
| 165) | In enacting AB 979, the Legislature found that, "[a] study by Dalberg Global Development Advisors found that the high tech industry could generate an additional $300 billion to $370 billion each year if the racial or ethnic diversity of tech companies' workforces reflected that of the talent pool." | SOS RJN, Ex. 1 (Assem. Bill No. 979 (2019-2020 Reg. Sess.), § 1(n)). | Undisputed that the legislature found this. This highlights that the purpose of AB 979 was to improve corporate performance, not to remedy discrimination.<br><br>Disputed that the finding is sufficient to establish the correctness of the study. California does not endeavor to separately demonstrate the correctness of the study. |
| 166) | In enacting AB 979, the Legislature | SOS RJN, Ex. 1 (Assem. Bill No. 979 | Undisputed that the legislature said this. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 172 -

| | | | |
|---|---|---|---|
| found that, "[a]nalysis has shown that highly ranked universities graduate African American and Latino computer science and computer engineering majors at twice the rate that leading technology companies hire them." | (2019-2020 Reg. Sess.), § 1(h)); *see also* Holden Decl. ¶¶ 24-25. | Disputed that the finding is sufficient to establish the correctness of the analysis. California does not endeavor to separately demonstrate the correctness of the analysis.<br><br>Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). |
| **167)** | A June 2020 Los Angeles Times article in the AB 979 legislative record reported, "Of nearly 50,000 employees at Google in 2014, 83% were men, 60% were white, and 30% were Asian. Just 2.9% were Latino, and 1.9% Black. . . . [¶] In the years since, Google has more than doubled its workforce but made minimal progress toward a more representative one. The numbers are similar across the industry. [¶] This | SOS RJN, Ex. 30 (Sam Dean and Johana Bhuiyan, Why are Black and Latino People Still Kept Out of the Tech Industry?, Los Angeles Times (Jun. 30, 2020), p. 2); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources identified in the Lew declaration). | Undisputed that the legislative record contains this.<br><br>Disputed that the article is sufficient to establish the correctness of the statistics. California does not endeavor to separately demonstrate the correctness of the statistics.<br><br>Disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination or was intended to suggest intentional discrimination. Instead, discussion of representation gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 173 -

| | | | |
|---|---|---|---|
| | lack of diversity—as of May, Google reported that 5.9% of its employees and contractors are Latino and 3.7% are Black—extends up through the ranks of top executives, entrepreneurs who found companies, and venture capitalists who invest in startups. [¶] The industry[] . . . has failed to move the needle on workplace diversity. The net result is an entire sector of the economy . . . that is functionally barely open to Black and Latino people." | | |
| 168) | In enacting AB 979, the Legislature found that, "[a]ccording to a study by the EEOC [Equal Employment Opportunity Commission], fewer than 1 percent of Silicon Valley executives and managers are African American." | SOS RJN, Ex. 1 (Assem. Bill No. 979 (2019-2020 Reg. Sess.), § 1(k)). | Undisputed that the legislature found this. Disputed that the finding is sufficient to establish the correctness of the study. California does not endeavor to separately demonstrate the correctness of the study.<br><br>Further disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 174 -

| | | | body to determine the precise scope of the injury it seeks to remedy"). |
|---|---|---|---|
| **169)** | The ACLU Center for Advocacy and Policy submitted a letter to the Legislature in support of AB 979 reporting that, "Only three percent of employees at the top 75 Silicon Valley companies are Black, despite Black students earning almost ten percent of all bachelor's degrees in computer science in 2014." | SOS RJN, Ex. 35 (Kevin G. Baker & Maya L. Ingraham, ACLU Center for Advocacy and Policy, letter to Assem. Member Chris Holden, Aug. 5, 2020). | Undisputed that the ACLU Center stated this. Disputed that the letter is sufficient to establish the correctness of the statistics. California does not endeavor to separately demonstrate the correctness of the statistics.<br><br>Further disputed to the extent this is intended to show that underrepresentation is as a result of intentional discrimination. Implications to that effect are, moreover, about "societal discrimination" across corporate culture generally, which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"). |
| **170)** | Following AB 979's enactment, AB 979's sponsor and co-author testified before the Legislature that, "AB 979 served as a call to action for businesses to take measurable action in light of data that shows that people of color face barriers to getting hired, face hostile environments, and microaggressions once hired, obstacles to getting promoted, | Hyde Decl. ¶¶ 11, 12 & Ex. 5, p. 4:16-22 (Assem. Select Com. on Corporate Board Diversity and California Workforce Diversity, Transcript of Hearing, Oct. 1, 2021). | Undisputed that the author said this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection. Instead this is a "generalized assertion" of "societal discrimination" which the Supreme Court has explained is insufficient. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989) ("generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy"); *id.* at 505("that past societal discrimination alone can serve as the basis for rigid racial preferences would be to open the door to competing |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 175 -

| | | | |
|---|---|---|---|
| | and are not able to climb up the ladder of success." | | claims for 'remedial relief' for every disadvantaged group.). |
| **171)** | There has been little demand from existing corporate directors for members of underrepresented communities who are qualified to serve as directors of boards. | Meza Decl. ¶¶ 16-19, 23-24, 69-72 (little demand for information from organization's resources regarding Latino board aspirants despite significant outreach; increased interest following passage of AB 979); Roberts Decl. ¶¶ 60-63 (discussing lack of contact from corporations asking for names of potential director candidates from organization operating board leadership training and placement-assistance services; organization now engaged by Nasdaq to be source of referrals since SEC approved rule requiring Nasdaq-listed companies to have two directors from underrepresented communities); Singh Cassidy Decl. ¶¶ 54-55 (discussing surprise at number of boards that do not take advantage of available tools to find new, diverse board talent); Garcia Decl. ¶ 8 (stating that women of color told her "[d]espite being eligible for a board seat | Disputed that these declarations are sufficient to establish that "There has been little demand from existing corporate directors for members of underrepresented communities who are qualified to serve as directors of boards." The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). <br><br> Further, the statement that there has been "little demand" is so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 176 -

| | | and signing up for registries and board readiness programs, they had not been able to secure a board seat or even an interview."); Holden Decl. ¶¶ 26-27. | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **172)** | In 2018, there were 118 Fortune 1000 companies headquartered in California, nearly 80% of which did not have a Latino director. That year, LCDA sent letters to the 77% of Fortune 1000 companies that did not have any Latinos on their boards, sharing information about the importance of Latino representation on boards and LCDA's network of board-ready Latino talent. Fewer than five companies responded indicating | Meza Decl. ¶¶ 17-18. | Disputed that the declaration is sufficient to establish the correctness of the statistics. California does not endeavor to separately demonstrate the correctness of the statistics.<br><br>Disputed to the extent this is intended to show that underrepresentation is a result of intentional discrimination or was intended to suggest intentional discrimination. Instead, discussion of representation gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 177 -

| | | | |
|---|---|---|---|
| | interest in speaking further with LCDA. | | |
| **173)** | Despite corporate directors and CEOs acknowledging or being informed of the "business case" for diversifying their boards, many of these same directors and CEOs have persisted in drawing predominantly white, male, new board members from their personal networks, networks from which Black candidates and other underrepresented groups have been excluded. | Roberts Decl. ¶¶ 27-31 (discussing business case for diversifying boards that has been made to corporations in business publications); *id.* ¶ 48 ("Boards have continued to engage in this discriminatory pattern of excluding non-whites even as researchers and business advisory firms have made findings that more demographic diversity on board is correlated with better business outcomes, and even as stakeholders have pressured boards to add more non-whites to their ranks for this and other reasons. To me, the inference to be drawn from these facts is that boards are continuing to make board director selection decisions on the basis of racial bias and stereotyping."); *id.* ¶ 52 ("McKinsey and Company has issued a number of reports making the business case for board diversity, and I get the sense that white corporate leaders just do not or will not believe it. If someone tells you your corporation can make | Undisputed that the declarations say this, but this indicates a purpose to improve corporate performance, not to remedy discrimination.<br><br>Further disputed that the statement "many of these same directors and CEOs have persisted" is so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *see also Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.")<br><br>Further disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 178 -

| | | 10% more money if you diversify your board, you would think you would look into doing it. But many corporations do not, and my experience tells me it is because of racial bias and racial stereotypes they hold, as I have been discussing. Even when they are told about the advantages of diversifying their boards, they prefer to pick people for open board seats who look like they do, meaning white people."); *see* Grounds Decl. ¶¶ 80-84, 97-99, 103. | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| | **Research Shows Corporations that Include Racially and Ethnically Diverse Board Members Perform Better than Those Who Do Not, Across Multiple Measures** | | |
| **174)** | Most board directors, including CEOs, are familiar with the benefits that corporations gain with racially diverse boards. | Grounds Decl. ¶ 80; *see also* Roberts Decl. ¶¶ 27-30.. | Undisputed that the declarations say this. But to the extent this reasoning is the reasoning of the legislature, it supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 179 -

| | | | |
|---|---|---|---|
| | | | Further disputed that these declarations are sufficient to establish this. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>Further disputed that California has demonstrated there are financial benefits to racially diverse boards. |
| **175)** | The Concurrence in Senate Amendments of Assembly Bill No. 979 stated that, "[t]his relative lack of diversity [on boards] may have consequences that negatively affect all stakeholders in a corporation, including workers, customers, and investors. Workers from communities that are not represented on the board may find limited opportunities for advancement through the executive ranks, as boards hire CEOs who look like | SOS RJN, Ex. 10 (Concurrence in Sen. Amendments of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Aug. 20, 2020, p. 2). | Undisputed that the legislature stated this. Disputed that the declaration is sufficient to establish that a "relative lack of diversity [on boards] may have consequences that negatively affect all stakeholders in a corporation." California does not endeavor to separately demonstrate the correctness of this assertion.<br><br>This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 180 -

| | | | |
|---|---|---|---|
| | themselves and CEOs surround themselves with other executives who also look like them. With a lack of diversity throughout the board and senior management, customers or potential customers from underrepresented communities may find that products or services offered by the corporation do not consider the preferences of their communities. A failure to capitalize on a diverse range of consumer preferences harms investors who would benefit from higher returns if corporations were meeting their full potential." | | |
| **176)** | The Senate Committee on Banking and Financial Institutions analysis of AB 979 noted the original bill author's statement that, "[a] culture shift in the boardroom cultivates an environment that values different perspectives and is more likely to hire | SOS RJN, Ex. 32 (Sen. Com. on Banking and Financial Institutions, Analysis of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Jul. 28, 2020, p. 7). | Undisputed that the committee found this. Disputed to the extent this is intended to establish this statement as a fact and not an opinion. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 181 -

| | | | |
|---|---|---|---|
| | and retain racial and gender minorities." | | |
| **177)** | The percentage of directors from underrepresented communities increase the likelihood of firms adopting policies related to employment of underrepresented groups. | Konrad Decl. ¶¶ 90-92. | Disputed that this declaration is sufficient to establish this. The declarant's opinion lacks sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Further disputed that the phrase "increase the likelihood" is so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *see also Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.") Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 182 -

| | | | |
|---|---|---|---|
| | | | legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **178)** | The Senate Rules Committee analysis of AB 979 also noted that, "'[a] broad coalition of groups promoting Asian American inclusions writes, 'The Harvard Business Review argues that a diverse board contributes to better decision making, improve company governance, and can respond to market shifts more effectively. These benefits are not restricted to the board of directors; the benefits of greater diversity contribute to the overall health of the company. A cultural shift in the boardroom | SOS RJN, Ex. 9, p. 9 (Senate Rules Committee, third reading analysis of AB 979, as amended on August 20, 2020); *see also* Grounds Decl. ¶¶ 85-88 (describing "the significant benefits that are achieved when directors from underrepresented backgrounds serve on boards.") | Undisputed that the committee analysis stated this. This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). Disputed to the extent this attempts to establish this statement as fact. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 183 -

| | | | |
|---|---|---|---|
| | cultivates an environment that values different perspectives and visibly signals a commitment to more equitably hire, retain, and promote women and minorities.[']" | | |
| **179)** | The California Black Chamber of Commerce sent a letter in support of AB 979 to Governor Gavin Newsom stating, "[t]his bill, in conjunction with current law, will … promote equal work opportunities" for underrepresented communities. | SOS RJN, Ex. 45 (Jay King, President/CEO Black Chamber of Commerce Letter to Gov. Gavin Newsom, Sept. 1, 2020. | Undisputed that the letter stated this. Disputed to the extent this attempts to establish that the bill will accomplish these ends. |
| **180)** | A study of a sample of Fortune 500 firms found that the percentage of directors from underrepresented communities positively predict greater promotion of women and racioethnic minorities, and that when combined with the presence of a racioethnic minority CEO, the percentage of racioethnic minority directors positively predicts the promotion of | Konrad Decl. ¶ 91. | Disputed that this declaration is sufficient to establish this finding as fact. The declarant's opinion lacks sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 184 -

| | | |
|---|---|---|
| women and underrepresented community members. | | Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **181)** One of AB 979's authors testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 that, "Studies have shown that corporations with a more diverse and equitable board improve company governance and have better decision making, which leads to a more successful company. Diversity and equity on corporate boards is necessary for the health of the company while also providing opportunities to those who | Hyde Decl. ¶¶ 6, 7 & Ex. 2, pp. 5:5-7; 7:2-10 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020) ; *see also* Grounds Decl. ¶¶ 85-88 (describing "the significant benefits that are achieved when directors from underrepresented backgrounds serve on boards."); Konrad Decl. ¶¶ 90-100 (describing beneficial effects of racioethnic diversity on corporations, including on diversity policies, firm financial performance, firm risk, | Undisputed that the author stated this. This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted).<br><br>Disputed that the testimony is sufficient to establish the correctness of the studies. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 185 -

| | | | |
|---|---|---|---|
| | experience racism and microaggressions [comments or actions that subtly and often unconsciously or unintentionally express a prejudiced attitude toward a member of a marginalized group (such as a racial minority)] on a daily basis." | firm policies and innovation, and earnings management). | |
| **182)** | One of AB 979's authors testified at the October 2021 hearing of the Assembly Select Committee on Corporate Board Diversity and California Workforce Diversity that, "Studies have shown that corporations with a more diverse and equitable board have better company governance and have better decision making, which leads to a more successful company. Diversity and equity are necessary for the health of the company, while also providing opportunities for those who experience racism, | Hyde Decl. ¶¶ 13, 14 & Ex. 5, p. 2:1-23 (Assem. Select Com. on Corporate Board Diversity and California Workforce Diversity, Transcript of Hearing, Oct. 1, 2021); *see also* Grounds Decl. ¶¶ 85-88 (describing "the significant benefits that are achieved when directors from underrepresented backgrounds serve on boards."); Konrad Decl. ¶¶ 90-99 (describing beneficial effects of racioethnic diversity on corporations, including on diversity policies, firm financial performance, firm risk, firm policies and innovation, and earnings management). | Undisputed that the author stated this. This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted).

Disputed to the extent this goes to establish the findings of the studies as fact. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 186 -

| | | | |
|---|---|---|---|
| | microaggressions on a daily basis." | | |
| **183)** | Homogenous groups—comprised of people with similar backgrounds and perspectives— tend to engage in "groupthink," resulting in irrational or poor decisions, because they fail to explore alternatives. They are less able to question each other's assumptions and more likely to reach agreement without thorough deliberation, and also rely on shared assumptions more than diverse teams. | Grounds Decl. ¶ 86; Rosenblum Decl. ¶¶ 75-86; ; Low Decl. ¶¶ 17, 36; Primus Decl. ¶¶ 11, 25-28, 31; *see also* Halligan Decl. ¶ 55, 59-60 (diversifying boards improves "the quality of the board discourse . . . because of the range of perspectives," which helps identify and test assumptions). | Disputed that this declaration is sufficient to establish this. The declarant's opinion lacks sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Further disputed that the phrase "increase the likelihood" is so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *see also Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.") Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 187 -

| | | | |
|---|---|---|---|
| | | | enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **184)** | Groupthink is harmful to corporate governance. It can promote risky behavior, negatively affect firms' ability to understand stakeholders, weaken decision-making in crisis situations, and yield unresponsive governance that ignores market changes and stakeholder concerns. | Grounds Decl. ¶¶ 86, 99; Rosenblum Decl. ¶¶ 75-85; *id.* ¶ 86 (further observing that the inclusion of underrepresented groups on "boards would improve corporate governance, functioning, and efficacy given the widely-accepted social science data supporting such a conclusion"); SOS RJN, Ex. 13, p. 80479 (December 2020 Securities and Exchange Commission Notice of Filing of Proposed Rule Change to Adopt Listing Rules Related to Board Diversity for the NASDAQ Stock Market LLC). | Disputed that this declaration is sufficient to establish this. The declarant's opinion lacks sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 188 -

| | | | |
|---|---|---|---|
| | | | conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **185)** | In November 2016, CalPERS sent a letter to the Legislative Women's Caucus expressing CalPERS' support of increasing corporate board diversity. The letter noted that, "Repeated studies have shown it leads to better financial performance." The letter discussed a report finding "high risk associated with organizations that lacked diversity. These risks include missed market opportunities, such as engaging with millennials, and slower adaption to new technologies, including higher vulnerability to cybersecurity issues. [¶] Reports such as this demonstrate that board diversity is not only a social issue, but also a fiscal one. As a | SOS RJN, Ex. 22, pp. 1-2, 3 (Letter from CalPERs to the Cal. Legislative Women's Caucus, Sen. Jackson and Assembly Member Garcia, Nov. 14, 2016). | Undisputed that the letter stated this. This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). Disputed that the testimony is sufficient to establish the correctness of the studies. California does not endeavor to separately demonstrate the correctness of the studies. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 189 -

| | | | |
|---|---|---|---|
| | long-term investor, CalPERS is deeply concerned with this problem because it impacts the financial health of the companies in our investment portfolio. Ultimately, for CalPERS to succeed the companies we invest in must succeed as well." The letter also described efforts CalPERS had been making to increase board diversity, including the Diverse Director DataSource (3D), a database jointly developed by CalPERS and CalSTRS in 2011, designed to make it easy for companies to find untapped talent to serve as corporate board directors. | | |
| 186) | Both the Senate Rules Committee and the Senate Committee on Banking and Financial Institutions analyses of AB 979 noted that, "A report in the Harvard Business Review (https://hbr.org/2020 /06/how-diverse-is-your-board-really) | SOS RJN, Ex. 9 (Sen. Rules Com., 3d reading analysis of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Aug. 20, 2020, p. 4); SOS RJN, Ex. 32 (Sen. Com. on Banking and Financial Institutions, Analysis of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Jul. 28, 2020, p. 4); *see* | Undisputed that the committees stated this. Disputed that the testimony is sufficient to establish the Harvard Business Review report. California does not endeavor to separately demonstrate the correctness of this study.<br><br>This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 190 -

| | | | |
|---|---|---|---|
| | concluded that a diverse board can contribute to better decision making, improve company governance, and can respond to market shifts more effectively. The McKinsey & Company Consulting Firm (https://www.mckinsey.com/business-functions/organization/our-insights/why-diversity-matters#) suggests that these benefits are not restricted to the board of directors, but can benefit entire companies; for example, McKinsey found that companies in the top quartile for racial and ethnic diversity are 35% more likely to have financial returns above their respective national industry medians." | *also* SOS RJN, Ex. 53, p. 1 (Fiona Ma, State Treasurer, Letter to Gov. Gavin Newsom, Aug. 31, 2020) (presenting the same information from the Harvard Business Review report). | unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| 187) | The Senate Banking and Financial Institutions Committee Background Information Request regarding AB 979 reported that, "[t]he Harvard Business Review states that a diverse board | SOS RJN, Ex. 29 (Sen. Banking and Financial Institutions Com., Background Information Request, Assem. Bill No. 979 (2019-2020 Reg. Sess.), Jun. 29, 2020, p. 2, footnote omitted). | Undisputed that the committees stated this. Disputed that the testimony is sufficient to establish the Harvard Business Review report. California does not endeavor to separately demonstrate the correctness of this study.<br><br>This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 191 -

| | | | |
|---|---|---|---|
| | contributes to better decision making, improves company governance, and can respond to market shifts more effectively.[] These benefits are not restricted to the board of directors; the benefits of greater minority contribute to the overall health of the company. A recent study found that ethnically diverse companies are 35% more likely to outperform other companies that lack a diverse workforce." | | diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **188)** | The California Hispanic Chambers of Commerce sent a letter in support of AB 979 to the Legislature stating, "[b]oard diversity provides many benefits including greater value for shareholders, improved corporate governance, and enhanced business performance. According to the 2018 McKinsey study, *Delivering Through Diversity,* companies in the top quartile for racial and ethnic diversity | SOS RJN, Ex. 39 (Julian Cañete, California Hispanic Chambers of Commerce, letter to Sens. Steven Bradford and Ling Ling Chang, Aug. 13, 2020, p. 1). | Undisputed that the letter stated this. Disputed that the testimony is sufficient to establish the McKinsey study. California does not endeavor to separately demonstrate the correctness of this study.<br><br>This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 192 -

| | | | |
|---|---|---|---|
| | are 33% more likely to have financial returns above their respective national industry medians. The common sense corporate governance principles endorsed by 13 of the nation's largest corporations and investment managers stress that for long-term prosperity, corporations should be managed with diversity as a prominent principle: 'Diverse boards make better decisions, so every board should have members with complementary and diverse skills, backgrounds and experience [that foster fresh thinking].'" | | |
| **189)** | In enacting AB 979, the Legislature found that, "[a]ccording to a report by McKinsey and Company, for every 10 percent increase in racial and ethnic diversity on the senior-executive team, earnings before interest and taxes rise 0.8 percent." | SOS RJN, Ex. 1 (Assem. Bill No. 979 (2019-2020 Reg. Sess.), § 1(m)). | Undisputed that the legislature found this. Disputed that the testimony is sufficient to establish the McKinsey study. California does not endeavor to separately demonstrate the correctness of this study.

This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 193 -

| | | | |
|---|---|---|---|
| 1 | | | *Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| 2 | | | |
| 3 | **190)** | A McKinsey and Company study found statistically significant results showing that corporations with a more gender and racially/ethnically diverse leadership team had better financial returns. | Jones Decl. ¶¶ 33-34. | Disputed McKinsey study has demonstrated this. California does not endeavor to separately demonstrate the correctness of this study. |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | **191)** | In 2018, CalSTRS sent a letter to Senator Hannah Beth Jackson with the purpose of sharing information on their diversity initiatives since 2011. CalSTRS stated that "[d]iversity has been a priority for CalSTRS Investments staff for a number years because diversity is good for business- not just from an ethical perspective but also from a financial one. The 2015 McKinsey & Company study, "Why Diversity Matters," shows that…ethnically diverse companies are…35 percent more likely to outperform their industry median." | Declaration of Nora Lynn. ¶ 6 & Ex. 1, p. 3. | Undisputed that the letter stated this. Disputed that the testimony is sufficient to establish the McKinsey study. California does not endeavor to separately demonstrate the correctness of this study.<br><br>This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| 11-28 | | | | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 194 -

| | | | |
|---|---|---|---|
| **192)** | AB 979's sponsor and joint author testified at both the Senate Banking and Financial Institutions Committee and Assembly Banking and Finance Committee hearings on AB 979 that, "A recent report by the McKinsey & Company shows that companies with a diverse workforce and a diverse corporate board perform better than boards without diversity." | Hyde Decl. ¶¶ 6, 7 & Ex. 2, pp. 2:6, 4:18-21 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020; Hyde Decl. ¶¶ 8-10 & Ex. 3, pp. 2:13, 5:1-4 (Assem. Banking and Finance Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 30, 2020). | Undisputed that the letter stated this. Disputed that the testimony is sufficient to establish the McKinsey study. California does not endeavor to separately demonstrate the correctness of this study.<br><br>This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **193)** | AB 979's sponsor and joint author testified at both the Senate Banking and Financial Institutions Committee hearing on AB 979 that, "A diverse board contributes to a company that values diversity and could readily adapt to the changing needs of its workforce and customer base." | Hyde Decl. ¶¶ 6, 7 & Ex. 2, pp. 1:6, 4:24-5:3 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020); Hyde Decl. ¶¶ 8-10 & Ex. 3, pp. 2:13, 5:7-11 Assem. Banking and Finance Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 30, 2020. | Undisputed that the author stated this. Disputed to the extent this goes to establish this as a fact. California does not endeavor to separately demonstrate the correctness of this assertion.<br><br>This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **194)** | The Senate Committee on Banking and | SOS RJN, Ex. 32 (Sen. Com. on Banking and Financial Institutions, | Undisputed that the committee noted this. This supports Plaintiff's contention that AB 979 is directed at |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 195 -

| | | | |
|---|---|---|---|
| | Financial Institutions analysis of AB 979 noted HP, Inc.'s statement in support of AB 979 that, "'At HP, we know that having a diverse board enables us to better serve our customers and position for future success. Even more broadly, fostering a culture of diversity and inclusion across our company enables us to attract, develop, and retain the talent we need to innovate.'" | Analysis of Assem. Bill No. 979 (2019-2020 Reg. Sess.), as amended Jul. 28, 2020, p. 7). | promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| 195) | The California Insurance Commissioner sent a letter in support of AB 979 to the Chair of the Senate Banking and Financial Institutions Committee reporting that, "According to a recent multi-year study released in May 2020 by McKinsey and Company, in 2019, 'top-quartile companies outperformed those in the fourth one by 36 percent in profitability, slightly up from 33 percent in 2017 and 35 | SOS RJN, Ex. 36 (Ricardo Lara, California Insurance Commissioner, letter to Sen. Steven Bradford, Aug. 6, 2020, p. 1). | Undisputed that the letter stated this. Disputed that the testimony is sufficient to establish the McKinsey study. California does not endeavor to separately demonstrate the correctness of this study.<br><br>This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 196 -

| | |
|---|---|
| 1 | percent in 2014.' Consistent with |
| 2 | prior years' report |
| 3 | findings, 'the likelihood of |
| 4 | outperformance continues to be |
| 5 | higher for diversity |
| 6 | in ethnicity than for gender.'" |
| 7 | |
| 8 | The letter was copied to: The |
| 9 | Honorable Chris Holden; The |
| 10 | Honorable Cristina Garcia; The |
| 11 | Honorable Ling Ling Chang, Vice |
| 12 | Chair, Senate Committee on |
| 13 | Banking and Financial |
| 14 | Institutions; Members, Senate |
| 15 | Committee on Banking and |
| 16 | Financial |
| 17 | Institutions; Eileen Newhall, Staff |
| 18 | Director, Senate Committee on |
| 19 | Banking and Financial |
| 20 | Institutions; The Honorable David |
| 21 | Chiu, Chair, California Asian and |
| 22 | Pacific Islander Legislative Caucus; |
| 23 | The Honorable Lorena Gonzalez, |
| 24 | Chair, California Latino Legislative |
| 25 | Caucus; The Honorable Shirley |
| 26 | N. Weber, Ph.D., |
| 27 | |
| 28 | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 197 -

| | | | |
|---|---|---|---|
| | Chair, California Legislative Black Caucus; Kayla Williams, Consultant, Senate Republican Caucus; Ronda Paschal, Deputy Legislative Secretary, Office of the Governor; and Charlene Manning, Finance Budget Analyst, Department of Finance. | | |
| **196)** | The California State Controller sent a letter in support of AB 979 to the Chair of the Senate Banking and Financial Institutions Committee stating that, "[a]s a member of the CalPERS and CalSTRS boards, I have long advocated for corporate board diversity. Our pension funds understand the research showing that companies with diverse boards are associated with improved corporate performance, higher earnings, and shareholder returns."<br><br>The letter was copied to: The Honorable Chris Holden; The Honorable Cristina | SOS RJN, Ex. 37, p. 1 (Betty T. Yee, California State Controller, letter to Sen. Steven Bradford, Aug. 10, 2020, letter in support of AB 979). | Undisputed that the letter stated this. Disputed to the extent this goes to establish the findings of the "research" as fact. California does not endeavor to separately demonstrate the correctness of this research.<br><br>This supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 198 -

| | | | |
|---|---|---|---|
| | Garcia; and Members of the Senate Banking and Financial Institutions Committee. | | |
| **197)** | The December 2020 Securities and Exchange Commission Notice of Filing of Proposed Rule Change to Adopt Listing Rules Related to Board Diversity for the NASDAQ Stock Market LLC reports that:<br><br>"Nasdaq reviewed dozens of empirical studies and found that an extensive body of academic research demonstrates that diverse boards are positively associated with improved corporate governance and financial performance." | SOS RJN, Ex. 13, p. 80473. | Undisputed that the SEC stated this. This sort of reasoning supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted).<br><br>However, this is disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Further disputed to the extent this goes to establish the findings of the studies as fact. California does not endeavor to separately demonstrate the correctness of the studies. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 199 -

| | | | |
|---|---|---|---|
| **198)** | The December 2020 Securities and Exchange Commission Notice of Filing of Proposed Rule Change to Adopt Listing Rules Related to Board Diversity for the NASDAQ Stock Market LLC reports that:<br><br>"There is a significant body of research suggesting a positive association between diversity and shareholder value." | SOS RJN, Ex. 13, p. 80475. | Undisputed that the SEC stated this. This sort of reasoning supports Plaintiff's contention that AB 979 is directed at promoting corporate performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted).<br><br>However, this is disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.'") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Further disputed to the extent this goes to establish the findings of the studies as fact. California does not endeavor to separately demonstrate the "significant body of research." |
| **199)** | The December 2020 Securities and Exchange Commission Notice | SOS RJN, Ex. 13, p. 80477. | Undisputed that the SEC stated this. This sort of reasoning supports Plaintiff's contention that AB 979 is directed at promoting corporate |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 200 -

| | | |
|---|---|---|
| of Filing of Proposed Rule Change to Adopt Listing Rules Related to Board Diversity for the NASDAQ Stock Market LLC concludes that:<br><br>"There is substantial evidence that board diversity enhances the quality of a company's financial reporting, internal controls, public disclosures and management oversight. In reaching this conclusion, Nasdaq evaluated the results of more than a dozen studies spanning more than two decades that found a positive association between gender diversity and important investor protections, and the assertions by some academics that such findings may extend to other forms of diversity, including racial and ethnic diversity. The findings of the studies reviewed by Nasdaq are summarized below." | | performance through diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted).<br><br>However, this is disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.'") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>Further disputed to the extent this goes to establish the findings of the studies as fact. California does not endeavor to separately demonstrate the correctness of "substantial evidence that board diversity enhances the quality of a company's financial reporting, internal controls, public disclosures and management oversight." |
| **California Satisfies the Passive** | | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 201 -

| | | **Participation Aspect of the Compelling Interest Prong** | | |
|---|---|---|---|---|
| | **200)** | The Secretary is responsible for issuing Certificates of Status to registered business entities conducting business in California, including publicly traded corporations. | Bogart Decl. ¶ 6. | Undisputed. |
| | **201)** | A Certificate of Status is available for any business entity registered with the State of California. A Certificate of Status may be requested by any member of the public for a business entity through the Secretary of State's website. | Bogart Decl. ¶ 6. | Undisputed. |
| | **202)** | The State offers tax credits to California corporations doing business in California, including a tax credit for corporations that remain in or relocate to California. | Declaration of Colby White ("White Decl."), ¶ 7. | Undisputed. |
| | **203)** | Through the California Public Employees' Retirement System, the state invests approximately $23 | Declaration of Simiso Nzima ("Nzima Decl."), ¶ 6. | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 202 -

| | | | |
|---|---|---|---|
| billion in public funds into publicly held corporations headquartered in California. | | | |
| **204)** | *Intentionally left blank.* | | |
| | **AB 979 is Necessary and Narrowly Tailored to Remedy Discrimination** | | |
| | **The Legislature Enacted AB 979 After Decades of Unsuccessful Efforts to Remedy Discrimination in Corporate Board Director Selection** | | |
| **205)** | Despite longstanding antidiscrimination laws, including California's Unruh Civil Rights Act, as amended in 1959, the California Fair Employment and Housing Act (FEHA) of 1959 and Title VII of the Civil Rights Act of 1964 that bar discrimination by private corporations, exclusion of underrepresented communities from corporate boardrooms persists. | *See* Cal. Civ. Code § 51; 42 U.S.C. § 2000e-2; Cal. Gov. Code § 12900, et seq.; Rosenblum Decl. ¶ 57 ("Title VII … has not been effective at changing substantially the composition of corporate boards…"); *id.* ¶ 89 (further observing that "nine of the world's top ten economies have enacted mandates to address diversity on corporate boards…"); *see* Holden Decl. ¶¶ 12, 30. | Disputed that these declarations are sufficient to establish that "exclusion of underrepresented communities from corporate boardrooms persists." The declarant's opinion lacks sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 203 -

| 206) | The Senate Judiciary Committee's April 2018 analysis of SB 826 stated, "California has already tried a number of approaches to advancing gender diversity on corporate boards without much success. As detailed in the Background to this analysis, for example, California has had a registry of qualified board candidates since 1995, and, in 2013, the Legislature passed a resolution urging greater diversity on corporate boards. Neither attempt has had an appreciable effect on the problem." | SOS RJN, Ex. 7, p. 13 (Sen. Judiciary Com. Analysis of SB 826 (Apr. 3, 2018)); *see* Holden Decl. ¶ 31. | Undisputed. |
|---|---|---|---|
| 207) | In 1993, the Legislature enacted Senate Bill 545 (SB 545), which was codified at California Corporations Code section 318. SB 545 directed the State to "develop and maintain a registry of distinguished women and minorities who are available to serve on | *See* Cal. Corp. Code § 318; SOS RJN, Ex. 11 (SB 545 text); Berkhemer-Credaire Decl. ¶¶ 41-42 ("these efforts have a limited impact because, as discussed above, corporate directors and CEOs choose candidates from their own largely white male networks; they do not consult registries."). | Undisputed that the legislature enacted this bill and stated this. Disputed to the extent this goes to show AB 979 was intended to remedy discrimination. This sort of reasoning supports Plaintiff's contention that AB 979 is directed at promoting corporate diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 204 -

| 1 | corporate boards of |
| 2 | directors." The |
| | Legislature |
| 3 | introduced the bill |
| 4 | "to help address the |
| | problem currently |
| 5 | posed by the 'glass |
| | ceiling'" for women |
| 6 | seeking corporate |
| 7 | board positions. |
| 8 | The Legislature |
| | found that "[d]espite |
| 9 | the progress already |
| | made toward |
| 10 | gaining parity in |
| | access to |
| 11 | educational |
| 12 | opportunities, |
| | women and |
| 13 | minorities continue |
| | to experience the |
| 14 | effects of disparate |
| | treatment in |
| 15 | employment.  In |
| 16 | particular, women |
| | and minorities |
| 17 | remain |
| | underrepresented at |
| 18 | the highest levels of |
| | corporate |
| 19 | management, and |
| 20 | continue to earn |
| | significantly less |
| 21 | than their peers. |
| | Men continue to |
| 22 | outnumber women |
| | on the boards of |
| 23 | directors of the |
| 24 | nation's largest |
| | corporations by a |
| 25 | ratio of 24 to one |
| | and over 60 percent |
| 26 | of those boards of |
| 27 | directors have no |
| | minority members." |
| 28 | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 205 -

| | | | |
|---|---|---|---|
| **208)** | In discussing Senate Bill No. 826 (SB 826), the bill after which AB 979 is modeled, the Legislature received testimony that both Stanford and the Harvard Business School have their own registries. | Hyde Decl. ¶¶ 11, 12 & Ex. 4, p. 22:6-12 (Assembly Committee on Banking and Finance, Transcript of Hearing on California Senate Bill 826, held on June 25, 2018.) | Undisputed. |
| **209)** | Private organizations have established board readiness programs that focus on developing and training qualified individuals from underrepresented communities for board service by providing access to meetings, summits, networking opportunities, mentoring by current directors, and programs designed to prepare and position them for boardroom success. | Meza Decl. ¶¶ 12-15, 20 (describing LCDA programming designed to prepare, position, and educate new and aspiring directors for boardroom success; provide networking opportunities; and connect influential board decision makers with board-ready talent); *see also* Primus Decl. ¶¶ 3, 4-5, (Valence enterprises focuses on creating new paths to success for Black professionals); Roberts Decl. ¶ 17 (the African American Board Leadership Institute was launched to increase the representation of African Americans in governing boards); Lanham Decl. ¶¶ 16-19; Low Decl. ¶¶ 4-5. | Undisputed that they have established these programs, disputed to the extent the fact is presented to establish that completion of one of these programs has "qualified" someone for a position on a California public corporation board of directors. |
| **210)** | African American Board Leadership Institute (AABLI) has been training | Roberts Decl. ¶ 60. | Undisputed that AABLI has these programs, disputed to the extent the fact is presented to establish that completion of one of these programs |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 206 -

| | | | |
|---|---|---|---|
| | Black individuals for board directorship positions for ten years. | | has "qualified" someone for a position on a California public corporation board of directors. |
| **211)** | AABLI has broadly publicized its work, so that organizations looking for individuals to serve on their governing boards will know that AABLI can refer them to potential Black candidates. AABLI is regularly contacted by nonprofits and government commissions asking for referrals to such candidates. AABLI has directly placed approximately 300 Black individuals on nonprofit or government boards and commissions. | Roberts Decl. ¶ 60. | Undisputed. |
| **212)** | Only one AABLI Board Leadership Program participant has gone on to serve on the board of directors of a publicly held corporation listed on a major United States stock exchange. | Roberts Decl. ¶ 61. | Undisputed. |
| **213)** | Prior to AB 979, AABLI was never | Roberts Decl. ¶ 62; *see also* Primus Decl. ¶¶ | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 207 -

| | | | |
|---|---|---|---|
| | contacted by any corporate entity asking for the names of potential board of director candidates who are African American. Since AB 979 was enacted, AABLI has been getting a little more response from corporations that are looking to diversify their boards. | 14-19 (discussing how at least a dozen corporations and CEOs refused to sign board diversity pledge). | |
| **214)** | The Black Corporate Board Readiness (BCBR) program connects participants to seasoned board members, and rigorously prepares them to excel. The program trains participants in the nuts and bolts of corporate governance, and in marketing themselves for board service and the board search process. BCBR is focused on the full spectrum of for-profit corporate boards, from start-up corporation boards to Fortune 500 company boards. | Lanham Decl. ¶18. | Undisputed that BCBR has these programs, disputed to the extent the fact is presented to establish that completion of one of these programs has "qualified" someone for a position on a California public corporation board of directors. |
| **215)** | Most successful applicants to the BCBR program have at least ten years senior | Lanham Decl. ¶ 22. | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 208 -

| | | | |
|---|---|---|---|
| | business leadership experience. | | |
| **216)** | Board readiness programs have been around for some time, but have not achieved any significant change in the composition of the corporate boardroom. | *See* Roberts Decl. ¶¶ 60-62 (explaining that AABLI has been training Black individuals for board directorship positions for ten years but prior to AB 979, was never contacted by any corporate entity asking for the names of potential board director candidates who are African American); *see also* Meza Decl. ¶ 16-19, 23-24, 69-72 (explaining that despite numerous efforts, including board readiness programming launched in 2017, "companies did little to respond to LCDA" or interview candidates in LCDA's directory "until after AB 979 was passed."); *see also* Grounds Decl. ¶ 95 (stating that "[t]he existence and promotion of lists of qualified diverse board candidates also has not worked; they do not change the discriminatory pattern.") | Disputed that these declarations are sufficient to establish that "[b]oard readiness programs … have not achieved any significant change in the composition of the corporate boardroom." The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Further disputed because the statement that these programs "have not achieved significant change" is also so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *see also Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.") |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 209 -

| | | | |
|---|---|---|---|
| **217)** | Availability of databases and registries is well-known by corporate leaders, but they did not lead to inclusion of individuals from underrepresented communities before AB 979. | Meza Decl. ¶ 63; *see* Garcia Decl. ¶ 25. | Disputed that these declarations are sufficient to establish that databases "did not lead to inclusion of individuals from underrepresented communities before AB 979." The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>Further disputed because the statement that these registries "did not lead to inclusion" is so vague and conclusory as to not constitute a proper statement of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence); *see also Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1413 (9th Cir. 1991) ("conclusory" "allegations of proponents of the legislation that discrimination existed" "unrelated to the "subject of regulation" "have little probative value.") |
| **218)** | In September 2013, the California Controller sent a letter to the | SOS RJN, Ex. 21, pp. 1-2 (John Chiang, California Controller, letter to Bob | Undisputed that CalPERS and CalSTRS have these programs, disputed to the extent the fact is presented to establish that listing in this |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 210 -

| | | | |
|---|---|---|---|
| | Legislature supporting the passage of Senate Concurrent Resolution 62. The letter informed the Legislature that over the preceding four years, CalPERS and CalSTRS had developed and launched the Diverse Director DataSource, or 3D, an online database where potential candidates could submit their profiles and join a pool of talent that could complement existing boards, which "[i]s now used by companies, search firms and shareowners in recruiting qualified board members…" | Wieckowski, Chair of the Assembly Committee on Judiciary, Sept. 9, 2013); *see also* Garcia Decl. ¶ 17. | database means someone is "qualified" for a position on a California public corporation board of directors. |
| **219)** | In 2013, the Senate passed Senate Concurrent Resolution 62, which "[w]ould encourage equitable and diverse gender representation on corporations boards . . ." and urged that, within a three-year period from January 2014 to December 2016, every publicly held corporation in California with nine | SOS RJN, Ex. 4 (Senate Concurrent Resolution No. 62 (2013-2014 Reg. Sess.); Berkhemer-Credaire Decl. ¶¶ 43, 44, 46); Garcia Decl. ¶ 18. | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 211 -

| | | | |
|---|---|---|---|
| | or more director seats have a minimum of three women on its board, every publicly held corporation in California with five to eight director seats have a minimum of two women on its board, and every publicly held corporation in California with fewer than five director seats have a minimum of one woman on its board. | | |
| **220)** | The completed Background Information Request form for SB 826 reported information that, "as of the cut-off date of December 31, 2016, fewer than 20% of the companies headquartered in California had the number of female directors called for in the Resolution [Senate Concurrent Resolution 62]." | SOS RJN, Ex. 40, p. 3 (Sen. Judiciary Com. Background Information Request). | Undisputed. |
| **221)** | Three years after Senate Concurrent Resolution 62, "there was no change in racial and ethnic diversity" among the boards of | Berkhemer-Credaire Decl. ¶ 46 ("We had hoped to see marked change in gender diversity on California public corporate boards following passage of Senate Resolution 62, | Disputed that these declarations are sufficient to establish that there had been "no change in racial and ethnic diversity" among the boards of California's publicly held corporations. The declarants' opinions lack sufficient evidentiary support to support summary judgment. *See Yocom v.* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 212 -

| | | | |
|---|---|---|---|
| | California's publicly held corporations. | but the numbers barely budged. Likewise, there was no change in racial and ethnic diversity. We ultimately realized that the resolution failed to achieve meaningful change."); Garcia Decl. ¶ 18 ("However, by the end of the three-year period, fewer than 20% of the corporations had complied with the resolution."); *see* Holden Decl. ¶ 32; *see also* Grounds Decl. ¶ 94. | *Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). <br><br> Further, discussion of representation gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **222)** | For more than a decade, CalPERS and CalSTRS have engaged in various efforts to increase the diversity of corporations in which they may or currently invest. | Nzima Decl. ¶¶ 9-15; *see* Herft Decl. ¶ 4 & Ex. 1, pp. 72:14-25, 74:7-17, 78:7-15, 82:15-18, (Sen. Select Com. on Women, Work, and Families Presents: A Seat at the Table: Why More Women on Corporate Boards Protects Workers, Families, Retirees and Shareholders, Transcript of Hearing, Aug. 29, 2017); *see also* Garcia Decl. ¶ 17. | Undisputed. This gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **223)** | In 2011, CalPERS and CalSTRS developed the Diverse Director DataSource, a database housing | Nzima Decl. ¶ 12 & Ex. A; Herft Decl. ¶ 4 & Ex. 1, pp. 91:13-25, 92:1-9 (Sen. Select Com. on Women, Work, and Families | Undisputed that these databases exist. Disputed that the candidates are "board-ready" as California has not endeavored to demonstrate this. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 213 -

| | | | |
|---|---|---|---|
| | information about board-ready diverse candidates, which was transferred to the Equilar Diversity Network. | Presents: A Seat at the Table: Why More Women on Corporate Boards Protects Workers, Families, Retirees and Shareholders, Transcript of Hearing, Aug. 29, 2017). | |
| **224)** | The Equilar Diversity Network is accessible and searchable online. | Meza Decl. ¶¶ 29, 31, 33. | Undisputed. |
| **225)** | In 2015, CalSTRS petitioned the SEC through regulatory efforts to require improved proxy disclosures to include board nominees' gender, racial, and ethnic diversity. | SOS RJN, Ex. 5 (CalSTRS Corporate Governance at a Glance) | Undisputed. Notably, SOS RJN, Ex. 5 does not mention discrimination, but only efforts to increase diversity. This gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **226)** | In 2009, the Securities and Exchange Commission adopted a rule requiring that public corporations disclose how a nominating committee considers diversity in identifying nominees for director. | SOS RJN, Ex. 12, pp. 68343-68344 (footnotes omitted). | Undisputed. |
| **227)** | In 2017, CalPERS sent letters to 504 companies in the Russell 3000 index | Nzima Decl. ¶ 12 & Ex. A | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 214 -

| | | | |
|---|---|---|---|
| | asking companies to develop and to disclose their diversity policies and implementation plan to address the lack of diversity. | | |
| **228)** | In 2019, CalPERS co-hosted a Diversity Forum with CalSTRS, which featured experts and promoted diverse workforces. | Nzima Decl. ¶ 14 & Ex. C. | Undisputed. |
| **229)** | The efforts of CalPERS and its partners were insufficient to address the exclusion of underrepresented groups on California's publicly held corporate boards. | Nzima Decl. ¶ 15. | Disputed that this declaration is sufficient to establish that "The efforts of CalPERS and its partners were insufficient to address the exclusion of underrepresented groups on California's publicly held corporate boards" or that there was "exclusion of underrepresented groups on California's publicly held corporate boards" in the first place. The declarant's opinion is offered without any evidence and thus lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 215 -

| 230) | In September 2018, the California Controller sent a letter to the Governor requesting he sign SB 826. The letter described CalPERS' and CalSTRS' initiatives—begun nearly 10 years earlier—to increase gender and ethnic diversity on corporate boards, including a database of diverse director candidates used by more than 150 companies. The Controller's letter stated, "[h]ave these efforts worked to change the gender and ethnic makeup of corporate boards? Not by a long shot. . . . [I]t is shocking to see how few companies have actually begun to refresh and diversify their boards. If anything, corporations are moving in the opposite direction." | SOS RJN, Ex. 25, p. 1 (Betty Yee, California Controller, letter to Governor Edmund G. Brown, Jr., Sept. 6, 2018). | Undisputed that the letter opines those previous efforts "to increase the gender and ethnic diversity on corporate boards" have been unsuccessful. SOS RJN, Ex. 25, p. 1. However, the letter does not mention remedying discrimination as a goal of board diversity quotas but instead suggests these quotas are important because they will lead to "better financial results." *Id.* at 2. This gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). Additionally, the letter characterizes the legislatures efforts as quotas. *See* SOS RJN, Ex. 25, p. 1. ("While generally not a proponent of quotas, I have come to believe, as do many in the Legislature, that one can be patient only for so long before it is time to kick in the door and demand real change.") As Plaintiff has explained, quotas are "patently unconstitutional," *Grutter v. Bollinger*, 539 U.S. 306, 335 (2003) |
| 231) | In June 2018, the California Insurance Commissioner sent a letter to the Legislature in support of SB 826 reporting that his | SOS RJN, Ex. 24, p. 1 (Insurance Commissioner June 25, 2018 letter to Chair of the Assembly Committee on Judiciary with | Undisputed that the letter opines that the purpose of the bill was to "increase diversity" because board diversity is an important tool to "[i]mprove corporate accountability and company financial performance." This gives further support to Plaintiff's contention that |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 216 -

| | | |
|---|---|---|
| office had established the "Insurance Diversity Initiative" in 2011. | additional legislators copied); *see also* Jones Decl. ¶¶ 3-21, 36& Exs.1-5 (discussing actions taken in an attempt to increase insurance companies' board diversity under the Insurance Diversity Initiative launched in 2011, including the Insurance Diversity Task Force established in 2012, surveying insurance companies regarding diversity on their boards, holding annual insurance diversity summits to educate the insurance industry on the benefits of board diversity, and sending letters to at least 50 California-licensed insurance companies to encourage them to increase diversity on their boards; attaching data showing underrepresentation; *id.* ¶ 41-42, 45-51, 55 & Ex. 7 (discussing that the initiatives did not have success in meaningfully increasing representation and there still appears to be minimal change with respect to board diversity after his departure from the Department); *see also* Holden Decl. ¶ 33-34. | AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 217 -

| 232) | The Insurance Diversity Initiative was "designed to encourage insurers to increase procurement from California's diverse suppliers, as well as to increase diversity amongst insurer governing boards." | SOS RJN, Ex. 24, p. 1 (Insurance Commissioner June 25, 2018 letter to Chair of the Assembly Committee on Judiciary with additional legislators copied); *see also* Jones Decl. ¶¶ 3, 45 & Ex. 7 | Undisputed. |
| 233) | In 2012, the Insurance Diversity Task Force was established to advise the Insurance Commissioner regarding implementation of the Initiative. | Jones Decl. ¶¶ 7, 20. | Undisputed. |
| 234) | The California Department of Insurance collected demographics data through a survey instrument from corporations regarding company supplier and governing board diversity. This included demographics data regarding those who are LGBTQ, Hispanic/Latinx, Black/African American, Asian Pacific Islander, Native American, veterans, and veterans with disabilities. | Jones Decl. ¶¶ 8, 15, 23, 28-31. | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 218 -

| 235) | The California Department of Insurance held Annual Insurance Diversity Summits to educate the insurance industry about the benefits of supplier and governing board diversity and to encourage them to diversify. | Jones Decl. ¶¶ 9, 21-22, 27, 32-35. | Undisputed. |
|---|---|---|---|
| 236) | The California Department of Insurance also publicly reported data with respect to insurance company board composition and supplier diversity. | Jones Decl. ¶¶ 11, 17-18, 25-26, 30-31, 41. | Undisputed. |
| 237) | The Insurance Commissioner sent letters to the CEO's of 50 California-licensed insurance corporations encouraging them to commit towards advancing governing board diversity. | Jones Decl. ¶ 12, 36 & Ex. 5. | Undisputed. |
| 238) | The June 2018 letter from the Insurance Commissioner reported that, "[w]hile the initiative has made great strides increasing insurer procurement from California's diverse suppliers, governing board diversity still | Jones Decl. ¶¶ 13, 14, 28-31, 37, 45 & Exs. 4, 7 | Undisputed that the letter says this. Disputed that the letter is sufficient to establish the correctness of these statistics. California does not provide independent support for these statistics. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 219 -

| | | | |
|---|---|---|---|
| | remains a challenge. For example, in 2016, 80 percent of insurance company governing board seats were held by men, and only 12 percent of insurance company board seats were held by persons of color. . . . 273 insurance companies had no persons of color on their governing boards." | | |
| **239)** | One of AB 979's authors testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 that, "[w]hen we first got elected, a number of us -- including Mr. Holden and I -- have been urging corporations, especially in the tech industry to diversify their boards and their workforce. And promises were made in 2014, but as studies have shown, little progress has been made." | Hyde Decl. ¶¶ 6-7 & Ex. 2, p. 6:5-13 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.); *see* Garcia Decl. ¶ 20-22. | Undisputed that the author said this. Disputed to that California has presented enough evidence to demonstrate that "studies have shown, little progress has been made." Further, this statement gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **240)** | One of AB 979's authors testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 that, | Hyde Decl. ¶¶ 6-7 & Ex. 2, pp. 2:1-9, 4:12-17, 5:4-10 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 | Undisputed that the author said this. Disputed to that California has presented enough evidence to demonstrate that little change has been made. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 220 -

| | | |
|---|---|---|
| "tech giants" had made promises to increase diversity, with reference to promises made in 2014, "yet the percentage of people of color being hired and promoted has not changed." The bill co-author further testified that, "many corporations have not been able to, or willing to, make meaningful change." | (2019-2020 Reg. Sess.), Aug. 13, 2020). | This statement gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **241)** Senator Hueso testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 that, "This is a hard bill to move. I understand. We started our effort when you were the chairman of the Black Caucus. I was chairman of the Latino Caucus. We went out to engage Silicon Valley about how they could do much, much better in diversifying their boards and diversifying their workforce, frankly." | Hyde Decl. ¶¶ 6-7 & Ex. 2, p. 26:6-12 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020); *see* Holden Decl. ¶ 13. | Undisputed. This gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **242)** AB 979's sponsor and joint author testified at the Senate Banking and Financial Institutions | Hyde Decl. ¶¶ 6-7 & Ex. 2, pp. 30:22-31:6 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill | Undisputed that the author stated this.<br><br>This gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment (2:21-cv-01951-JAM-AC)

- 221 -

| | | | |
|---|---|---|---|
| | Committee hearing on AB 979 that, "we were -- as . . . [Senator Hueso] pointed out -- in 2016 in the Silicon Valley with a group of representatives and companies but did not bring -- did not show the respect or courtesy to the issue to bring those at the top who are in that corporate level boardroom to sit, and visit, and understand how important it is for cultural change to happen, and that happens at the top, and it disseminates throughout[sic] the organization." | No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020). | racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **243)** | Senator Bradford testified at the Senate Banking and Financial Institutions Committee hearing on AB 979 that, "the Legislative Black Caucus a few years ago hosted a hearing, and we invited corporate – California corporations to talk about diversity. Only two showed up. [¶] Only two showed up out of the broad invitation . . . . For far too long, | Hyde Decl. ¶¶ 6-7 & Ex. 2, p. 35:10-20 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020). | Undisputed. This gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 222 -

| | | | |
|---|---|---|---|
| | corporations have simply checked the box as it relates to diversity." | | |
| **244)** | AB 979's sponsor and joint author testified at the Assembly Banking and Finance Committee hearing on AB 979 that, "When Assemblymember Garcia, Senator Hueso, and I were chairs of the Women's Caucus, Latino Caucus, and Black Caucus, we worked together to address racial and gender disparities at tech companies in Silicon Valley. That was in 2017. [¶] Though a few companies have acted upon their commitments to diversity, severe underrepresentation of women and minorities in the tech industry have continued to this day. [¶] Unfortunately, this problem is not unique to tech companies. Women and minorities are underrepresented across white-collar industries, especially | Hyde Decl. ¶¶ 8-10 & Ex. 3, pp. 2:18-3:14 (Assem. Banking and Finance Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 30, 2020) | Undisputed that the author stated this. Disputed that California has presented sufficient evidence to establish the truth of these statements.

This gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 223 -

| | | | |
|---|---|---|---|
| | at the managerial and executive levels. [¶] In response to the pervasive underrepresentation of minorities and following the success of Senator Jackson's SB 826, Assembly Bill 979 would require a minimum of one director from an underrepresented community on all boards of publicly traded corporations headquartered in California by the end of 2021." | | |
| 245) | Legislators, including AB 979 co-authors, Assemblymembers Chris Holden and Cristina Garcia, met with technology corporations to discuss the importance of addressing discrimination against underrepresented community boards in their industry and to encourage corporations to address the exclusion of these communities in their workforce and corporate boards. | Holden Decl.¶¶ 37-38; Garcia Decl. ¶ 19. | Undisputed that the declarations say this. Disputed to the extent this is intended to show that the purpose of AB 979 was to remedy discrimination in California public corporation board selection.<br><br>These are made-for-litigation statements created after the statute was enacted with no supporting evidence that these were before the legislature at the time the bill was enacted. These claims are not reflected in the text of the enacted bill or any drafts or any committee reports. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 224 -

| 1–15 | | | *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).<br><br>In statement contemporaneous to AB 979's passage, Assemblymember Holden explained he met with companies to discuss their "commitments to diversity." Hyde Decl. ¶¶ 8-10 & Ex. 3, pp. 2:18-3:14 (Assem. Banking and Finance Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 30, 2020) This gives further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| 16–28 | 246) | Assemblymember Cristina Garcia and her colleagues in the Legislature sent Silicon Valley leaders a letter on May 15, 2017, expressing their strong concern over the technology industry's lack of board diversity and offering to work with them on potential solutions or programs to address the issue. The letter proposed that the industry leaders "[e]stablish | Garcia Decl. ¶¶ 19-21 & Ex. 4 | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 225 -

| | | | |
|---|---|---|---|
| | an executive fellowship program for diverse candidates to spend one year working in upper management level at leading Silicon Valley companies [and] task major Silicon Valley Headhunter firms to search for diverse candidates that qualify for board and executive positions at Silicon Valley companies," amongst others. | | |
| **247)** | Some corporations made promises to increase representation of underrepresented communities on their boards, but progress was minimal. | Holden Decl. ¶ 38; Garcia Decl. ¶ 22. | Undisputed that the declarants stated this. Disputed that the declarants have offered sufficient evidence to prove "progress was minimal." |
| **248)** | One speaker at the Senate Banking and Financial Institutions Committee hearing on AB 979 appearing on behalf of nearly 20 Asian-American business and community groups testified that he had researched the corporate glass ceiling for minority men and women, and that his research had found that "very | Hyde Decl. ¶¶ 6-7 & Ex. 2, pp. 10:11-11:10 (Sen. Banking and Financial Institutions Com., Transcript of Hearing on Assem. Bill No. 979 (2019-2020 Reg. Sess.), Aug. 13, 2020); *see* Holden Decl. ¶ 22. | Undisputed that the speaker said this. Disputed to the extent this is offered as evidence that the legislature had exhausted alternative ways of remedying discrimination and to the extent this is offered as evidence the legislature enacted AB 979 to remedy discrimination. References to efforts to "diversify" give further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 226 -

| | | | |
|---|---|---|---|
| | little progress has been made to diversify the higher levels of leadership in the past, despite best efforts of the corporate sector." After describing data proffered to show underrepresentation of minorities on corporate boards, the speaker testified that, "So the data is clear. Existing strategies to diversify have failed. That's why it's time for a new approach to accelerate leadership changes at the highest levels. It's time for California to require seats in the boardroom for its underrepresented communities." | | |
| **249)** | One of SB 826's authors testified at the California Judiciary Committee for SB 826 that "[s]o, we, as policymakers, I think, have a responsibility to try to break open those impenetrable walls of discrimination." | SOS RJN, Ex. 55, p. 35:12-14 (California Judiciary Committee, Transcript of Hearing on California Senate Bill 826, held on April 24, 2018). | Disputed to the extent this goes to show AB 979 was intended to remedy discrimination as this testimony regarded SB 826. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 227 -

| 250) | The December 2020 Securities and Exchange Commission Notice of Filing of Proposed Rule Change to Adopt Listing Rules Related to Board Diversity for the NASDAQ Stock Market LLC reports that:<br><br>"Progress toward greater racial and ethnic diversity in U.S. company boardrooms has been even slower [than progress toward gender diversity]. Over the past ten years, the percentage of African American/Black directors at Fortune 500 companies has remained between 7 and 9%, while the percentage of women directors has grown from 16 to 23%.[]  In 2019, only 10% of board seats at Russell 3000 companies were held by racial minorities, reflecting an incremental increase from 8% in 2008.[]" | SOS RJN, Ex. 13, p. 80480 (footnotes omitted). | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 228 -

| | | | | |
|---|---|---|---|---|
| **251)** | The California State Controller sent a letter in support of AB 979 to the Chair of the Senate Banking and Financial Institutions Committee stating that, "SB 826 of 2018 (Chapter 954) has not led to increased ethnic and racial diversity on California's corporate boards. According to a 2020 analysis by the Latina Corporate Directors Association 77 .9 percent of appointments went to white women, followed by 11.5 percent to Asian women, 5.3 percent to African American women, and 3.3 percent to Latinas." | | SOS RJN, Ex. 37, p. 1 (Betty T. Yee, California State Controller, letter to Sen. Steven Bradford, Aug. 10, 2020). | Undisputed that the letter states this.<br><br>References to efforts to "increased ethnic and racial diversity" give further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| | The letter was copied to: The Honorable Chris Holden; The Honorable Cristina Garcia; and Members of the Senate Banking and Financial Institutions Committee. | | | |
| **252)** | SB 826 did not break the race and | | SOS RJN, Ex. 1 (Assem. Bill No. 979 | Disputed that the declarations establish this fact. The declarants' opinions are |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 229 -

| | | | |
|---|---|---|---|
| ethnicity barrier for underrepresented communities. | (2019-2020 Reg. Sess.), § 1(o)); Garcia Decl. ¶¶ 12-15, 23 & Ex. 3 (discussing that while the representation of women in boardrooms increased after SB 826, people from underrepresented communities continued to be excluded and "I had qualified Latina women approach me and tell me that despite the enactment of SB 826, there was no traction for them or other women from underrepresented groups."); Holden Decl. ¶¶ 39-40; Meza Decl. ¶ 68; *see also* Grounds Decl. ¶ 64. | offered without any evidence and thus lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| 253) | A speaker at the Assembly Select Committee on Corporate Board and California Workforce Diversity testified that "first, we began monitoring implementation of SB 826, and we published a first study 15 months after passage of 826 to take a look at the women and the composition of women that were being appointed to California company boards. And the first study found that of | Hyde Decl. ¶¶ 11, 12 & Ex. 4, pp. 18:22-19:12 (Assem. Select Com. on Corporate Board and California Workforce Diversity, Transcript of Hearing, Oct. 1, 2021). | Undisputed that the speaker stated this. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 230 -

| | | | |
|---|---|---|---|
| the 511 appointments made after 15 months, 78 percent of the appointments were white women, 5 percent Asian women, 5 percent black women, and only 3 percent Latinas. Again, these were new appointments after passage of that bill. We continued our research because clearly, it's important to add women to the board, but we also found that because they were mainly white women, that a lot of the boards in California remained all white." | | | |
| **254)** Mandatory disclosure of board composition is not an effective alternative to AB 979. | Meza Decl. ¶ 66 (noting that while a disclosure requirement "can help promote consistent data gathering and reporting," it is "otherwise of limited value in influencing boards to appoint diverse directors"); Singh Cassidy Decl. ¶ 56 ("[d]ata across numerous industries demonstrate that disclosure of a board's current makeup does not lead to action to reverse discrimination or diversify | | Disputed that the declarations establish this fact. The declarants' opinions are offered without any evidence and thus lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 231 -

| | | | |
|---|---|---|---|
| | | representation.")Decl.; Rosenblum Decl. ¶ 34 ("[d]isclosure alone cannot remedy lack of diversity."); Lanham Decl. ¶ 44 (discussing pressure corporations already have been under to hire directors from underrepresented communities and that a disclosure requirements is not effective to cause the hiring of such directors); Low Decl. ¶ 28 ("A disclosure requirement [falsely] assumes . . . that public embarrassment would suffice to change the way board members are nominated and appointed."); Decl. Berkhemer-Credaire Decl. ¶ 50 ("Likewise, data collection or disclosure requirements have not worked to change existing board directors' and CEOs' tendency to select candidates from their personal networks who tend to be most like them."); *see also* Konrad Decl. ¶ 88; Roberts Decl.¶ 67; Holden Decl. ¶¶ 44-46; Grounds Decl. ¶ 101. | Further, declarants statements that the purpose of AB 979 was to "remedy lack of diversity" give further support to Plaintiff's contention that AB 979 is directed at promoting diversity, which is not a compelling state interest, but "outright racial balancing, which is patently unconstitutional." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (citation omitted). |
| **255)** | Adopting a requirement similar to the NFL's Rooney Rule as an alternative to AB 979 would not | Roberts Decl. ¶ 70; Meza Decl. ¶ 64-65 (noting that "without a diversity requirement, boards can treat the Rooney Rule like | Disputed that the declarations establish this fact. The declarants' opinions are offered without any evidence and thus lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 232 -

| | | | |
|---|---|---|---|
| | have been effective because board members would continue to rely on their homogenous social and professional networks to fill board seats. | checking off a box without giving serious consideration to qualified diverse candidates"); Primus Decl. ¶ 49; Rosenblum Decl. ¶ 34; Lanham Decl. ¶ 41 ("Such a rule is a check-the-box rule . . . ." that does not address the problem of qualified candidates from underrepresented communities being passed over for selection because of biased and stereotyped beliefs about who will be the best "fit"); Roberts Decl. ¶ 70 ("there has to be a commitment to actually hiring racial and ethnic minorities. Otherwise, the decision makers' biases and stereotypes will continue to prevent them from hiring people they are not comfortable with because of their race or ethnicity (or LGBT status)"); Berkhemer-Credaire Decl. ¶ 49 ("Compelling an interview does not mean that the candidate will be selected. Although my executive search firm brought qualified women and men of color to boards for consideration for potential director positions, existing board directors and CEOs most often | 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 233 -

| | | | selected someone they already knew personally."); Grounds Decl. ¶ 96 ("Merely requiring consideration of racially and ethnically diverse candidates does not solve this problem; instead, it only creates a box to be checked off during the otherwise unchanged selection process."). | |
|---|---|---|---|---|
| **256)** | The Rooney Rule failed to increase diversity in the National Football League, and similar rules were unsuccessful in other industries. | Meza Decl. ¶ 64 & n.12 (citing Gus Garcia-Roberts, *The Failed NFL Diversity "Rule" Corporate America Loves*, Washington Post (Oct. 4, 2022), https://www.washingtonpost.com/sports/interactive/2022/rooney-rule-nfl-black-coaches/). | Disputed that the declarations establish this fact. The declarants' opinions are offered without any evidence and thus lack sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| | | | California presents minimal evidence that the Rooney rule has been unsuccessful in the NFL. Cursory inspection suggests it has been successful. At the time of the Rooney Rule's implementation there were three head coaches from underrepresented minorities. Going into the 2022 season, that number was six. |
| **257)** | A Harvard Business Review article in the AB 979 legislative | SOS RJN, Ex. 38, p. 3 (J. Yo-Jud Cheng et al., *Why Do Boards Have* | Disputed that the declarations establish that policies like the Rooney rule are unsuccessful. The declarant's opinion |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 234 -

| | | | |
|---|---|---|---|
| | record reported that, "One policy that companies have adopted to shift hiring practices is the Rooney rule, named after former Steelers owner Dan Rooney, who fought for a National Football League policy to require teams to interview racial/ethnic minority candidates for coaching jobs. . . . However, studies indicate that these rules often do not go far enough." | *So Few Black Directors?*, Harvard Business Review (Aug. 13, 2020)); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources identified in the Lew declaration). | is offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| 258) | Senator Hannah Beth Jackson testified at the April 2018 Senate Banking and Financial Institutions Committee Hearing on SB 826 that "the committee suggested an interesting concept of amending the bill to include the Rooney Rule, which was established by the National Football League, as an attempt to force teams to interview at least one minority candidate before making a hiring decision. We | Hyde Decl. ¶¶ 4-5 & Ex. 1, pp. 6:24-8:17 (Senate Banking and Financial Institutions Com., Transcript of Hearing on California Senate Bill 826, held on Apr. 18, 2018). | Disputed that the declarations establish that policies like the Rooney rule are unsuccessful. The declarant's opinion is offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment (2:21-cv-01951-JAM-AC)

- 235 -

| | | | |
|---|---|---|---|
| 1 | believe, however, and we have inquire[d] [in]to this concept, that these amendments don't achieve the goals of the bill, which are really focused on the role of women on publicly traded corporate boards, and growing these numbers. [¶] The Rooney Rule, frankly, does nothing more than require an interview from women, which boards can easily sidestep without any meaningful consideration of these candidates. . . . The rule . . . doesn't really indicate or appear to have had that meaningful impact on the lack of diversity in coaching. [¶] In fact, given the depth of the bench, so to speak, in professional football, a rate of minority coaches of 22 percent in 2018, is frankly appalling. . . . [¶] The only way to move the needle on this issue, we believe, is to establish a seat for women at the board room table." | | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 236 -

| 259) | In August 2017, co-founder and CEO of an executive search firm with board placement experience, testified at the hearing of the Senate Select Committee on Women, Work, and Families relating to women serving on corporate boards. The speaker explained the insufficiency of the Rooney Rule as applied to the initiative to have more women board directors: The woman candidate on the Rooney Rule slate is not going to be selected because sitting directors will continue to pick candidates from personal networks, most frequently other white men. | Herft Decl. ¶ 4 & Ex. 1, pp. 123:6-129:5 (Sen. Select Com. on Women, Work, and Families Presents: A Seat at the Table: Why More Women on Corporate Boards Protects Workers, Families, Retirees and Shareholders, Transcript of Hearing, Aug. 29, 2017). | Disputed that the declarations establish that policies like the Rooney rule are unsuccessful. The declarant's opinion is offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
|---|---|---|---|
| 260) | All search firms today offer to bring forward qualified women and men of color for consideration, but such candidates are rarely, if ever, chosen. An interview requirement will not remedy discrimination because corporations will continue not to | Berkhemer-Credaire Decl. ¶ 28; *see also* Grounds Decl. ¶ 53; Meza Decl. ¶ 69. | Disputed that the declarations are sufficient to establish that "qualified women and men of color for consideration … are rarely, if ever, chosen." The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 237 -

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4 | | choose men and women of color. | | *Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| 5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22 | **261)** | One woman who mentors and advises in the Black Corporate Board Readiness (BCBR) program is a very experienced executive search professional. She was asked to do a search for a public corporation board seat. She gave the board an incredible slate of potential candidates including two Black Corporate Board Readiness program alumni. But the board went with someone in its own network, who the search professional described as being not nearly as qualified as the BCBR program participants she had forwarded for the board's consideration. | Lanham Decl. ¶ 34. | Disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 23<br>24<br>25<br>26<br>27<br>28 | **262)** | Term limits on board service would not have worked as an alternative to AB 979 because they would not have addressed discrimination in board selection. | Singh Cassidy Decl. ¶ 58 (noting that "board members would continue to rely on their homogeneous social and professional networks to fill board seats"); Lanham Decl. ¶ 43 ("[H]aving more | Disputed that the declarations are sufficient to establish that "[t]erm limits on board service would not have worked as an alternative to AB 979." The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 238 -

| | | frequent openings does not mean corporations will actually hire more directors from underrepresented communities. Based on experience, if they are not actually required to select directors from underrepresented communities, they will continue to engage in the pattern of discriminatory exclusion through recruiting from their personal and secondary networks, and favoring people with prior board experience, who have been predominantly white."); Jones Decl. ¶¶ 53-54 (explaining that there was no demonstrable change in the diversity of insurance boards despite turnover and that term limits "are unlikely to achieve real change on their own…"). | on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). <br><br> Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
|---|---|---|---|
| **263)** | The Legislature considered facts suggesting the possibility of term limits but did not conclude that that would be a workable option. | *See* SOS RJN, Ex. 7, p. 15 (Sen. Judiciary Com. Analysis of SB 826 (Apr. 3, 2018)); SOS RJN, Ex. X pp. 8:3-9:15 (California Assembly Judiciary Committee, Transcript of Hearing on California Senate Bill 826, held on April 24, 2018.); Hyde Decl. ¶¶ | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 239 -

| | | 11, 12 & Ex. 4, pp. 21:9-22:7 (Assembly Committee on Banking and Finance, Transcript of Hearing on California Senate Bill 826, held on June 25, 2018.) | |
|---|---|---|---|
| **264)** | Making the director selection process public would not address the discriminatory selection and recruitment practices of existing predominantly white directors. | Meza Decl. ¶ 66 (noting that "[w]hile a publicly posted board vacancy would help boards source more diverse candidates, it would not solve the issue of how candidates are handled and evaluated through the lens of existing board members' homogeneous social networks."); Low Decl. ¶ 25-27 (making selection process public, such that "aspiring directors could submit applications," would not suffice to remedy discrimination, because predominantly white board members, "with their biases and prejudices, would still be the ones reviewing board candidates"); Lanham Decl. ¶ 42 ("Making the board member selection process more open, non-confidential, and transparent would not be effective at remedying the effects of discrimination because it does not | Disputed that the declarations are sufficient to establish that "making the director selection process public would not address the discriminatory selection." The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>Further disputed to the extent declarations are offered as evidence that the legislature intended AB 979 to remedy discrimination. The declarations are not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 240 -

| | | | |
|---|---|---|---|
| 1 | | remove the discriminatory obstacles described above and does not require corporations to actually hire any racially or ethnically diverse candidates."); Roberts Decl. ¶ 69 ("Making the board hiring process non-confidential would not be effective to remedy and prevent discrimination because having a non-confidential selection process does not require corporations to select racially and ethnically diverse individuals or to stop discriminating."); Halligan Decl. ¶ 58 (requiring open application process "would not fundamentally change board members' reliance on their predominantly white, straight, cisgender, and male personal and professional networks in nominating and appointing candidates to boards"); *see also* Singh Cassidy Decl. ¶ 57; Roberts Decl. ¶ 67; Primus Decl. ¶ 49; Garcia Decl. ¶ 26; Holden Decl. ¶ 47; Cheng Decl. ¶ 37 ("A public application process would not change the criteria boards use to select | necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 241 -

| | | | | |
|---|---|---|---|---|
| | | | new directors. Existing directors will continue to select from their existing professional and social networks…"); Berkhemer-Credaire Decl. ¶ 39 ("Even if women and men of color learn or have specific reasons to believe that discriminatory factors have prevented them from gaining a seat on a corporate board, they will not publicly allege discrimination because of fear that such allegations will result in never being able to secure a corporate director position in the future."); Grounds Decl. ¶ 102. | |
| | 265) | Individuals who have been involved in efforts to increase the representation of underrepresented communities on corporate boards corroborate the conclusion that leaving the matter to voluntary actions by corporations will not result in meaningful and timely increases to the level of underrepresented community inclusion in corporate boards. | Halligan Decl. ¶ 50; Garcia Decl. ¶¶ 19-28 (discussing that the "Legislature had already tried engaging with corporations in the past and encouraging corporations to stop excluding qualified individuals from underrepresented communities, but corporations did not change their behavior."); Holden Decl. ¶¶ 41-43; Low Decl. ¶ 47; Meza Decl. ¶¶ 16-23; Primus Decl. ¶¶ 15-19; Roberts Decl. ¶¶ 60-64; Singh Cassidy Decl. ¶¶ 8, 53- | Undisputed that the declarations say this. Disputed that the declarations are sufficient to establish that "leaving the matter to voluntary actions by corporations will not result in meaningful and timely increases to the level of underrepresented community inclusion in corporate boards." California has not endeavored to independently defend this assertion. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 242 -

| | | 56; Berkhemer-Credaire Decl. ¶¶ 47-48; *see also* Jones Decl. ¶¶ 3-42, 53-56 (describing California Insurance Commissioner's 2011-2019 initiatives to try to increase insurance companies' board diversity through transparency, education, and regulator encouragement). | |
|---|---|---|---|
| **266)** | The nature of the corporate selection process—existing directors use of homogenous networks to fill slots and bias infecting selection—are reasons why disclosure requirements and voluntary commitments to diversity have not been successful in breaking down barriers to participation. | Low Decl. ¶¶ 24-25, 53; Meza Decl. ¶¶ 59-62; Primus Decl. ¶¶ 39-40; Singh Cassidy Decl. ¶¶ 12-14; Lanham ¶ 24-27; *see* Roberts Decl. ¶¶ 42-51; Grounds Decl. ¶ 102. | Disputed that the declarations are sufficient to establish this. The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| **267)** | AB 979's remedy is necessary to compel existing directors and CEOs to address discriminatory barriers to board service for members of underrepresented communities. | Jones Decl. ¶¶ 42, 52 ("insurance companies and corporations generally will not diversify their boards without a requirement such as SB 826 and AB 979."); Lanham Decl. ¶ 36-38 ("I believe such a requirement is necessary to remedy the effects of | Disputed that the declarations are sufficient to establish this. The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 243 -

discrimination in board selection that I have described."), ¶ 45 ("AB 979 forces boards to reconsider how they slate and select new corporate directors to ensure their fiduciary duty to help obtain better business outcomes for the business organizations they serve by exploring the full range of talent that exists to fill these director roles across the full range of our citizenry."); Primus Decl. ¶¶ 60-64 (describing need for "an external catalyst"); Singh Cassidy Decl. ¶¶ 8, 52, 68-69 ("AB 979 is necessary to remedy the discriminatory barriers that shut out . . . people of color from receiving the full and equal opportunity to serve and lead on corporate boards."); Low Decl. ¶¶ 13, 52, 57 (characterizing AB 979 as "necessary" to remedy the "systemic barriers" and "bias" excluding "diverse individuals from corporate boards"); Meza Decl. ¶¶ 73-74 (describing AB 979 as "necessary" to "address[] bias and discrimination" and "to ensure that sitting directors, who in

stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").

Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added).

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 244 -

California public corporations before AB 979 were 86% white, resist their default preferences for new board members . . . who look like them, and come from their racially and ethnically homogeneous social and professional networks"); Halligan Decl. ¶¶ 50, 58, 62 (describing AB 979 as "necessary to disrupt a common discriminatory pattern in corporate director selection and compel boards to take a different approach that is more inclusive of the full range of qualified director candidates," and to open boards to qualified people of color); *see also* SOS RJN, Ex. 46 (Ahmad Thomas, President & CEO Silicon Valley Leadership Group Letter to Gov. Gavin Newsom, Sept. 1, 2020 ("…AB 979 … [is] a critical component in the broader fight for equality and a viable solution to address inequities.")); Holden Decl. ¶¶ 41-48 ("Ultimately, based on all the information before the Legislature . . . a law requiring covered corporations to include a minimum

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 245 -

| | | | number of directors from underrepresented communities was necessary to remedy this discrimination."); Garcia Decl. ¶ 30 ("The only way to address this problem of discrimination in the selection process is through a mandate such as AB 979, a mandate that requires existing boardroom directors to change their behavior . . . "); Roberts Decl. ¶ 58-73 (stating that AB 979 is necessary to remedy the effects of discrimination and explaining reasons, including why alternatives are not effective); Cheng Decl. ¶ 49; Berkhemer-Credaire Decl. ¶ 2 ("[D]iscriminatory patters in corporate board selection perpetuate the exclusion of women and men of color … Existing directors and [CEOs], who are largely white men, select new director candidates from their personal networks and are most like themselves, … to the exclusion of qualified women and men of color. AB 979 is necessary to fix this long history of discrimination in the … process."); Grounds | |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's
Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 246 -

| | | | |
|---|---|---|---|
| | | Decl. ¶ 80 ("…a requirement to select diverse directors will lead existing board directors to change their bias-driven behavior."), ¶ 103. | |
| **268)** | Research documents that powerful CEOs, who are mostly white men, build homogeneous white male boards if they are allowed to do so. Unless and until boards are required to include individuals from underrepresented communities, it is unlikely that these boards will make much progress toward inclusion on their own. | Konrad Decl. ¶¶ 33, 87. | Disputed that the declarations are sufficient to establish this. The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole,* 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam,* 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). <br><br> Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's
Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 247 -

| | | | race-conscious relief.") (emphasis added). |
|---|---|---|---|
| **269)** | Survey research shows that Boards comprised only of white directors are likely to be less connected to new director candidates who identify as racial/ethnic minorities and are less likely to consider racial/ethnic minority candidates when filling board seats. | Cheng Decl. ¶¶ 29-34, 49 (a higher percentage "of boards that already had two or more racial/ethnic minority directors" "considered two or more racial/ethnic minority candidates in their most recent non-executive director search" than "boards with no racial/ethnic minority directors".). | Disputed that the declarations are sufficient to establish this. The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| **270)** | By requiring the inclusion of diverse | Roberts Decl. ¶¶ 72-73 ("By causing racially | Disputed that the declarations are sufficient to establish this. The |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 248 -

| | |
|---|---|
| directors on the boards of publicly held corporations headquartered in California, AB 979 will open doors that have been largely closed to qualified and ready to serve people of color. This, in turn, will expand the social and professional networks from which future directors can be recruited. | and ethnically diverse individuals to hold a meaningful proportion of the seats on California public corporation boards, AB 979 ensures that racially and ethnically diverse individuals will be able to exert enough influence over the selection of future board directors to overcome the racial bias and stereotypes that have prevented qualified racially and ethnically diverse individuals from being selected."); Lanham Decl. ¶ 39-40 (discussing how putting people from underrepresented communities on boards works to break down the pattern of exclusion of underrepresented communities in board selection going forward); Cheng Decl. ¶¶ 31-33 (a higher percentage "of boards that already had two or more racial/ethnic minority directors" "considered two or more racial/ethnic minority candidates in their most recent non-executive director search" than "boards with no racial/ethnic minority directors"); Grounds Decl. ¶ 51 ("These systems are especially ingrained on | declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 249 -

| | | | |
|---|---|---|---|
| 1 2 3 4 5 6 7 8 | | boards that do not have any directors who are racial/ethnic minorities. When filling open board seats, these boards consider almost no candidates who are racial/ethnic minorities (0.2 candidates per open vacancy, on average), and fewer total candidates (2.9, on average)."). | |
| 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 | **271)** | Searches for candidates from underrepresented communities increased after the introduction and passage of AB 979, | Meza Decl. ¶¶ 69-72 (LCDA began assisting with many more board searches, and placing many more directors, after AB 979 was under consideration and passed, and many more still in the year that AB 979's requirements first went into effect.); Singh Cassidy Decl. ¶¶ 50-51 (On average, the introduction and passage of AB 979 has more than doubled searches of theBoardlist's registry); Roberts Decl. ¶ 62 (African American board readiness program has been getting a little more response from corporations looking to diversify their boards, whereas, prior to AB 979; the program was never contacted by any corporation asking for the names of potential board candidates who | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 250 -

| | | | |
|---|---|---|---|
| | | were African American). | |
| **272)** | LCDA only began receiving requests for introductions to candidates and successfully securing interviews and board seats after AB 979. | Meza Decl. ¶¶ 23-24 ("companies did little to respond to LCDA until after AB 979 was passed"). | Undisputed. |
| **273)** | In 2020 and 2021, after the passage of AB 979, LCDA sent over 600 letters, one to each California public corporation without a Latino on its board. This time, over 50 companies responded—more than a tenfold increase in responses compared to the 2018 letter campaign. LCDA attributes this increase largely if not entirely to the passage of AB 979. | Meza Decl. ¶ 19; *see also id.*, ¶¶ 51-58 (LCDA research subsequent to the enactment of AB 979, showing modest statistical improvement in board diversity). | Undisputed. |
| | **AB 979 is Flexible and Not Unduly Burdensome** | | |
| **274)** | AB 979 requires a minimum number of directors to move boards to a critical mass of directors from underrepresented communities. | *See* Cal. Corp. Code § 301.4(a); Konrad Decl. ¶ 92; Grounds Decl. ¶¶ 92-93. | Disputed to the extent this is intended to suggest AB 979 is not a quota. That AB 979 requires a "minimum number of directors" establishes that it is a quota. Quotas and the like are "facially invalid," *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 307 (1978)(opinion of Powell, J.), under this guarantee because they set aside "a certain fixed number or proportion of opportunities [as] 'reserved exclusively |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 251 -

| | | | |
|---|---|---|---|
| | | | for certain minority groups,'" regardless of any individual's circumstances, *Grutter v. Bollinger*, 539 U.S. 306, 335 (2003). As this Court explained, AB 979 is a quota, and attempts at "calling it something else" do not change this fact: "If it looks like duck and quacks like a duck, it's a duck." ECF No. 99 at 54:20-25. |
| **275)** | AB 979's requirement that corporate boards, depending on size, include a minimum of one, two, or three board directors from an underrepresented community is consistent with critical mass research and thereby ensures meaningful access to and participation on corporate boards. | Konrad Decl. ¶¶ 90-92; Grounds Decl. ¶¶ 92-93. | Disputed to the extent this is intended to suggest AB 979 is not a quota. That AB 979 requires a "minimum number of directors" establishes that it is a quota. Quotas and the like are "facially invalid," *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 307 (1978)(opinion of Powell, J.), under this guarantee because they set aside "a certain fixed number or proportion of opportunities [as] 'reserved exclusively for certain minority groups,'" regardless of any individual's circumstances, *Grutter v. Bollinger*, 539 U.S. 306, 335 (2003). As this Court explained, AB 979 is a quota, and attempts at "calling it something else" do not change this fact: "If it looks like duck and quacks like a duck, it's a duck." ECF No. 99 at 54:20-25. |
| **276)** | "Critical mass" is the number of underrepresented board members that is necessary to prevent further discrimination, stereotyping, marginalization, and tokenization, and results in a substantial impact on board processes and culture. | Konrad Decl. ¶¶ 90-92; Rosenblum Decl. ¶ 92, nn.124-125; *see also* Grounds Decl. ¶¶ 92-93. | Undisputed that the declarations say this. Disputed that California has established that there is a "number of underrepresented board members that is necessary to prevent further discrimination, stereotyping, marginalization, and tokenization, and results in a substantial impact on board processes and culture." |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's
Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 252 -

| | | | |
|---|---|---|---|
| **277)** | Based on "critical mass" perspective theory, the presence of two members of underrepresented groups improve professional experiences on boards more than solo appointments do, and three or more directors from underrepresented groups reach a "critical mass" level of representation capable of influencing board processes and culture. | Konrad Decl. ¶¶ 10-11 & n.7 (citing Adebe, M., & Dadanlar, H. (2021). From tokens to key players: The influence of board gender and ethnic diversity on corporate discrimination lawsuits. Human Relations, 74(4), 533-4.), *id.* ¶ 11 & n.9 (citing Konrad, A. M., Kramer, V., & Erkut, S. (2008, April-June). Critical Mass: The Impact of Three or More Women on Corporate Boards. Organizational Dynamics, 37, 145-164), 90-92, nn. 124-127 & Ex. 2; Grounds Decl. ¶¶ 92-93; Rosenblum Decl. ¶¶ 92-94, 100 n.125; *see also* SOS RJN, Ex. 2 (SB 826 § 1(g)(1)(A) (citing Kramer et al., Critical Mass on Corporate Boards: Why Three or More Women Enhance Governance (2006)). | Undisputed that the declarations say this. Disputed that the declarations have offered enough evidence to support the correctness of the critical mass theory. |
| **278)** | A critical mass level of representation of individuals from underrepresented communities on corporate boards reduces discrimination for the corporation and | Konrad Decl. ¶¶ 90-92; *see also* Grounds Decl. ¶¶ 92-93; Rosenblum Decl. ¶ 100 (discussing how "outsiders from different groups [can coalesce] to form a critical mass, yielding the benefits of having a | Undisputed that the declarations say this. Disputed that the declarations have offered enough evidence to support the correctness of the critical mass theory. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 253 -

| | | | |
|---|---|---|---|
| | therefore serves to remedy hiring, promotion, and other discrimination experienced by individuals from underrepresented communities at all organizational levels, including feeder positions for corporate boards. | distinct viewpoint respected by insiders"). | |
| **279)** | A study of directors, CEOs, and corporate secretaries from Fortune 1000 companies found that "[w]omen who have served alone and those who have observed the situation report experiences of lone women not being listened to, being excluded from socializing and even from some decision-making discussions, being made to feel their views represent a 'woman's point of view,' and being subject to inappropriate behaviors that indicate male directors notice their gender more than their individual contributions." | SOS RJN, Ex. 2 (SB 826 § 1(g)(1)(A) (citing Kramer et al., Critical Mass on Corporate Boards: Why Three or More Women Enhance Governance (2006)); *see also* Halligan Decl. ¶ 56 (noting that "unprofessional or inappropriate remarks, jokes, and conversations are less frequent . . . when the board is diverse," and meetings become more appropriate, professional, and focused on the business agenda). | Undisputed that the study says this. This supports Plaintiff's assertion that AB 979 was intended to articulate a "role model" purpose like the one rejected in *Wygant*. |
| **280)** | The chairs of the Legislative Black Caucus, Legislative Latino Caucus, and | SOS RJN, Ex. 43 Letter from Shirley Weber, Chair of the Legislative Black | Disputed that this is material or relevant to whether AB 979 is "Flexible and Not Unduly Burdensome." |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 254 -

| | | the Asian Pacific Islander Legislative Caucus sent letters in support of AB 979 to the chair of the Senate Appropriations Committee and to Governor Gavin Newsom stating that "[w]ithout a diverse board it is increasingly difficult to attract diverse talent which then reinforces unconscious biases at the managerial and staff level. … A culture shift in the boardroom cultivates an environment that values different perspectives and is more likely to hire and retain racial … minorities." | Caucus, Lorena Gonzalez, Chair of the Legislative Latino Caucus, and David Chiu, Chair of the Legislative Asian Pacific Islander Caucus to Sen. Anthony Portantino, Aug. 13, 2020; SOS RJN, Ex. 52 (Letter from Shirley Weber, Chair of the Legislative Black Caucus, Lorena Gonzalez, Chair of the Legislative Latino Caucus, and David Chiu, Chair of the Legislative Asian Pacific Islander Caucus to Gov. Gavin Newsom, Sept. 4, 2020. | Disputed that the declarations are sufficient to establish this. The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| 281) | According to a study before the Legislature, Black directors are more likely to feel their "voices are heard" on boards containing more than one director of color. | SOS RJN, Ex. 38, p. 9 (J. Yo-Jud Cheng et al., *Why Do Boards Have So Few Black Directors?*, Harvard Business Review (Aug. 13, 2020)) (article in AB 979 legislative record); Lew Decl. ¶ 19 (attesting that Exhibits 21-53 to the Secretary's Request for Judicial Notice are true and accurate copies of documents obtained from the legislative record sources | Disputed that this is material or relevant to whether AB 979 is "Flexible and Not Unduly Burdensome." Disputed that the declarations are sufficient to establish this. The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 255 -

| | | | |
|---|---|---|---|
| | | identified in the Lew declaration). | *Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").<br><br>Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.")" (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 282) | By causing racially and ethnically diverse individuals to hold a meaningful proportion of the seats on California public corporation boards, AB 979 ensures that racially and ethnically diverse individuals will be able to exert enough influence over the selection of future board directors to overcome the racial bias and stereotypes | Roberts Decl. ¶ 73; *see also* Grounds Decl. ¶¶ 92-93; Konrad Decl. ¶ 92. | Disputed that this is material or relevant to whether AB 979 is "Flexible and Not Unduly Burdensome."<br><br>Disputed that the declarations are sufficient to establish this. The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot* |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 256 -

| | | | |
|---|---|---|---|
| | that have prevented qualified racially and ethnically diverse individuals from being selected. | | *Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). <br><br> Further disputed as not relevant or material to the extent that the legislature did not consider it. The relevant facts are those that the legislature considered *before* in enacted the bill. *See Shaw v. Hunt,* 517 U.S. 899, 910 (1996) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277 (1986)) ("the institution that makes the racial distinction must have had a 'strong basis in evidence' to conclude that remedial action was necessary, '*before* it embarks on an affirmative-action program.") (emphasis added); *see also Richmond v. J.A. Croson Co.*, 488 U.S. 469, 504 (1989) ("they must identify that discrimination, public or private, with some specificity *before* they may use race-conscious relief.") (emphasis added). |
| 283) | AB 979 does not prevent a corporation from selecting any particular individual, including a white man for board service. | *See* Cal. Corp. Code § 301.4; Rosenblum Decl. ¶¶ 98-108 (discussing the relative flexibility and deference afforded to corporate leadership by AB 979);  Halligan Decl. ¶ 54 ("AB 979 does not create a zero-sum competition between qualified candidates who are from unrepresented communities and those who are not; both may be considered, as the | Disputed. AB 979 prevents a corporation from selecting any heterosexual white men for board service in any of the board seats AB 979 reserves for "underrepresented communities." |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 257 -

| | | board table may be expanded."). | |
|---|---|---|---|
| **284)** | AB 979 does not require any white men to leave their board seats because boards can add additional candidates as desired. | *See* Cal. Corp. Code § 301.4; Rosenblum Decl. ¶¶ 98-108 (discussing the relative flexibility and deference afforded to corporate leadership by AB 979); Berkhemer-Credaire Decl. ¶ 51 ("… AB 979 [was] designed to … [allow] corporations to add new seats for women and men of color without replacing any white male directors. Corporate boards, consistent with their bylaws, have the authority and flexibility to add or delete director positions."). | Disputed. AB 979 requires heterosexual white men to leave board seats when expanding a board is impossible or impractical. |
| **285)** | AB 979 allows corporations to add a seat to a board for additional candidates as desired. | Cal. Corp. Code § 301.4(a); Rosenblum Decl. ¶¶ 98-108 (discussing the relative flexibility and deference afforded to corporate leadership by AB 979); *see also* Berkhemer-Credaire Decl. ¶ 51 ("… AB 979 [was] designed to … [allow] corporations to add new seats for women and men of color without replacing any white male directors. Corporate boards, consistent with their bylaws, have the authority and flexibility to add or delete director positions."). | Undisputed that AB 979 allows corporations to add a board seat. Disputed that it AB 979 makes it possible for every corporation to add board seats. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 258 -

| | | | |
|---|---|---|---|
| **286)** | There are numerous reasons corporations may have for adding seats to a board and boards are generally free, in their business judgment, to pursue those purposes by unilaterally adding one or more seats. | Jennings Decl. ¶¶ 19-23; *see also* Halligan Decl. ¶¶ 51-54 ("The size of boards are flexible in that the number of directorships are determined by the board based on the board's needs," and "boards hav[e] utilized this flexibility in many instances."); Berkhemer-Credaire Decl. ¶ 51 ("Corporate boards, consistent with their bylaws, have the authority and flexibility to add or delete director positions."). | Undisputed that some corporations may add board seats. Disputed that this is always possible. |
| **287)** | Public companies generally have governance flexibility to amend company bylaws— which may include changing the size of the board itself— without seeking shareholder approval. | Jennings Decl. ¶ 19; *see also* Berkhemer-Credaire Decl. ¶ 51. | Disputed that the declarations are sufficient to establish this. The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). |
| **288)** | AB 979 gives the Secretary of State the discretion to adopt regulations to implement the section and the discretion whether to impose fines for | *See* Cal. Corp. Code § 301.4; Bogart Decl. ¶¶ 12-13. | Undisputed. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment (2:21-cv-01951-JAM-AC)

- 259 -

| | | | |
|---|---|---|---|
| | violations of the section. | | |
| **289)** | AB 979 requires the Secretary to collect and report board-composition information annually, enabling the legislature to amend or withdraw the statute as appropriate. | *See* Cal. Corp. Code § 301.4(c). | Admitted as to the collection and reporting requirements. Disputed as to the implication that this "enabl[es] the legislature to amend or withdraw the statute as appropriate." Even without the reporting requirement, the legislature can revisit the law at any time, subject only to the constraints of the relevant constitutional constraints on its actions.<br><br>Further disputed to the extent that this implies a meaningful limitation on the law's duration. That a legislature could "amend or withdraw" the law is true of all laws, and cannot provide a "logical stopping point," *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989).<br><br>Additionally, the phrase "as appropriate" is vague. |
| | **Alliance for Fair Board Recruitment's Members Lack Standing** | | |
| **290)** | Alliance for Fair Board Recruitment member Edward Blum purchased his first shares of stock in Beyond Meat, Inc. on March 12, 2021. As of March 23, 2021, Blum owned 10 shares of the approximately 63 million outstanding shares in Beyond Meat—an approximately 0.000016% | Declaration of Heidi Joya ("Joya Decl.") ¶ 4, Ex. 2; Jennings Decl. ¶ 31, Ex. 2 | Disputed to the extent this is offered as evidence that Alliance for Fair Board Recruitment's members lack standing, which California has conceded Plaintiff has established. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 260 -

| | | | |
|---|---|---|---|
| | ownership interest in the corporation. | | |
| **291)** | Blum purchased 90 additional shares on July 7, 2021. As of March 28, 2022, Blum owns 100 shares of the approximately 63.5 million outstanding shares in Beyond Meat—an approximately 0.00016% ownership interest in the corporation. | Joya Decl. ¶ 4, Ex. 2; Jennings Decl. ¶ 31, Ex. 2. | Disputed to the extent this is offered as evidence that Alliance for Fair Board Recruitment's members lack standing, which California has conceded Plaintiff has established. |
| **292)** | In Beyond Meat's May 24, 2022 annual shareholder election, there is no indication that Blum cast any votes with his shares. | Joya Decl. ¶ 6-10, Exs. 4, 5. | Disputed to the extent this is offered as evidence that Alliance for Fair Board Recruitment's members lack standing, which California has conceded Plaintiff has established. |
| **293)** | Beyond Meat elects its board directors through a plurality voting system. | Jennings Decl. ¶ 43. | Undisputed. |
| **294)** | For corporations that use plurality voting in their board of director elections, a shareholder's vote has no impact on the outcome of an uncontested election. | *See* Jennings Decl. ¶ 30-41. | Disputed that the declarations are sufficient to establish this. The declarants' opinions are offered lacking sufficient evidentiary support to support summary judgment. *See Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) ("Expert testimony is admissible on summary judgment only if the opinion is supported by facts sufficient to satisfy the requirements of Fed.R.Civ.P. 56(e). It is not enough to simply opine; the factual basis must be stated."); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 261 -

| | | | |
|---|---|---|---|
| | | | expert must back up his opinion with specific facts."). |
| **295)** | In an uncontested election, the number of nominated board candidates is equal to the number of available seats, virtually guaranteeing that all nominated candidates will be elected. | Jennings Decl. ¶¶ 24-29. | Undisputed. Plaintiff also notes that California has conceded Plaintiff has established standing. |
| **296)** | Beyond Meat has never had a contested election for its board directors, meaning that every candidate the corporation has nominated has been selected to become a board director. | Jennings Decl. ¶¶ 43-44. | Undisputed. Plaintiff also notes that California has conceded Plaintiff has established standing. |
| **297)** | Contested elections are rare, and shareholders who wish to exercise their right to nominate board candidates must be prepared to comply with regulatory and other requirements to do so. Shareholders who wish to prevail in a contested election must expend considerable resources. | Jennings Decl. ¶¶ 37-41. | Disputed to the extent this establishes that a shareholder would not "expend considerable resources" and thus could not prevail in a contested election. Plaintiff also notes that California has conceded Plaintiff has established standing. |
| **298)** | In its entire history as a public | Jennings Decl. ¶ 44. | Disputed that this has any relevance. Plaintiff also notes that California has |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 262 -

| | | | |
|---|---|---|---|
| | company, no Beyond Meat shareholder has successfully completed the process to nominate their own director in a board election. | | conceded Plaintiff has established standing. |
| 299) | The Willis Lease Board's decision to replace Robert Morris was not related in any way to the California laws denoted as SB 826 and AB 979. | Joya Decl. ¶ 12, Ex. 7 (Declaration of Robert J. Keady (Keady Decl.) ¶ 4.) | Disputed that the declarations are sufficient to establish that AB 979 had *no* relation. This is contravened by the declaration of Robert Morris, which references the various pressures on corporate boards. *See* Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment, ¶ 27.<br><br>Plaintiff also notes that California has conceded Plaintiff has established standing. |
| 300) | Since at least 2017, CAI International's proxy statements have stated the corporation's express policy of considering diversity when selecting board directors. | Joya Decl. ¶¶ 13-14, Ex. 9, p. CAI_00000677. | Disputed to the extent this is offered as evidence that Alliance for Fair Board Recruitment's members lack standing. |
| 301) | The CAI International board discussed Alliance for Fair Board Recruitment's Morris's board candidacy at its October 24, 2019 and December 11, 2019 board meetings, prior to the passage of AB 979. CAI International did not | Joya Decl. ¶¶ 13-14, Ex. 9, CAI_00000654-658. | Disputed to the extent this is offered as evidence that Alliance for Fair Board Recruitment's members lack standing. |

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 263 -

| | | | |
|---|---|---|---|
| | nominate or select Morris to become a board member. | | |
| **302)** | Alliance for Fair Board Recruitment member Robert Morris was terminated from the board of Willis Lease in 2020. At the time, Willis Lease's principal offices were located in Florida, not in California. | Declaration of Robert Morris ("Morris Decl."), ¶¶ 14-15; Joya Decl. ¶ 12, Ex. 7 ( Keady Decl. ¶ 4 ("At the time of the Board's decision to nominate Ms. McKeating, those laws did not apply to Willis, and do not apply today, as Willis's principal executive offices have been continuously located in Florida since October 2018.").) | Undisputed that Willis was not located in California but disputed to the extent that this might suggest that California's laws do not apply to Robert Morris.<br><br>Robert Morris lives in California and has "an active interest in being recruited as an independent director by one or more corporate boards," especially in California and is well qualified for such positions in light of his "extensive professional experience as an independent director, having served as a director and the chairperson of the auditing committee of a large publicly traded company for 14 years." *See* Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment, ¶ 29.<br><br>Plaintiff also notes that California has conceded Plaintiff has established standing. |

Respectfully submitted,

Dated: February 14, 2023

BOYDEN GRAY & ASSOCIATES PLLC

By:      Michael Buschbacher
*Counsel for the Alliance*
C. Boyden Gray, Admitted *Pro Hac Vice*
Jonathan Berry, Admitted *Pro Hac Vice*
Michael Buschbacher, Admitted *Pro Hac Vice*
BOYDEN GRAY & ASSOCIATES
801 17th Street NW, Suite 350
Washington, DC 20006
Telephone: (202) 955-0620
buschbacher@boydengrayassociates.com

Response to Statement of Facts in Support of Defendant California Secretary of State's Opposition to Plaintiff's Motion for Summary Judgment  (2:21-cv-01951-JAM-AC)

- 264 -